# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | |
| Plaintiff, | : | |
| vs. | : | |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, *et al.*, | : | No. 22-50435 (JTD) |
| Defendants. | : | |

**MOTION OF THE OPIOID MASTER DISBURSEMENT TRUST II FOR ENTRY OF AN ORDER FURTHER ENLARGING THE TIME TO EFFECTUATE SERVICE OF PROCESS AND EXTENDING DEADLINE TO PRODUCE TRADING INFORMATION**

The Opioid Master Disbursement Trust II (the "**Trust**"), a statutory trust created and established pursuant to the *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt PLC and its Debtor Affiliates* [Docket No. 7670] (as amended, the "**Plan**") for the above-captioned debtors (collectively, the "**Debtors**"), by and through its undersigned counsel, hereby moves this Court (the "**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4(m) and 15(c) of the Federal Rules of Civil Procedure (the "**Civil Rules**"), and Rules 7004, 7015, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (i) further enlarging the time to effectuate service of process; and (ii) extending the Trust's deadline under Paragraph 6(d) of the *Order*

*Enlarging the Time to Effect Service and Approving Preliminary Case Management Procedures* [Adv. Proc. Docket No. 93] (the "**Case Management Order**") to produce certain trading information to the defendants (the "**Defendants**") in the above-captioned adversary proceeding (the "**Adversary Proceeding**"). In support of this Motion, the Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

The Trust seeks to: (i) further extend its deadline to serve the complaint initiating this Adversary Proceeding (the "**Complaint**") on the Defendants, certain of which remain unidentified as of the date hereof; and (ii) extend its deadline to produce documents sufficient to show that, for each transfer that the Trust seeks to avoid pursuant to this Adversary Proceeding, that such Defendant actually sold such shares of stock to Mallinckrodt, and received proceeds for such shares from Mallinckrodt ("**Trading Information**"). Case Management Order, ¶ 6(d).

First, the Trust is still engaged in the complex and time-consuming process of obtaining discovery aimed at identifying the shareholders that participated in the Debtors' share repurchase program (the "**Share Repurchase Program**")[1] and, therefore, are the proper Defendants in this Adversary Proceeding. In particular, the Trust is still working to obtain complete productions of shareholder information from J.P. Morgan Securities LLC ("**JPM**") and certain affiliates of Goldman Sachs & Co. (collectively, "**Goldman Sachs**") that participated in Share Repurchase Transactions almost three months after the December 20, 2022 hearing following which the Court granted the Trust's motion to compel JPM to produce documents related to the Share Repurchase Program and directed the Trust to serve subpoenas on Goldman Sachs that engaged in Share Repurchase Transactions. [*See* Docket No. 8455].

---

[1] Any transaction executed in connection with the Share Repurchase Program shall be referred to herein as a "**Share Repurchase Transaction**" and any claim by the Trust arising out of a Share Repurchase Transaction shall be referred to herein as a "**Share Repurchase Claim**."

Despite being ordered to make a complete production by January 20, 2023 (*see* Docket No. 8455 at ¶ 2), JPM made its first production of trading information (which was heavily redacted) on February 24, 2023. The Trust's professionals were unable to match the information in JPM's production due to these redactions and requested that certain information be unredacted and produced. JPM made a supplemental production that included the previously redacted trading information on March 8, 2023. The Trust's professionals are still analyzing JPM's production to determine the extent to which repurchase trades can be matched and the relevant shareholders identified.

Meanwhile, Goldman made productions of trading information on February 28, 2023 and March 7, 2023. However, the Trust's professionals believe that a significant number of repurchase trades are missing from Goldman's productions and are working with counsel for Goldman to obtain information for these missing trades. The delay in receiving complete productions from JPM and Goldman has hindered the Trust's ability to identify all of the correct defendants in this Adversary Proceeding, necessitating the requested extensions of the deadline to serve an amended Complaint and to produce Trading Information to the Defendants named therein.

In addition, the Trust is in the process of negotiating with certain named Defendants a protocol (the "**Protocol**") to address certain defenses to Share Repurchase Claims, including that a Defendant received Share Repurchase Transaction proceeds as a mere conduit. The Trust expects that it will identify additional Defendants through the Protocol process, as it uncovers the identities of the beneficial owners of the Mallinckrodt shares repurchased through these conduits and names those beneficial owners as Defendants in an amended Complaint.

Accordingly, the Trust seeks to further extend the deadline to serve the Complaint on the Defendants in this Adversary Proceeding (the "**Service Deadline**"), as well as the deadline to

-3-

64757/0001-44797986

produce Trading Information to Defendants to July 10, 2023,[2] without prejudice to the Trust's ability to seek further extensions of such deadlines, to allow the Trust additional time to complete its investigation and identify all proper Defendants in this Adversary Proceeding.

