# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 22-50435 (JTD) |
| | : | |
| v. | : | |
| | : | |
| ARGOS CAPITAL APPRECIATION MASTER | : | **Re: Adv. Docket No. 124** |
| FUND LP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS'

### (1) LIMITED OBJECTION TO MOTION OF THE OPIOID MASTER DISBURSEMENT TRUST II FOR ENTRY OF AN ORDER FURTHER ENLARGING THE TIME TO EFFECTUATE SERVICE OF PROCESS AND EXTENDING DEADLINE TO PRODUCE TRADING INFORMATION, AND

### (2) MOTION FOR ENTRY OF THE PROPOSED PROTOCOL FOR THE DISMISSAL OF CONDUITS, NON-TRANSFEREES, "FINANCIAL PARTICIPANTS," "FINANCIAL INSTITUTIONS," "STOCKBROKERS," AND DISSOLVED ENTITIES

1.      The undersigned Defendants, by and through their counsel, respectfully submit

a.  this Motion for entry of the Proposed Protocol Order for the Dismissal of Conduits, Non-Transferees, "Stockbrokers", "Financial Institutions", "Financial Participants", Dissolved Entities, and Other Entities Protected by Section 546(e) (the "**Proposed Protocol**"), attached to this motion as **Exhibit A**; and

b.      this Limited Objection to the March 14, 2023 Motion of the Opioid Disbursement Trust II (the "**Plaintiff**" or the "**Trust**") for Entry of an Order Further Enlarging the Time to Effectuate Service of Process and Extending Deadline to Produce Trading Information (the "**Extension Motion**"), filed in the above-captioned adversary proceeding, *see* D.I. 124.

2.      This Court's December 28, 2022 Order directed the parties to engage in "reasonable and good-faith negotiation of protocols to address, *efficiently and without undue cost*," several threshold, individual defenses. D.I. 93 ¶ 6(c) (the "**Case Management Order**") (emphasis added). That order, submitted by stipulation of the parties, reflected what Defendants understood at the time to be a basic deal between Defendants and Plaintiff on how to move this litigation forward in an efficient and cost-effective manner. Through their motion for the Case Management Order, the Trust sought and obtained Defendants' agreement not to oppose the Trust's request for additional time to potentially identify additional defendants for a forthcoming amended complaint. In exchange, Defendants secured the Trust's agreement to negotiate a protocol so that, during the extended period requested by the Trust, work also could begin to remove from this case those defendants with threshold, individual defenses. This two-way street, seemingly agreed to by the parties and adopted and entered by the Court in the Case Management Order, would benefit both

sides, as well as the Court, by ensuring that the right parties are named in any amended complaint before any motions or pleadings directed at that complaint would begin.

3. But unfortunately, the parties have reached an impasse in negotiating a protocol. While the Trust will no doubt try to paint the history differently, the reality is that the Trust has refused to meaningfully engage in a process for removing defendants from this case, and seeks only to expand the number of defendants. Through its Extension Motion, the Trust now seeks at least three additional months to identify potential new defendants for a forthcoming amended complaint. Yet at the same time, almost three months after the Court entered the Case Management Order, the Trust has been unwilling to agree on a protocol that can simultaneously enable the timely removal from this case of those Defendants with clear threshold, individual defenses.

4. Having reached an impasse, and in light of the Trust's request for an additional three months for investigation aimed at adding parties to this case and deferring litigation, Defendants now present the Court with (i) this motion for entry of their proposed protocol, attached as **Exhibit A**, and (ii) a limited objection to the Trust's Extension Motion.

5. The parties' impasse concerns issues pivotal to an effective protocol—all of which go to the fundamental goal of ensuring that the protocol will actually enable the parties and the Court to address the covered individual defenses in a timely manner, "efficiently and without undue cost." D.I. 93 ¶ 6(c).

6. The impasse concerns several key issues, including:

a. Whether Defendants should be permitted to invoke the protocol *now* (Defendants' position), or instead must await the Trust's forthcoming amended complaint (the Trust's position).

b.      Whether, once Defendants are permitted to invoke the protocol, the Trust should be required to promptly consider each presentation made by an individual defendant of its defense together with supporting evidence (Defendants' position), or instead the Trust should be entitled to up to two 60-day periods (*i.e.*, almost four months) before providing an answer on whether the Trust will dismiss that defendant (the Trust's position).

c.      Whether, if the Trust declines to dismiss a Defendant under the protocol, the Defendant can bring that dispute promptly to the Court for resolution of the threshold defense (Defendants' position), or instead must wait even longer, until—at the earliest— all Defendants have answered the forthcoming amended complaint or the Court has decided an omnibus motion challenging the sufficiency of that complaint, a further delay that could add many additional months or longer (the Trust's position).

d.      Whether, in presenting any such dispute to the Court, the Defendant may present it based on the amended complaint and the evidence exchanged in the protocol process (Defendants' position), or instead—adding even more delay and effectively making the protocol useless—must await fact and expert discovery on the defense after which the Defendant may only present the defense in the form of a motion for summary judgment or at trial (the Trust's position).

