**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, | : | Case No. 20-12522 (JTD) |
| | : | |
| Reorganized Debtor.[1] | : | |
| | : | |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ARGOS CAPITAL APPRECIATION MASTER | : | Adv. Pro. No. 22-50435 (JTD) |
| FUND LP., *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY IN SUPPORT OF PLAINTIFF'S FOURTH MOTION TO FURTHER ENLARGE
THE TIME TO EFFECTUATE SERVICE OF PROCESS**

The Opioid Master Disbursement Trust II ( "**Trust**"), a statutory trust created and established

under the *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications)*

*of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (D.I. 7670)[2]

(as amended, "**Plan**"), by and through its undersigned counsel, hereby submits this reply ("**Reply**")

in support of the *Fourth Motion of the Opioid Master Disbursement Trust II for Entry of an Order*

*Further Enlarging the Time to Effectuate Service of Process* [Adv. D.I. 199] ("**Motion**"), and in

---

[1]     The Reorganized Debtor in this chapter 11 case is Mallinckrodt plc ("**Mallinckrodt**").  On May 3, 2023, the
Court entered an order closing the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (collectively,
"**Debtors**").  A complete list of the debtor affiliates in these Chapter 11 cases may be obtained on the website of the
Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt.  The Reorganized
Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2]     Pleadings filed in *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del.) are referred to with the citation
"**D.I. __.**"  Pleadings filed in this adversary proceeding ("**Proceeding**") are referred to with the citation "**Adv. D.I. __.**"

response to the *Various Defendants' Objection to the Fourth Motion of the Opioid Master Disbursement Trust II for Entry of an Order Further Enlarging the Time to Effectuate Service of Process* [Adv. D.I. 202] ("**Objection**"). In further support of the Motion, the Trust respectfully states as follows:

## INTRODUCTION

The Motion seeks to extend the service deadline to identify and serve additional—and currently unknown—defendants with the complaint initiating this Proceeding ("**Complaint**"). As such, an extension of the service deadline would not affect the defendants that filed the Objection ("**Defendants**"),[3] whom the Trust has already served. Defendants' argument that they would be prejudiced by an extension has no basis: as they admit, their participation in the Protocol (defined below) is voluntary, and in any event, whether the Trust ultimately agrees or refuses to dismiss them has nothing to do with this Motion. Indeed, the Objection is a litigation tactic to try to pre-argue the merits of Defendants' requests for dismissal under the Protocol. But this is not the time for it.

The Trust has been rigorously investigating the identities of the shareholders that participated in the share repurchase transactions at issue in this Proceeding ("**Share Repurchase Transactions**") to recover funds for the benefit of Mallinckrodt's opioid victims and other creditors. After a year of pursuing J.P. Morgan Securities LLC ("**JPM**"), JPM has now substantially completed its production of shareholder identifying information. Moreover, several existing defendants have already identified potential additional defendants through submissions

---

[3] Defendants are Deutsche Bank AG, Barclays Capital Inc., BlackRock Institutional Trust Company, N.A. UK Branch, BlackRock International Limited, Citadel Securities LLC, D. E. Shaw Asymptote Portfolios, L.L.C., D. E. Shaw Valence Portfolios, L.L.C., G1 Execution Services, LLC, GF Trading LLC, GTS Securities, LLC, Jane Street Capital, LLC, Latour Trading LLC, Palomino Limited, PFM Health Sciences, LP, RIEF RMP LLC, RIEF Trading LLC, Rock Creek MB, LLC, Spire X Trading LLC, Susquehanna Securities, LLC, Tower Research Capital LLC, and T. Rowe Price Associates, Inc.

46328138

under the Protocol. The Trust anticipates that it will uncover the identities of additional shareholders that received proceeds from the Share Repurchase Transactions as more defendants make submissions under the Protocol. But the Trust will not be able to use this information to name such shareholders as defendants in any amended complaint absent the extension it seeks. Accordingly, the Court should grant the Motion and allow the Trust to complete its investigation.

