**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | Adversary Proceeding |
| | : | |
| Plaintiff, | : | No. 22-50435 (JTD) |
| | : | |
| v. | : | |
| | : | |
| ARGOS CAPITAL APPRECIATION MASTER | : | |
| FUND LP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MOTION TO DISMISS THE AMENDED COMPLAINT AS TO
DEFENDANTS T. ROWE PRICE ASSOCIATES, INC. AND
VARIOUS T. ROWE PRICE FUNDS PURSUANT TO THE PROTOCOL ORDER
RELATING TO CONDUITS, NON-TRANSFEREES, "STOCKBROKERS,"
"FINANCIAL INSTITUTIONS," "FINANCIAL PARTICIPANTS," AND
DISSOLVED ENTITIES**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 5

    A.    The TRP Defendants .............................................................................. 5

    B.    The Mallinckrodt Share Repurchases ................................................... 6

    C.    The Protocol Order ............................................................................... 7

    D.    The TRP Defendants' Protocol Submissions ...................................... 11

ARGUMENT ...................................................................................................................... 14

    I.    The Court Should Dismiss TRP Because It Is A Non-Transferee ................................. 14

    II.    The Court Should Dismiss The TRP Funds Pursuant To Section 546(e) ..................... 22

    A.    The Share Repurchases Are Qualifying Transactions ......................... 23

    B.    Each of the TRP Funds Is A Qualifying Participant ............................ 23

CONCLUSION ................................................................................................................... 26

Page(s)

**CASES**

*Bailey v. Big Sky Motors, Ltd. (In re Ogden)*,
　314 F.3d 1190 (10th Cir. 2002) ........................................................22

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
　397 B.R. 1, 21 (S.D.N.Y. 2007)...................................................17, 19

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
　838 F.2d 890 (7th Cir. 1988) ....................................................15, 22

*Brown Publ'g Co. Liquidating Tr. v. AXA Equitable Life Ins. Co. (In re Brown Publ'g Co.)*,
　492 B.R. 610 (Bankr. E.D.N.Y. 2013), *vacated in part on other grounds by* 519 B.R. 13 (E.D.N.Y. 2014)............................................21

*Brown v. Chinen*,
　2010 WL 1783573 (D. Haw. Feb. 26, 2010) ......................................26

*Burtch v. Stylish Move Sportswear Inc. (In re Factor 2-U Stores, Inc.)*,
　2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007) ...........................19

*Christy v. Alexander & Alexander of NY Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*,
　130 F.3d 52 (2d Cir. 1997).................................................15, 20, 21

*Doe v. Keane*,
　117 F.R.D. 103 (W.D. Mich. 1987) ...................................................26

*Durkin v. Piper Tr. Co. (In re Denman & Co.)*,
　186 B.R. 707 (Bankr. C.D. Cal. 1995)........................................ 20-21

*Geltzer v. D'Antona (In re Cassandra Grp.)*,
　312 B.R. 491 (Bankr. S.D.N.Y. 2004)...............................................20

*Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*,
　2023 WL 2552399 (Bank. D. Del. Mar. 16, 2023) (Shannon, J.)....................23

*Goldman Sachs Execution & Clearing, L.P. v. Off. Unsecured Creditors Comm. of Bayou Grp., LLC*,
　758 F. Supp. 2d 222 (S.D.N.Y. 2010)................................................19

*Goldman Sachs Execution & Clearing, L.P. v. Off. Unsecured Creditors Comm. of Bayou Grp., LLC*,
　491 F. App'x 201 (2d Cir. 2012) ......................................................19

*Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Invs., Inc.),*
155 B.R. 332 (Bankr. S.D.N.Y. 1993) ............................................................21

*Iannacone v. IRS (In re Bauer),*
318 B.R. 697 (Bankr. D. Minn. 2005) ....................................................16, 20

*In re Nine West LBO Sec. Litig.,*
482 F. Supp. 3d 187 (S.D.N.Y. 2020), *aff'd in relevant part by Kirschner
v. Robeco Cap. Growth Funds - Robeco BP US Premium Equities (In re
Nine West LBO Sec. Litig.),* No. 20-3257, 2023 WL 8180356 (2d Cir.
Nov. 27, 2023) ....................................................................................23, 24

*Kirschner v. Robeco Cap. Growth Funds - Robeco BP US Premium Equities (In
re Nine West LBO Sec. Litig.),* No. 20-3257, 2023 WL 8180356 (2d Cir.
Nov. 27, 2023) ....................................................................................23, 24

*Mervyn's Holdings, LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's
Holdings, LLC),*
426 B.R. 96 (Bankr. D. Del. 2010) ............................................ 14, 15-16, 20

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC),*
773 F.3d 411 (2d Cir. 2014)............................................................................25

*Salomon v. Nedlloyd, Inc. (In re Black & Geddes, Inc.),*
59 B.R. 873 (Bankr. S.D.N.Y. 1986) ............................................................21

*Schafer v. Las Vegas Hilton Corp. (In re Video Depot Ltd.),*
127 F.3d 1195 (9th Cir. 1997) ......................................................................22

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
2013 WL 1609154 (S.D.N.Y. Apr. 15, 2013).......................................... 24-25

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.,*
234 B.R. 293 (Bankr. S.D.N.Y. 1999)....................................................16, 17

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.),*
503 B.R. 348 (Bankr. S.D.N.Y. 2014), *abrogated in part on other grounds
by Kirschner v. Large Priv. Beneficial Owners (In re Trib. Fraudulent
Conv. Litig.),* 818 F.3d 92 (2d Cir. 2016) ................................................ 16-17

**STATUTES**

11 U.S.C. § 101 ..............................................................................3, 12, 23, 24

11 U.S.C. § 544 ..............................................................................................1, 22

11 U.S.C. § 546 ........................................................................................ *passim*

11 U.S.C. § 548 ..............................................................................................22

11 U.S.C. § 550 ........................................................................................14, 16

Investment Company Act of 1940 (the "40 Act") ......................................... *passim*

**RULES**

Fed. R. Bankr. P. 7001 .....................................................................................5

Fed. R. Civ. P. 1 ...............................................................................................5

Fed. R. Civ. P. 41 ...........................................................................................11

**OTHER AUTHORITIES**

17 C.F.R. § 270.17f-2 .....................................................................................18

17 C.F.R. § 275.206(4)-2 ...............................................................................18

*Bruderman Asset Mgmt., LLC*, Investment Advisers Act Release No. 6435, 2023
    WL 6290824 (Sept. 26, 2023) ...............................................................18

*Commission Interpretation Regarding Standard of Conduct for Investment
    Advisers*, Investment Advisers Act Release No. 5248, 84 Fed. Reg. 33,669
    (July 12, 2019) .......................................................................................18

Pursuant to the Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities entered on May 15, 2023 [D.I. 185-1] (the "Protocol Order"), T. Rowe Price Associates, Inc. ("TRP") and the T. Rowe Price funds listed below[1] (the "TRP Funds"; collectively with TRP, the "TRP Defendants") move to dismiss the claims brought against them by the Trust[2] in this Adversary Proceeding.

