# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | Adversary Proceeding |
| Plaintiff, | : | No. 22-50435 (JTD) |
| v. | : | |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, *et al.*, | : | |
| Defendants. | : | |

**MOTION TO DISMISS THE AMENDED COMPLAINT AS TO
DEFENDANTS ROCK CREEK MB, LLC, RIEF TRADING LLC,
GF TRADING LLC, AND RIEF RMP LLC PURSUANT TO THE
PROTOCOL ORDER RELATING TO CONDUITS,
NON-TRANSFEREES, "STOCKBROKERS," "FINANCIAL INSTITUTIONS,"
<u>"FINANCIAL PARTICIPANTS," AND DISSOLVED ENTITIES</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1
BACKGROUND ................................................................................................................ 2
    A.    The Renaissance Defendants ........................................................................... 2
    B.    The Mallinckrodt Share Repurchases ............................................................. 3
    C.    The Protocol Order .......................................................................................... 3
    D.    The Renaissance Defendants' Protocol Submissions ..................................... 3
ARGUMENT ...................................................................................................................... 7
  I.    The Share Repurchases Are Qualifying Transactions ................................................... 7
  II.   Each Of The Renaissance Defendants Is A Qualifying Participant ............................. 8
CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Brown v. Chinen*,
    2010 WL 1783573 (D. Haw. Feb. 26, 2010) ...................................................................13

*Doe v. Keane*,
    117 F.R.D. 103 (W.D. Mich. 1987) ...............................................................................13

*Frantz v. Nationwide Ins. Co.*,
    2021 WL 2014990 (M.D. Pa. May 19, 2021) ...........................................................11, 12

*Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*,
    2023 WL 2552399 (Bank. D. Del. Mar. 16, 2023) ...........................................................7

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..................................................................................................11, 12

*Mervyn's LLC v. Lubert–Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*,
    426 B.R. 488 (Bankr. D. Del. 2010) ...............................................................................10

*Rowello v. Healthcare Benefits, Inc.*,
    2013 WL 6576449 (D.N.J. Dec. 13, 2013) ...............................................................11, 12

**STATUTES**

11 U.S.C. § 101 ......................................................................................................................8, 11

11 U.S.C. § 544 ..............................................................................................................................7

11 U.S.C. § 546 ....................................................................................................................1, 7, 11

11 U.S.C. § 548 ..............................................................................................................................7

11 U.S.C. § 741 ..............................................................................................................................8

**RULES**

Fed. R. Bankr. P. 7001 ...................................................................................................................2

Fed. R. Civ. P. 1 .............................................................................................................................2

Fed. R. Civ. P. 12 .........................................................................................................................10

Pursuant to the Protocol Order Relating To Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities entered on May 15, 2023 [D.I. 185-1] (the "Protocol Order"), Rock Creek MB, LLC ("Rock Creek"), GF Trading LLC ("GF Trading"), RIEF Trading LLC ("RIEF Trading"), and RIEF RMP LLC ("RIEF RMP"; collectively with Rock Creek, GF Trading, and RIEF Trading, the "Renaissance Defendants") move to dismiss the claims brought against them by the Opioid Master Disbursement Trust II (the "Trust") in the above-captioned Adversary Proceeding.

## PRELIMINARY STATEMENT

1. This is another straightforward motion for dismissal under the Protocol Order and the Bankruptcy Code's "safe harbor," Section 546(e). Defendants Citadel Securities LLC ("Citadel Securities"), Susquehanna Securities, LLC ("Susquehanna Securities"), and several funds managed by T. Rowe Price Associates, Inc. (the "TRP Funds") have already filed motions to dismiss pursuant to the Protocol Order. *See* D.I. 215 (the "CS/SSLLC Motion"); *see also* D.I. 217 (the "TRP Motion"; collectively with the CS/SSLLC Motion, the "Pending Protocol Motions").[1]

2. The Pending Protocol Motions address legal issues that are common with the Renaissance Defendants' arguments for dismissal under the Protocol Order and Section 546(e), so the Renaissance Defendants will avoid repeating those arguments and will, instead, incorporate them by reference. In particular, the Renaissance Defendants incorporate the arguments set forth in the Pending Protocol Motions demonstrating why the Share Repurchases were both "settlement payments" and "transfers made in connection with a securities contract," and thus "qualifying transactions" pursuant to Section 546(e). Each of the Renaissance

---

[1] Unless otherwise defined, defined terms in this Motion have the same meanings as in the CS/SSLLC Motion.

