# EXHIBIT D

**[November 22, 2023 Letter]**

November 22, 2023

**Philip D. Anker**

+1 212 230 8890 (t)
+1 212 230 8888 (f)
philip.anker@wilmerhale.com

Justin Alberto
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
jalberto@coleschotz.com

Steven Klepper
Anthony De Leo
Cole Schotz P.C.
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
sklepper@coleschotz.com
adeleo@coleschotz.com

*Counsel to the Opioid Master
Disbursement Trust II*

      Re: ***Opioid Master Disbursement Trust II v. Argos Capital Appreciation Master Fund LP, et al.***, **Adv. Pro. No. 22-50435 (Bankr. D. Del.) - Protocol Submission of Defendant Citadel Securities LLC**

Dear Counsel:

      We write on behalf of our client, Citadel Securities LLC ("Citadel Securities"), a named defendant in the above-referenced adversary proceeding (the "Adversary Proceeding"), in connection with its June 13, 2023 submission to the Trust pursuant to the Protocol (the "Protocol Submission").[1]

      As you will recall, on March 20, 2023, the Trust produced to Citadel Securities pursuant to paragraph 6(d) of the December 28, 2023 Court's Case Management Order, *see* D.I. 93, trading data that it claims supports its allegations that Citadel Securities received the proceeds of the open-market sales of Mallinckrodt stock identified in Exhibit B to the Trust's Complaint (the "Trading Data").[2] The data is fundamentally flawed. Citadel Securities has spent exhaustive

---

[1]     Except as otherwise defined herein, all defined terms shall have the same meeting as in the Protocol Submission.

[2]     Citadel Securities is aware that the Trust recently filed its Amended Complaint, which adds additional transactions to Exhibit B to the Complaint, which requires Citadel Securities to undertake additional analysis and review. The Trust is required to produce to Citadel Securities

time and resources attempting to match all of the Trading Data with trades in its own internal records, but the Trading Data provided makes it impossible to do so. Most of the Trading Data includes identifiers that are not in a format consistent with and do not match the unique trade identifiers assigned by the venues that execute orders (*i.e.*, an exchange like ARCA or NYSE) and that the venue provides to the party that sent the order upon execution of the order. This deficiency in the Trading Data provided by the Trust makes it impossible to fully match the alleged trades to Citadel Securities' records or determine whether they occurred at all. Further, Citadel Securities is unable to match the trades using the quantity, price terms, and timestamps included in the Trading Data for each trade, in part because most of the timestamps have no time zones and also because these fields are an insufficient basis to identify a specific trade.

The insufficiency of the Trading Data produced by the Trust matters for a number of reasons. Among others, Citadel Securities has an additional Protocol-Based Defense (as defined in the Protocol) to the Trust's claims, beyond those it has already set forth, that, to date, it has been unable to assert—that Citadel Securities was a "Conduit" with respect to certain alleged sales of Mallinckrodt stock identified in Exhibit B to the Complaint. As a market maker, Citadel Securities receives sell orders from clients and often executes them on a riskless principal basis, whereby it enters into two back-to-back trades—it routes and executes an order in the market and contemporaneously enters into an offsetting trade with the client. Any such transactions, which are consistent with market making activity, would qualify Citadel Securities as a "Conduit" with respect to such sales. *See* D.I. 185-1 ¶ 1 (defining "Conduit" as "a person or entity that was a non-beneficial holder of Mallinckrodt stock through which a certain amount of proceeds of Share Repurchase Transactions passed, but that was not the beneficial holder of such stock or ultimate recipient of such proceeds"); *see also Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57–58 (2d Cir. 1997) (adopting the "mere conduit" test and observing that "[e]very Court of Appeals to consider th[e] issue has squarely rejected" the idea that "mere receipt" of assets from the debtor results in liability); *see also Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. D. Del. 2010) (adopting the "mere conduit" test and holding that a

---

the additional trading data it claims justifies these allegations, pursuant to paragraph 6(d) of the Case Management Order. *See* D.I. 93 ¶ 6(d). While the Trust provided Citadel Securities with the Amended Complaint and Exhibit B thereto, which the Trust purportedly claimed satisfied its obligation under paragraph 6(d), that information is woefully insufficient. Exhibit B provides no identifying information other than quantity, share amounts, and transaction proceeds for unspecified sales of Mallinckrodt stock that allegedly took place on certain dates during the Share Repurchase period. In fact, Exhibit B to the Amended Complaint provides *less* information than what was included in the Trading Data (defined *infra*), which, for the reasons discussed in this letter, is itself insufficient.

bank was not a transferee, in part because it was "no different from a courier or an intermediary on a wire transfer").

The deficiencies in the Trading Data provided by the Trust have prevented Citadel Securities from being able to determine which of the sales listed in Exhibit B to the Complaint were, in fact, trades involving Citadel Securities at all, and if so, whether they were executed on a riskless principal basis for Citadel Securities' clients, which in turn has prevented Citadel Securities from making a submission pursuant to the Protocol asserting that it was a Conduit with respect to such sales.[3] Citadel Securities therefore requests that the Trust provide it with revised Trading Data that includes sufficient information to permit Citadel Securities to determine which of the trades listed in Exhibit B are subject to a Conduit defense.

We look forward to your prompt response. Citadel Securities, of course, reserves all rights, claims and defenses.

Best regards,

/s/ Philip D. Anker
Philip D. Anker

cc: Kevin C. Maclay, Esq.
Todd E. Phillips, Esq.
Jeffrey A. Liesemer, Esq.
Quincy M. Crawford, III, Esq.
Serafina Concannon, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000
kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com
mcrawford@capdale.com

---

[3] For avoidance of doubt, while this letter focuses on Citadel Securities' inability to present evidence that it was a Conduit with respect to certain riskless principal transactions, Citadel Securities reserves all other objections to the Trading Data, including that the Trading Data fails to show that Citadel Securities was a counterparty to the trades identified in Exhibit B to the Complaint, or that the trades occurred at all.

sconcannon@capdale.com
*Co-Counsel to the Opioid Master Disbursement Trust II*