# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MALLINCKRODT PLC, | : | Case No. 20-12522 (JTD) |
|  | : |  |
| Reorganized Debtor.[1] | : |  |
|  | : |  |
| OPIOID MASTER DISBURSEMENT TRUST II, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | Adversary Proceeding |
|  | : | No. 22-50435 (JTD) |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CITADEL SECURITIES AND SUSQUEHANNA SECURITIES FROM AMENDED COMPLAINT

Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
COLE SCHOTZ P.C.
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Anthony De Leo (admitted *pro hac vice*)
COLE SCHOTZ P.C.
1325 Ave. of the Americas
19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Jeffrey A. Liesemer
(admitted *pro hac vice*)
Quincy M. Crawford, III
(admitted *pro hac vice*)
Serafina Concannon (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W., Suite 1100
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Co-Counsel to Plaintiff Opioid Master Disbursement Trust II*

Dated:  January 19, 2024

---

[1]    The Reorganized Debtor in this chapter 11 case is Mallinckrodt plc ("**Mallinckrodt**").  On May 3, 2023, the Court entered an order closing the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with Mallinckrodt, "**Debtors**").  A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt.   The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 3

I.     Mallinckrodt's Opioid-Related Misconduct and Share Repurchase Program ................... 3

II.    Movants' Dismissal Demands Under the Protocol ........................................................... 4

     A.  Citadel's Submission ................................................................................................ 4

     B.  Susquehanna's Submission ...................................................................................... 6

STANDARD OF REVIEW ..................................................................................................... 7

ARGUMENT ......................................................................................................................... 9

I.     Mallinckrodt's Share Repurchases Are Not Qualifying Transactions ............................... 9

     A.  The Share Repurchases Do Not Constitute a "Settlement Payment" Because They
           Were Void *ab Initio* Under Irish Law ...................................................................... 9

          1.  Irish Law Governed Mallinckrodt's Share Repurchase Program ..................... 10

          2.  Under Irish Law, Mallinckrodt Was Required to Fund Its Share Repurchases
               from Profits Available for Distribution, or Else the Share Repurchases Were
               Void ................................................................................................................. 11

          3.  Mallinckrodt's Share Repurchases Were Void Because It Did Not Have Profits
               Available for Distribution When It Made Those Repurchases ......................... 12

          4.  The Amended Complaint Alleges Facts Sufficient to Support a Reasonable
               Inference That the Share Repurchases Were Void Under Irish Law. ................ 15

     B.  Mallinckrodt's Share Repurchases Were Not Transfers Made "in Connection with a
           Securities Contract" ............................................................................................... 16

     C.  Irish Law Applies to the § 546(e) Analysis ............................................................. 18

     D.  *Enron* Remains Good Law ..................................................................................... 19

     E.  The Trust Did Not Waive Any Arguments ............................................................. 21

     F.  The Trust Satisfied the Notice Requirements of Rule 44.1 ...................................... 23

II.    Citadel and Susquehanna Have Failed to Meet Their Burden to Show They Are Financial
     Participants .................................................................................................................... 25

CONCLUSION .................................................................................................................... 30

**Cases**

*100079 Canada, Inc. v. Stiefel Laboratories, Inc.*,
  No. 11-22389-CIV-SCOLA, 2011 WL 13116079 (S.D. Fla. Nov. 30, 2011).......................10

*Al Maya Trading Establishment v. Glob. Export Mktg. Co.*,
  No. 14 Civ. 275(PAE), 2014 WL 3507427 (S.D.N.Y. July 15, 2014) ...................................24

*Alpizar-Fallas v. Favero*,
  908 F.3d 910 (3d Cir. 2018)...............................................................................................8

*Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P.* (*In re Bankr. Est. of Norske Skogindustrier ASA*),
  629 B.R. 717 (Bankr. S.D.N.Y. 2021) ................................................................................9

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
  878 F.2d 742 (3d Cir. 1989)...............................................................................................19

*Canadian Imperial Bank of Com. v. Saxony Carpet Co.*,
  899 F. Supp. 1248 (S.D.N.Y. 1995)....................................................................................23

*Castel S.A. v. Wilson*,
  No. CV 19-09336-DFM, 2023 WL 6295774 (C.D. Cal. Sept. 27, 2023)...............................10

*In re Columbia Gas Sys. Inc.*,
  997 F.2d 1039 (3d Cir. 1993)..............................................................................................18

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016)...............................................................................................8

*Contemporary Indus. Corp v. Frost*,
  564 F.3d 981 (8th Cir. 2009) .............................................................................................18

*Cooper v. Centar Invs. (Asia) Ltd* (*In re TriGem Am. Corp.*),
  431 B.R. 855 (Bankr. C.D. Cal. 2010)........................................................................9, 18, 20

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
  839 F.3d 242 (3d Cir. 2016)...............................................................................................8

*Deere & Co. v. AGCO Corp.*,
  No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019)..................................................8

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ...........................................................................................8, 29

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.),*
 323 B.R. 857 (Bankr. S.D.N.Y. 2005) ............................................................... *passim*

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors
 Recovery Corp.),*
 651 F.3d 329 (2d Cir. 2011)................................................................................20

*FTC v. Shire Viropharma, Inc.,*
 917 F.3d 147 (3d Cir. 2019)................................................................................28

*FTI Consulting, Inc. v. Sweeney (In re Centaur, LLC),*
 No. 10-10799 (KJC), 2013 WL 4479074 (Bankr. D. Del. Aug. 19, 2013) ..............................2

*Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.),*
 No. 20-10766 (BLS), 2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023) ..........................28

*In re Griffin Trading Co.,*
 683 F.3d 819 (7th Cir. 2012) ..............................................................................24

*Indus. Enters. of Am., Inc v. Tabor Acad. (In re Pitt Penn Holding Co.),*
 No. 09–11475 (BLS), 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) ..........................17

*In re Ins. Brokerage Antitrust Litig.,*
 618 F.3d 300 (3d Cir. 2010).................................................................................8

*In re Irish Life & Permanent Plc*
 [2009] IEHC 567 [H. Ct.] (Ir.) ...........................................................................11

*KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.),*
 769 F.3d 455 (6th Cir. 2014) ..............................................................................29

*Kirschner v. Robeco Cap. Growth Funds (In re Nine W. LBO Sec. Litig.),*
 87 F.4th 130 (2d Cir. Nov. 27, 2023)....................................................................20

*Kravitz v. Samson Energy Co. (In re Samson Res. Corp.),*
 625 B.R. 291 (Bankr. D. Del. 2020) ....................................................................26

*Kravitz v. Samson Energy Co (In re Samson Res. Corp.),*
 No. 15-11934 (BLS), 2023 WL 4003815 (Bankr. D. Del. June 14, 2023)............................26

*Kushner v. Beverly Enters., Inc.,*
 317 F.3d 820 (8th Cir. 2003) ..............................................................................29

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.),*
 181 F.3d 505 (3d Cir. 1999)................................................................................19

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,*
 583 U.S. 366 (2018)...........................................................................................19

- iii -

*Mervyn's LLC v. Lubert–Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC),*
 426 B.R. 488 (Bankr. D. Del. 2010) ...................................................................29

*Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.),*
 642 B.R. 371 (Bankr. D. Del. 2022) ..................................................................17

*Mut. Serv. Ins. Co. v. Frit Indus., Inc.,*
 358 F.3d 1312 (11th Cir. 2004) ........................................................................23

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela,*
 575 F.3d 491 (5th Cir. 2009) ............................................................................23

*Off. & Pro. Emps. Int'l Union v. Nat'l Labor Rels. Bd.,*
 419 F.2d 314 (D.C. Cir. 1969) ..........................................................................22

*Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc),*
 No. 22-50433-JTD, (Bankr. D. Del. Jan. 18, 2024) ...........................................16

*Oran v. Stafford,*
 226 F.3d 275 (3d Cir. 2000) ........................................................................28, 29

*In re PHP Healthcare Corp.,*
 128 F. App'x 839 (3d Cir. 2005) .......................................................................10

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC),*
 773 F.3d 411 (2d Cir. 2014) ..............................................................................20

*In re Pilgrim's Pride Corp.,*
 421 B.R. 231 (Bankr. N.D. Tex. 2009) ..............................................................18

*Prospect Cap. Corp. v. Credito Real USA Fin. LLC,*
 No. 23-CV-3005 (JSR), 2023 WL 7498071 (S.D.N.Y. Nov. 14, 2023) ...............22

*Quarles v. United States,*
 139 S. Ct. 1872 (2019) ......................................................................................19

*Reiter v. Sonotone Corp.,*
 442 U.S. 330 (1979) ............................................................................................7