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article X.F. of the Plan. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Trust consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 105 of the Bankruptcy Code, Civil Rules 4(m) and 15(c), and Bankruptcy Rules 7004, 7015, and 9006.

## BACKGROUND

### A. The Chapter 11 Cases

4. On October 12, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief (collectively, the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code in this Court. No trustee or examiner was appointed in these Chapter 11 Cases.

5. On October 27, 2020, the Office of the United States Trustee appointed two official committees in these cases: (1) Official Committee of Opioid Related Claimants (the "**OCC**"); and (2) the Official Committee of Unsecured Creditors. [*See* Docket Nos. 306, 308].

---

[2] This represents a 90-day extension of the current Service deadline, which is April 11, 2023, and a 112-day extension of the Trust's deadline to produce Trading Information, which is March 20, 2023.

-4-

6. The Plan in these cases was confirmed by Order of the Court dated March 2, 2022 [Docket No. 6660] (the "**Confirmation Order**"). The Effective Date of the Plan occurred on June 16, 2022. [*See* Docket No. 7652].

7. The Plan provides for the establishment of the Trust, which is charged with investigating and prosecuting the Share Repurchase Claims for the benefit of the Debtors' unsecured creditors, which include the many victims of the opioid crisis.

### B. The Investigation into Share Repurchase Claims

8. Prior to the Effective Date of the Plan, the OCC began investigating the Debtors' Share Repurchase Program with the goal of, among other things, identifying the shareholder participants against whom Share Repurchase Claims could be asserted. To that end, on May 27, 2022, the OCC filed a motion [Docket No. 7523] (the "**Rule 2004 Motion**") for an examination under Bankruptcy Rule 2004, pursuant to which the OCC sought documents from Goldman Sachs and Morgan Stanley & Co. ("**Morgan Stanley**"), which served as the Debtors' brokers in connection with the Share Repurchase Program. The Court granted the Rule 2004 Motion by Order dated June 7, 2022. [*See* Docket No. 7594].

9. Upon the occurrence of the Effective Date, the Trust took over the investigation, at which point the Trust began to issue additional subpoenas aimed at identifying participants in the Share Repurchase Program. These subpoena targets included, among other parties, substantial holders of Mallinckrodt ordinary shares during the time in which the Share Repurchase Program was being implemented, the securities exchanges on which the Share Repurchase Transactions

were executed, and contra-parties[3] that the Trust's professionals were able to link to specific repurchase trades through their analysis of data uncovered through the Trust's investigation.

10. On October 12, 2022, the Trust commenced this Adversary Proceeding seeking to prosecute Share Repurchase Claims against certain participants in the Share Repurchase Program the Trust identified prior to that date. The Trust commenced this Adversary Proceeding on the second anniversary of these Chapter 11 Cases to avoid an argument that the Share Repurchase Claims were untimely under 11 U.S.C. § 546(a). Notwithstanding the commencement of this Adversary Proceeding, the Trust's investigation into the identity of the shareholders that participated in the Share Repurchase Program remains ongoing, as the shareholder matching process is complex and requires an analysis of a significant amount of third-party trading data, some of which has still not been provided to the Trust's professionals.

11. On November 18, 2022 and December 6, 2022, the Trust filed motions to compel productions of shareholder information against JPM, Goldman Sachs, and Morgan Stanley. [*See* Docket Nos. 8379, 8380, 8388]. At a hearing held on December 20, 2022, the Court granted the Trust's motions to compel as to JPM and Morgan Stanley [*See* Docket Nos. 8443, 8455] and directed the Trust to serve subpoenas on the specific Goldman Sachs entities that engaged in Share Repurchase Transactions.

12. Since the December 20 hearing, the Trust has continued to diligently work to identify all the correct shareholders that received proceeds from the Share Repurchase Program and has made significant progress in that time. Since that hearing, the Trust has identified over

---

[3] A "contra-party" is an exchange participant that engages in sales of securities either on its own account (in which case the contra-party is the selling shareholder) or on behalf of a third party (in which case further discovery is needed to identify the selling shareholder).

$100 million in additional Share Repurchase Transactions and several new potential shareholder Defendants.