7.      For several reasons, the Court should approve the Proposed Protocol and reject the Trust's alternative approach.

8.      *First*, the entire point of Paragraph 6(c) of the Case Management Order and the protocol process that it directed the parties to negotiate is to provide for a two-way street in the early months of this case, before collective litigation of the merits of the amended complaint begins.  In one direction, the Trust is allowed more time to investigate its claims and potentially

*add* parties to its complaint. In the other direction, the parties are expected to negotiate and commence work under a protocol to *remove* from this case those defendants with clear, threshold, individual defenses to the Trust's Complaint. The Proposed Protocol and Defendants' position on the issues in impasse serve this objective while the Trust's position directly contradicts and frustrates it.

9. *Second*, the Proposed Protocol follows from, and is supported by, precedent in other similar shareholder adversary proceedings. As explained further below, other courts have endorsed the use, early in the proceedings, of such protocols to efficiently address threshold, individual defenses to fraudulent transfer claims—*i.e.*, defenses that turn on the nature of the individual defendant rather than the general merits of the fraudulent transfer claims.

10. *Third*, the Proposed Protocol addresses threshold, individual defenses that can be resolved (and which courts frequently decide) with simple, straightforward evidentiary showings. For example, conduit and non-transferee defenses can be resolved simply by reviewing trading data produced by the relevant defendant, while the safe-harbor defenses under 11 U.S.C. § 546(e) often can be decided by reference to securities disclosures alone. *See, e.g.*, *Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*, No. 21-51190, 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023) (granting Rule 12(b)(6) motion asserting section 546(e) defense based on judicial notice of facts contained in SEC filings). By contrast, the Trust's position effectively robs the protocol of any meaning or impact whatsoever, only allowing Defendants to present their defenses privately to the Trust's counsel (at some future, belated point in time) and then, upon disagreement, setting the issues for extensive fact and expert discovery to occur only many months down the road, followed by resolution even later, on summary judgment or at trial.

11.     *Fourth*, the Trust's request to extend its pre-complaint investigation by an additional three months only heightens and renders more urgent the need for the Proposed Protocol.  The Trust's position—that *both* (a) the case schedule should be extended; *and* (b) the use of any protocol and the presentation of any disputes under it should wait—only exacerbates the problems discussed above, further frustrating the purpose of this Court's Case Management Order and subjecting defendants with clear bases for requesting dismissal to unnecessary extended delay and legal expenses.

12.     To be clear, Defendants would not object to the Trust's request to extend the Service Deadline (defined below) to July 10, 2023, *if* the Proposed Protocol is entered allowing Defendants to present their individual, threshold defenses to the Trust now and, in the event the Trust disagrees, to have those disputes promptly presented to the Court.  Absent such a protocol, however, there is no basis for the further extension the Trust seeks.

## **BACKGROUND**

### I.     **The Complaint**

13.     The Trust filed the Complaint over five months ago on October 12, 2022, the day the statute of limitations for the Trust's claims expired.  *See* Redacted Compl., D.I. 4-1.  The Complaint is notable in that the Trust seeks to avoid purchases by Mallinckrodt PLC ("**Mallinckrodt**") of its stock in everyday trading on the open market.  *See id.* ¶ 1.  The nature of the Complaint—a suit about open-market securities transactions—resulted in the Trust's selection of Defendants here, which represent a cross-section of the securities industry and include some of the world's largest investment managers and advisors, hedge funds, securities trading firms, broker-dealers, and investment banks.  *See id.* ¶¶ 1, 37-40.  It is hardly surprising that in naming such entities, the Complaint was exceedingly likely to implicate the threshold, individual defenses

covered by the Proposed Protocol, including Section 546(e)'s safe harbor for many securities transactions.

14.     Importantly, the Complaint has forced both named defendants and others to incur legal expenses in connection with the defense of this lawsuit.  In addition to the 76 named defendants, the Trust also sued an unspecified number of unidentified "John Doe" entities and brought this case as a putative *defendant* class action (notwithstanding the Trust's own apparent position that many of the defenses asserted by different defendants raise individualized, fact issues), presumably as a placeholder so that the Trust could continue its investigation beyond the limitations period in search of additional claims.  *See id.* ¶¶ 39, 45-51.