**ARGUMENT**

**I.     The Court Should Grant Another Extension Because the Trust Has Shown Good Cause**

1.     The Trust's diligent attempts to identify defendants so that it can effectuate service, the lack of prejudice to Defendants, and the timing of the Trust's motion all weigh in favor of a finding of good cause to extend the service deadline. While the good cause determination depends on the reasonableness of the plaintiff's efforts and prejudice to the defendant by lack of timely service, the focus is on whether the party seeking the extension has "some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). If a court finds that good cause exists, it must end the inquiry and extend the time for service. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). And, even if the court concludes that no good cause exists, it may still exercise its discretion to extend the time for service for other reasons, including the running of the statute of limitations. *Id.* at 1306; *Hechinger Liquidation Tr. v. Porter–Cable Corp. (In re Hechinger Inv. Co. of Del.)*, 308 B.R. 683, 688 (D. Del. 2003). Here, the Trust has demonstrated its good faith and a reasonable basis for the need to further extend the time for service. But, even if the Court were to find an absence of good cause, it should nonetheless, in its discretion, grant the extension.

46328138

**A.      The Trust Has Diligently Sought to Identify and Serve Defendants**

2.      The Trust has demonstrated good cause for its requested extension because it has not yet identified all the proper defendants despite its diligent efforts to do so.  Indeed, Defendants did not object to the Trust's previous motions to extend the service deadline that provided the same grounds for relief:  that the Trust needed time to understand who the correct defendants are under the *Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities* [Adv. D.I. 185-1] ("**Protocol**"), and that the Trust has not yet received all the requested information from JPM.[4]

3.      First, Defendants point to no evidence or basis to suggest that additional defendants will not assert conduit defenses under the Protocol and identify the actual recipients of funds from the Share Repurchase Transactions who may themselves be proper defendants.  Defendants' argument that the Trust somehow has "no basis for asserting any further claims" because it allegedly has been "unable to identify any additional defendants after this long" (Obj. ¶ 52) is defied by their own admission that certain defendants have made submissions under the Protocol in which they "identified the holder(s) of the proceeds of the alleged sales of Mallinckrodt stock."  Obj. ¶ 43.  The Trust has every expectation that additional defendants will provide information identifying the actual recipients of the funds from the Share Repurchase Transactions and needs an extension of the service deadline to have the opportunity to identify these additional defendants and name them in an amended complaint.

4.      Second, as explained in the Motion, the Trust has undertaken extraordinary efforts to identify shareholders that participated in over $1.5 billion in the Share Repurchase Transactions

---

[4]      *See Third Motion of the Opioid Master Disbursement Trust II for Entry of an Order Further Enlarging the Time to Effectuate Service of Process*, Adv. D.I. 192 ¶¶ 30-41.

46328138

and has been frustrated through no fault of its own, in part by JPM's delay in complying with the subpoena, as JPM only just made a substantially complete production this week.[5]  Contrary to Defendants' argument (Obj. ¶¶ 34-40), JPM's failure to provide the necessary information is not at all the Trust's fault.  JPM repeatedly promised to provide the Trust with its requested information before the commencement of this Proceeding.  The Trust reasonably and timely sought to compel the production of that information once it appeared that JPM's production would not be forthcoming as JPM had promised, and less than six weeks after the filing of its complaint.  *See* Mot. ¶¶ 11-13. Following this Court's entry of an order compelling JPM to produce the requested trading information, the Trust continued its efforts to obtain the information from JPM through countless meet-and-confers with JPM's counsel, as well as by providing JPM with a significant amount of trading data that the Trust had received from various securities exchanges to aid JPM in locating the relevant Share Repurchase Transactions on its many information systems.

5.      Defendants' counsel admit that they do not represent JPM here and do not know all the details of the communications between JPM and the Trust.  Obj. ¶ 38.  This is apparent from their mischaracterization of the Trust's efforts to obtain a complete production from JPM.  Obj. ¶¶ 39-40.  Contrary to Defendants' assertions, JPM did not provide the Trust with all or too much information in a way that made it simple to find the information the Trust needed.  Obj. ¶ 39. Instead, JPM provided the Trust with aggregate-level trade data that was *impossible* for the Trust to tie to individual Share Repurchase Transactions.  After JPM was unable to de-aggregate this trade data, it produced execution-level trading data but *redacted* from this production critical information that would have identified shareholder participants.  With only the redacted information in hand, the Trust was simply unable to identify additional defendants; the Trust instead

---

[5]      Mot. ¶¶ 35-38.

46328138

was required to match the redacted transactions that JPM produced with other data in its possession, and then identify the relevant transactions to JPM in order to obtain from JPM the unredacted shareholder identities for those relevant transactions, following a lengthy unmasking and client notification period.