## PRELIMINARY STATEMENT

1. This is a simple motion for dismissal under the Protocol Order. Invoking Section 544(b) of the Bankruptcy Code, the Trust seeks to avoid more than $1.6 billion that Mallinckrodt allegedly paid its public shareholders to repurchase shares of its common stock in the open market. Those public shareholders represent a cross-section of the securities industry, including some of the world's largest investment managers and advisors, securities trading firms, investment banks, broker dealers, and investment funds. TRP is one such investment manager, and the TRP Funds are 12 such investment funds.

2. TRP must be dismissed. It is black-letter law that a trustee cannot recover an alleged fraudulent transfer from an entity that did not receive the transfer (and for whose benefit the debtor did not make the transfer). TRP was not a transferee; it was an investment manager that managed investments for the TRP Funds, which beneficially owned and sold Mallinckrodt stock during the relevant time period. TRP never owned Mallinckrodt stock for its own account

---

[1] The Amended Complaint purports to name one fund as a Defendant twice: first, as "T. Rowe Price Health Sciences Portfolio, a Series of T. Rowe Price Equity Series, Inc." (an entity the TRP Defendants disclosed in the TRP Initial Protocol Submission (defined *infra*)) and second, as "T. Rowe Price Health Sciences Portfolio" (which is not a distinctly separate legal entity).

[2] Unless otherwise defined, terms have the meanings provided in the Protocol Order. "Share Repurchases" mean "Share Repurchase Transactions" as defined in the Protocol Order.

and never received any proceeds of the sale of such stock. Pursuant to the Protocol Order, TRP provided the Trust with a sworn declaration, SEC filings, and other documents so confirming. After receiving this information, the Trust added the TRP Funds as Defendants in its Amended Complaint, but, incredibly, continued to name TRP as a Defendant, even though the Trust did not (and could not) allege that TRP received any proceeds from the sale of Mallinckrodt shares.

3.      Although no excuse, perhaps the reason why the Trust is so reluctant to dismiss TRP is because it knows that its claims against the TRP Funds also fail—Section 546(e) bars those claims. Congress enacted Section 546(e) to provide a "safe harbor" for securities firms and other significant market participants barring the avoidance and recovery of transfers made by or to them (or for their benefit) to settle securities transactions or otherwise in connection with securities contracts. Congress did so to promote stability, efficiency, and finality in the securities markets that play a critical role in this country's economy. The Trust's claims seeking to unwind open market securities transactions that settled between five and eight years ago and that involve some of the largest participants in those securities markets are the quintessential claims that Section 546(e) bars.

4.      Section 546(e) has two prongs. First, the transfer that the plaintiff seeks to avoid must be a "qualifying transaction"—that is, a "settlement payment" or a "transfer made in connection with a securities contract." Second, the transfer must be by or to (or for the benefit of) a "qualifying participant"—that is, a "financial institution" or other entities covered by the statute.

5.      Both prongs are easily met with respect to the TRP Funds. As to the "qualifying transaction" prong, as set forth fully in Argument Section I of the motion to dismiss filed by two other Defendants in this case, Citadel Securities LLC ("Citadel Securities") and Susquehanna

Securities, LLC ("Susquehanna Securities"), the transfers at issue—payments to purchase Mallinckrodt stock publicly trading on the New York Stock Exchange—were, by their nature, made to settle securities transactions and thus the paradigmatic example of "settlement payments." While the Court need not reach the issue, the transfers were also made "in connection with a securities contract" for two independent reasons. The Share Repurchases were made pursuant to securities purchase agreements between Mallinckrodt and its Brokers, and they were also open orders to sell the relevant shares of Mallinckrodt stock, which orders themselves (once accepted by Mallinckrodt) became "securities contracts." *See Motion to Dismiss the Amended Complaint as to Defendants Citadel Securities LLC and Susquehanna Securities, LLC Pursuant to the Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities*, entered as docket entry 215 on December 8, 2023 (the "Citadel/SSLLC Motion").

6.     The "qualifying participant" prong is also readily met. In accordance with the Protocol Order, each TRP Fund has provided the Trust with SEC filings showing that it was (and remains) an investment company registered under the Investment Company Act of 1940 (the "'40 Act"), and thus a "financial institution" pursuant to 11 U.S.C. § 101(22)(B). The Trust cannot and does not dispute this. Its sole argument is that the TRP Funds have not shown that they acted as investment companies "in connection with a securities contract." But the Amended Complaint itself defeats the Trust's argument; it alleges that all of the Share Repurchases (and thus the ones allegedly made from the TRP Funds) occurred pursuant to securities contracts between Mallinckrodt and its Brokers. While that alone would be sufficient, the TRP Funds also entered into an additional securities contract to sell their Mallinckrodt shares to the buyer every

time they placed an order.  This should have resolved this matter, just as the Protocol Order contemplated.  But it has not.

7.      Instead, in a last-ditch effort to avoid dismissal, the Trust now advances an entirely new argument.  Noting that Mallinckrodt was incorporated in Ireland, the Trust claims that Irish law (rather than U.S. federal law) governs, that the Share Repurchases were "void" under the law of that foreign country (because Mallinckrodt was allegedly insolvent when it executed  the transactions), and that, as a result, the Share Repurchases were not "qualifying transactions" under the Bankruptcy Code, and the TRP Funds did not act as investment companies "in connection with a securities contract."  As set forth in the Citadel/SSLLC Motion, this argument not only flies in the face of controlling Third Circuit precedent, which holds that a "settlement payment" is simply a transfer made to complete a securities transaction (regardless of whether the transaction arose out of a void, unlawful or avoidable contract), but it would also render the Bankruptcy Code anything but uniform, removing a safe harbor for the national securities markets and instead causing federal law to turn on the vagaries of the state or foreign law in which a debtor is incorporated.  Making matters worse, the argument relies on two out-of-circuit cases that, as read by the Trust, are not even good law today in the Circuits in which they were decided, let alone in the Third Circuit, and at least one of which addressed a different safe harbor and involved an extraordinary transaction intentionally designed to evade foreign regulators.

8.      In any event, as also set forth in the Citadel/SSLLC Motion, the Trust waived this new argument by failing to raise it, or any reference to Irish law, during the 11 months it took to negotiate the Protocol Order, several rounds of motion practice, and three Court hearings.  Only after requiring the TRP Funds to prove that they are '40 Act funds did the Trust first dispute that

the Share Repurchases were not "settlement payments" or transfers made "in connection with a securities contract"—undermining the entire reason for the Protocol Order.