Defendants shows in this motion (the "Motion") how it, like Citadel Securities and Susquehanna Securities, has demonstrated that it is a "financial participant" and thus a qualifying participant as well. The Renaissance Defendants have provided the Trust with sworn declarations, audited financial statements, and other financial records confirming that, on a statutorily relevant date, each had outstanding swaps or securities contracts substantially exceeding the statutory thresholds for financial participant status.

3. Nevertheless, the Trust has refused to dismiss the Renaissance Defendants, just as it has refused to dismiss Citadel Securities, Susquehanna Securities, and the TRP Funds pursuant to the Protocol Order. The Trust has offered no valid basis to dispute the information that the Renaissance Defendants have provided or otherwise to refuse to dismiss them from the Adversary Proceeding. The Court should grant the Motion, dismiss the Renaissance Defendants from the Adversary Proceeding and grant such other relief as it deems just and proper.[2]

## BACKGROUND

A. <u>The Renaissance Defendants</u>

4. Rock Creek is a fund managed by Renaissance Technologies LLC ("Renaissance Technologies"), a non-party to the Adversary Proceeding and a registered investment manager with the United States Securities and Exchange Commission (the "SEC"). Declaration of Ross

---

[2] Because the Trust's beneficiaries are opioid claimants, the Renaissance Defendants, like others before it, have decided not to seek recovery of the substantial fees they have incurred to date in connection with their submissions under the Protocol Order and otherwise in this Adversary Proceeding. But, like the other Defendants that have sought dismissal under the Protocol Order, the Renaissance Defendants firmly believe, as do undersigned counsel, that the positions taken by the Trust in refusing to dismiss the claims against the Renaissance Defendants go well beyond the boundaries of fair advocacy and are contrary to the terms of both the Protocol Order and the basic command of the Federal Rules—that "the parties" must act "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; Fed. R. Bankr. P. 7001.

E. Firsenbaum, dated January 10, 2024 (the "Firsenbaum Decl."), Ex. 2 ¶¶ 2-3. Rock Creek trades primarily in equity securities, exchange-traded funds, equity swap contracts, and equity index swap contracts. *Id*., Ex. 2 ¶ 3.

5. RIEF Trading is another fund managed by Renaissance Technologies. *Id.*, Ex. 2 ¶ 4. RIEF Trading's portfolio consists almost entirely of equity securities publicly traded on U.S. securities exchanges (and certain derivatives thereon). *Id*.

6. GF Trading is yet another fund managed by Renaissance Technologies. *Id.*, Ex. 2 ¶ 5. GF Trading trades equity securities on global securities exchanges (and derivatives thereon). *Id.*

7. RIEF RMP is also a fund managed by Renaissance Technologies. *Id.*, Ex. 2 ¶ 6. RIEF RMP's portfolio consists almost exclusively of equity securities publicly traded on U.S. securities exchanges (and certain derivatives thereon). *Id.*

B. The Mallinckrodt Share Repurchases

8. The Renaissance Defendants incorporate by reference Section B of the Background Section of the CS/SSLLC Motion.

C. The Protocol Order

9. The Renaissance Defendants incorporate by reference Section C of the Background Section of the CS/SSLLC Motion.

D. The Renaissance Defendants' Protocol Submissions

10. On July 31, 2023, the Renaissance Defendants made their initial submission to the Trust pursuant to the Protocol Order. *See* Firsenbaum Decl., Ex. 1 (the "Renaissance Defendants' Initial Protocol Submission"). The Renaissance Defendants' Initial Protocol

Submission demonstrated that each was a "financial participant" as defined by the Bankruptcy Code and included the following documentation:

    a.    Audited financial statements of Rock Creek, RIEF Trading, and GF Trading for the calendar year 2019 showing that as of December 31, 2019, Rock Creek had outstanding equity and equity index swap agreements with an aggregate gross notional value of approximately $1.2 billion, RIEF Trading had outstanding equity swap agreements with an aggregate gross notional value of approximately $2.54 billion, and GF Trading had outstanding equity swap agreements with an aggregate gross notional value of approximately $26 billion; and

    b.    A true and accurate copy of RIEF RMP's Institutional Account Agreement with its prime broker, J.P. Morgan Securities LLC ("JP Morgan"), and accompanying account statement dated December 31, 2019, showing that on December 31, 2019, RIEF RMP had an outstanding loan of securities from JP Morgan with a mark-to-market value of approximately $2 billion. *Id.*, Ex. 1 at 2-3; *see also id.*, Ex. 2 ¶¶ 9-12 & Exs. A-E.