*Schuchardt v. President of the U.S.,*
 839 F.3d 336 (3d Cir. 2016) ..........................................................................8, 15

*Thomas v. Cumberland Cnty.,*
 749 F.3d 217 (3d Cir. 2014) ..............................................................................15

*Thyssen Steel Co. v. M/V Kavo Yerakas*,
  911 F. Supp. 263 (S.D. Tex. 1996) ..................................................23, 24

*United States v. McKie*,
  112 F.3d 626 (3d Cir. 1997)..........................................................19

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996)............................................................26

*Whyte v. Barclays Bank PLC*,
  494 B.R. 196 (S.D.N.Y 2013)....................................................18, 19

*Wilson (Inspector of Taxes) v Dunnes Stores (Cork) Ltd*
  [1976] WJSC-HC 1470 [H. Ct.] (Ir.) ...........................................11

*Zazzali v. AFA Fin. Grp., LLC*,
  No. 10-54524 PJW, 2012 WL 4903593 (Bankr. D. Del. Aug. 28, 2012).................2

**Statutes**

11 U.S.C. § 101(22A) ......................................................................4, 6

11 U.S.C. § 101(22A)(A)....................................................................25

11 U.S.C. § 546(e) ...................................................................... *passim*

11 U.S.C. § 546(g) ..........................................................10, 16, 17, 18

11 U.S.C. § 561(a)(1)-(6)..................................................................25

11 U.S.C. § 741(8) ..........................................................................19

**Other Authorities**

Companies Act 2014 of Ireland .....................................................11, 12

Fed. R. Civ. P. 8(a) ..........................................................................8

Fed. R. Civ. P. 12(b)(6).....................................................................8

Fed. R. Civ. P. 44.1 ...................................................................23, 24

*Principal*, Black's Law Dictionary (11th ed. 2019) ...................................26

Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) .....................10

Plaintiff, the Opioid Master Disbursement Trust II ("**Trust**"),[2] by and through its undersigned counsel, hereby submits its opposition to the motion (Adv. D.I. 215) ("**Motion**" or "**Mot.**") to dismiss defendants Citadel Securities LLC ("**Citadel**") and Susquehanna Securities, LLC ("**Susquehanna**," and together with Citadel, "**Movants**") from the Trust's Amended Complaint (Adv. D.I. 205) ("**Amended Complaint**" or "**Am. Compl.**").  For the reasons that follow, the Motion should be denied.

**PRELIMINARY STATEMENT**

Section 546(e) is an affirmative defense, not blanket immunity.

Movants seem to forget that fundamental point.  Movants resort to insinuating that the Trust has acted in an underhanded fashion and in bad faith in connection with the dismissal procedures set forth in the Protocol.[3]  Nothing could be further from the truth.  The Trust is not an unsecured creditor trying to maximize avoidance recoveries to protect a profit margin.  It is a fiduciary.  Many States, counties, other municipalities, and opioid victims are looking to the Trust to provide the much-needed funding that can abate the opioid scourge in communities across the country and to compensate victims.  As a fiduciary, the Trust carefully examined and evaluated each of the asserted defenses that Movants and other defendants presented to it under the Protocol.

Where the Trust has identified a basis, through its due diligence, for voluntarily dismissing a defendant, it has not hesitated to do so.  To date, the Trust has dismissed 28 defendants from this

---

[2]    The Trust is a statutory trust established under the *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* ("**Plan**") [D.I. 7670].  As used herein, citations to "**D.I. __.**" refer to documents filed in *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del.).  Citations to "**Adv. D.I. __.**" refer to documents filed in the above-captioned adversary proceeding ("**Proceeding**").  The Plan, *inter alia*, vested the Trust with authority to investigate and prosecute claims arising out of Mallinckrodt's repurchase of its shares between 2015 and 2018 ("**Share Repurchase Claims**") for the benefit of the Debtors' unsecured creditors.  The claims asserted in this Proceeding are Share Repurchase Claims.

[3]    As used herein, "**Protocol**" means the *Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities* that this Court approved by order dated May 15, 2023 [Adv. D.I. 185-1].

Proceeding, seven of which it dismissed under the Protocol process. Nevertheless, where the Trust has identified issues with respect to defenses asserted under the Protocol, it has raised those issues with defendants, asked for substantiation, and declined to dismiss a defendant when those issues have not been resolved. As a fiduciary, the Trust has a right and obligation to hold Movants and other defendants to their burden on their affirmative defenses. Movants do not get the benefit of the doubt here. The Court should hold them to their burden.

By their Motion, Citadel and Susquehanna assert that their affirmative defenses under 11 U.S.C. § 546(e) mandate dismissal of the Trust's claims against them at the pleadings stage. The Trust opposed inclusion of the § 546(e) defense in the Protocol on the ground that courts had consistently found that the defense raised complex factual disputes and required expert testimony. The Trust's concerns have proven to be well-founded.[4] Despite this fact, the Trust reviewed Movants' asserted Protocol defenses in good faith, even as Movants refused to provide the most basic information requested by the Trust as part of its due diligence. In the end, the Trust exercised its fiduciary duty and determined that Movants' dismissal requests failed on both legal and factual grounds.

Legally, Movants' § 546(e) defenses require proof of a "qualifying transaction." Mallinckrodt is an Irish company. Under the internal affairs doctrine, Irish law applies to Mallinckrodt's share repurchases, the same repurchases that the Trust seeks to avoid and recover

---

[4]    The Trust posited that the § 546(e) defenses are "complex and fact-intensive" and often require "extensive fact and expert discovery," which explains why courts that have used protocols with an aim to efficiently dismiss certain defendants have never included the § 546(e) defenses in those protocols. Adv. D.I. 141 at ¶ 27 & n. 13; *see also, e.g.*, Hr'g Tr. at 21:23-22:2, Apr. 19, 2023 (Trust's counsel stating that "[i]ncluding the 546(e) defenses in the protocol makes the process more complicated because several of those defenses raised complex, factual, and legal issues . . . ."); *see also FTI Consulting, Inc. v. Sweeney (In re Centaur, LLC)*, No. 10-10799 (KJC), 2013 WL 4479074, at *4 (Bankr. D. Del. Aug. 19, 2013) (stating that § 546(e) "requires a determination of fact and is not suitable for disposition on a motion to dismiss"); *Zazzali v. AFA Fin. Grp., LLC,* No. 10-54524 PJW, 2012 WL 4903593, at *11 (Bankr. D. Del. Aug. 28, 2012) ("[I]t is premature to dismiss this count on the basis of the 546(e) defense" because "the defense is a fact-based inquiry.").

in this Proceeding. Irish law provides that share repurchases are void when a company does not have profits available for distribution. Under applicable law, if a share repurchase was void, there is no qualifying transaction, and § 546(e) does not provide an affirmative defense. Movants' attempts to avoid the impact of Irish law through waiver arguments strain credulity.

Factually, Movants have failed to meet their burden of proving they are financial participants. They provided summary financial statements and declarations and demanded that the Trust take their word that the documents support the conclusion that they are financial participants. Movants then refused to provide the documents that the Trust requested to test those statements. At the same time, the federal government fined Citadel $7 million for making inaccurate statements on millions of transactions in its public filings. If Citadel cannot make accurate statements to its regulators, how can the Trust be required to assume that Citadel made accurate statements to the Trust? It cannot. Movants cannot use the Protocol to deprive the Trust of its right and fiduciary obligation to thoroughly investigate defenses on which Movants carry the burden of proof and persuasion.

## FACTUAL BACKGROUND

## I. MALLINCKRODT'S OPIOID-RELATED MISCONDUCT AND SHARE REPURCHASE PROGRAM

1. For the material facts describing Mallinckrodt's opioid-related misconduct and the program Mallinckrodt implemented to transfer nearly $1.6 billion to shareholders to repurchase its ordinary shares ("**Share Repurchase Program**"), the Trust incorporates by reference paragraphs 1-14 of *Plaintiff's Opposition to Motion to Dismiss T. Rowe Price Associates, Inc. and Related Funds from Amended Complaint*, filed contemporaneously herewith, as if they were fully set forth herein.

2. Citadel received at least ███████████ from Mallinckrodt in connection with the

Share Repurchase Program.[5]  Am. Compl. ¶ 32.  Susquehanna received at least ███████.  *Id.* ¶ 84.