Despite the Trust's diligence and the Court's order, the Trust still has not received complete productions from Goldman Sachs and JPM. JPM, which was ordered to make a complete production of trading information by January 20, 2023 (*see* Docket No. 8455 at ¶ 2), made its first production of trading information (which was heavily redacted) on February 24, 2023. The Trust's professionals were unable to match the information in JPM's production due to these redactions and counsel to the Trust promptly requested that certain data fields be unredacted. JPM made a supplemental production that included the previously redacted trading information on March 8, 2023. The Trust's professionals are still analyzing JPM's production to determine the extent to which repurchase trades can be matched and the relevant shareholders identified.

13. Meanwhile, Goldman made productions of trading information on February 28, 2023 and March 7, 2023. However, the Trust's professionals believe that a significant number of repurchase trades are missing from Goldman's productions and are working with counsel for Goldman to obtain information for these missing trades to identify additional Share Repurchase Program participants and name those participants in an amended Complaint.

14. On December 2, 2022, the Trust filed a motion seeking to extend the Service Deadline from January 10, 2023 to April 11, 2023 and to establish certain preliminary case management procedures. [*See* Adv. Proc. Docket No. 20].

15. On December 28, 2022, the Court entered the Case Management Order, pursuant to which, among other things, the Court: (1) granted the Trust's request to extend the Service Deadline to April 11, 2023, without prejudice to the Trust's right to seek further extensions of the Service Deadline. [*See* Adv. Proc. Docket No. 93 at ¶ 2].

16. The Court also directed the Trust to: (1) engage in good faith negotiations regarding a protective order to govern the production of documents in this Adversary Proceeding (the "**Protective Order**"), and a Protocol to address certain defenses to Share Repurchase Claims; and (2) directed the Trust to produce Trading Information to the Defendants within 30 days of the Court's entry of the Protective Order. [*See* Adv. Proc. Docket No. 93 at ¶ 6].

17. The Court entered an agreed upon form of Protective Order on February 17, 2023 [*see* Adv. Proc. Docket No. 103]. Accordingly, the Trust's current deadline to produce Trading Information to Defendants pursuant to the Case Management Order is March 20, 2023.

18. Counsel for certain Defendants provided the Trust with a draft Protocol on January 20, 2023. Counsel for the Trust engaged in significant review, analysis, and revision to ensure that any Protocol is appropriate in scope and tailored to the facts and circumstances of this Adversary Proceeding and provided its draft Protocol to the Defendants on February 27, 2023.

19. The Trust and the Defendants are still negotiating a form of Protocol. To date, counsel for the Trust and counsel for certain Defendants have exchanged draft protocols and engaged in a meet and confer session and have scheduled a second session. The parties appear to agree that any Protocol should address the defense that a Defendant received Share Repurchase Transaction proceeds as a mere conduit. The Trust believes it is likely to identify new Defendants through the Protocol process, as the Trust may name certain beneficial owners of Mallinckrodt shares that were repurchased through these conduits as Defendants in an amended Complaint.

20. Currently, there are over 70 named Defendants in this Adversary Proceeding, as well as certain "John Doe" Defendants who have yet to be identified, as the Trust's investigation into the identity of the Share Repurchase Program participants remains ongoing.

**RELIEF REQUESTED**

21. By this Motion, the Trust seeks entry of an Order, substantially in the form attached hereto as **Exhibit A** further extending the Service Deadline and extending the Trust's deadline to produce Trading Information to Defendants to July 10, 2023 (which represents a 90-day extension of the current Service Deadline and a 112-day extension of the current deadline to produce Trading Information), without prejudice to the Trust's ability to seek further extensions of such deadlines.

**BASIS FOR RELIEF**

**A. The Court Should Extend the Trust's Time to Serve the Complaint Under Civil Rule 4(m) and 15(c).**

22. Civil Rule 4(m) (made applicable to this Adversary Proceeding by Bankruptcy Rule 7004) imposes a 90-day deadline to serve a complaint; *provided* that the Court must extend such deadline if the plaintiff demonstrates good cause. *See* Fed. R. Civ. P. 4(m).

23. In construing Civil Rule 4(m)'s good cause standard, the United States Bankruptcy Court for the District of Delaware has held that "[w]here counsel exhibits substantial diligence, professional competence and good faith, but fails to comply with the rule as a result of some minor neglect, the court is required to find good cause." *In re Berkline/BenchCraft Holdings, LLC*, No. 11-11369 (MFW), 2013 WL 4478672, at *5 (Bankr. D. Del. Aug. 6, 2013) (citation omitted) (emphasis added).

24. Moreover, a complaint that is amended within the time provided under Civil Rule 4(m) (inclusive of any extensions thereof) to name previously unidentified "John Doe" defendants is deemed to relate back to the originally filed complaint. *See generally* Fed. R. Civ. P. 15(c); Fed. R. Bankr. P. 7015 (incorporating Civil Rule 7015 in adversary proceedings); *see also PCT v. New England Confectionary Co. (In re Fleming Cos.)*, No. 05-78096, 2006 WL 1062476 (Bankr. D. Del. Apr. 20, 2006); *McCall v. Thazhathel,* No. 19-cv-2568, 2022 WL 1136726, at *6 (E.D. Pa.