## II.     The Trust's Case Management Motion, Defendants' Limited Response, and the Negotiated Case Management Order

15.     The Case Management Order directing the parties to negotiate the protocol arose out of the motion the Trust filed on December 2, 2022, in which the Trust sought to extend until April 11, 2023, the time for it to prepare and serve a new amended complaint (the "**Service Deadline**").  *See* D.I. 20 ¶¶ 12, 14; 20-1 ¶ 2.  The Trust argued that it needed the additional time to "complete its investigation aimed at identifying the participants in the Debtors' Share Repurchase Program and serve any *additional Defendants* with an amended complaint."  D.I. 20 ¶ 14 (emphasis added).

16.     In response, counsel for certain Defendants negotiated a revised proposed case management order with the Trust.  In that negotiation, Defendants made it clear that they would accept the Trust's proposed extension if the Trust, in exchange, agreed to expand the proposed case management order to include, among other things, a provision directing the parties to negotiate a protocol for the presentment of defenses by, and dismissal of, individual defendants

IMPAC 10709312v.2

with clear, threshold defenses to the Trust's Complaint.  Defendants set forth this position in a December 16, 2022 limited response to the Trust's Case Management Motion.  *See* D.I. 48 at 2-3.

17.      The Trust agreed to revise its proposed order, and the parties discussed the concept at the December 20, 2022 hearing.  *See* Dec. 20, 2022 Hr'g Tr., D.I. 91, at 54:4-8.  This Court recognized the order's benefits, explaining the Court's preference to have the correct parties in the amended complaint before considering any omnibus dispositive motions.  *See* Dec. 20, 2022 Hr'g Tr. at 48:3-6 ("I want to make sure I have everybody in front of me before I start dealing with [omnibus] motions to dismiss or other motions that might be filed by the defendants.").

18.      The Trust submitted the agreed-upon Case Management Order on December 23, 2023, D.I. 90, which this Court then entered on December 28, 2023, D.I. 93.  In relevant part, while granting the Trust the extension of the Service Deadline it sought, the Case Management Order directed the parties "to commence reasonable and good-faith negotiation of protocols to address, efficiently and without undue cost, the defense that any Defendant is a conduit, non-transferee, 'stockbroker,' 'financial institution' or 'financial participant,' as such terms are defined in the United States Bankruptcy Code, or dissolved entity not capable of being sued, and any other defense that the Trust and Defendants agree can be resolved through a similar protocol."  *Id.* ¶ 6(c).

## III.      Negotiations Over the Terms of the Protocol

19.      Unfortunately, negotiations of the Protocol have been protracted and unproductive. Defense counsel sent to the Trust's counsel Defendants' first proposal on January 20, 2023, which closely tracked protocols adopted by courts in other fraudulent transfer cases.  The Trust waited some five weeks to respond and then finally did so by striking from the proposed protocol any consideration whatsoever of defenses under 11 U.S.C. § 546(e), even though the Case Management Order explicitly lists those defenses.  *See* Feb. 28, 2023 Hr'g Tr., D.I. 121, at 12:22-13:10.  This caused defense counsel to raise the issue during the February 28, 2023 conference

before the Court, explaining that Defendants had not opposed the extension sought by the Trust "as long as it was not a one-way street, but [] a two-way street" under which the Trust not only received time to add new defendants through continued investigation but also had agreed to "take[] out the defendants who have obvious defenses" through the protocol process. *Id.* at 11:14-23; 12:12-21. In response, the Court recalled that its order directing negotiation of the protocol had indeed extended beyond the more limited set of defenses the Trust had included in its draft protocol. *See id.* at 14:5-6.

20. Following that conference, negotiations resumed but again the Trust has moved at a snail's pace. Most importantly, the Trust's second revision of the protocol (its last version), while accepting the addition of the § 546(e) defenses, reversed course on many of the key procedural provisions of the protocol governing when and how the protocol could be used, as described above. It is those issues on which the parties are now at an impasse and that Defendants bring to the Court by means of this Motion.

## IV. The Trust's Extension Motion

21. While Defendants were attempting to negotiate in good faith with the Trust over the terms of a protocol, the Trust—without prior notice to Defendants or an attempt to reach a compromise—filed the Extension Motion on March 14, 2023. *See* D.I. 124. The Trust's Extension Motion seeks to defer litigating this case until, at earliest, July 10, 2023, nearly nine months after the Trust commenced this case (and after the statute of limitations had expired) and seven months after the Trust filed the Case Management Motion, all while Defendants with clear defenses continue to incur significant legal expenses. The Trust has reserved the right to seek further extensions, so the ultimate amount of extensions it seeks is still unknown.