6.      Incredibly, Defendants argue that the Trust's good-faith efforts to obtain JPM's unredacted data somehow show a *lack* of good faith or diligent efforts on the part of the Trust.  Obj. ¶ 40.  But discovery disputes take time to resolve, and the process for locating execution-level trading data across various systems (some of which were archived), matching that data to other trading data provided by other third parties, identifying the underlying shareholder for each of the matched trades, and notifying the underlying shareholders, once identified, that their information is going to be produced, took a significant amount of time.  The Trust is not at fault for the delays in its attempts to obtain the shareholder identities from JPM, as those delays were not the result of any lack of diligence by the Trust.  Rather, these are precisely the reasonable, diligent efforts needed to qualify for a good-cause extension.  The court in *Spencer v. Steinman* noted that unreasonable effort was "the product of counsel for plaintiff's half-heartedness or mere inadvertence."  968 F. Supp. 1011, 1015 (E.D. Pa. 1997).  Here, the Trust consistently reached out to JPM, and the parties engaged in multiple meet-and-confers to resolve a complicated process for gathering years' worth of trading information, while addressing JPM's concerns regarding burden and client confidentiality.  There is nothing to suggest half-heartedness or inadvertence about the Trust's efforts.  The Trust has shown more than reasonable diligence in seeking the information needed to identify the remaining defendants.

7.      As for Defendants' argument that the Trust has had enough time to identify all the proper defendants (Obj. ¶ 3), in similar cases—cases that Defendants themselves have cited in other

46328138

filings in this Proceeding[6]—courts have extended the service deadline for much longer time periods than the Trust seeks here. For example, in *Tribune*, the district court granted three motions to enlarge the time for service: the deadline originally would have expired on March 29, 2012, and the third order of enlargement extended that deadline through January 14, 2014.[7] This enlargement of time of 22 months exceeds the enlargement the Trust seeks, which will result in an extension of 14 months after the filing of the Trust's complaint. Moreover, since the Trust's filing of the Motion, JPM made additional productions and has now largely completed its production. Defendants' argument that they will be "forced to remain in limbo indefinitely" (Obj. ¶ 32) is unsubstantiated.

8.      Finally, the Trust's diligence in seeking an extension before the service deadline has lapsed supports a finding of good cause. *See United States v. Nuttall*, 122 F.R.D. 163, 167 (D. Del. 1988) ("An application for enlargement of time in which to serve might well reflect a plaintiff's diligence in trying to effect service.") (citation and quotations omitted); *cf. Dartell v. Tibet Pharms., Inc.*, No. 14-3620, 2017 WL 1206003, at *3 (D.N.J. Mar. 31, 2017) (finding delay in moving to extend time until after the deadline had lapsed weighed against good cause). In short, the Trust has amply demonstrated good cause for an extension of time under Rule 4(m).

---

[6]      *See, e.g*, Adv. D.I. 48 at 9 (citing *Weisfelner v. Fund 1 (In re Lyondell Chem Co.)*, No. 10-04609 (REG) (Bankr. S.D.N.Y.); *Orion HealthCorp, Inc. v. Capita IRG Trs. (Nominees) Ltd. (In re Orion HealthCorp, Inc.)*, No. 18-0804 (Bankr. E.D.N.Y.); *Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conv. Litig.)*, 12-CV-2652 (RJS) (S.D.N.Y.)); Adv. D.I. 132 at 11 (citing *Kirschner v. FitzSimons (In re Tribune Co. Fraudulent Conv. Litig.)*, 12-CV-2652 (RJS) (S.D.N.Y.)).

[7]      Scheduling Order at 1-2, *In re Tribune*, No. 12-CV-2652 (RJS) (S.D.N.Y. Oct. 21, 2013), ECF No. 1188 (extending the service deadline to January 14, 2014); Order Granting Plaintiff's Third Omnibus Motion to Enlarge the Time for Service of Summonses and Complaints at 1, *In re Tribune*, No. 12-CV-2652 (RJS) (S.D.N.Y. Mar. 13, 2013), ECF No. 852 (extending the service deadline to July 12, 2013); Master Case Order No. 2 at 4, *In re Tribune*, No. 12-CV-2652 (RJS) (S.D.N.Y. June 5, 2012) , ECF No. 76  (retroactively extending the service deadline from its original deadline on March 29, 2012, to August 31, 2012).