9. For these reasons, discussed more fully below and in the Citadel/SSLLC Motion, the Trust has no basis in fact or law to refuse to dismiss its claims against the TRP Defendants. Before filing this Motion, the TRP Defendants responded to the Trust's information requests and conducted a meet-and-confer of counsel, but to no avail. Regrettably, the TRP Defendants believe they have no choice but to file this Motion and seek the Court's intervention. The Court should grant the Motion, dismiss the TRP Defendants from this Adversary Proceeding, and grant such other relief as it deems just and proper.[3]

## BACKGROUND

10. The following is a recitation of the pertinent allegations in the Amended Complaint, procedural history, and documents that the Court may consider in connection with these Protocol-Based Motions.[4]

A. The TRP Defendants

11. TRP is a registered investment adviser with the SEC. Declaration of Ross E. Firsenbaum, dated December 8, 2023 (the "Firsenbaum Decl."), Ex. 2 ¶ 4. Like other investment

---

[3] Because the Trust's beneficiaries are opioid claimants, the TRP Defendants (like Citadel Securities and Susquehanna Securities) have decided not to seek recovery of the substantial fees they have incurred to date in connection with their submissions under the Protocol Order and otherwise in this Adversary Proceeding. But they firmly believe, as do undersigned counsel, that the positions taken by the Trust in refusing to dismiss the claims against the TRP Defendants go well beyond the boundaries of fair advocacy and are contrary to the terms of both the Protocol Order and the basic command of the Federal Rules—that "the parties" must act "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; Fed. R. Bankr. P. 7001.

[4] The Protocol Order provides, in relevant part, that any "Protocol-Based Motion may include for consideration by the Court (i) the Declaration, (ii) Supporting Documentation, and (iii) any other evidence that the Plaintiff and the Defendant exchanged during the process outlined in paragraphs 5–10 [of the Protocol Order]." D.I. 185-1 ¶ 11.b.

managers, TRP manages and oversees the portfolios of various mutual funds, including the TRP Funds. *Id.* It does not purchase or sell securities for its own account; it instead trades on behalf of the funds it manages, including the TRP Funds, which hold title to the securities and receive the proceeds of the sales of such securities. *Id.*

12. The TRP Funds are each investment companies registered under the '40 Act and have been since their inception. *Id.* ¶ 8 & Exs. D-J (Forms N-1A, *i.e.*, registration statements, filed with the SEC for each TRP Fund).

B. The Mallinckrodt Share Repurchases

13. Between August 4, 2015 and April 23, 2018 (the "Relevant Time Period"), Mallinckrodt allegedly paid $1.6 billion to repurchase more than 35 million shares of its common stock from public shareholders on the open market. *See* D.I. 209 ("Am. Compl.") ¶¶ 7, 271. To do so, Mallinckrodt entered into securities purchase agreements with two brokers, Goldman Sachs & Co. and Morgan Stanley & Co. (collectively, the "Brokers"), which authorized the Brokers, as Mallinckrodt's agents, to repurchase shares of Mallinckrodt common stock on the open market. *Id.* ¶ 274.[5] While the Amended Complaint alleges that the TRP Funds received the proceeds of some of these Share Repurchases, it does not allege that TRP received any proceeds from any Share Repurchases. *Id.* ¶ 85. To the contrary, the Amended Complaint

---

[5] The Amended Complaint does not allege any facts showing, and the TRP Defendants do not concede, that any of their sales of Mallinckrodt stock were to *Mallinckrodt* in connection with the Share Repurchases, rather than sales of Mallinckrodt stock on the open market to other counterparties. The TRP Defendants reserve the right to argue that the Amended Complaint has not adequately pled (or, at a later stage, met the applicable burden of proof) that the TRP Funds received Share Purchase proceeds, and all service related and other defenses (including but not limited to other reasons why Section 546(e) bars the claims at issue), in subsequent motion practice and at trial. *See* D.I. 185-1 ¶ 22.

alleges merely that TRP is an "investment management corporation" that "manages" the TRP Funds. *Id.*

C.      The Protocol Order

14.      Nearly a year ago, TRP and other Defendants sought entry of a protocol order allowing for the early presentation and resolution of clear threshold defenses, like the defense that a Defendant was not a "transferee" with respect to the proceeds of the Share Repurchases (a "Non-Transferee"), or like the Section 546(e) safe harbor. D.I. 48 ¶¶ 2-3, 11-23. The Trust did not dispute the propriety of such a protocol, representing that it "fully intend[ed]" to "work with Defendants" to negotiate the protocol. D.I. 50 ¶ 2; Dec. 20, 2022 Hr'g Tr., D.I. 91 at 51:10-25. As a result, this Court entered the parties' proposed case management order requiring negotiation of a protocol to "address, efficiently, and without undue cost, the defense that any Defendant is a conduit, non-transferee, 'stockbroker', 'financial institution', or 'financial participant'." D.I. 93 (the "Case Management Order") ¶ 6(c).

15.      Nevertheless, the Trust initially refused to include Section 546(e) defenses in the protocol, requiring Defendants to seek this Court's direction at the next status conference. *See* Feb. 28, 2023 Hr'g Tr., D.I. 121 at 12:23-13:11. At that conference, this Court reminded the Trust that the Case Management Order required the Trust to negotiate a protocol that included the Section 546(e) defenses. *Id.* at 14:6-7.

16.      Negotiations resumed, but the Trust still would not agree to a protocol consistent with this Court's direction, requiring Defendants to seek relief from the Court. D.I. 132 (the "Protocol Approval Motion"). The Defendants argued that a protocol order was necessary to "address[] threshold, individual defenses that can be resolved (and which courts frequently decide) with simple, straightforward evidentiary showings," including Section 546(e) defenses.

*Id.* ¶ 10.  For non-transferees, that meant a "simple" showing of "the identities of the holders of the relevant shares."  *Id.* ¶ 27.

17.     The Trust purported not to disagree, representing that if the "documentation that a Defendant provides is clear and sufficient to conclusively establish the Defendant's defense, the Trust will be able to voluntarily dismiss that Defendant—and there is no basis to suggest that it would not do so if appropriate."  D.I. 141 ¶ 39.  The Trust admitted that "[t]he question of whether a Defendant is a . . . non-transferee . . . is relatively straightforward and does not normally require extensive discovery."  *Id.* at ¶ 27 n.13.  The Trust acknowledged, as a "critical point," that whether a Defendant is a non-transferee "***could*** be so decided at the threshold" and "by way of a 'motion to dismiss.'"  *Id.* ¶ 43 (emphasis in original).

18.     The Court heard oral argument on the Protocol Approval Motion on April 19, 2023.  *See* Apr. 19, 2023 Hr'g Tr., D.I. 158.  The Trust admitted that "precedent protocols" from similar fraudulent transfer actions provided for the prompt dismissal of non-transferees.  *Id.* at 21:16-22.  The Trust represented, "[i]f [non-transferees or conduits] provide evidence saying, [w]e were . . . not the ultimate transferees.  Here's who the beneficiaries were, here's who the actual transferees were.  ***Then that's great, you're dismissed*** and now we can name those actual beneficiaries or transferees in our amended complaint.  ***We're fine with that***."  *Id.* at 25:15-23 (emphasis added).

19.     The principal dispute during oral argument centered on the "qualifying participant" prong of Section 546(e), with virtually no mention of the separate "qualifying transaction" prong.  Indeed, defense counsel noted that, under settled precedent, the Share Repurchases qualify as "quintessential, that is[,] the paradigmatic settlement payment[s]," so the only question under the safe harbor was whether each such "payment [was] made by, to, or for

the benefit of one of the qualifying entities," including financial participants. *Id.* at 14:12-17.