11.    The Renaissance Defendants' Initial Protocol Submission also included a declaration from Renaissance Technologies' Chief Financial Officer ("CFO") attesting to the accuracy of such documentation. *Id.*, Ex. 2 ¶ 1. Thus, each of the Renaissance Defendants provided the Trust with documentation and sworn declarations demonstrating that it surpassed an applicable statutory threshold by hundreds of millions, if not billions, of dollars.

12.    The Trust waited the full 45 days it was allowed under the Protocol Order, Protocol Order ¶ 9, before responding to the Renaissance Defendants' Initial Protocol Submission. *See id.*, Ex. 3. The Trust did not dispute that the Share Repurchases were "qualifying transactions." *See generally id.*, Ex. 3. The Trust also provided no basis to question

the accuracy of the Renaissance Defendants' documentation (or the sworn declaration). *See id.*, Ex. 3 at 1-2. Instead, it made 11 requests for documents and information in connection with the Renaissance Defendants' showings that each was a "financial participant." The Trust requested, among other documents and information, all copies of Rock Creek's, RIEF Trading's, and GF Trading's swap agreements, the dates on which the swap agreements were entered and their termination dates, organizational charts, publicly filed versions of the audited financial statements, the first two and last two pages of RIEF RMP's haircut report, and confirmation of the authenticity of the supporting documentation. *Id.*, Ex. 3 at 2-3. The Trust did not explain why it purported to need this information, or how the requested information was relevant to any identified concerns of the Trust with the Renaissance Defendants' showings of their statuses as financial participants. *See generally id.*, Ex. 3.

13. Nevertheless, on October 31, 2023, the Renaissance Defendants responded with a six-page letter and a second sworn declaration from Renaissance Technologies' CFO. Firsenbaum Decl., Exs. 4 & 5. The letter and declaration (a) confirmed that none of the swap agreements were with affiliates; (b) explained how the notional values of the swap agreements were calculated; (c) confirmed that the audited financial statements for Rock Creek, RIEF Trading, and GF Trading were not publicly filed; and (d) explained how the mark-to-market value of the outstanding loan of securities that RIEF RMP received from JP Morgan was calculated. *See id.*, Exs. 4 & 5.

14. On December 15, 2023—again, only after waiting the maximum 45 days following the Renaissance Defendants' supplemental submission allotted under the Protocol Order—the Trust informed the Renaissance Defendants that it would not dismiss them from the Adversary Proceeding. *Id.*, Ex. 6. For the first time, the Trust argued that the alleged Share

5

Repurchases were not "settlement payments" and thus not qualifying transactions. *Id.*, Ex. 6 at 2-6. Without providing any factual basis to question their accuracy, the Trust also maintained that Rock Creek's, RIEF Trading's, and GF Trading's financial statements—all of which were audited by PricewaterhouseCoopers LLP, one of the world's leading public auditing firms—were insufficient to establish that Rock Creek, RIEF Trading, and GF Trading were financial participants. *Id.*, Ex. 6 at 6-8. The Trust argued that Rock Creek's, RIEF Trading's, and GF Trading's failure to provide copies of all swap agreements, schedules of counterparty information, and the other categories of additional information requested by the Trust prevented it from "verify[ing] the basis for Rock Creek, RIEF Trading, and GF Trading alleging that none of the contracts were with affiliates . . . and the notional values of each contract that sum to the total purported amounts." *Id.*, Ex. 6 at 7. The Trust further argued that Rock Creek, RIEF Trading, and GF Trading could not rely on the purportedly "conclusory" sworn declarations of Renaissance Technologies' CFO. *Id.*, Ex. 6 at 8-9. Notably, the Trust did not dispute RIEF RMP's showing that it was a "financial participant." *See id.*

15. While unnecessary, in an attempt to narrow the outstanding issues requiring resolution by the Court, on December 27, 2023, Rock Creek, RIEF Trading, and GF Trading provided the Trust with yet another letter and a *third* sworn declaration identifying the counterparties to each of their relevant swap agreements. *See id.*, Exs. 7 & 8. But the Trust claimed still not to be satisfied.