## II.  MOVANTS' DISMISSAL DEMANDS UNDER THE PROTOCOL

### A.  Citadel's Submission

3.  On June 13, 2023, Citadel submitted its Protocol-based dismissal demand to the Trust, which relied solely on the affirmative defense under 11 U.S.C. § 546(e) as the ground for dismissal.  Adv. D.I. 216, Ex. 1.[6]  In its submission, Citadel admitted that § 546(e) "has two requirements," a qualifying transaction and a qualifying participant, and argued that Citadel met both prongs.  *Id.* at 1.  Specifically, Citadel stated that the share repurchases at issue—which involved the payment of cash for Mallinckrodt stock—"are qualifying transactions," citing case law that merely defines a "settlement payment" as a "transfer of cash or securities made to complete a securities transaction."  *Id.* at 1-2.

4.  Citadel also alleged that it satisfied the "qualifying participant" prong by asserting that it was a "financial participant," as defined in § 101(22A) of the Bankruptcy Code.  In support of its alleged financial participant status, Citadel submitted an unsworn declaration of one of its officers ("**Henry Declaration**") and only two exhibits, Citadel's Statement of Financial Condition as of December 31, 2019 ("**Citadel Financial Statement**") and a Form 13F-HR from Citadel's affiliate, Citadel Advisors LLC, filed with the SEC on February 14, 2020.  *Id.* at 1-2; Adv. D.I.

---

[5]  Movants incorrectly assert that the Amended Complaint does not allege any facts showing that any of their sales of Mallinckrodt's shares were made to Mallinckrodt rather than on the open market or to other counterparties (Mot. ¶ 10 n.4).  On the contrary, the Amended Complaint is replete with statements stating that Mallinckrodt was the recipient of the shares.  *See, e.g.*, Am. Compl. ¶¶ 7, 271, 370, 379.  In any event, the parties are not currently litigating this issue, and the Trust reserves all rights thereon.

[6]  Citadel has since informed the Trust that it has an additional Protocol-based defense of "Conduit."  *See* Adv. D.I. 237, Ex. 1.  However, Citadel did not make a dismissal request based on a "Conduit" defense under the Protocol, and is barred from doing so now because it may only bring a single Protocol-based motion, which it has already done.  Adv. D.I. 185-1, ¶ 11(b).

216, Ex. 2.  Citadel claimed that this documentation was sufficient and that, "[i]f motion practice were necessary, the facts contained in [its] audited financials and Form 13F filed with the SEC would be accepted as true."  Adv. D.I. 216, Ex. 1 at 3.

5.      On July 28, 2023, in response to Citadel's dismissal demand, the Trust sent Citadel requests for additional information, aimed at obtaining documentation supporting the assertions in the Henry Declaration and the summary information contained in the Citadel Financial Statement and Form 13F so that the Trust could verify Citadel's arguments and calculations.  *See* Adv. D.I. 216, Ex. 3.

6.      On September 14, 2023—48 days later—Citadel responded to the Trust's information requests, objecting to the fact that the Trust was seeking evidence to support Citadel's representations in its dismissal demand.  *See* Adv. D.I. 216, Ex. 4 at 1-3.  While Citadel provided three Excel spreadsheets—which it generated internally—that gave certain information about the contracts it relies on to support its alleged "financial participant" status, it did not provide any additional documentation, such as the contracts themselves or trade tickets.  *See id.* at 6, 11, 17. Notably, on September 23, 2023, shortly after Citadel's refusal to provide the Trust with documentation to corroborate information in the Citadel Financial Statement, the SEC fined Citadel $7 million for "incorrectly mark[ing] millions of orders."[7]  The fine settled charges that, over a five-year period, Citadel provided false information to regulators about the nature of millions of its orders on exchanges.

7.      On October 27, 2023, in accordance with the Protocol, the Trust responded to Citadel in writing, declining to dismiss it on the grounds that (a) Citadel has not met the qualifying transaction prong of § 546(e) because Mallinckrodt's share repurchases were not settlement

---

[7]     *See* Press Release, SEC, *SEC Charges Citadel Securities for Violating Order Marking Requirements of Short Sale Regulations* (Sept. 22, 2023), https://www.sec.gov/news/press-release/2023-192.

payments or transfers made in connection with a securities contract since they were void *ab initio* under Irish law, and (b) Citadel did not provide sufficient information to allow the Trust to determine that it qualifies as a financial participant. *See* Adv. D.I. 216, Ex. 6.

**B.  Susquehanna's Submission**

8.      On June 21, 2023, Susquehanna submitted its Protocol-based dismissal demand to the Trust, solely relying on the § 546(e) affirmative defense as the basis for dismissal. *See* Adv. D.I. 216, Ex. 7.  Like Citadel, Susquehanna admitted that § 546(e) "has two requirements" and argued that it satisfied both. *Id.* at 1-2.  Specifically, Susquehanna asserted "[i]t is indisputable that the share repurchase transactions at issue here—which involve the payment of cash for Mallinckrodt stock—are qualifying transactions" in the form of alleged settlement payments. *Id.* at 1-2.

9.      Susquehanna also alleged that it satisfied the "qualifying participant" prong by asserting that it was a "financial participant," as defined in § 101(22A) of the Bankruptcy Code. In support of its alleged "financial participant" status, Susquehanna provided an unsworn declaration of one of its officers ("**Sack Declaration**") and a single exhibit, Susquehanna's Statement of Financial Condition as of December 31, 2019 ("**Susquehanna Financial Statement**"). *See* Adv. D.I. 216, Ex. 8 & Ex. A attached thereto.  Susquehanna claimed that its sole financial statement was sufficient and that "[i]f motion practice were necessary, the facts contained in [its] audited financials filed with the SEC would be accepted as true."  Adv. D.I. 216, Ex. 7 at 2.

10.     On August 4, 2023, in response to Susquehanna's dismissal demand, the Trust sent Susquehanna requests for additional information, aimed at obtaining documentation supporting the assertions in the Sack Declaration and the summary information contained in the Susquehanna

Financial Statement so that the Trust could verify Susquehanna's arguments and calculations. *See* Adv. D.I. 216, Ex. 9.

11. On September 1, 2023—28 days later—Susquehanna responded to the Trust's information requests but refused to provide any additional documentation in support of its § 546(e) defense. *See* Adv. D.I. 216, Ex. 10 at 4-6.

12. On October 16, 2023, in accordance with the Protocol, the Trust responded to Susquehanna in writing, declining to dismiss it on two independent grounds: (a) Susquehanna had not met the qualifying transaction prong of § 546(e) because Mallinckrodt's share repurchases were void *ab initio* under Irish law and therefore were not settlement payments; and (b) Susquehanna did not provide sufficient information to allow the Trust to determine that it qualified as a financial participant. *See* Adv. D.I. 216, Ex. 11.

## STANDARD OF REVIEW

13. Movants have elected to file a motion to dismiss. *See* Protocol ¶ 11(b) ("Defendant may file a single motion under this Protocol *to dismiss or for judgment* based on the asserted Defense(s)") (emphasis added).[8] The Protocol does not alter the burden of proof or persuasion, or the standard for deciding any motion. Protocol ¶ 15 ("Nothing in this Protocol is intended, or shall be deemed or construed, to alter any Party's burden of proof or persuasion with respect to any claim or defense (including, without limitation, the Defenses) or to alter the legal standard for adjudicating any motion filed in the Adversary Proceeding."). Accordingly, the ordinary standards for a motion to dismiss apply.

14. "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[8] The use of the disjunctive "or" means that defendants have the option under the Protocol of filing either a motion to dismiss or a motion for judgment. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not.").

accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

15.    The plausibility standard under Fed. R. Civ. P. 8(a) requires only a "showing" that the pleader is entitled to relief. *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). If an explanation is plausible, the complaint survives a motion to dismiss under Civil Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. *Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022). For pleading purposes, a defendant's rebuttal of a plaintiff's contentions with its own does not entitle the defendant to dismissal of the action. *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 WL 668492, at *5-6 (D. Del. Feb. 19, 2019); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.42 (3d Cir. 2010).

16.    When evaluating a motion to dismiss, the reviewing court must assume all "factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly*, 809 F.3d at 790 (citations omitted). The Court "must . . . refrain from engaging in any credibility determinations." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 256 (3d Cir. 2016) (footnote omitted).

17.    Generally, in deciding a Rule 12(b)(6) motion, a court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents[.]" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018) (citations omitted). Under the Protocol the Motion "may include for consideration by the Court" (i) the declaration, (ii) documents sufficient to establish the factual basis for the claimed defense(s), and (iii) any other evidence that the Trust and defendants exchanged during the Protocol process. Protocol ¶¶ 6, 11(b).