April 18, 2022) ("[C]ourts of appeal that have addressed this issue have uniformly agreed that Rule 15(c)'s notice period incorporates Rule 4(m)'s good cause extension of that period.") (collecting cases); *Allen v. Nat'l Railroad Passenger Corp. (Amtrak)*, No. 03-CV-3497, 2004 WL 2830629, at *8 (E.D. Pa. Dec. 7, 2004) (holding that a court order extending the Civil Rule 4(m) period effectively "extend[s] the time period for which notice could be provided to defendant pursuant to [Civil] Rule 15(c)(3)."); *McGuire v. Turnbo*, 137 F.3d 321, 325 (5th Cir. 1998) (holding that, "[w]hile the notice does not fall within Rule 4(m)'s 120 day period, it does fall within the enlargement the court granted [and] … the amended complaint did relate back").

25. The Trust easily satisfies Civil Rule 4(m)'s good cause standard. Immediately upon its establishment on the Plan Effective Date, the Trust commenced an intensive investigation aimed at identifying the shareholders that participated in over $1.5 billion in repurchase transactions pursuant to the Share Repurchase Program. To date, the Trust has served over 350 subpoenas on various parties and analyzed dozens of gigabytes of trade data in an effort to match buy-side data provided by the Debtors' brokers with sell-side data provided by certain of the Debtors' shareholders, as well as data provided by the securities exchanges on which repurchase transactions were executed and from the contra-parties identified in such data to identify the correct defendants against which to bring Share Repurchase Claims.

26. The Trust's investigation into the identity of the correct shareholder Defendants remains ongoing, in large part because not all recipients of the Trust's subpoenas have made complete productions in response to the Trust's subpoenas. Indeed, the Trust still has not received complete productions from JPM or Goldman Sachs despite receiving favorable rulings from this Court on its motions to compel at the December 20, 2022 hearing. Without the requested trading information, the Trust cannot identify all of the correct Defendants to the Share Repurchase

Claims, and the value of those claims will be lost to the Trust's beneficiaries if the Trust is not allowed sufficient time to complete its investigation and amend the Complaint to include such Defendants.

27. Moreover, the Trust anticipates that it will identify additional Defendants through the Protocol process because Defendants who assert they received Share Repurchase Transaction proceeds as mere conduits may, through the Protocol process, identify the beneficial owners of the repurchased Mallinckrodt shares.

28. Simply put, the Trust has undertaken extraordinary efforts to identify shareholders that participated in the Share Repurchase Program. These good-faith efforts notwithstanding, the Trust is unlikely to complete its investigation by April 11, 2023, the current Service Deadline. Accordingly, the Court should extend the Service Deadline to allow the Trust additional time to complete its investigation and amend the Complaint.

**B.  The Court Should Extend the Trust's Deadline to Produce Trading Information.**

29. The Court should also extend the Trust's deadline to produce Trading Information pursuant to Paragraph 6(d) of the Case Management Order for similar reasons as provided above with respect to the Trust's request for an extension of the Service Deadline.

30. When the Trust agreed to the Case Management Order a week after receiving favorable rulings at the December 20 hearing, the Trust's professionals expected to promptly receive complete productions of shareholder information from the parties who had not yet produced such information. It has been almost three months since the Trust obtained those rulings, and the Trust is still working to receive complete productions from JPM and Goldman Sachs. The Trust is unable to produce complete Trading Information to Defendants until after all such Defendants have been identified.

31. For the foregoing reasons, the Trust respectfully submits that the Service Deadline and the deadline to produce Trading Information to current and newly-identified Defendants should be extended until July 10, 2023 without prejudice to the Trust's ability to seek further extensions.

## **NOTICE**

32. Notice of this Motion has been provided to: (i) the United States Trustee for the District of Delaware and (ii) all Defendants in this Adversary Proceeding identified as of the date hereof. The Trust respectfully submits that such notice is adequate and that no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

## CONCLUSION

**WHEREFORE**, the Trust respectfully requests that the Court enter the Proposed Order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and grant such other and further relief as the Court deems just and proper.

Dated: March 14, 2023
Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Justin R. Alberto*
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Seth Van Aalten (admitted *pro hac vice*)
Anthony De Leo (admitted *pro hac vice*)
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

*Counsel to the Opioid Master Disbursement Trust II*