IMPAC 10709312v.2

## ARGUMENT

## I.    The Court Should Enter the Proposed Protocol

22.     The Court should adopt the Proposed Protocol for several reasons.

A.    <u>The Proposed Protocol Faithfully Follows and Implements the Case Management Order, the Parties' Agreement, and the Court's Guidance</u>

23.     *First*, the Case Management Order contemplates the entry of a protocol in substantially the form of the Proposed Protocol. The purpose of the protocol explicitly stated in this Court's Case Management Order is to provide for presentment and resolution of several, specifically-identified threshold defenses "efficiently and without undue cost." D.I. 93 ¶ 6(c). The Proposed Protocol does just that; it provides a streamlined procedure by which a defendant with a covered defense can submit to counsel for the Trust a declaration and supporting documentation substantiating its asserted defense. *See* Proposed Protocol ¶¶ 4-6. The Proposed Protocol provides the Trust with sufficient time (three weeks) to assess that information and, as a general matter, either (a) agree to dismiss the defendant, (b) request additional information, or (c) provide a reasonable and good faith basis for its refusal to dismiss the relevant defendant. *See id.* ¶¶ 8-9. In the event of a dispute, the Proposed Protocol has a built-in resolution mechanism, requiring the relevant defendant and the Trust to meet and confer in an attempt to resolve the issue and, if that fails, allowing the defendant to seek relief in Court through a motion on the threshold defense to be decided based on the amended complaint and the limited evidence exchanged between the parties under the protocol. *See id.* ¶ 10.

24.     The Proposed Protocol also furthers the purpose of the parties' agreement as reflected in both the Case Management Order and the Court's guidance during the December 20, 2023 hearing. The Proposed Protocol is the means necessary to ensure that the Trust's continuing extensions do not result in a "one-way street," but instead in a "two-way street"—allowing the

parties to use the extended time sought by the Trust also to remove defendants with plainly valid defenses from the case. In short, when combined with the addition of any new defendants as a result of the Trust's investigations, the Proposed Protocol ensures that the *correct* parties are before the Court *before* any omnibus motions to dismiss attacking the sufficiency of the Complaint are taken up, in the most efficient and cost-effective manner possible.

      B.      <u>The Proposed Protocol Follows From, and Is Consistent with, Precedent from Other Adversary Proceedings</u>

25.     *Second*, precedent supports entry of the Proposed Protocol, which borrows substantially from protocols entered by federal courts in similar shareholder adversary proceedings. *See, e.g.*, Declaration of Ross E. Firsenbaum, dated March 28, 2023 (the "**Firsenbaum Decl.**"), Ex. A, Conduit Protocol, *Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conv. Litig.)*, 12-CV-2652 (RJS) (S.D.N.Y. Apr. 24, 2014), D.I. 4239; *id.*, Ex. B, Stipulation and Order Regarding Protocol for Dismissal of Conduits and Non-Transferees, *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, No. 10-04609 (REG) (Bankr. S.D.N.Y. Dec. 4, 2014), D.I. 2124; *id.*, Ex. C, Stipulation and Order Regarding Protocol for Initial Discovery and Dismissal of Conduits and Non-Transferees, *Orion HealthCorp, Inc. v. Capita IRG Trs. (Nominees) Ltd. (In re Orion HealthCorp, Inc.)*, No. 18-08048 (Bankr. E.D.N.Y. Aug. 23, 2018), D.I. 61. While these precedent protocols addressed only conduit and non-transferee defenses and not safe harbor defenses under section 546(e), it is the procedures those protocols set forth that provide relevant precedent here. The parties here have already agreed and the Court ordered last December that the threshold, safe-harbor, section 546(e) defenses be included in the protocol for this case, an approach that reflects the nature of the Trust's claims and the types of defendants named in the Complaint. The impasse that the parties have now reached thus concerns only the procedures by which the parties, and if necessary, the Court, shall address those defenses (and the

timing therefore), not the defenses to be covered by the Protocol. And crucially, in all material respects, the Proposed Protocol provides the same procedural mechanisms as those precedent protocols on the issues as to which the parties have reached an impasse. In those previous cases, the protocols proved to be extremely successful—not simply in removing most defendants that availed themselves of the protocols, but also in doing so without the need for court intervention.[1] Nothing about this case suggests these similar procedures cannot work here as well.

C.   The Nature of the Threshold Defenses at Issue in this Case Support Entry of the Proposed Protocol.

26.   *Third*, the nature of the defenses at issue lend themselves well to resolution under the Proposed Protocol. Each covered defense is an individual, threshold defense that can be decided with a narrow scope of facts in a straightforward manner, without the need for extensive discovery or motion practice. For example, at least some Defendants were not holders of the allegedly sold Mallinckrodt shares; rather, such Defendants were "mere conduits" through which the proceeds of the Share Repurchase Transactions flowed to the holders of the shares. It is well settled that such conduits are not proper defendants. *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57–58 (2d Cir. 1997); *Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. D. Del. 2010).