46328138

### B.     A Further Extension Will Not Prejudice Defendants

9.     Defendants' assertion that the requested extension will prejudice them is unavailing. The Trust served the Complaint on Defendants, so this Motion does not implicate them. And while Defendants argue that "there is a rising cost to defendants to continuing to respond to the Trust's unnecessary requests for information and documents under the Protocol" and that other defendants who may not have Protocol defenses "have been stuck" in the case, they admit that "[t]he Protocol does not require any defendant to use it at all." Obj. ¶¶ 50, 56-57. Defendants by their own volition have elected to spend their resources using the Protocol and now have decided to spend resources opposing the Motion purely to voice their grievances with the Protocol that they themselves insisted on. Indeed, the Trust had originally requested a protocol that would not begin until after it finished identifying additional defendants and filed an amended complaint.[8] Defendants' request for a protocol that they could utilize before the Trust's shareholder identification process was completed (which this Court granted), their voluntary use of that Protocol, and now the filing of their unrelated Objection to air their own "buyer's remorse," is improper and lacks any evidence of prejudice to them.

10.     Defendants do not face the types of prejudice that Rule 4(m) guards against, such as the staleness of claims or the completion of substantial portions of a lawsuit before the plaintiff serves a particular defendant.[9] *See, e.g.*, *Dartell*, 2017 WL 1206003, at *4 (holding that service of process after completion of fact discovery, motions for summary judgment, and settlements prejudiced the late-served defendant); *Gonzalez v. Thomas Built Buses, Inc.*, 268 F.R.D. 521, 527 (M.D. Pa. 2010) (stating that "the more stale a claim becomes, the more likely it is that a defendant

---

[8]     Adv. D.I. 141 ¶¶ 21, 26.

[9]     Indeed, Defendants have cited to no specific evidence of prejudice, and the Court should not consider the remarks of their counsel at an unrelated hearing alone. *See* Obj. ¶ 54.

46328138

may become prejudiced by the lack of timely service[,]" though recognizing that a delay of months would not likely prejudice defendants' ability to defend the case on the merits).  Defendants offer no such justification here because they have already been served and do not speak for unserved defendants.  *See* Obj. ¶¶ 54-57.  And, in any event, the 91-day extension that the Trust seeks will not prejudice unserved defendants.  *See Gonzalez*, 268 F.R.D. at 527 (recognizing that a short delay is unlikely to prejudice a defendant's ability to respond to the merits of a claim).

        **C.**      **Regardless of Good Cause, the Court Should Extend the Service Deadline to Avoid Resulting Prejudice to the Trust and Its Claims**

        11.      As a general principle, "courts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits." *Titus v. Mercedes Benz of North America*, 695 F.2d 746, 749 (3d Cir. 1982).  Here, without an extension, the Trust will be unable to identify the correct defendants and will forfeit claims before they can be heard on the merits.  The Trust has served over 350 subpoenas and has been diligently reviewing the documents produced thus far.  Far from the Complaint being a "placeholder," the Trust identified dozens of defendants in the Complaint and seeks to now identify the remaining ones.  Without the ability to do so, the Trust would be unable to identify potentially scores of millions of dollars in claims relating to the Share Repurchase Transactions, the value of which would be forever lost to the Debtors' unsecured creditors (including the many victims of the opioid crisis).  The Court should not deny the Trust the opportunity to pursue the full amount for these creditors.

        12.      Indeed, courts routinely use Rule 4(m) to grant an extension of time even in the absence of good cause where, as here, a statute of limitations may bar refiling.  *See Hills v. Romero-Sanchez*, No. CIV.A. 05-172-JJF, 2006 WL 1431258, at *2 (D. Del. May 24, 2006) (stating that "the Court finds the potential for a high degree of prejudice against Plaintiff if this action is dismissed, because there is a suggestion that the statute of limitations may have run with respect to