Counsel for the Trust voiced no disagreement, arguing simply that each Defendant needed to show that it is a "qualifying participant." *See id.* On that issue, the Court questioned the Trust's position: "it seems like[]—some of these issues seem very straightforward. I don't know that I agree [with the Trust] that determining whether someone is a financial participant or not is difficult." *Id.* at 26:16-19. Adding that the Defendants "have a right to bring their defenses and have it done quickly," the Court directed the parties to finalize a protocol order in line with the Defendants' proposal. *Id.* at 31:7-12.

20.     The parties then finally reached agreement, and this Court entered the parties' agreed Protocol Order. D.I. 185. Titled "Order Approving Protocol for the Dismissal Of Conduits, Non-Transferees, 'Financial Participants,' 'Financial Institutions,' 'Stockbrokers,' and Dissolved Entities," the Protocol Order makes clear from the start that its purpose is to provide for "the dismissal" of Defendants who show that they are non-transferees or qualifying entities pursuant to Section 546(e), such as "financial institutions." *Id.*

21.     Other aspects of the Protocol Order are also revealing. With respect to Defendants like TRP that did not receive the Share Repurchase Proceeds, the Protocol Order defines "Non-Transferee" as an "entity that did not receive any proceeds from the Share Repurchase Transactions." D.I. 185-1. ¶ 4. For Defendants like the TRP Funds that allegedly did receive the Share Proceeds, the Protocol Order describes the transfers at issue as "consideration [allegedly received by the Defendants] in exchange for transferring shares of stock of Mallinckrodt plc . . . as part of a share repurchase program." *Id.* at 1. The Protocol Order nowhere hints that a Defendant making use of the Protocol Order needs to establish that the proceeds were settlement payments or transfers in connection with a securities contract.

Instead, with respect to the Section 546(e) defenses, the Protocol Order focused only on whether a particular Defendant was a qualifying participant.

22.     The Protocol Order provides that a Defendant can "[e]stablish[] the [c]laimed Defenses" and "obtain dismissal" by providing to the Trust with a "sworn Declaration substantially in the form attached hereto as Appendix A" (the "<u>Template Declaration</u>") and "Supporting Documentation." *Id.* ¶¶ 5-6.  For a non-transferee, the Template Declaration requires the Defendant only (a) to attest that it "believes that it was a . . . Non-Transferee" (¶ 2a); (b) to attach one or more exhibits that is (or are) "supporting documentation showing that" it did not receive Share Repurchase Proceeds for Mallinckrodt stock it owned (¶ 3); (c) to "[describe [its] role] with respect to sales of Mallinckrodt stock" (¶ 4); and (d) to confirm that it "did not hold an interest as a beneficial owner of stock of Mallinckrodt that was allegedly sold to Mallinckrodt in connection with the Share Repurchase Transactions" and "did not receive proceeds for its own account from any such transactions" (*id.*).  In addition, the Protocol Order requires supporting documentation showing the entities that received the Mallinckrodt stock. Protocol Order ¶¶ 6-7.  For a qualifying participant, a Defendant can establish such status by providing the Trust a declaration and supporting documentation "*sufficient* to establish the factual basis" for its status as a qualifying participant and a written explanation of why the documentation and declaration satisfy the defense (with applicable case law).  *Id.* ¶ 6(a) (emphasis added).  Likewise, the Template Declaration only requires the Defendant to (a) attest that it "believes that it was a 'financial institution'" (¶ 2c); and (b) attach one or more exhibits that is (or are) "supporting documentation showing that" it meets the definition of "financial institution" in the Bankruptcy Code (¶ 3).

23. The Protocol Order requires the Trust, within 45 days after it receives such information, either to (i) "file a notice of dismissal (without prejudice) pursuant to Fed. R. Civ. P. 41" or (ii) "notify the Defendant in writing that it is unwilling to dismiss the Defendant and state the grounds upon which such position is based." Protocol Order ¶ 9. The Trust may request "additional information," but only if it "believes, *in good faith*, [the information] is necessary for it to determine whether the Defendant has established the claimed Defense." *Id.* (emphasis added). After the Defendant provides that information, the Trust has another 45 days to respond. *Id.* If not voluntarily dismissed, the Defendant may file a motion to dismiss or for judgment "based on the asserted Defense(s)," which motion can rely on "(i) the Declaration, (ii) Supporting Documentation, and (iii) any other evidence that the Plaintiff and the Defendant exchanged during the process outlined in paragraphs 5–10" (a "Protocol-Based Motion"). *Id.* ¶ 11.b.

D. The TRP Defendants' Protocol Submissions

24. On June 28, 2023, TRP made a submission to the Trust pursuant to the Protocol Order, on behalf of itself and the TRP Funds. *See* Firsenbaum Decl., Ex. 1 (the "TRP Initial Protocol Submission"). The TRP Initial Protocol Submission demonstrated that TRP was a non-transferee. *See id.* It included a sworn declaration attesting that TRP was the investment manager of the TRP Funds, did not hold title to any shares of Mallinckrodt stock, and did not receive any proceeds of sales of such stock. *Id.*, Ex. 2 (the "First TRP Declaration"). The First TRP Declaration further disclosed that, instead, the TRP Funds held title to shares of Mallinckrodt stock and received proceeds of sales of such shares during the Relevant Time Period. *Id.* ¶¶ 7-8 . The First TRP Declaration attached exhibits containing trading data for each sale, including: (a) the legal names of the TRP Funds that received the proceeds; (b) the settlement and trade dates of the TRP Funds' trades of Mallinckrodt stock; (c) the total number

of shares sold; (d) the price at which each such trade was executed; (e) the settlement amount for each trade; and (f) the identity of the executing broker, among other information. *Id.*, Ex. C.[6]

25. Although the TRP Funds were not yet named as Defendants, TRP understood that by disclosing the TRP Funds as Mallinckrodt shareholders who sold shares and received proceeds during the Relevant Time Period, the Trust might be inclined to name the TRP Funds as Defendants in an amended complaint. To save the parties' money and time, and to conserve judicial resources, the TRP Initial Protocol Submission demonstrated that each of the TRP Funds was a qualifying participant protected by the safe harbor. The TRP Initial Protocol Submission included, for each TRP Fund, a separate SEC filing showing that the TRP Fund was a registered investment company under the '40 Act, and thus a "financial institution" under 11 U.S.C. § 101(22)(B). TRP also provided a sworn declaration so confirming.[7]

26. On August 11, 2023—44 days after TRP made the TRP Initial Protocol Submission—the Trust sent a responsive letter to undersigned counsel. Firsenbaum Decl., Ex. 3. Contrary to its representation to this Court that it would dismiss a non-transferee after it identified the actual shareholders, *supra* ¶ 18, the Trust requested "[t]he legal basis, including relevant case law, for why [TRP's] status as an investment advisor establishes its defense as a non-transferee," Firsenbaum Decl., Ex. 3 at 3. The Trust also requested voluminous additional documentation from the TRP Defendants and argued that the Court would not take judicial notice of the TRP Funds' SEC filings, providing no basis to challenge their accuracy. *Id.* at 1-3.