16. Undersigned counsel met and conferred with the Trust's counsel on January 2, 2024, in accordance with the Protocol Order. The meet-and-confer did not resolve the dispute.

6

# ARGUMENT

17. The Amended Complaint purports to assert constructive and intentional fraudulent transfer claims pursuant to Section 544 of the Bankruptcy Code. Am. Compl. ¶¶ 351-84. Section 546(e) provides an absolute "safe harbor" against these claims:

> *Notwithstanding section[] 544* . . . of this title, the trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to (or for the benefit of) a . . . financial participant . . . or that is a transfer made by or to (or for the benefit of) a . . . financial participant . . . in connection with a securities contract . . . that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e) (emphasis added).[3]

18. The safe harbor applies where two requirements are met: (1) that there is a "qualifying transaction" (*i.e.*, a "settlement payment" or "transfer made in connection with a securities contract"), and (2) that there is a "qualifying participant" (*i.e.*, the transfer was made by or to (or for the benefit of), among others, a "financial participant"). *Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*, 2023 WL 2552399, at *5 (Bank. D. Del. Mar. 16, 2023). Both prongs are satisfied here as to each of the Renaissance Defendants.

## I. The Share Repurchases Are Qualifying Transactions

19. The Renaissance Defendants incorporate by reference Section I of the Argument Section of the CS/SSLLC Motion. It demonstrates why all of the alleged Share Repurchases were both "settlement payments" and "transfers made in connection with a securities contract," and, in any event, that the Trust has waived any argument to the contrary. *See* CS/SSLLC Mot. ¶¶ 31-52.

---

[3] Although section 546(e) does not bar a claim pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the Amended Complaint does not purport to bring such a claim, presumably because the alleged transfers at issue occurred outside two-year reach-back period under that section.

**II.     Each Of The Renaissance Defendants Is A Qualifying Participant**

20.     The Bankruptcy Code defines "financial participant" as any entity that: (a) "at the time it enters into a securities contract . . . [or] swap agreement," "at the time of the date of the filing of the petition," or "on any day during the 15-month period preceding the date of the filing of the petition" (b) "has one or more [securities contracts or swap agreements] . . . with the debtor or any other entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties)" or "has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions," excluding agreements with affiliates.  11 U.S.C. § 101(22A)(A).  The term "swap agreement" is defined broadly to include any "interest rate swap" or "equity index or equity swap."  11 U.S.C. § 101(53B)(A)(i)(I), (IV).  The term "securities contract" includes any "contract for the . . . loan of a security," *id.* § 741(7)(A)(i), with "security," in turn, defined to include "stock," *id.* § 101(49)(A)(ii).

21.     Each of the Renaissance Defendants has demonstrated that it is a "financial participant."  Rock Creek, RIEF Trading, and GF Trading have each provided financial statements, audited by a major public auditing firm, showing that, as of December 31, 2019—a date within 15 months of the petition date (October 12, 2020)—it had outstanding swap agreements with a notional value well in excess of $1 billion.  *See* Firsenbaum Decl., Ex. 2 at Exs. A-C.  Specifically, the respective audited financial statements show that (a) Rock Creek had outstanding equity and equity index swap agreements with an aggregate gross notional value of approximately $1.2 billion, *see id.*, Ex. 2 at Ex. A at RTS-MNK-00000028; (b) RIEF Trading had outstanding equity swap agreements with an aggregate gross notional value of approximately $2.54 billion, *see id.*, Ex. 2 at Ex. B at RTS-MNK-00000048; and (c) GF Trading had

8

outstanding equity swap agreements with an aggregate gross notional value of approximately $26 billion, *see id.*, Ex. 2 at Ex. C at RTS-MNK-00000074. Thus, Rock Creek, RIEF Trading, and GF Trading each exceeded the $1 billion notional amount threshold required by the statute by between *$200 million* and *$25 billion*. And although its financial-participant status is not disputed by the Trust, RIEF RMP provided financial records showing that on December 31, 2019, it also had an outstanding loan of securities from JP Morgan with a mark-to-market value of approximately $2 billion—exceeding by *nearly twenty times* the relevant $100 million statutory threshold. *Id.*, Ex. 2 ¶ 12 & Exs. D-E.