18.     While the Motion does not contain a description of the standard of review (thus implicitly acknowledging the difficult standard Movants face in a motion to dismiss), it incorrectly asserts that the "Protocol Order requires only documentation 'sufficient to establish the factual basis' for a Defendant's status as a qualifying participant." Motion ¶ 15. Paragraph 15 of the Protocol was included expressly to foreclose any arguments by defendants that the traditional standards for a motion to dismiss would not apply. The Court should reject any suggestion by Movants that they somehow carry a lesser burden. They do not.

## ARGUMENT

19.     Movants assert they are entitled to dismissal solely on the basis of the affirmative defense set forth in 11 U.S.C. § 546(e). The § 546(e) affirmative defense, however, requires proof of both (a) a qualifying transaction and (b) a qualifying participant. *See Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P.* (*In re Bankr. Est. of Norske Skogindustrier ASA*), 629 B.R. 717, 757 (Bankr. S.D.N.Y. 2021). Movants, on a motion to dismiss, fail to meet their burden as to *either* requirement. Accordingly, this Court should deny the Motion.

## I.     MALLINCKRODT'S SHARE REPURCHASES ARE NOT QUALIFYING TRANSACTIONS

20.     Movants are not entitled to dismissal under § 546(e) because they cannot satisfy their burden to show that the repurchases qualify as "settlement payments" or that they were made "in connection with a securities contract." 11 U.S.C. § 546(e).

### A.     The Share Repurchases Do Not Constitute a "Settlement Payment" Because They Were Void *ab Initio* Under Irish Law

21.     Transfers to repurchase or redeem a company's shares do not qualify as a "settlement payment" where those transfers are void under applicable law. *Enron Corp. v. Bear, Stearns Int'l Ltd.* (*In re Enron Corp.*), 323 B.R. 857, 877 (Bankr. S.D.N.Y. 2005); *cf. also Cooper v. Centar Invs. (Asia) Ltd* (*In re TriGem Am. Corp.*), 431 B.R. 855, 865 (Bankr. C.D. Cal. 2010)

(relying on *Enron* in refusing to apply § 546(g) swap agreement safe harbor where transaction was structured to try to evade Korean law); Barbara Black, *Corporate Dividends & Stock Repurchases* § 6:19 (Feb. 2022 Update) ("An agreement by a corporation to purchase its own shares is void and unenforceable if the statute prohibits the corporation from purchasing its shares.").  The relevant question is whether "there is a valid underlying securities transaction from which a settlement payment can flow." *Enron*, 323 B.R. at 877.  If not, "there is no settlement payment to which to apply the protection of section 546 of the Bankruptcy Code." *Id*.  The *Enron* court found that, when distributions from an insolvent corporation are "prohibited" and considered void under the applicable law, the distributions are "a complete nullity, [and] there would be no resulting settlement payment." *Id.* at 876.

### 1. Irish Law Governed Mallinckrodt's Share Repurchase Program

22.     Under the internal affairs doctrine, the law of the state of incorporation governs affairs involving a corporation's relationships to its shareholders, including share repurchases or redemptions. *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 843-44 (3d Cir. 2005) (law of state of incorporation governs questions relating to a corporation's share redemptions); *Castel S.A. v. Wilson*, No. CV 19-09336-DFM, 2023 WL 6295774, at *32 (C.D. Cal. Sept. 27, 2023); (holding that the law of the state of incorporation governed a dispute regarding repurchase or redemption of stock); *100079 Canada, Inc. v. Stiefel Laboratories, Inc.*, No. 11-22389-CIV-SCOLA, 2011 WL 13116079, at *9 (S.D. Fla. Nov. 30, 2011) (same); Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) (law of the state of incorporation governs a corporation's purchase or redemption of outstanding shares of its stock).

23. Mallinckrodt was formed and registered as a public limited company ("**PLC**") under the laws of the Republic of Ireland on January 9, 2013. Harkin Decl. ¶ 4.[9] Accordingly, under the internal affairs doctrine, Irish law applied to Mallinckrodt's Share Repurchase Program.

> **2. Under Irish Law, Mallinckrodt Was Required to Fund Its Share Repurchases from Profits Available for Distribution, or Else the Share Repurchases Were Void**

24. At the time of the share repurchases, the Companies Act 2014 of Ireland ("**Companies Act**") applied to Mallinckrodt. Harkin Decl. ¶ 8. Section 105 of the Companies Act provides that an Irish PLC may purchase or redeem its shares only if, *inter alia*, the purchases or redemptions are funded out of profits available for distribution. Companies Act § 105(2); Harkin Decl. ¶¶ 9-10. "Profits available for distribution" are a company's "accumulated, realised profits, so far as not previously utilised by distribution or capitalisation, less its accumulated, realised losses, so far as not previously written off in a reduction or reorganisation of capital duly made." Companies Act § 117(2); Harkin Decl. ¶ 11. If the share repurchase or redemption does not comply with section 105 of the Companies Act, the share repurchase transaction is "**void**" under Irish law. Companies Act § 102(3) (emphasis added); Harkin Decl. ¶ 13 (emphasis added).

25. Irish case law clarifies that the profits available for distribution "must mean profits calculated in accordance with the relevant applicable accountancy standards." *In re Irish Life & Permanent Plc* [2009] IEHC 567 [H. Ct.] § 7.10 (Ir.);[10] *see also Wilson (Inspector of Taxes) v Dunnes Stores (Cork) Ltd* [1976] WJSC-HC 1470 [H. Ct.] (Ir.) (concluding the proper interpretation of the term "profits" must be determined by the context in which it is used).[11] For Mallinckrodt, those standards were the United States Generally Accepted Accounting Principles

---

[9] Citations to "**Harkin Decl.**" refer to the Declaration of Anne Harkin, annexed hereto as **Exhibit 1**.

[10] A copy of the *Irish Life* decision is annexed hereto as **Exhibit 2**.

[11] A copy of the *Wilson* decision is annexed hereto as **Exhibit 3**.

("**U.S. GAAP**"), because, at the time of the Share Repurchase Program, Mallinckrodt filed consolidated group financial statements that it prepared in accordance with U.S. GAAP. *See* Companies Act § 279 (permitting an Irish company to avail itself of U.S. GAAP where the company's securities are listed on U.S. stock exchanges for a transitional period ending December 31, 2020); Shaked Decl. ¶ 33 & n.35.[12] The Mallinckrodt entities' individual financial statements were prepared in accordance with the Irish Generally Accepted Accounting Principles ("**Irish GAAP**"), which is the Financial Reporting Standard applicable in the U.K. and Republic of Ireland ("**FRS 102**").[13]

### 3. *Mallinckrodt's Share Repurchases Were Void Because It Did Not Have Profits Available for Distribution When It Made Those Repurchases*

26. Under Irish law, Mallinckrodt's share repurchases were void *ab initio* because, when it engaged in those repurchases, it did not have profits available for distribution. Am. Compl. ¶¶ 327-42; Shaked Decl. ¶¶ 99-103.

27. Under U.S. GAAP, Mallinckrodt's opioid liabilities constituted "probable" and "reasonably estimable" contingent liabilities that it was required to, but did not, account for in its financial statements. Shaked Decl. ¶¶ 4, 41, 47, 104. (FRS 102 has or applies a substantially similar standard looking to whether the liabilities are probable and reasonably estimable.[14]) When

---

[12] Citations to "**Shaked Decl.**" refer to the Declaration of Israel Shaked, annexed hereto as **Exhibit 4**.

[13] *See* Harkin Decl. ¶ 20. The Mallinckrodt entities' individual financial statements were prepared in accordance with an older version of Irish GAAP for the financial years ending September 26, 2014 and September 25, 2015, and in accordance with FRS 102 for the financial years ending September 30, 2016 and December 29, 2017. *Id.* In addition, on June 29, 2017, Mallinckrodt filed interim accounts for the period up to March 31, 2017, which were prepared in accordance with FRS 102. *Id.* The section relating to recognition of liabilities of uncertain timing or amount (Section 21 of FRS 102) did not change the existing rules of Irish GAAP. *See* Declaration of Damien Malone, annexed hereto as **Exhibit 5** ("**Malone Decl.**"), ¶ 11.

[14] *See* Malone Decl. ¶ 5; Shaked Decl. ¶¶ 32-33. Indeed, FRS 102 has a lower threshold for determining "probable," because it is defined under those statutes as "more likely than not." Malone Decl. ¶ 7; Shaked Decl. ¶ 32.

the opioid liabilities are correctly accounted for, Mallinckrodt did not have profits available for distribution when it engaged in the share repurchases. *Id.*

28.     In his declaration, Professor Israel Shaked explains that "according to U.S. GAAP, a company is required to accrue a loss for a contingent liability if, based on information available at the time, it is probable that a liability will be incurred and the amount of that liability is reasonably estimable." Shaked Decl. ¶ 31. He concludes that Mallinckrodt's liabilities were probable when Mallinckrodt engaged in its share repurchases. *Id.* ¶¶ 36-46.