27.   Other Defendants were investment managers or advisors that neither owned the shares at issue nor received the proceeds for the sale of those shares for their own account. These entities—referred to as "non-transferees"—are not proper defendants for similar reasons. *See* 11

---

[1]      *See, e.g.*, *In re Tribune Co. Fraudulent Conv. Litig.*, 12-CV-2652 (RJS) (S.D.N.Y.) (approximately 111 defendants voluntarily dismissed by the plaintiff); *In re Lyondell Chem. Co.*, No. 10-04609 (REG) (Bankr. S.D.N.Y.) (approximately 98 defendants voluntarily dismissed by plaintiff); *In re Orion HealthCorp, Inc.*, No. 18-08048 (AST) (Bankr. E.D.N.Y.) (approximately 44 defendants voluntarily dismissed by plaintiff).

U.S.C. § 550(a) ("[T]he trustee may recover . . . from [] the *initial transferee of such transfer or the entity for whose benefit such transfer was made*; or [] any immediate or mediate *transferee of such initial transferee*." (emphasis added)). In both cases, a simple review of trading data providing the identities of the holders of the relevant shares is more than sufficient to establish the defense. Other protocols have recognized as much. *See, e.g.*, Firsenbaum Decl., Ex. A, *In re Tribune*, D.I. 4239 ¶ 2.

28. The section 546(e) defenses likewise raise threshold legal issues that often can, and should, if possible, be decided at the outset of the litigation. If a defendant can prove that it is a financial institution, financial participant, stockbroker, or other entity listed in section 546(e), then the Trust is statutorily barred from avoiding any transactions involving that defendant. *See* 11 U.S.C. § 546(e) ("the trustee *may not avoid* a transfer . . . made by or to (or for the benefit of)" the defined entities (emphasis added)). In other words, as courts have put it, the defense is in the nature of a "safe harbor." *See, e.g.*, *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 194 (S.D.N.Y. 2020) (recognizing that section 546(e) is a "safe harbor" and considering the defense on defendants' motion to dismiss), *appeal filed,* No. 20-3315 (2d Cir. Sept. 25, 2020); *In re Quorum Health Corp.*, 2023 WL 2552399, at *7-8 (considering the "safe harbor" defense on motion to dismiss, and rejecting argument that plaintiff "must be afforded an opportunity for discovery"). Needless to say, a defense is hardly a safe harbor if, as the Trust's position on several of the impasses would hold, Defendants need to endure extended fact and expert discovery and most of the litigation before having the defenses addressed at all.

29. Indeed, as these same cases demonstrate, courts commonly take up these defenses at the pleading stage, based on limited evidence cognizable on a motion to dismiss. These threshold issues should be resolved at the outset of the litigation, before consideration of any

IMPAC 10709312v.2

general substantive questions, such as whether Mallinckrodt was solvent at the time of the transaction, or whether the share repurchases at market prices were for "reasonable value." They should not, under the Trust's view, effectively have their resolution delayed until, potentially, extensive fact and expert discovery has ensued and the case is ready for summary judgment practice and ultimately trial.

30.     Indeed, the Proposed Protocol follows from the most basic object of the Federal Rules. Bankruptcy Rule 1001, like Federal Rule of Civil Procedure 1, provides that all the other Rules, including those governing adversary proceedings, "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001. That is precisely what the Proposed Protocol is designed to accomplish and it is the exact opposite of what the Trust's approach will engender.

31.     An example illustrates the point. One of the Defendants in this matter is Citadel Securities LLC ("**Citadel Securities**"), one of the leading market makers in the world. *See* Citadel Securities LLC, *Home Page*, https://www.citadelsecurities.com/. Back in early December, its counsel wrote to counsel for the Trust, explaining (and providing supporting citations to SEC-filed, audited public financial information) that it exceeded the dollar thresholds for a "financial participant" by manyfold. *See* D.I. 110-1. For instance, the letter provided documentary support that Citadel Securities had $4.419 billion gross notional amount of reverse repurchase contracts and $10.443 billion in repurchase contracts, whereas the Bankruptcy Code's definition of a "financial participant" covered by the safe harbor requires only that the party have a face amount of $1 billion in such contracts to qualify. *See id.* at 2. While that alone would make the safe harbor applicable, the letter further explained that Citadel Securities also had $19.286 billion in options contracts, whereas the Bankruptcy Code only requires that a party have $100 million of such

14

contracts on a gross mark-to-market basis. But the Trust simply ignored the letter. After numerous attempts to engage with the Trust, counsel for Citadel Securities was forced to write a follow-up letter on March 15, 2023. The Trust finally responded to these letters *today* (over three months after Citadel Securities sent its first letter to counsel for the Trust). And, even then, its response was completely non-substantive, providing no factual basis to contest Citadel Securities' evidence establishing that Citadel Securities is a "financial participant" and thus entitled to dismissal, yet refusing to dismiss Citadel Securities. Instead, it suggests that it need not respond until "the Court has approved a protocol," further demonstrating that the Trust is not willing to meaningfully engage in a process for removing defendants from this case and highlighting why this Court should adopt the Proposed Protocol now.