her claims" and denying dismissal); *Cohen v. Stokes Elec. Supply (In re Submicron Sys. Corp.)*, Adv. Proc. No. 01-4044, 2004 WL 883391, at *4 (D. Del. Apr. 5, 2004) (granting extension and denying a motion to dismiss where the statute of limitations had expired because "it would be unjust to deprive plaintiff of the opportunity to prove his claim by dismissing his complaint for failure to effectuate service"); *In re Hechinger*, 308 B.R. at 688 (granting motion to extend service deadline in the absence of good cause because, among other things, the statute of limitations in the case had run); *United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 773 (9th Cir.2004) (finding the Rule 4(m) "prejudice inquiry might also include consideration of what prejudice the plaintiff . . . would suffer if the case were dismissed. A dismissal for untimely service is required to be a dismissal without prejudice. . . . It is conceivable . . . that prejudice might result from a dismissal without prejudice if, for example, the statute of limitations had expired. The existence of prejudice of this kind could affect what action a court might choose to take in response to untimely service of process."); Fed. R. Civ. P. 4(m) Adv. Comm. Notes (1993) (authorizing the courts to "relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown . . . Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . . .").[10]

---

[10]      Defendants' cases are inapplicable here. Their reliance on *Green v. Humphrey Elevator & Truck Company*, 816 F.2d 877 (3d Cir. 1987) (*see* Obj. ¶ 37) is improper as the holding there was superseded by the adoption of Rule 4(m), which includes the ability for the court to grant an extension of time in the absence of good cause shown. *See* Fed. R. Civ. P. 4(m) Adv. Comm. Notes (1993) ("The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown*.") (emphasis added). Defendants' other cases are equally inapposite. *See Glob. Crossing Est. Representative v. Alta Partners Holdings LDC (In re Glob. Crossing, Ltd.)*, 385 B.R. 52, 83 (Bankr. S.D.N.Y. 2008) (court denied motion to extend but explicitly noted that if the facts had established that the "defendants could not be identified by reason of others' obstruction or delay[,]" then it "would be inclined to rule" differently); *PCT v. Elmer's Prods., Inc. (In re Fleming Cos*.), No. 03-10945 MFW, 05–78249 PBL, 2005 WL 2671532, at *3 (Bankr. D. Del. Oct. 12, 2005) (plaintiff argued not that the court could grant an extension absent good cause, but that it did have good cause under excusable neglect, despite finding out it had sued the wrong defendant nearly a month before the service period expired).

46328138

13.     No support exists for Defendants' assertion that extensions of the service deadline

without a showing of good cause should only be granted in "extraordinary" cases.  Obj. ¶ 31, n.1.

On the contrary, courts have found that "the running of the statute of limitations is a factor

supporting the discretionary granting of an extension of time to make service under Rule 4(m)" in

and of itself.  *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997); *Durns v. Dawson* (*In re Dawson)*,

Nos. 00-01534-W, 00–9121–W, 2001 WL 753807, at *2 (Bankr. N.D. Iowa June 20, 2001) ("The

running of the limitations statute alone could be reason to extend period for service."); *Casey v.

Kasal*, 223 B.R. 879 (E.D. Pa. 1998) (same); *Ritter v. Cooper*, No. CIV.A. 02-1435 GMS, 2003

WL 23112306, at *4 (D. Del. Dec. 30, 2003) ("Given the absence of any prejudice to Mr. Cooper

and the substantial risk of prejudice to Ritter [if the statute of limitations expires], the court finds

that it would be unjust to deprive Ritter of the opportunity to prove his claim by dismissing his

complaint for failure to effectuate personal service.").  Accordingly, even if the Court finds that the

Trust did not show good cause in seeking an extension, it should still in its discretion grant the

Motion.

## II.     This Objection Is a Pretext to Argue the Merits of the Parties' Disputes Under the Protocol.

14.     Defendants devote a significant portion of their Objection to arguing the merits of

their disputes under the Protocol.  Yet, those issues have no relevance to the Motion—a point the

Defendants concede. [11]  *See* Obj. ¶ 46 n.7 ("Defendants have not attached to the Firsenbaum

Declaration the 34 exhibits to TRP's submission responding to the Trust's requests due to their

volume (1,313 pages) and *lack of relevance to this Opposition*.") (emphasis added).  The Objection

---

[11]     This is not the first time that Defendants attempted to use the Trust's motion for an extension of the service deadline to advance an unrelated agenda.  Earlier this year, Defendants filed a limited objection to the Trust's second motion for an extension of the service deadline with the sole purpose of pushing the Court to grant their proposed Protocol.  *See* Adv. D.I. 132 ¶ 12 ("To be clear, Defendants would not object to the Trust's request to extend the Service Deadline . . . *if* the Proposed Protocol is entered . . . .").