---

[6] The TRP Defendants attach to the Firsenbaum Declaration a redacted version of Exhibit C to the First TRP Declaration, which redacts non-public information not relevant to TRP's status as a Non-Transferee. If, however, the Court is interested in reviewing the unredacted version (which the Trust has), TRP can promptly provide it to the Court.

[7] The TRP Initial Submission also cited binding Third Circuit precedent establishing that the Share Repurchases were "qualifying transactions." *Id.*, Ex. 1 at 3.

27.     On September 15, 2023, TRP responded to the Trust's request for information with a seven-page letter, a second sworn declaration, and 1,277 pages of additional supporting documentation. *Id.*, Exs. 4 & 5. TRP cited well-established caselaw holding that a defendant is not a "transferee" unless it has "dominion and control" over the relevant funds, and explained that TRP's case for dismissal was stronger than that of a conduit because TRP had never received the relevant funds at all. *Id.*, Ex. 4 at 2.

28.     Although none of the additional information requested by the Trust was necessary under the Protocol Order to establish that TRP was a non-transferee or that each of the TRP Funds was a financial institution, TRP provided additional information, including copies of the investment management agreements between TRP and the TRP Funds, showing that TRP merely provided investment advisory services to the TRP Funds, and copies of the TRP Funds' prospectuses from the Relevant Time Period, showing that the management fees TRP received from the TRP Funds were not connected to sales of Mallinckrodt (or any other) stock. *See id.*, Ex. 5 at Exs. B-H, J-O, Q-Z, BB-EE, GG, HH, & FF. TRP explained that the Trust's own Complaint alleged that the TRP Funds' sales of Mallinckrodt stock were in connection with the purchase agreements (*i.e.*, securities contracts) between Mallinckrodt and its Brokers. *Id.*, Ex. 4 at 5. And TRP cited recent decisions taking judicial notice of defendants' SEC filings when granting motions to dismiss pursuant to Section 546(e). *Id.* at 5-6.

29.     On October 30, 2023—45 days after TRP submitted its response letter, and 124 days after the TRP Initial Protocol Submission—the Trust finally informed the TRP Defendants that it would not dismiss them from the Adversary Proceeding.[8] *See* Firsenbaum Decl., Ex. 6.

---

[8]  In the intervening time between the TRP Initial Protocol Submission and the Trust's October 30, 2023 letter, the Trust filed the Amended Complaint, re-naming TRP as a Defendant and adding the TRP Funds as Defendants. D.I. 209 ¶ 85.

With respect to TRP, the Trust argued that TRP had failed to show that it was a non-transferee because it had "not demonstrate[d] that it lacked dominion and control over the Funds." *Id.* at 2-3. It claimed that the fees TRP earned in connection with the management of the Funds and TRP's purported "powerful discretion" demonstrate that it had "dominion and control" over the relevant proceeds. *Id.* As to the TRP Funds, the Trust's letter argued that the Share Repurchases were not "settlement payments" and thus not qualifying transactions. *Id.* at 5-9. Additionally, while the Trust did not dispute that the TRP Funds were investment companies registered under the '40 Act, it argued that the TRP Funds had not demonstrated they had acted as investment companies "in connection with a securities contract," *id.* at 9-10, notwithstanding the Amended Complaint's own allegations that the Share Repurchases were made pursuant to the securities purchase agreements between Mallinckrodt and its Brokers, Am. Compl. ¶¶ 275-76.

30.     Undersigned counsel met and conferred with the Trust's counsel, as required by the Protocol Order. *See* D.I. 185-1 ¶ 11(a). The meet-and-confer did not resolve the dispute.

## ARGUMENT

### I.     The Court Should Dismiss TRP Because It Is A Non-Transferee

31.     This Court should dismiss TRP because it was not a transferee with respect to the alleged Share Repurchases. Section 550 of the Bankruptcy Code provides that a trustee may recover an avoided fraudulent transfer only from a "transferee" (or the entity for whose benefit the debtor made the transfer). *See* 11 U.S.C. § 550(a) ("[T]he trustee may recover . . . from [] the initial transferee of such transfer or the entity for whose benefit such transfer was made; or [] any immediate or mediate transferee . . . ."). Indeed, to state a claim, the plaintiff must allege facts showing that the defendant is a transferee. *See Mervyn's Holdings, LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 102-04 (Bankr. D. Del. 2010).

32.     To determine whether an entity is a "transferee," courts have adopted the "dominion and control" test.  *Id.* (citing *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)); *Christy v. Alexander & Alexander of NY Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997) (same).  Under that test, an entity qualifies as a "transferee" only if it had "dominion over the money or other asset [and] the right to put the money to one's own purposes."  *Bonded Fin.*, 838 F.2d 893.  The "transferee must have the legal right to use the funds to whatever purpose he or she wishes."  *Mervyn's Holdings*, 426 B.R. at 103 (citations and quotations omitted).  These cases distinguish between "transferees" and "conduits"—the latter being entities that may have received the funds at issue but nevertheless were not transferees because they did not have dominion and control over the funds and instead had to forward them to another party.  *See, e.g.*, *Finley*, 130 F.3d at 57-58; *Mervyn's Holdings*, 426 B.R. at 103-04.

33.     The Amended Complaint does not even allege that TRP was a transferee.  It alleges only that TRP "is an investment management corporation with its principal place of business located at 100 E Pratt Street, Baltimore, MD 21289," and that it was the TRP Funds (not TRP) that "received proceeds as part of the Share Repurchase Transfers."  Am. Compl. ¶ 85.  While it lumps TRP and the TRP Funds together into the conclusory allegation that Mallinckrodt transferred funds "to TRP and the TRP Funds," there is no allegation (nor could there be one) that TRP held Mallinckrodt stock for its own account or received any proceeds from the Share Repurchases.  *See id.*  Nor does the Amended Complaint allege any facts (or even make a conclusory allegation for that matter) showing that TRP exercised dominion and control over the TRP Funds.  *See id.*  For this reason alone, the Amended Complaint should be dismissed as against TRP.  *See Mervyn's Holdings*, 426 B.R. at 102-04 (granting motion to dismiss because

plaintiff failed to plead that bank had "dominion and control" over funds); *see also Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314-15 (Bankr. S.D.N.Y. 1999) (granting motion to dismiss because complaint only plausibly alleged that the defendant was a "mere conduit").

34.     But even if the Trust's own Amended Complaint were not sufficient to defeat its claims against TRP, the Protocol Order allows TRP to rely on additional evidence to support its argument for dismissal. The two sworn declarations and 3,878 pages of supporting documentation that TRP has submitted show that TRP is an investment manager that did not own any Mallinckrodt stock, did not receive any Share Purchase proceeds, and did not have dominion and control over any proceeds that the TRP Funds are alleged to have received. *See* Firsenbaum Decl., Ex. 2 ¶¶ 4-7 & Exs. A-J; Ex. 5 at Exs. A-HH. Thus, it is entitled to dismissal as a non-transferee. *See Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 702 (Bankr. D. Minn. 2005) (defendant that "did not receive" the funds "was never a transferee, and certainly was not an initial one" (internal citations and quotations omitted)).