22. The Trust has not provided any basis to question the accuracy of Rock Creek's, RIEF Trading's, or GF Trading's audited financial statements, or the three confirming declarations *sworn under penalty of perjury* attesting to the accuracy of those documents. Instead, it makes three arguments to attempt to justify its refusal to dismiss such defendants from the Adversary Proceeding. Each is without merit.

23. *First*, the Trust argues that it lacks the "evidentiary basis it needs to verify the accuracy of" the audited financial statements. *See* Firsenbaum Decl., Ex. 6 at 7. That argument is a makeweight. The Trust offers no basis to question the accuracy of financial statements *audited by independent auditors* and further supported by *sworn declarations under penalty of perjury* from Renaissance Technologies' CFO attesting to their accuracy. There is no need, for example, for the Trust to demand and review copies of all the contracts underlying Rock Creek's, RIEF Trading's, and GF Trading's swap positions, organizational charts, or schedules providing counterparties to the swaps. If the point of such requests was to determine whether any of the transactions at issue were with affiliates (something the Trust never stated), the Renaissance Defendants provided that information in a sworn declaration attesting that none of

9

the relevant swaps were with Renaissance affiliates, and in a later sworn declaration identifying the counterparties. *See* Firsenbaum Decl., Ex. 5 ¶ 3; *see also id.*, Ex. 8.

24. Moreover, the Trust's argument, if accepted, would render the Protocol Order a nullity. The Protocol Order calls for a defendant to "attach[] as Exhibit[s] . . . supporting documentation showing that [it is a financial participant]," and it expressly authorizes the Court to consider that evidence. *See* D.I. 185-1 ¶¶ 5-6, 11 & app. A ¶ 3. The audited financial statements provided by Rock Creek, RIEF Trading, and GF Trading demonstrate that each such Defendant exceeded the $1 billion notional amount threshold by hundreds of million, if not billions, of dollars. And those Defendants, as required by the Protocol Order, provided sworn declarations attesting to the accuracy of those financial statements. *See* D.I. 185-1 ¶ 5 & app. A. Under the express terms of the Protocol Order, nothing more is required to show that Rock Creek, RIEF Trading, and GF Trading are financial participants and thus qualifying participants.

25. *Second*, the Trust argues that it is "the black-letter law in this Circuit and elsewhere that 'courts may take judicial notice of public records to acknowledge that the facts contained in the records existed in the public realm at that time . . . [but] [t]he court may not . . . consider the truth of the information in the records.'" Firsenbaum Decl., Ex. 6 at 7 (quoting *Mervyn's LLC v. Lubert–Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 496 (Bankr. D. Del. 2010)). Not only is that an incorrect statement of the law, *see* CS/SSLLC Mot. ¶¶ 58-61, but the argument is a red herring. The Trust ignores that this is not a Rule 12(b)(6) motion—it is a motion *pursuant to the Protocol Order*, which expressly authorizes the Court to consider any evidence exchanged between the parties pursuant to process outlined therein. D.I. 185-1 ¶ 11(b). That the Trust now wants the Court to ignore that evidence would betray the entire purpose of the Protocol Order—to streamline, efficiently and without undue delay and

cost, the process by which the parties (and ultimately the Court) can decide individualized, threshold defenses to the Trust's claims, including those pursuant to Section 546(e).

26. *Third*, the Trust argues that the Court must disregard the Renaissance Defendants' purportedly "conclusory" declarations. *See* Firsenbaum Decl., Ex. 6 at 8. But as with the Trust's other arguments, this contention has no teeth. The declarations are obviously not "conclusory"—they, among other things, confirm the accuracy of the audited financial statements and other documents and provide explanations of how none of the swap agreements were with affiliates, how the notional values of the swaps were calculated, and how the mark-to-market value of the outstanding loan of securities RIEF RMP received from JP Morgan was calculated.