29.     Professor Shaked finds that, based on information available to it at the time, Mallinckrodt's opioid liabilities were reasonably estimable when it engaged in the share repurchases. Shaked Decl. ¶¶ 47-84. He estimates that Mallinckrodt's opioid liabilities as of December 31, 2015, were between $49.0 billion and $77.1 billion. *Id.* ¶ 72. Additionally, he estimates that Mallinckrodt's opioid liabilities as of December 31, 2016 were between $54.7 billion and $84.7 billion. *Id.* ¶ 76. Further, he estimates that Mallinckrodt's opioid liabilities as of December 31, 2017, were between $58.6 billion and $89.6 billion. *Id.* ¶ 81.

30.     Professor Shaked concludes that Mallinckrodt's retained earnings each year is the best measure of its profits available for distribution. Before accounting for opioid liabilities, Mallinckrodt's retained earnings were –$193 million in 2014, $250 million in 2015, $529 million in 2016, $2.589 billion[15] in 2017, and –$1.018 billion in 2018. *Id.* ¶ 102. Each year, Mallinckrodt's profits available for distribution were significantly below its probable and reasonably estimable opioid liabilities, as the following table shows:

---

[15]    Moreover, in fiscal year 2017, at least $1.5 billion of the retained earnings were due to a one-time recognized income tax benefit and were not profits available for distribution. *See* Mallinckrodt plc, Annual Report (Form 10-K), at 49-50, 101 (Dec. 29, 2017).

| ($ Millions) | As of December, | | | | |
|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 |
| Retained Earnings | $ (193) | $ 250 | $ 529 | $ 2,589 | $ (1,018) |
| - Adjustment for one-time, non-cash Item | - | - | - | (1,055) | (1,055) |
| - Opioid Liability | (44,633) | (48,956) | (54,678) | (58,611) | (58,611) |
| Profits Available for Distribution | (44,827) | (48,706) | (54,149) | (57,077) | (60,683) |

31.     Professor Shaked thus summarizes his conclusions as follows:[16]

(a)     At the time Mallinckrodt repurchased shares, Mallinckrodt's opioid liabilities were probable.

(b)     At the time Mallinckrodt repurchased shares, Mallinckrodt's opioid liabilities were reasonably estimable.

(c)     As Mallinckrodt's opioid liabilities were probable and reasonably estimable, the Company should have accrued a contingent liability.

(d)     If Mallinckrodt had correctly accrued a contingent liability at the time of the share repurchases, Mallinckrodt would not have had sufficient profits available for distribution to conduct the share repurchases.[17]

(e)     Mallinckrodt repurchased over $1.5 billion of its own shares without sufficient profits available for distribution to do so.

32.     Because Mallinckrodt did not have profits available for distribution from which to fund its share repurchases, its entire Share Repurchase Program was void *ab initio* under Irish law. Thus, under *Enron*, Mallinckrodt's share repurchases did not constitute a "settlement payment" under § 546(e).  Movants therefore lack a qualifying transaction and do not have the benefit of the § 546(e) safe harbor.

---

[16]     Shaked Decl. ¶ 4.

[17]     In 2014 and 2018, Mallinckrodt did not have profits available for distribution even before accounting for opioid liabilities.

33. Movants brought a motion to dismiss. On such a motion, the Court reviews the sufficiency of the pleading and ordinarily does not look beyond the four corners of the pleading. If, however, this Court decides to treat the Motion as a motion for summary judgment, the Court should deny summary judgment because the Trust has identified sufficient evidence to show, at the very least, a genuine dispute of material facts. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact . . . . [The court] view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor.") (internal quotation marks and citations omitted). Thus, even if treated as a motion for summary judgment, the Motion should be denied.

### 4. The Amended Complaint Alleges Facts Sufficient to Support a Reasonable Inference That the Share Repurchases Were Void Under Irish Law.

34. The Amended Complaint alleges facts sufficient to support a reasonable inference that Mallinckrodt was deeply insolvent when it engaged in the share repurchases because of opioid liabilities that had already accrued and should have been accounted for under applicable standards. *See Schuchardt*, 839 F.3d at 347 (reversing dismissal where there were sufficient facts to render allegations plausible); *see also* Am. Compl. ¶¶ 231, 241, 251, 257.[18] Indeed, as the Amended Complaint points out, in October 2020, Mallinckrodt itself estimated that it had opioid-related liabilities "in excess of $30 billion" based on settlements it had entered into before filing chapter 11. Am. Compl. ¶ 264.[19]

---

[18] *See also* The Associated Press, *Painkiller's Maker Settles Complaint*, N.Y. Times (May 9, 2007), https://www.nytimes.com/2007/05/09/business/09purdue.html.

[19] *See also In re Mallinckrodt, plc*, No. 20-12522, (Bankr. D. Del. Dec. 6, 2021) Hr'g Tr. 63:3-5.

35.     Based on facts alleged in the Amended Complaint, "in relation to Mallinckrodt's reported assets, the Opioid Claims arising against the Debtors, including disputed and contingent claims, rendered the Mallinckrodt enterprise insolvent, on a balance sheet basis, no later than by 2010." Am. Compl. ¶ 262.  Mallinckrodt's opioid liability at the time of its Share Repurchase Program was between $67 billion and $700 billion.  *Id.* ¶¶ 265-67.  The Amended Complaint alleges that "no matter how one measures Mallinckrodt's opioid liabilities during 2015-2018, the liabilities dwarf any plausible estimation of Mallinckrodt's enterprise value, which irrefutably demonstrates the substantial degree of Mallinckrodt's insolvency." *Id.* ¶ 268.[20]

36.     The Amended Complaint further alleges that the share repurchases were made in violation of Irish law.  *Id.* ¶¶ 317-18.  It alleges that Mallinckrodt's management undertook extraordinary efforts to find cash from which to fund its share repurchases.  *Id.* ¶¶ 327-42.  In particular, Mallinckrodt took on intercompany loans and orchestrated complex intercompany transactions to fund its Share Repurchase Program because it did not have sufficient cash on hand to do so.  *Id.* ¶ 327.  The Amended Complaint alleges that Mallinckrodt was insolvent and that the Mallinckrodt board of directors and its officers knew or should have known it was insolvent when it engaged in the share repurchases.  *Id.* ¶ 356.  Under the applicable motion to dismiss standard, the Amended Complaint pleads sufficient facts to raise a reasonable inference and plausible case that the share repurchases were void *ab initio* under Irish law.

**B.      Mallinckrodt's Share Repurchases Were Not Transfers Made "in Connection with a Securities Contract"**

37.     For the same reasons noted above, Movants cannot establish that Mallinckrodt's share repurchases were "transfer[s] made . . . in connection with a securities contract[.]"  11 U.S.C.

---

[20]   *See also* Opinion, *Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc)*, No. 22-50433-JTD (Jan. 18, 2024), D.I. 57 ("**Covidien Opinion**") at 59 (holding that Mallinckrodt's insolvency was sufficiently pled to withstand motion to dismiss).

§ 546(e).  In *Enron*, the court examined whether the safe harbor in § 546(g) protected a transfer allegedly made "in connection with a swap agreement."   323 B.R. at 878 (quoting 11 U.S.C. § 546(g)).  Because the entire transaction was void under applicable law, the "in connection with" language in § 546(g) did not apply.  323 B.R. 878 ("If it is determined that the transaction violated Oregon law, the agreement would be a nullity and have no legal effect.  As a consequence, the transfer would not have been made under or in connection with a swap agreement and it would not be protected from avoidance under section 546(g) of the Bankruptcy Code.").  This reasoning applies with equal force to the "in connection with" language in § 546(e).  *See id.* at 877 ("An agreement that is void under controlling state law has no legal force or effect and carries no enforceable obligations.").  Because Mallinckrodt's share repurchases were nullities, there were no transfers made in connection with any valid securities contract.

38.    In addition, Movants cannot point to the purchase agreements that Mallinckrodt entered into with its brokers, Goldman, Sachs & Co. and Morgan Stanley & Co., to implement the Share Repurchase Program, as a qualifying "securities contract."  *See* Mot. ¶ 35.  This is because Movants were not parties to those agreements.  *See* Am. Compl. ¶ 274.  Movants also lack the requisite connection with the purchase agreements because those agreements do not reference any specific share repurchases, including any specific repurchase trades that Movants were involved with or received proceeds from.  *See Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371, 389-90 (Bankr. D. Del. 2022) (Owens, J.) (refusing to dismiss avoidance claims on the basis of an alleged securities agreement under § 546(e) where (1) the transfers were made three months after the agreement, (2) the agreement did "not reference a contemplated distribution," and (3) the trustee did not allege that the distribution was made from

the proceeds of sale governed by the agreement).[21]   As such, Movants have not established how the share repurchase proceeds received by them were in connection with the purchase agreements.