32.     In the event that the Trust has questions to ask, it should ask them. It is not appropriate for it, instead, to ignore the evidence that Citadel Securities and other Defendants have provided.

33.     Indeed, the Proposed Protocol provides a clear procedure for the parties to follow-up and hopefully resolve on their own, or, if not, present to the Court, any issues that a defendant's submission may raise. After a defendant makes a submission for dismissal, the Proposed Protocol allows the Trust to timely request additional information that it believes, in good faith, it needs to assess the submission. *See* Proposed Protocol ¶ 8. The Trust could thus request that Citadel Securities confirm, through a sworn declaration, any information provided to support its status as a financial participant. And, providing the Trust with additional protection, the Proposed Protocol specifies that if the Trust agrees to dismiss a defendant based on a declaration provided by a defendant and later discovers that the declaration was materially inaccurate, it can rename the defendant and any limitation period will be tolled in the interim. *See id.* ¶ 16. Finally, if a dispute

remains as to the sufficiency of the evidence provided by the defendant, either the Trust or the defendant can seek relief from the Court. *See id.* ¶ 10.

34. The Proposed Protocol thus protects both sides' legitimate interests and allows for the possibility that individualized, threshold defenses will be resolved efficiently and cost-effectively, exactly as the Federal Rules and this Court's Case Management Order contemplated. The Trust's alternative approach would leave a Defendant like Citadel Securities in limbo, at least for many months, and potentially for years, until all discovery is complete and all parties are in a position to seek summary judgment. That is neither fair nor remotely consistent with the Federal Rules and with this Court's Case Management Order.

D. The Trust's Extension Motion Heightens the Need for the Proposed Protocol.

35. *Finally*, the Trust's request to extend the Service Deadline by at least an additional three months—until July 10, 2023—to allow it to continue to pursue its end of the December 2022 bargain through investigation and further additions to its Complaint makes it all the more important and urgent for the Court to enter the Proposed Protocol allowing for prompt consideration of the individual defenses covered therein. As explained, the protocol was the *quid pro quo* for Defendants' agreement to the first extension of the Service Deadline. *See supra* Background, ¶¶ 16-18. Now, with no protocol in place and the Trust taking the position that any such protocol should in any event be used only much later in the case, the Trust seeks even more time (an additional three months, and nine total months since the filing of the Complaint) to complete its investigation and file an amended complaint. *See* D.I. 124 ¶ 31. It would be fundamentally unfair to force Defendants to continue to incur expenses waiting and preparing for an amended complaint while depriving those same Defendants the other half of the bargain they struck—a protocol providing them with a real opportunity to have their threshold defenses addressed *at the outset* of the case. Defendants who have clear-cut individual, defenses to the Trust's Complaint should have

an avenue to dismissal now, rather than being forced to wait months until the Trust finally finishes its investigation.

## II.     The Court Should Reject the Trust's Positions On the Issues of Impasse

36.     As noted, the parties are at impasse on several issues.  In this section, Defendants set forth the primary bases of disagreement and explain why the Court should enter the Proposed Protocol embracing their position on these issues.

37.     *Issue 1: When the Parties may begin to use the protocol.*  The first issue of impasse concerns when the protocol may actually be used.  Defendants' position is that they should be permitted to use it as soon as it is entered, so that progress can be made now, before the Trust files its next amended complaint.  *See* Proposed Protocol ¶ 4.  The Trust's position, in contrast, is that defendants must wait 60 days following the filing of a forthcoming amended complaint.  That position should be rejected.  The animating purpose of the protocol in this case is to allow the parties to focus their time early in the case on not just the *addition* of new parties as defendants, but also the *dismissal* of defendants with clear defenses before litigation of the merits of a forthcoming amended complaint commences.

38.     *Issue 2: How long the Trust may take to respond to a Defendant's presentation under the protocol.*  The second issue of impasse concerns how long the Trust gets to respond to a defendant's submission.  Defendants' position is that the Trust should be given 21 days to respond.  *See* Proposed Protocol ¶ 8.  The Trust's position is that it should be given 60 days to respond and, if it requests further evidence, then another 60 days after the defendant provides that evidence.  The Trust's position should be rejected.  The Proposed Protocol concerns straightforward defenses that the Trust should be able to consider promptly, well within the three weeks allowed under the Proposed Protocol.  *See, supra* Argument, Sec. I.C.  ¶¶ 26-28. Defendants' proposed 21-day review period is in line with several precedent protocols entered in

17

other adversary proceedings. *See, e.g.*, Firsenbaum Decl., Ex. B, *In re Lyondell*, D.I. 2124 at 7-8 ¶ F (30 days); *id.*, Ex. C, *Orion HealthCorp*, D.I. 61 at 9-10 ¶ G (same). And while there was one 60-day period in *Tribune*, that multi-district litigation involved over 1,700 defendants and the Trust's proposed protocol for this case concerning a much smaller number of defendants contains *two* 60-day periods, which would have the effect of further delaying resolution of threshold defenses for more than four months.