46328138

is rife with unsubstantiated insinuations and allegations, claiming that—in connection with addressing the dismissal requests that Defendants submitted under the Protocol—the Trust has acted unreasonably, has failed to "abide by its commitment," and is "using the Protocol process to further prolong the litigation[.]" *Id.* ¶¶ 8, 41, 44, 51. In reality, Defendants are unhappy that the Trust has not taken their assertions at *face value* and has instead utilized the process expressly contemplated under the Protocol to seek discovery to verify those assertions in evaluating Defendants' proffered defenses. *See, e.g.*, *id.* ¶¶ 27, 44.

15. Indeed, the Protocol—an agreement that Defendants conceived, crafted, and negotiated—explicitly permits the narrowly tailored discovery that the Trust has been requesting as part of its efforts to test the merits of the defenses that Defendants asserted.[12] Defendants are in no position to unilaterally decide that the Trust's discovery requests are "entirely unnecessary" or that the "evidence" they submitted is "uncontroverted[.]" *See* Obj. ¶¶ 43-44. The Trust—a fiduciary bound to protect the interests of Mallinckrodt's opioid victims and other creditors—is entitled to due diligence to verify the information that Defendants have submitted before deciding whether to dismiss potentially valuable claims.[13]

16. The Protocol sets forth the agreed-upon procedures for resolving disputes concerning Defendants' submissions thereunder. *See* Protocol ¶ 11. Defendants must follow those

---

[12] *See* Protocol ¶ 9 ("Within the 45-day period, Plaintiff may make a request to the Defendant for additional information that Plaintiff believes, in good faith, is necessary for it to determine whether the Defendant has established the claimed Defense.").

[13] Certain defendants have insisted that, if motion practice were necessary, the facts contained in certain documents they submitted "would be accepted as true." *See, e.g.*, Anker Letter to Alberto dated June 21, 2023, available at Adv. D.I. 203-1. The Trust disputes that assertion and has directed Defendants to black-letter law "[i]n the Third Circuit [holding that] courts may take judicial notice of public records to acknowledge that the facts contained in the records existed in the public realm at that time . . . [but] [t]he court may not . . . consider the truth of the information in the records." Alberto Letter to Anker dated August 4, 2023, available at Adv. D.I. 203-3, citing *Mervyn's LLC v. Lubert–Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 496 (Bankr. D. Del. 2010). In short, well-established authority supports the Trust's discovery requests to verify the submissions that Defendants made.

46328138

procedures to have this Court hear any Protocol-related disputes. Instead, it appears that Defendants are using their Objection as a pretext to pre-argue the merits of their assertions under the Protocol. As the Trust has previously stressed to this Court, the Protocol defenses, and especially the § 546(e) defenses, are legally and factually complex. [14] Indeed, on October 16, 2023, the Trust provided its first substantive response pursuant to the Protocol, to Defendant Susquehanna Securities, LLC, in which the Trust provided legal and factual support for its decision to decline to dismiss Susquehanna Securities, LLC. This Motion is not the appropriate forum to resolve those disputes, which will require briefing by both parties and, most likely, argument before this Court.

*[Concluded on the following page]*

---

[14] *See, e.g.*, *Opposition of the Opioid Master Disbursement Trust II to Defendants' Motion for Entry of the Proposed Protocol for the Dismissal of Conduits, Non-Transferees, "Financial Participants," "Financial Institutions," "Stockbrokers," and Dissolved Entities*, Adv. D.I. 141 ¶ 27 ("Section 546(e) Defenses, in particular, are complex and fact-intensive[.]"); Hr'g Tr. 21:23-22:2, Apr. 19, 2023 ("Including the 546(e) defenses in the protocol makes the process more complicated because several of those defenses raised complex, factual, and legal issues, as Your Honor is aware.").

46328138

## CONCLUSION

For the reasons explained above and in the Motion, the Court should overrule the Objection

and grant the Motion, together with any other or further relief that the Court deems just and proper.

Dated: October 20, 2023
Wilmington, Delaware

**COLE SCHOTZ P.C.**
*/s/ Justin R. Alberto*_____
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Seth Van Aalten (admitted *pro hac vice)*
Anthony De Leo (admitted *pro hac vice)*
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
svanaalten@coleschotz.com
adeleo@coleschotz.com

*Counsel to the Opioid Master Disbursement
Trust II*

46328138