35.     The Trust's refusal to dismiss TRP hinges on its unfounded assertion that TRP "has failed to show that it lacks dominion and control over the Funds." Firsenbaum Decl., Ex. 6 at 2. That position flips the law on its head. It is the Trust's burden to plead (and later show with evidence) that TRP is a transferee. *See* 11 U.S.C. § 550. The Amended Complaint, filed after TRP provided its initial protocol submission, does not do so, and that omission is dispositive. *See Mervyn's Holdings*, 426 B.R. at 102-04 (granting motion to dismiss because plaintiff failed to allege that bank had "dominion and control" over funds at issue); *see also Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 382-83 (Bankr. S.D.N.Y. 2014) (granting motion to dismiss claims "against conduits and any holders who were not beneficial

holders" because such entities "cannot be held liable as recipients of fraudulent transfers"), *abrogated in part on other grounds by Kirschner v. Large Priv. Beneficial Owners (In re Trib. Fraudulent Conv. Litig.)*, 818 F.3d 92 (2d Cir. 2016); *Stratton Oakmont,* 234 B.R. at 314-15 (granting motion to dismiss because plaintiff failed to plausibly allege "dominion and control").

36.     But even if the Court looked past the Trust's dispositive pleading failure, the caselaw it cites offers it no help.  The Trust relies almost entirely on *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, where the court held that Bear Sterns was a transferee with respect to funds the debtor had deposited in a margin account that Bear Stearns required the debtor to fund as collateral for margin loans provided by Bear Stearns.  397 B.R. 1, 21 (S.D.N.Y. 2007).  Those facts are entirely different from those present here, for at least two reasons.

37.     *First*, Bear Stearns was *not* an investment manager of a '40 Act fund.  Rather, it was the debtor's secured lender.  *See id.* at 5.  This was critical to the court's finding that Bear Stearns exercised "dominion and control" over the relevant transfers because the transferred cash became effectively Bear Stearns's collateral to secure its loans of stock to the debtor to support the latter's short-selling activities.  *See id.* at 19.  The account agreement provided Bear Stearns with significant control over the debtor's positions in the margin account, including provisions that prevented the debtor from withdrawing funds from the account if it had open short positions (*i.e.*, so long as it had an outstanding loan balance with Bear Stearns), and authorizing Bear Sterns to "[u]se the funds . . . to liquidate the Fund's open short positions, with or without the Fund's consent."  *Id.* at 5-6.

38.     Here, by contrast, TRP made no loans to the TRP Funds.  Rather, it simply acted as the TRP Funds' agent with respect to TRP Fund assets, and had neither a legal nor contractual right to make use of the proceeds of the alleged Share Repurchases for its own purposes.  As a

registered investment adviser under the Investment Advisers Act, TRP owed fiduciary duties to the TRP Funds and was legally obligated to, "at all times, serve the best interests of its clients and not subordinate its client's interest to its own." *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Investment Advisers Act Release No. 5248, 84 Fed. Reg. 33,669, 33,671 (July 12, 2019). Had TRP made use of the proceeds for its own benefit, it would have violated a host of federal laws and regulations. *See* 17 C.F.R. § 275.206(4)-2(a) (providing that "[i]f you are an investment adviser registered . . . under section 203 of the [Investment Advisers Act], it is a *fraudulent, deceptive, or manipulative act, practice or course of business* within the meaning of section 206(4) of the [Investment Advisers Act] *for you to have custody of client funds or securities*" (emphasis added)); *see also Bruderman Asset Mgmt., LLC*, Investment Advisers Act Release No. 6435, 2023 WL 6290824, at *1 (Sept. 26, 2023) (investment adviser violated the Investment Advisers Act when it used client money for its own purposes). In fact, in the specific context of '40 Act funds, federal regulation makes clear that an investment adviser has no legal right to make use of fund assets or their proceeds. *See* 17 C.F.R. § 270.17f-2(d) (providing that "[e]xcept as otherwise provided by law, no person shall be authorized or permitted to have access to the securities and similar investments deposited in accordance with [] this section except pursuant to a resolution of the board of directors of such investment company"); *see also id.* § 270.17f-2(a) ("The securities and similar investments of a registered management investment company may be maintained *in the custody of such company . . . .*" (emphasis added)).

      39.    The investment management agreements between TRP and the TRP Funds (all provided to the Trust previously) so confirm. They refer to the TRP Funds' securities (including the Mallinckrodt shares they owned) as the "investments of **the Fund**," not as the investments

(or collateral) of TRP.  Firsenbaum Decl., Ex. 5 at Ex. B § 1.A (emphasis added).  The governing

contracts further make clear that while TRP, as agent, managed the TRP Funds' investments, that

management, and any other supervision and direction, must be "in accordance with **the Fund's**

investment objectives, program and restrictions as provided in its prospectus, as amended from

time to time, and such other limitations **as the Fund may impose** by notice in writing to the

Manager [TRP]."  *Id.* (emphasis added).  The contracts make clear that TRP simply acts "**as**

**agent**" of "the Fund."  *Id.* (emphasis added).

40.     *Second*, Bear Stearns, in fact, exercised its contractual rights as the debtor's

secured creditor to use the funds in question to "cover certain of the [debtor's] positions."

*Manhattan Inv.*, 397 B.R. at 21.  Here, no such evidence exists, nor could it, since, as discussed

above, TRP did not have the contractual or legal authority to use the TRP Funds' assets for its

own benefit, and TRP did not do so with respect to any Share Repurchase proceeds.[9]

---

[9]  The Trust cites two additional cases, but neither supports its argument and, indeed,
during the parties' meet and confer, counsel for the Trust made clear that their argument rises
and falls on *Bear Stearns*.  Firsenbaum Decl., Ex. 6 at 3 n.6.  *Goldman Sachs Execution &
Clearing, L.P. v. Official Unsecured Creditors Committee of Bayou Group, LLC*, 758 F. Supp.
2d 222 (S.D.N.Y. 2010), presents the same fact pattern as *Manhattan Investment Fund*.  *See id.*
at 226.  Like Bear Stearns, Goldman "possessed considerable control with respect to Bayou's
deposits under the relevant account agreements," including holding a "security interest for
payment of all of [Bayou's] obligations and liabilities," the right to "require the Bayou Funds 'to
deposit cash or collateral with [Goldman] to assure due performance of open contractual
commitments'," the right to require debtor "maintain such positions and margins as Goldman
deemed necessary or advisable'," the ability to "lend either to itself or to others any of [Bayou's]
securities held by [Goldman] in a margin account," and the right to force Bayou to "liquidate
securities and/or other property in the account without notice . . . to ensure that minimum
maintenance requirements are satisfied."  491 F. App'x 201, 205 (2d Cir. 2012).  TRP had no
such contractual rights.  In *Burtch v. Stylish Move Sportswear Inc. (In re Factor 2-U Stores,
Inc.)*, 2007 WL 2698207 (Bankr. D. Del. Sept. 11, 2007), the court *granted summary judgment
for the defendants* on grounds that they were not transferees where defendants showed they did
not hold title to the funds, even though the funds were sent to their bank account, because
plaintiffs presented no evidence to the contrary.