27. Moreover, the Trust relies on inapplicable cases addressing affidavits submitted in connection with motions for summary judgment.[4] This Motion is brought pursuant to the *Protocol Order*, which allows a Defendant to provide the Trust with a "sworn declaration substantially in the form attached hereto as Appendix A." D.I. 185-1 ¶ 5; *see also id.* ¶ 6 & app. A. The template Declaration only requires a Defendant to assert that it "believes that it was a 'financial participant,' as defined by 11 U.S.C. § 101(22A)" and "attach[] . . . supporting documentation showing that [defense]." *Id.* app. A ¶¶ 2(d), 3. The Renaissance Defendants did just that. They provided three sworn declarations from Renaissance Technologies' CFO that provided facts showing that each Renaissance Defendant is a financial participant, along with supporting documentation.

---

[4] *See, e.g.*, *Frantz v. Nationwide Ins. Co.*, 2021 WL 2014990, at *3 (M.D. Pa. May 19, 2021); *Rowello v. Healthcare Benefits, Inc.*, 2013 WL 6576449, at *5 (D.N.J. Dec. 13, 2013); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

28. *Finally*, the cases cited by the Trust are easily distinguishable (and in many cases support dismissal) and not only because they were submitted in support of summary judgment or other motions that were fundamentally different from this Protocol Motion. In one case, the contested declaration or affidavit was inconsistent with prior statements made by the affiant. *See, e.g.*, *Frantz*, 2021 WL 2014990, at *3 (rejecting declaration submitted in support of summary judgment motion that contradicted affiant's deposition testimony). The Trust has not presented any evidence showing any inconsistencies or otherwise calling into question the accuracy of the Renaissance Defendants' sworn declarations and documentation. In the Trust's other cases, the movant's declaration or affidavit was uncorroborated. *See Rowello*, 2013 WL 6576449, at *5 (rejecting affidavit submitted in opposition to summary judgment motion where movant provided supporting testimony, evidence, and other documentation supporting movant's version of events, and the opposing party's declaration relied solely on his "belief" and uncorroborated facts not in the record); *see also Lujan*, 497 U.S. at 888-89 (rejecting affidavit submitted in opposition to summary judgment motion that assumed key facts). Here, by contrast, the Renaissance Defendants provided three sworn declarations from their manager's CFO attesting to facts based on his personal knowledge and his review of the Renaissance Defendants' relevant records, as well as financial statements audited by a major accounting firm and other financial documents. *See* Firsenbaum Decl., Exs. 25. Yet the Trust provided no counter-evidence, much less even a single reason to call into question the accuracy of the Renaissance Defendants' financial statements or declarations.

**CONCLUSION**

29. For these reasons, the Renaissance Defendants respectfully request that the Court enter the proposed order submitted herewith as Exhibit A granting the relief requested by the Motion and dismissing the Renaissance Defendants from the Adversary Proceeding.[5]

---

[5] As noted above, the Renaissance Defendants do not now seek an award of attorneys' fees and costs from the Trust, recognizing that it operates for the benefit of opioid victims. But the Trust's refusal to dismiss them pursuant to the Protocol Order meets the standard for such an award. *See Doe v. Keane*, 117 F.R.D. 103, 104-05 (W.D. Mich. 1987) (granting request for attorneys' fees when plaintiff was presented with pre-motion evidence that claim failed as a matter of law but continued to pursue claims); *see also Brown v. Chinen*, 2010 WL 1783573, at *1, *5 (D. Haw. Feb. 26, 2010) (similar). Should this Court agree that the Renaissance Defendants are entitled to dismissal pursuant to the Protocol Order, and should the Trust nevertheless continue to pursue claims against them, the Renaissance Defendants reserve their rights to seek an award of the fees and costs they incurred negotiating the Protocol Order, making submissions to the Trust pursuant to the Protocol Order, and moving to dismiss pursuant to the Protocol Order.

Dated: January 10, 2024
Wilmington, Delaware

/s/ Jeremy W. Ryan
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: jryan@potteranderson.com
abrown@potteranderson.com

-and-

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
Austin M. Chavez *(pro hac vice application forthcoming)*
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: philip.anker@wilmerhale.com
noah.levine@wilmerhale.com
ross.firsenbaum@wilmerhale.com
mike.mcguinness@wilmerhale.com
austin.chavez@wilmerhale.com

*Counsel to Defendants Rock Creek MB, LLC, RIEF Trading LLC, GF Trading LLC, and RIEF RMP LLC*