39.     For all these reasons, Movants have not established that the repurchase trades from which they received proceeds were a transfer made in connection with a securities contract. Accordingly, without a qualifying transaction, the § 546(e) safe harbor is unavailable to them, and their Motion should be denied.

### C.     Irish Law Applies to the § 546(e) Analysis

40.     Movants argue that the Court may look to only federal law, not Irish law, in determining whether the share repurchases were qualifying transactions (Mot. ¶ 46), but their argument is unavailing.   Courts evaluating securities transactions under § 546(e) have consistently looked to applicable nonbankruptcy law.   *See Enron*, 323 B.R. at 870; *Contemporary Indus. Corp v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009); *TriGem Am. Corp.*, 431 B.R. at 865 ("Congress . . . had no intent to shield transactions illegal under local law[.]").

41.     In support of their argument, Movants cite to cases in which § 546(e) was not at issue.   The question in *In re Columbia Gas Systems Inc.* was whether federal rebates held by the debtor but intended for customers were property of the estate.   997 F.2d 1039, 1055-56 (3d Cir. 1993).   There, the Third Circuit ruled that federal common law applied to determine whether the debtor held an interest in those federal rebates.   *Id.* at 1055.[22]   In *Whyte v. Barclays Bank PLC*, the

---

[21]   *See also Indus. Enters. of Am., Inc v. Tabor Acad. (In re Pitt Penn Holding Co.)*, No. 09–11475 (BLS), 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) (refusing to dismiss claim where it was unclear whether transfers were made in connection with a securities contract or as a charitable gift).

[22]   Movants also cite *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 236 (Bankr. N.D. Tex. 2009), a case resolving an objection to an administrative expense claim, but that case turned on whether similarly situated creditors would be treated the same or differently based on the definition of "goods," a term not defined in the Code, and the court based its decision on "[o]ne of the cardinal rules of bankruptcy law . . . that similarly situated claims should receive the same treatment."   At issue in this Proceeding is not whether similarly situated creditors are receiving equal treatment; the Trust is pursuing Movants and other defendants on claims for fraudulent transfer, where the challenged transactions were void *ab initio* under applicable law.

court held that the § 546(g) safe harbor impliedly preempted the state-law fraudulent transfer claims that had been assigned to a post-confirmation litigation trust. 494 B.R. 196, 201 (S.D.N.Y 2013).[23] None of these cases fit the circumstances here; they are inapposite.

### D. *Enron* Remains Good Law

42. Contrary to Movants' protests, Third Circuit jurisprudence does not contradict *Enron*. *See* Mot. ¶ 39. Movants' reliance on *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 878 F.2d 742 (3d Cir. 1989) is misplaced. In *Bevill*, the narrow issue before the Third Circuit was whether delivery of securities, in connection with certain repo transactions, qualified as a "settlement payment" under § 741(8) of the Code. *Id.* at 752-53. *Bevill* did not address whether the transactions were void under applicable law or the effect of a transaction that was void under such law. *See id.* at 753. Similarly, *Lowenschuss v. Resorts International, Inc. (In re Resorts International, Inc.)*, 181 F.3d 505 (3d Cir. 1999), a case explicitly overruled by *Merit Management Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018), is of no help to Movants. In that case, the court analyzed whether a contract was illegal in the context of an alternative state-law remedy, not in relation to the fraudulent transfer claim. *Resorts*, 181 F.3d at 512. And the Third Circuit held that under controlling state law, "courts will leave the parties to an executed illegal contract as they are[,]" unless the parties are found not to be *in pari delicto*. *Id.* In other words, under applicable law, the arguably illegal contract at issue was not void.

43. Additionally, Movants are incorrect in asserting that *Enron* is no longer good law in the Second Circuit. None of the Second Circuit cases cited by Movants criticize, or even

---

[23] In addition, Movants cite two *criminal* cases for the proposition that courts should avoid absurd or self-defeating results. *See United States v. McKie*, 112 F.3d 626, 374 (3d Cir. 1997); *Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019). Movants do not explain how relying on the well-established internal affairs doctrine is absurd or self-defeating. In any event, the cases are not relevant. In *McKie*, the Third Circuit merely held the interpretation of a criminal statute, which would require prosecutors to prove that no affirmative defense applied, resulted in an absurd outcome. 112 F.3d at 629-31. In *Quarles*, the Court found that a criminal defendant's proffered definition of "generic burglary" would have excluded many states' definition of burglary under a federal statute. 139 S. Ct. at 1879.

mention, *Enron*'s ruling that a transaction void under applicable law is not a settlement payment. *See Kirschner v. Robeco Cap. Growth Funds (In re Nine W. LBO Sec. Litig.)*, 87 F.4th 130 (2d Cir. Nov. 27, 2023); *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014); *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors Recovery Corp.)*, 651 F.3d 329 (2d Cir. 2011). Moreover, as the Second Circuit in *Nine West* recognized, one of the "crucial" powers and "core principles" in the Bankruptcy Code relates to the trustee's power "to set aside or avoid certain transfers and recoup their value for the estate." 87 F.4th at 146. Accordingly, the Second Circuit held that accepting the defendants' broad "interpretation [with respect to the definition of a "financial institution"] would be to undermine the avoidance powers that are so crucial to the Bankruptcy Code." *Id.* Finally, in *Madoff*, the trustee never argued that the underlying securities contracts identified by defendants were void. *See* 773 F.3d at 417The trustee argued that Madoff failed to abide by the terms of the contract when he engaged in a Ponzi scheme instead of trading securities under the terms of the contract. *Id.*

44.    Applying *Enron* here—as this Court should—would not be inconsistent with the Bankruptcy Code. Mot. ¶ 41. Movants argue that, since § 546(e) is a defense to a fraudulent transfer claim, it cannot follow that § 546(e) can be defeated by an allegation of insolvency. *Id.* This argument misses the mark. Here, there is no qualifying transaction under § 546(e) because the entire share repurchase transaction is void under applicable law. "Congress . . . had no intent to shield transactions illegal under local law[.]" *TriGem Am. Corp.*, 431 B.R. at 865.

45.    Movants assert that depriving them of their § 546(e) defense in the face of repurchase trades voided under Irish law would undermine market stability. Mot. ¶ 41. Their argument lacks merit and is refuted by historical experience. *Enron* was decided in 2005. But the

death knell of § 546(e) has not sounded, markets have not collapsed, and the parade of horribles envisioned by Movants has not materialized.  Requiring Mallinckrodt to honor the legal requirements of its place of incorporation supports the rule of law rather than undermining it.

### E.    The Trust Did Not Waive Any Arguments

46.    Movants' waiver arguments are without merit.  From the start, the Trust objected to including § 546(e) defenses in the Protocol on the ground that they involved complex legal and factual determinations that required complex discovery and expert testimony and were therefore not appropriate for a protocol.  Adv. D.I. 141, ¶¶ 47, 51.  After the Court directed the parties to negotiate a protocol that included § 546(e) defenses, the Trust insisted on language in the Protocol to ensure that nothing in the Protocol would waive or inhibit any of the Trust's rights and defenses.  *See* Protocol ¶¶ 11(c), 15.  For example, paragraph 11(c) of the Protocol provides in relevant part: "For the avoidance of doubt, . . . Plaintiff's [*i.e.*, the Trust's] rights to oppose a Protocol-Based Motion *on any grounds* . . . are *hereby preserved*."  *Id*. ¶ 11(c) (emphasis added).  Accordingly, there can be no implied waiver by the Trust when the Protocol itself specifies that the Trust's rights to oppose Movants' § 546(e) defenses "on any grounds" are "preserved."