39.     *Issue 3: In the event the Trust declines to dismiss a Defendant, when that Defendant may bring any dispute to the Court.*  The third issue of impasse concerns when a defendant may present its defense to the Court in the event of a dispute between the parties. Defendants' position is that the Trust and defendant should meet and confer within 14 days after the Trust provides written notice that it will not dismiss the defendant. *See* Proposed Protocol ¶ 10. If, after the meet and confer, the two sides are unable to resolve the dispute, the defendant may seek judicial resolution of the dispute. *See id.*  The Trust's position, on the other hand, would prevent a defendant from seeking the Court's guidance until after (1) *every defendant* files an answer or otherwise responds to the Complaint, or (2) the Court rules on *all* motions to dismiss challenging the sufficiency of the Complaint. The Trust's position should be rejected. It would frustrate the purpose of the protocol: to efficiently and without undue cost address certain individual, threshold defenses to the Trust's Complaint. *See* D.I. 93 ¶ 6(c). Moreover, precedent supports Defendants' position, not the Trust's. *See, e.g.*, Firsenbaum Decl., Ex. C, *In re Orion*, D.I. 61 at 11 ¶ I (permitting filing of a motion to dismiss "[t]o the extent such Parties are unable, after the meet and confer, to resolve the status of the Defendant"); *id.*, Ex. B, *In re Lyondell*, D.I. 2124 at 9 ¶ H (similar). Even *Tribune*, which involved over 1,700 defendants and contemplated at most a 120-day waiting period between a defendant's submission pursuant to the protocol and the filing of a

18

motion with the court, does not envision anything like the Trust's proposal. *See id.*, Ex. A, *In re Tribune*, D.I. 2124 ¶ 6.

40.     *Issue 4: If and when a Defendant does bring any dispute to Court, whether there should be additional preconditions or restrictions on the form of that dispute.* The fourth issue of impasse concerns the way in which a defendant may present a dispute for resolution by the Court. Defendants' proposal would permit defendants to file a motion attaching the declaration and any supporting documentation submitted to the Trust pursuant to the Proposed Protocol. *See* Proposed Protocol ¶ 10. The Trust's proposal, in contrast, would force defendants to first proceed through fact and expert discovery, not just on the individualized defense but on all the other issues in the case, and then present the threshold defense by a motion for summary judgment or at trial. Again, the Trust's proposal undermines the entire point of the protocol. *See* D.I. 93 ¶ 6(c). The Trust's requirement that a defendant proceed through fact and expert discovery and then file a motion for summary judgment or proceed to trial would require defendants who assert that they have clear threshold defenses to effectively endure nearly the entire life of the case—essentially leading to the same result as if there was no protocol at all—and force them to incur the corresponding costs before ever presenting their defenses to the Court for resolution.

41.     *Issue 5: Whether non-parties potentially encompassed within the Trust's "John Doe" entities or putative defendant class should be able to use the protocol.* The fifth issue of impasse is whether unnamed defendants, i.e., "John Doe" defendants, should be able to make use of the Protocol. Defendants' position is that unnamed defendants should. *See* Proposed Protocol ¶ 12. The Trust disagrees. But it is the nature of the Trust's Complaint that warrants the inclusion of unnamed defendants in the Proposed Protocol. The Trust decided to sue "John Doe" entities and to bring its case in the highly unusual form of a defendant class action. As a result, there are

19

unnamed defendants that have the same concern as named defendants, expecting potentially to be named someday by the Trust in a later iteration of the complaint, all the while needing to prepare for that eventuality. The protocol should allow for those entities to seek certainty on threshold defenses too.

42.     *Issue 6: Whether a Defendant that avails itself of the protocol must waive all other individual defenses covered by the protocol.* Finally, the last major issue of impasse is whether by making a submission pursuant to the protocol, a defendant must waive any unasserted protocol defenses. Defendants' position is no. *See, e.g.*, Proposed Protocol ¶ 14. The Trust's proposal, in contrast, would require defendants to present all potential protocol defenses at once or else waive them forever. The Trust's position should be rejected. It is the very opposite of the efficiency and avoidance of undue costs that the protocol is supposed to advance, requiring expansion of the issues to be considered by the parties and Court. Moreover, none of the precedent protocols required such a waiver. In fact, those protocols did just the opposite, making clear that the defendants reserved all rights and defenses. *See, e.g.*, Firsenbaum Decl., Ex. A, *In re Tribune*, D.I. 4239 ¶ 4 & app. II; *id.*, Ex. B, *In re Lyondell*, D.I. 2124 at 10 ¶ C; *id.*, Ex. C, *In re Orion*, D.I. 61 at 12-13 ¶ C.