41.     The Trust's remaining grounds for refusing to dismiss TRP are equally unfounded.  That TRP "executed" the alleged Share Repurchases on behalf of the TRP Funds, *see* Firsenbaum Decl., Ex. 6 at 3, does not show that it had dominion and control over the proceeds allegedly received by the TRP Funds.  The Trust identifies no evidence (because there is none) showing that TRP had the ability to take the TRP Funds' proceeds, or any other Fund assets, and use them "for its own purposes."  That distinction is dispositive.  *See Mervyn's Holdings*, 426 B.R. at 103 (bank, as trustee and holder of the proceeds, was not a transferee despite "fulfilling an instruction to make the funds available to a third party"); *see also Finley*, 130 F.3d at 59 (insurance broker that "transferred" insurance premiums on behalf of debtor was not a transferee).

42.     That TRP had discretionary authority to "buy, sell, exchange, convert, lend, and otherwise trade in any stocks, bonds, and other securities or assets," and to set the "investment strategies" of the Funds, *see* Firsenbaum Decl., Ex. 6 at 3, does not help the Trust either.  TRP was the TRP Funds' agent.  It had such authority to act for the benefit of the TRP Funds, not for itself and, as noted, even that authority was subject to the investment objectives set by the TRP Funds.  Since TRP was not trading the TRP Funds' Mallinckrodt shares for its own account, it was not a transferee.  *Finley*, 130 F.3d at 57; *see also Geltzer v. D'Antona (In re Cassandra Grp.)*, 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004) (finding attorney who received funds and had "broad powers to act on [debtor's] behalf," but did not have "legal right to put the Payments to his own personal use," was not a transferee); *Bauer*, 318 B.R. at 703-04 (manager of IRA account was not a transferee even though he was client's "fiduciary" and "directed" the transfer that the plaintiff sought to avoid); *Durkin v. Piper Tr. Co. (In re Denman & Co.)*, 186 B.R. 707, 712 (Bankr. C.D. Cal. 1995) (broker for debtor was not "transferee," despite provision in account

agreement that authorized it to act as "absolute owner" of securities positions, because broker was "fiduciary" and trustee provided no evidence broker "misappropriated" the funds).

43.     It is also legally irrelevant that TRP, like every other investment manager, charged management fees in connection with its advisory services. *See* Firsenbaum Decl., Ex. 6 at 4. "[R]outine transactions entail service fees that may be debited against the funds as they pass from hand to hand," without converting the service provider into a transferee. *Finley*, 130 F.3d at 59 (defendant insurance broker was not a transferee even though it "had the power to take a commission" on transaction); *see also Brown Publ'g Co. Liquidating Tr. v. AXA Equitable Life Ins. Co. (In re Brown Publ'g Co.)*, 492 B.R. 610, 619 (Bankr. E.D.N.Y. 2013) (insurer was not a transferee even though it "deduct[ed] and retain[ed] [] premium and administrative charges from the Transfers . . . based upon a contractual relationship with [the third-party recipient]"), *vacated in part on other grounds by* 519 B.R. 13, 27 (E.D.N.Y. 2014); *Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Invs., Inc.)*, 155 B.R. 332, 336, 340 (Bankr. S.D.N.Y. 1993) (escrow agent's deduction of escrow fees did not make it a transferee); *Salomon v. Nedlloyd, Inc. (In re Black & Geddes, Inc.)*, 59 B.R. 873, 875 (Bankr. S.D.N.Y. 1986) (entity acting as agent for principal was not a transferee despite receipt of fees for services).

44.     Finally, the Trust's arguments would upend traditional principles of agency law. Under the Trust's position, every asset manager acting as an agent on behalf of its clients would be personally liable in a claw-back action seeking to recover funds paid, not to or for the benefit of the asset manager, but instead to and for the benefit of the managed account. Similarly, any trustee would be personally liable for payments it received on behalf of the underlying trust it administered, even if the trustee was not a beneficiary of the trust. That would turn on its head the law of agency (and of investment companies and trusts), which holds that agents are not

liable in claw-back actions for funds transacted on behalf of the principal. *See Bonded Fin.*, 838

F.2d at 893 ("When A gives a check to B as agent for C, then C is the 'initial transferee'; the

agent may be disregarded."); *see also Schafer v. Las Vegas Hilton Corp. (In re Video Depot*

*Ltd.)*, 127 F.3d 1195, 1199 (9th Cir. 1997) (rejecting argument that would "have the anomalous

result that every agent or principal of a corporation would be deemed the initial transferee when

he or she effected a transfer of property in his or her representative capacity"); *Bailey v. Big Sky*

*Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1204 (10th Cir. 2002) (entity that received the "[the

funds] in trust or as agent for someone else" was not "initial transferee").

## II.     The Court Should Dismiss The TRP Funds Pursuant To Section 546(e)

45.     The Amended Complaint purports to assert constructive and intentional

fraudulent conveyance claims pursuant to Section 544 of the Bankruptcy Code.  Am. Compl.

¶¶ 351-84.  Section 546(e) of the Bankruptcy Code provides an absolute "safe harbor" against

such claims as they relate to the TRP Funds:

> *Notwithstanding section[] 544* . . . of this title, the trustee may not avoid a transfer
> that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . .
> financial participant . . . or that is a transfer made by or to (or for the benefit of) a .
> . . financial participant . . . in connection with a securities contract . . . that is made
> before the commencement of the case, except under section 548(a)(1)(A) of this
> title.

11 U.S.C. § 546(e) (emphasis added).[10]  The safe harbor applies where two requirements are

met:  (a) there is a "qualifying transaction" (*i.e.*, a "settlement payment" or "transfer made in

connection with a securities contract"), and (b) there is a "qualifying participant" (*i.e.*, the

transfer was made by or to (or for the benefit of) a financial institution or other entity set forth in

---

[10]  Although Section 546(e) does not bar a claim pursuant to section 548(a)(1)(A) of the
Bankruptcy Code, the Amended Complaint does not purport to bring such a claim.

the statute). *Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*, 2023 WL 2552399, at *5 (Bank. D. Del. Mar. 16, 2023) (Shannon, J.).

46.     Both prongs of the safe harbor are satisfied here as to the TRP Funds.  As to the first prong, while either would suffice, Mallinckrodt's alleged payments to the TRP Funds in exchange for shares of Mallinckrodt common stock were both "settlement payments" and "transfer[s]" made "in connection with a securities contract."  As to the second prong, the TRP Funds were each financial institutions acting in connection with a securities contract.

A.     The Share Repurchases Are Qualifying Transactions

47.     The TRP Defendants incorporate by reference the arguments made in Argument Section I of the Citadel/SSLLC Motion explaining why the alleged Share Repurchases are "settlement payments" and "transfers made in connection with a securities contract," and thus "qualifying transactions." *See* Citadel/SSLLC Mot. at 13-25.