47.    Movants argue that "the Protocol Order nowhere suggests that a Defendant presenting a § 546(e) defense would also need to address whether the Share Repurchases were qualifying transactions."  Mot. ¶ 16.  Whether or not the Protocol addresses qualifying transactions has no bearing on whether they are required to establish a § 546(e) defense.  Paragraph 15 of the Protocol expressly provides:   "Nothing in this Protocol is intended, or shall be deemed or construed, to alter any party's burden of proof or persuasion with respect to any claim or defense (including without limitation, the Defenses) or to alter the legal standard for any motion filed in the Adversary Proceeding."  Section 546(e) unambiguously requires that transactions be qualifying

transactions.  Nothing in the Protocol allows Movants to ignore half of the safe-harbor statute.  To the contrary, paragraph 15 specifies the opposite.  Moreover, silence would not equal waiver in any event.  *Off. & Pro. Emps. Int'l Union v. Nat'l Labor Rels. Bd.*, 419 F.2d 314, 321 (D.C. Cir. 1969) (stating that "contract silence without more is not sufficient to establish waiver"); *Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, No. 23-CV-3005 (JSR), 2023 WL 7498071, at *6 (S.D.N.Y. Nov. 14, 2023) ("It is well-established that waiver cannot be inferred from mere silence[.]") (internal quotation marks omitted).  In addition, Movants expressly acknowledged their burden to establish qualifying transactions in their Protocol submissions.  *See supra* ¶¶ 3, 8.

48.     Citadel and Susquehanna next argue that waiver occurred because the Trust was required to raise the qualifying transaction argument within 45 days and that it waited until 117 and 139 days respectively to do so.  Motion ¶ 51.  Movants also complain that the Trust requested information unrelated to the qualifying transaction issue.  *Id.*  This argument misstates the facts and the terms of the Protocol.  In no instance did the Trust fail to abide by the procedures set forth in the Protocol.  The Protocol gives the Trust 45 days to respond to an initial request for dismissal, and it may do so with a request for additional information.  Protocol ¶ 9.  The Protocol has no time limit on when defendants may provide that information (or state that they are refusing to provide it).  *Id.*  Here, despite their suggestions that the Trust was dragging its feet, Citadel and Susquehanna waited 48 and 28 days respectively to respond to the Trust's information requests.  Movants cannot use their *own* delay in responding to the Trust as a basis for arguing waiver.

49.     Movants next argue that the Trust should not have made information requests about Movants' status as financial participants if the Trust did not believe there was a qualifying transaction.  Mot. ¶¶ 19, 25.  This argument ignores the fact that the Trust has a right to fully

investigate each claim for dismissal.  *See infra* part II.  The fact that the Trust has one ground to decline dismissal does not prohibit it from seeking information related to other grounds.

### F.     The Trust Satisfied the Notice Requirements of Rule 44.1.

50.     Movants' argument that the Trust failed to provide sufficient notice under Civil Rule 44.1 is without merit.  Mot. ¶ 52.  Rule 44.1 provides, in pertinent part, that a "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1.  The notice required by the rule is intended to "avoid unfair surprise" and "is sufficient if it allows the opposing party time to research the foreign rules." *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 575 F.3d 491, 496-97 (5th Cir. 2009).  Courts impose a low bar to satisfy the notice requirement and routinely hold that providing notice in the later stages of litigation—considerably later in the proceedings than the notice provided here—complies with Rule 44.1.  *See, e.g.*, *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 n.4, 267 (S.D. Tex. 1996) (holding that notice requirement of Rule 44.1 was satisfied where notice was given "a full three years and nine months after the original complaint was filed" and "plaintiffs waited until the eve of trial to give notice"); *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004) (notice provided at pretrial conference satisfied Rule 44.1); *Canadian Imperial Bank of Com. v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995) (holding that raising issue of foreign law in motion for summary judgment constituted reasonable notice under Rule 44.1).

51.     Here, the Trust provided written notice to Movants that it intended to rely on Irish law on at least three occasions:  (a) the Trust's letter to Susquehanna dated October 16, 2023;[24]

---

[24]     *See* Adv. D.I. 216, Ex. 11 at 2-3.

(b) the Trust's letter to Citadel dated October 27, 2023;[25] and (c) the Amended Complaint filed on October 27, 2023.[26]  As such, notice was provided at least *six weeks* before the Motion was filed on December 8, 2023, and at the early stages of this Proceeding (*e.g.*, before any pretrial conference or any dispositive motion practice).  In addition, since there was no deadline for Movants to assert a motion to dismiss, they could have taken as much time as was needed to evaluate the Irish law issue before bringing their Motion.  Movants do not—because they cannot— allege that they suffered unfair surprise or prejudice as a result of the timing of the Trust's notice.[27]

52.     Under Rule 44.1, the Trust was entitled to conclude its due diligence on complex issues relating to § 546(e), including the potential applicability of Irish law, before providing notice of its intent to rely on Irish law.  *See* Fed. R. Civ. P. 44.1 (advisory committee's notes) ("The new rule does not attempt to set any definite limit on the party's time for giving the notice of an issue of foreign law; in some cases the issue may not become apparent until the trial and notice then given may still be reasonable.").  There is no support whatsoever for Movants' assertion that the Trust was somehow required to provide notice "in its Complaint, during the negotiation of the Protocol Order, or at any time prior to Moving Defendants' completion of their submissions under the Protocol Order."  Motion ¶ 52.[28]  In sum, the Trust complied with Rule 44.1's notice requirement, and the Court should reject Movants' arguments to the contrary.

---

[25]   *See* Adv. D.I. 216, Ex. 6 at 2-3.

[26]   *See* Adv. D.I. 209, ¶ 317 ("Mallinckrodt conducted the Share Repurchase Program in violation of Irish law."). That notice complies with Rule 44.1.  *See In re Griffin Trading Co.*, 683 F.3d 819, 822-23 (7th Cir. 2012) (holding that "trustee's own complaint sufficed to give notice about the applicability of foreign law" when the complaint "explicitly cite[d] Park's trading activity in London as the precipitating event, and point[ed] to the transfer to MeesPierson, a Netherlands entity that used a German bank, as the cause for liability").

[27]   *See Thyssen Steel Co.*, 911 F. Supp. at 267 (holding that sufficient notice was provided under Rule 44.1 where defendant did "not allege unfair surprise" and did "not present evidence that [the] notice in any way hindered its ability to present a defense").

[28]   The sole case Movants cite to support their notice argument is easily distinguishable.  In *Al Maya Trading Establishment v. Global Export Marketing Co.*, the respondent provided oral notice of intent to rely on foreign law at the pretrial conference, which occurred two months before the trial date, after a motion to dismiss had been litigated,

## II.     CITADEL AND SUSQUEHANNA HAVE FAILED TO MEET THEIR BURDEN TO SHOW THEY ARE FINANCIAL PARTICIPANTS

53.     Neither Citadel nor Susquehanna has provided documentation sufficient prove that they are financial participants under 11 U.S.C. § 546(e).  To qualify as a "financial participant," a defendant bears the burden of establishing either "at the time it enters into a securities contract . . . at the time of the date of the filing of the petition," or "on any day during the 15-month period preceding the date of the filing of the petition" that the defendant "has one or more [qualifying] agreements or transactions[29] . . . of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding . . . or has gross mark-to-market positions of not less than $100,000,000," excluding any agreements with affiliates.  11 U.S.C. § 101(22A)(A).

54.     Both "notional principal amount outstanding" and "actual principal amount outstanding" refer to the nominal or face amount owed under a contract.  "Notional principal amount" is used in certain swap agreements and other risk management products.  Leslie B. Samuels & Patricia A. Brown, *Observations on the Taxation of Global Securities Trading*, 45 TAX L. REV. 527, 532 n.15 (1990).  In such agreements, the parties agree to make periodic payments determined by applying a fixed or floating interest rate to a specified notional principal amount.  *Id.*  The notional principal amount serves only as a reference for determining a stream of payments and is generally not an amount actually borrowed or loaned between the parties, which is why it is referred to as "notional."  *Id.*  As the notional amount is used to calculate payments due under

---

and after the court had approved a case management plan.  No. 14 Civ. 275(PAE), 2014 WL 3507427, at *3-5 (S.D.N.Y. July 15, 2014).  The respondent also failed to provide *written* notice as required by the Rule.  *Id.*  In contrast, the Trust provided written notice before any pretrial conference and any dispositive motion practice.

[29]     Those agreements are "securities contracts, as defined in section 741(7)," "commodity contracts, as defined in section 761(4)," "forward contracts," "repurchase agreements," swap agreements," or "master netting agreements[.]" 11 U.S.C. § 561(a)(1)-(6).

an instrument, it is a specific value defined in the instrument and not a valuation of any assets or collateral associated with the instrument.

55.     In a similar vein, "actual" principal amount outstanding refers to the face amount owing under a contract rather than the market value of any assets transferred or sold under the contract.  *See Principal*, Black's Law Dictionary (11th ed. 2019) (defining "principal *n.*" as "5. [t]he amount of a debt, investment, or other fund, not including interest, earnings, or profits").  An obvious example would be the principal amount of a promissory note that would reflect the total amount borrowed, not the accrued interest or the value of the collateral pledged to secure the note.