## III.     Defendants Would Not Oppose the Extension Motion if the Proposed Protocol is Entered

43.     Defendants take no issue with the Trust's request to extend the Service Deadline from April 11, 2023 to July 10, 2023, *if*—and only if—the Proposed Protocol is entered. As stated *supra*, the Trust already agreed that this should be a two-way street. The Trust should not be permitted to re-route the parties on a one-way detour that extends the Service Deadline in its favor while refusing to enter into the Proposed Protocol. The Trust can secure additional time to add defendants to the case that it identifies in its investigation, while defendants with individual,

threshold defenses can rely on a process by which they can seek their early dismissal. This is no different than the bargain struck by the Trust when Defendants consented to the first extension of the Service Deadline—and nothing has changed. If the Proposed Protocol is not entered, however, there is no basis to further extend the Trust's time to amend the complaint and defer its litigation. Absent the Proposed Protocol, litigation should begin.

44.     With respect to the time to make productions under Paragraph 6(d) of the Case Management Order, the Trust's requested extensions should only be granted as to (a) defendants not yet named in the Complaint, or (b) additional trading information the Trust may gather through its investigations as to currently named Defendants. As to the existing Defendants, and information the Trust already has, the Trust has provided no basis for extending the Paragraph 6(d) deadline and, indeed, it has sought to comply with it. Counsel for Defendants has only begun to review the Trust's productions, which Defendants received last week. If the productions are incomplete or insufficient, Defendants should be permitted to challenge those productions now; there is no basis to move the Paragraph 6(d) deadline for them to July, potentially deferring any such disputes (to the extent there are any) unnecessarily.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (1) enter the Proposed Protocol, attached to this motion as **Exhibit A**; (2) in the event the Proposed Protocol is not entered, deny the Trust's motion for an extension of the Service Deadline; and (3) deny the Trust's motion for an extension of the Paragraph 6(d) requirement as to currently named Defendants, other than for (a) uncounseled defendants or (b) information obtained in the future.

IMPAC 10709312v.2

Dated: March 28, 2023
Wilmington, Delaware

By: */s/ Andrew L. Brown*
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: jryan@potteranderson.com
          abrown@potteranderson.com

-and-

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: Philip.anker@wilmerhale.com
          Ross.firsenbaum@wimlerhale.com
          Noah.levine@wilmerhale.com
          Mike.mcguinness@wilmerhale.com

*Counsel to Defendants Barclays Capital Inc.; BlackRock Institutional Trust Company, N.A. UK Branch; BlackRock International Limited; Citadel Securities LLC; D. E. Shaw Asymptote Portfolios, L.L.C.; D. E. Shaw Valence Portfolios, L.L.C.; G1 Execution Services, LLC; GF Trading LLC; GTS Securities, LLC; Jane Street Capital, LLC; Korea Investment Corporation; Latour Trading LLC; Palomino Limited; PFM Health Sciences, LP; RIEF RMP LLC; RIEF Trading LLC; Rock Creek MB, LLC; Spire X Trading LLC; Susquehanna Securities, LLC; Tower Research Capital LLC; and T. Rowe Price Associates, Inc.*

By: */s/ Michael T. Conway*
Michael T. Conway *(admitted pro hac vice)*
Jacob Englander *(admitted pro hac vice)*
**LAZARE POTTER GIACOVAS & MOYLE LLP**
747 Third Avenue, 16th Floor
New York, New York 10017
Telephone: (212) 758-9300
Email: mconway@lpgmlaw.com
          jenglander@lpgmlaw.com

*Counsel for Squarepoint Ops LLC*

*/s/  Daniel A. Mason*
Daniel A. Mason (No. 5206)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
500 Delaware Avenue, Suite 200
Wilmington, Delaware 19899
Telephone: (302) 665-4410
Email: dmason@paulweiss.com

-and-

Andrew Gordon *(admitted pro hac vice)*
William A. Clareman *(admitted pro hac vice)*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: agordon@paulweiss.com
          wclareman@paulweiss.com

*Counsel to Defendants Virtu Americas, LLC.*

*/s/ John C. Goodchild, III*
**MORGAN, LEWIS & BOCKIUS LLP**
John C. Goodchild, III *(pro hac vice)*
Joshua Dorchak *(pro hac vice)*
Melissa Y. Boey *(pro hac vice)*
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Email:john.goodchild@morganlewis.com
          joshua.dorchak@morganlewis.com
          melissa.boey@morganlewis.com

*Attorneys for Defendants Deutsche Bank AG and Merrill Lynch, Pierce, Fenner & Smith Incorporated*

IMPAC 10709312v.2