B.     Each of the TRP Funds Is A Qualifying Participant

48.     The TRP Funds have demonstrated that each is a "financial institution."  A "financial institution" is defined as, among other things "in connection with a securities contract . . . an investment company registered under the ['40 Act]."  11 U.S.C. § 101(22)(B); *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 202-03 (S.D.N.Y. 2020), *aff'd in relevant part by Kirschner v. Robeco Cap. Growth Funds - Robeco BP US Premium Equities (In re Nine West LBO Sec. Litig.),* No. 20-3257, 2023 WL 8180356 (2d Cir. Nov. 27, 2023).  Here, as the court did in *Nine West*, this Court can take judicial notice of the TRP Funds' SEC filings, which show that each is a registered investment company under the '40 Act and thus a "financial institution." *See* Firsenbaum Decl., Ex. 2 at Exs. D-J; *see also Nine West*, 482 F. Supp. 3d at 203 & n. 20 (granting 82 defendants' motions to dismiss based on SEC filings showing they were '40 Act funds).

49.     Indeed, the Trust has never disputed that each of the TRP Funds was (and remains) an investment company under the '40 Act.  *See* Firsenbaum Decl., Ex. 6.  Nor does it dispute that this Court can and should take judicial notice of the TRP Funds' SEC filings.  *See id.* Rather, the Trust's sole argument is that the TRP Funds are not "financial institutions" because they supposedly did not act as '40 Act funds "in connection with a securities contract."  *Id.* at 9-10.  That argument fails as a matter of law.  *See supra* ¶¶ 48-49.[11]

50.     The Trust's claim that the TRP Funds cannot rely on the securities contracts between Mallinckrodt and the Brokers because they were not parties to such contracts, *see* Firsenbaum Decl., Ex. 6 at 9-10, is wrong as a matter of law:  it requires the Trust to add words Congress chose not to include in the Bankruptcy Code.  Nowhere in the definition of "financial institution" is there any language requiring that the investment company must be a "party to" the applicable securities contract.  11 U.S.C. § 101(22)(B).

51.     Not surprisingly, courts have read the statute to mean what it says.  In *Nine West*, for example, the district court held that 82 defendants acted as investment companies "in connection with a securities contract" even though they were not parties to the securities contract—the merger agreement between the debtor and the third-party purchaser.  482 F. Supp. 3d at 198.  And just last week the Second Circuit affirmed the dismissal of all claims against outside shareholders on the ground that the alleged transfers to such outside shareholders were in connection with a securities contract even though they were not parties to the contract.  *Nine West*, 2023 WL 8180356, at *10; *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 1609154, at *9 (S.D.N.Y. Apr. 15, 2013) (a "securities contract" need not be

[11]  The Trust's argument that such agreements were "void" under Irish law, *see* Firsenbaum Decl., Ex. 6 at 5-9, also fails for the same reasons described in Argument Section I of the Citadel/SSLLC Motion.

with the debtor, and includes any contracts with third parties related to the alleged fraudulent transfer).  The Trust cites no case to the contrary.

52.     Instead of requiring that the investment company be a party to the securities contract, the Code simply requires that there be a "connection" between that contract and the transfer at issue.  That test sets a "low bar."  *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411, 422 (2d Cir. 2014).  A transfer is made "in connection with" a securities contract if it in any way "relate[s] to" or is "associated with" the contract.  *See* Citadel/SSLLC Motion at 14; *see also Madoff,* 773 F.3d at 421-22.

53.     This "low bar" is plainly met here.  The whole point of the securities purchase agreements between Mallinckrodt and the Brokers was for Mallinckrodt to pay money to its shareholders, including, allegedly, the TRP Funds, to acquire their shares.  Likewise, the whole point of the orders that Mallinckrodt placed through the brokers to purchase shares of its outstanding stock—which orders, as discussed above, became separate contracts with the selling Mallinckrodt shareholders, including allegedly the TRP Funds, when the sellers accepted those orders—was for Mallinckrodt to acquire those shares.  In short, there was far more than the "low bar" required to connect the two sets of securities contracts to the alleged payments to the TRP Funds for their stock.

**CONCLUSION**

54.     For these reasons, the TRP Defendants respectfully request that the Court enter

the proposed order submitted herewith as Exhibit A granting the relief requested by the Motion

and dismissing the Moving Defendants from the Adversary Proceeding.[12]

---

[12] As noted above, the TRP Defendants do not now seek an award of attorneys' fees and costs from the Trust, recognizing that it operates for the benefit of opioid victims. But the Trust's refusal to dismiss them pursuant to the Protocol Order certainly meets the standard for such an award. *See Doe v. Keane*, 117 F.R.D. 103, 104-05 (W.D. Mich. 1987) (granting request for attorneys' fees when plaintiff was presented with pre-motion evidence that claim failed as a matter of law but continued to pursue claims); *see also Brown v. Chinen*, 2010 WL 1783573, at *1, *5 (D. Haw. Feb. 26, 2010) (similar). Should this Court agree that the TRP Defendants are entitled to dismissal pursuant to the Protocol Order, and should the Trust nevertheless continue to pursue claims against the TRP Defendants, they reserve their rights to seek an award of the fees and costs they incurred negotiating the Protocol Order, making submissions to the Trust pursuant to the Protocol Order, and moving to dismiss pursuant to the Protocol Order.

Dated: December 8, 2023
        Wilmington, Delaware


By: */s/ Jeremy W. Ryan*
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: jryan@potteranderson.com
        abrown@potteranderson.com

*-and-*

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
Austin M. Chavez *(pro hac vice application forthcoming)*
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: philip.anker@wilmerhale.com
        noah.levine@wilmerhale.com
        ross.firsenbaum@wilmerhale.com
        mike.mcguinness@wilmerhale.com
        austin.chavez@wilmerhale.com

*Counsel to T. Rowe Price Associates, Inc.; T. Rowe Price All-Cap Opportunities Fund, Inc.; T. Rowe Balanced Fund, Inc.; T. Rowe Price All-Cap Opportunities Portfolio, a Series of T. Rowe Price Equity Series, Inc.; T. Rowe Price Health Sciences Portfolio, a Series of T. Rowe Price Equity Series, Inc.; T. Rowe Price Equity Index 500 Portfolio, a Series of T. Rowe Price Equity Series, Inc.; T. Rowe Price Moderate Allocation Portfolio, a Series of T. Rowe Price Equity Series, Inc.; T. Rowe Price Global Allocation Fund, Inc.; T. Rowe Price Health Sciences*

*Fund, Inc.; T. Rowe Price Spectrum
Conservative Allocation Fund, a Series of T.
Rowe Price Spectrum Funds II, Inc.; T.
Rowe Price Spectrum Moderate Allocation
Fund, a Series of T. Rowe Price Spectrum
Funds II, Inc.; T. Rowe Price Spectrum
Moderate Growth Allocation Fund, a Series
of T. Rowe Price Spectrum Funds II, Inc.;
and T. Rowe Price Value Fund, Inc.*