56.     Unlike the notional or actual principal amounts outstanding, which may be ascertainable from the face of an instrument, an entity's "gross mark-to-market position" cannot be determined by simply reviewing the terms of an instrument.  Rather, determining the gross mark-to-market position may require reviewing trade confirmations and other records, such as hedge books, as of specific dates.  *See Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*, 625 B.R. 291, 303 (Bankr. D. Del. 2020) (describing the data an expert witness reviewed to determine value of defendant's mark-to-market positions).  Indeed, the valuation of an entity's mark-to-market positions requires expert testimony to calculate.  *See id.* at 303-04 (noting that defendant submitted expert testimony to establish gross mark-to-market positions, which included expert's analysis of books and trade confirmations).  Thus, the value of a defendant's gross mark-to-market position is a fact-intensive inquiry requiring expert analysis and is unsuitable for a motion to dismiss.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 709 n.9 (3d Cir. 1996).[30]

---

[30]     In fact, Judge Shannon denied a defendant's summary judgment motion on this very issue, finding a genuine issue of material fact existed regarding whether the defendant's expert had properly calculated the defendant's gross mark-to-market positions.  *See Samson Res. Corp.*, 625 B.R. at 303-04.  That the court later found against the plaintiff after a three-week trial on the merits that did not touch on the § 546(e) defense does not help Defendants in their quest for summary dismissal.  *See Kravitz v. Samson Energy Co (In re Samson Res. Corp.)*, No. 15-11934 (BLS), 2023 WL 4003815, at *1 (Bankr. D. Del. June 14, 2023).

57.     While Defendants are correct that the Protocol allows them to provide evidence to the Trust (Mot. ¶ 57), the Trust is not obligated to accept that evidence at face value or accept it as true as a matter of law.[31]  In fact, the Protocol expressly authorizes the Trust to request "additional information that [the Trust] believes, in good faith, is necessary for it to determine whether the Defendant has established the claimed Defense."  Protocol ¶ 9.  And, as discussed, the Protocol does not alter the burden of proof or persuasion on any issue.  *Id.* ¶ 15.  Because of the highly technical nature of the § 546(e) defense, which often requires expert testimony and survives summary judgment, the Trust understandably and in good faith asked for additional information from Movants that was relevant to their defenses.  *See* Adv D.I. 225-1 at 295-99 (information request to Citadel); *id.* at 365-68 (information request to Susquehanna).  The fact that Citadel was fined $7 million by the SEC as recently as September 23, 2023, for "incorrectly mark[ing] millions of orders"[32] additionally demonstrates why the Trust cannot take Citadel at its word but needs to exercise fiduciary care and ask for substantiation of the statements presented to it.

58.     In response to these information requests, Citadel provided three Excel spreadsheets purporting to show certain data relating to its outstanding repurchase, reverse repurchase, and options contracts as of December 31, 2019.  But it refused to provide any historical documents substantiating this data, such as underlying trade documentation and the relevant agreements themselves, including the repurchase and reverse repurchase agreements and the options contracts.  *See* Adv. D.I. 225-1 at 306-13.  Susquehanna did not provide any additional information at all.  *See id.* at 373-76.

---

[31]   The Trust's dismissal of seven defendants under the Protocol refutes the Movants' argument that the Trust's failure to dismiss them based on their supporting documentation renders the Protocol a nullity.  Moreover, the Protocol was designed to allow Defendants to move forward with certain affirmative defenses that were otherwise stayed by the Case Management Order.  Adv. D.I. 93 at 3.

[32]   *See* Press Release, SEC, *SEC Charges Citadel Securities for Violating Order Marking Requirements of Short Sale Regulations* (Sept. 22, 2023), https://www.sec.gov/news/press-release/2023-192.

59.     Throughout this process, Movants have ignored the fact that the Trust is a fiduciary seeking to avoid and recover fraudulently transferred funds for the benefit of opioid victims and other creditors, and that its commitments include verifying the accuracy of the information Movants provided under the Protocol.  But Movants' desire for summary dismissal cannot relieve them of their burden of proof and persuasion.  Protocol ¶ 15.  And Movants are not entitled to dismissal simply because they *say* they meet the requirements of § 546(e).  The Trust is entitled to test those representations.

60.     Movants are also incorrect as a matter of law that the Court can take judicial notice of their SEC filings for the truth of the matters asserted therein.  *See* Motion ¶¶ 58-60.  The cases that Movants cite are distinguishable from this Proceeding.  Judge Shannon in *Golden v. Community Health Systems, Inc. (In re Quorum Health Corporation)* acknowledged that, generally, courts take judicial notice of SEC filings "only to determine what the documents stated" and not for their truth.  No. 20-10766 (BLS), 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023).  Nevertheless, he took judicial notice of the contents of an SEC statement, relying on a footnote of a Third Circuit opinion where the historical fact of which the Third Circuit took judicial notice was not in dispute.  *See FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 151 n.5 (3d Cir. 2019).  Moreover, while the plaintiff in *Quorum* argued that the defendant could not rely on SEC filings at the motion to dismiss stage, the *plaintiff itself* offered one of the defendant's SEC filings for the truth of the matter asserted to challenge the defendant's assertion that the transfer in question was made in connection with a securities contract.  *Quorum*, 2023 WL 2552399, at *5. In other words, Judge Shannon simply refused to let the plaintiff have it both ways:  using the SEC filings when they supported the plaintiff and challenging the SEC filings when they supported the defendant.  That circumstance does not exist here.

61.     Additionally, while the Third Circuit in *Shire* cited *Oran v. Stafford* to support its reliance on the SEC filing, the *Oran* court, in analyzing whether taking judicial notice of SEC filings was proper, stated that it found "persuasive" the reasoning of the Second Circuit that SEC filings are "relevant not to prove the truth of their contents but only to determine what the documents stated."  226 F.3d 275, 289 (3d Cir. 2000) (*quoting Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).  Furthermore, in *Oran*, it was the plaintiffs who were using the SEC filings as part of their case-in-chief, and the *Oran* court acknowledged that—unlike here—"there is no risk of unfair prejudice or surprise . . . because defendants do not object to our considering the proffered forms."  226 F.3d at 289.  Here, in contrast, Movants are relying on SEC filings to dismiss the Trust's claims against it *at the pleadings stage*, and the Trust objects to Movants using those filings for the truth of the matters asserted, especially when the Trust has received insufficient additional evidence to test the accuracy of those statements.

62.     Instead, the operative standard when taking judicial notice of regulatory filings, such as SEC filings, is that those filings may be noticed for the fact that they contained certain information, but not for the truth of that information.  *Doe*, 30 F.4th at 342 (noting that on a motion to dismiss, the Third Circuit has considered "a public record . . . not for the truth of its contents, but rather as evidence of the information provided . . . .") (internal quotation marks and citation omitted); Covidien Opinion at 32 (not accepting SEC statements for the truth of the matter asserted).[33]  In sum, taking judicial notice of SEC filings does not mean that the contents of those filings can be accepted as true.

---

[33]     *See also KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*, 769 F.3d 455, 467 (6th Cir. 2014) ("Under this standard [for taking judicial notice], we could take notice only of the fact that [a company] filed the [statement with the SEC] and what that filing said, but we could not consider the statements contained in the document for the truth of the matter asserted[.]"); *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 830 (8th Cir. 2003) ("courts have taken judicial notice of SEC filings if not offered for the truth of the matters asserted therein" (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001)); *Mervyn's LLC v. Lubert–Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 496 (Bankr. D. Del. 2010) (taking judicial notice of

## CONCLUSION

For all the reasons explained above, the Court should deny the Motion.

Dated: January 19, 2024
Wilmington, Delaware

Respectfully submitted,

**COLE SCHOTZ P.C.**

/s/ Justin R. Alberto
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Anthony De Leo, Esq.
(admitted *pro hac vice*)
1325 Avenue of the Americas
19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
adeleo@coleschotz.com

*Co-Counsel to the Opioid*
*Master Disbursement Trust II*

**CAPLIN & DRYSDALE, CHARTERED**

Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
Quincy M. Crawford, III, Esq.
(admitted *pro hac vice*)
Serafina Concannon, Esq. (admitted *pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com
mcrawford@capdale.com
sconcannon@capdale.com

*Co-Counsel to the Opioid*
*Master Disbursement Trust II*

---

press releases as public documents but not considering them for their truth or veracity) (citing *In re Nuvelo, Inc., Sec. Litig.*, No. C 07-4056 VRW, 2008 WL 5114325, at *2 (N.D. Cal. Dec. 4, 2008) (taking judicial notice of SEC filings but not for purposes of truth or veracity)).