## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MALLINCKRODT PLC, | : | Case No. 20-12522 (JTD) |
|  | : |  |
| Reorganized Debtor.[1] | : | (Jointly Administered) |
|  | : |  |
| OPIOID MASTER DISBURSEMENT TRUST II, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : | Adversary Proceeding |
|  | : | No. 22-50435 (JTD) |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT AS TO DEFENDANTS ROCK CREEK MB, LLC, RIEF TRADING LLC, GF TRADING LLC, AND RIEF RMP LLC

Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
COLE SCHOTZ P.C.
500 Delaware Avenue
Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Anthony De Leo
COLE SCHOTZ P.C.
1325 Ave. of the Americas
19th Floor
New York, New York 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393

Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Jeffrey A. Liesemer
(admitted *pro hac vice*)
Quincy M. Crawford, III
(admitted *pro hac vice*)
Serafina Concannon (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

*Co-Counsel to Plaintiff Opioid Master Disbursement Trust II*

Dated:  February 5, 2024

---

[1]  The Reorganized Debtor in this chapter 11 case is Mallinckrodt plc ("**Mallinckrodt**").  On May 3, 2023, the Court entered an order closing the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with Mallinckrodt, "**Debtors**").  A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt.  The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

I.      Mallinckrodt's Opioid-Related Misconduct and Share Repurchase Program ................... 3

II.     Movants' Dismissal Demands Under the Protocol ............................................................ 3

STANDARD OF REVIEW ...................................................................................................... 5

ARGUMENT ............................................................................................................................ 8

I.      Rock Creek, RIEF Trading, and GF Trading Have Failed to Meet Their Burden of
        Showing They Are Financial Participants .......................................................................... 8

        A.      Rock Creek, RIEF Trading, and GF Trading Have Failed to Meet Their Burden
                Because Their Documentation Is Insufficient ........................................................... 8

        B.      This Court Cannot Take "Judicial Notice" of Movants' Documents for the Truth of
                the Matters Asserted ................................................................................................ 11

        C.      Movants Improperly Seek to Evade Their Burden and Long-Established Legal
                Standards by Calling Their Motion to Dismiss a "Motion Pursuant to the Protocol"
                ................................................................................................................................. 12

II.     Mallinckrodt's Share Repurchases Are Not Qualifying Transactions.............................. 13

        A.      The Share Repurchases Do Not Constitute a "Settlement Payment" Because They
                Were Void *ab Initio* Under Irish Law ................................................................... 13

                1.      Irish Law Governed Mallinckrodt's Share Repurchase Program ..................... 14

                2.      Under Irish Law, Mallinckrodt Was Required to Fund Its Share Repurchases
                        from Profits Available for Distribution, or Else the Share Repurchases Were
                        Void........................................................................................................... 15

                3.      Mallinckrodt's Share Repurchases Were Void Because It Did Not Have Profits
                        Available for Distribution When It Made Those Repurchases ......................... 17

                4.      The Amended Complaint Alleges Facts Sufficient to Support a Reasonable
                        Inference That the Share Repurchases Were Void Under Irish Law ................. 19

        B.      Mallinckrodt's Share Repurchases Were Not Transfers Made "in Connection with a
                Securities Contract"................................................................................................. 21

        C.      Irish Law Applies to the § 546(e) Analysis ............................................................. 22

        D.      *Enron* Remains Good Law ..................................................................................... 23

        E.      The Trust Did Not Waive Any Arguments .............................................................. 25

        F.      The Trust Satisfied the Notice Requirements of Rule 44.1...................................... 28

CONCLUSION....................................................................................................................... 30

**Cases**

*100079 Canada, Inc. v. Stiefel Laboratories, Inc.*,
 No. 11-22389-CIV-SCOLA, 2011 WL 13116079 (S.D. Fla. Nov. 30, 2011) ........................14

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
 599 B.R. 730 (Bankr. S.D.N.Y. 2019) ......................................................................................9

*Al Maya Trading Establishment v. Glob. Export Mktg. Co.*,
 No. 14 Civ. 275(PAE), 2014 WL 3507427 (S.D.N.Y. July 15, 2014) ...................................29

*Alpizar-Fallas v. Favero*,
 908 F.3d 910 (3d Cir. 2018) .....................................................................................................6

*Arcelik A.S. v. E.I. du Pont De Nemours & Co.*,
 No. 15-961-LPS, 2018 WL 1401327 (D. Del. Mar. 20, 2018) ..............................................15

*Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P. (In re Bankr. Est. of Norske Skogindustrier ASA)*,
 629 B.R. 717 (Bankr. S.D.N.Y. 2021) ......................................................................................8

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*,
 878 F.2d 742 (3d Cir. 1989) ..............................................................................................23, 24

*Canadian Imperial Bank of Com. v. Saxony Carpet Co.*,
 899 F. Supp. 1248 (S.D.N.Y. 1995) ........................................................................................28

*Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*,
 No. 20-CV-189 (JSR), 2020 WL 5209822 (S.D.N.Y. Aug. 31, 2020) ...................................11

*Castel S.A. v. Wilson*,
 No. CV 19-09336-DFM, 2023 WL 6295774 (C.D. Cal. Sept. 27, 2023) ...............................14

*In re Columbia Gas Systems Inc.*,
 997 F.2d 1039 (3d Cir. 1993) ..................................................................................................23

*Connelly v. Lane Const. Corp.*,
 809 F.3d 780 (3d Cir. 2016) .....................................................................................................6

*Contemporary Indus. Corp v. Frost*,
 564 F.3d 981 (8th Cir. 2009) ...................................................................................................23

*Cooper v. Centar Invs. (Asia) Ltd (In re TriGem Am. Corp.)*,
 431 B.R. 855 (Bankr. C.D. Cal. 2010) ........................................................................14, 23, 25

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
    839 F.3d 242 (3d Cir. 2016) ........................................................................6

*Deere & Co. v. AGCO Corp.*,
    No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019) ....................6

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3d Cir. 2022) .......................................................................6

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005) ................................................ *passim*

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors
    Recovery Corp.)*, 651 F.3d 329 (2d Cir. 2011) .......................................24

*In re Griffin Trading Co.*,
    683 F.3d 819 (7th Cir. 2012) ....................................................................28

*Hubay v. Mendez*,
    500 F. Supp. 3d 438 (W.D. Pa. 2020) .......................................................12

*Indus. Enters. of Am., Inc v. Tabor Acad. (In re Pitt Penn Holding Co.)*,
    No. 09–11475 (BLS), 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) ...........................22

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) ........................................................................6

*In re Irish Life & Permanent Plc*
    [2009] IEHC 567 [H. Ct.] (Ir.) ...................................................................16

*Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*,
    560 F.3d 935 (9th Cir. 2009) .....................................................................12

*Kirschner v. Robeco Cap. Growth Funds (In re Nine W. LBO Sec. Litig.)*,
    87 F.4th 130 (2d Cir. Nov. 27, 2023) ................................................24, 25

*Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*,
    625 B.R. 291 (Bankr. D. Del. 2020) ............................................................9

*Lindsay v. Penn. State Univ.*,
    No. 4:06-CV-01826, 2008 WL 1376273 (M.D. Pa. Apr. 9, 2008)...........12

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*,
    181 F.3d 505 (3d Cir. 1999)........................................................................24

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
    583 U.S. 366 (2018)....................................................................................24

*Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.),*
642 B.R. 371 (Bankr. D. Del. 2022) (Owens, J.)....................................................22

*Mut. Serv. Ins. Co. v. Frit Indus., Inc.,*
358 F.3d 1312 (11th Cir. 2004) ...........................................................................28

*Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela,*
575 F.3d 491 (5th Cir. 2009) ..............................................................................28

*Off. & Pro. Emps. Int'l Union v. Nat'l Labor Rels. Bd.,*
419 F.2d 314 (D.C. Cir. 1969) ............................................................................26

*Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc),*
No. 22-50433-JTD, 2024 WL 206682 (Bankr. D. Del. Jan. 18, 2024) ..................20

*Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.),*
496 F. Supp. 2d. 404 (D. Del. 2007).....................................................................15

*In re PHP Healthcare Corp.,*
128 F. App'x 839 (3d Cir. 2005) .........................................................................14

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC),*
773 F.3d 411 (2d Cir. 2014)...........................................................................24, 25

*In re Pilgrim's Pride Corp.,*
421 B.R. 231 (Bankr. N.D. Tex. 2009).................................................................23

*Prospect Cap. Corp. v. Credito Real USA Fin. LLC,*
No. 23-CV-3005 (JSR), 2023 WL 7498071 (S.D.N.Y. Nov. 14, 2023)............26, 27

*Quarles v. United States,*
139 S. Ct. 1872 (2019)........................................................................................23

*Reiter v. Sonotone Corp.,*
442 U.S. 330 (1979)..............................................................................................5

*Schuchardt v. President of the U.S.,*
839 F.3d 336 (3d Cir. 2016)..............................................................................6, 20

*Thomas v. Cumberland Cnty.,*
749 F.3d 217 (3d Cir. 2014)................................................................................19

*Thyssen Steel Co. v. M/V Kavo Yerakas,*
911 F. Supp. 263 (S.D. Tex. 1996) ..................................................................28, 29

*United States v. McKie,*
112 F.3d 626 (3d Cir. 1997)......................................................23

*Whyte v. Barclays Bank PLC,*
494 B.R. 196 (S.D.N.Y 2013)....................................................23

*Wilson (Inspector of Taxes) v Dunnes Stores (Cork) Ltd*
[1976] WJSC-HC 1470 [H. Ct.] (Ir.)........................................16

**Statutes**

11 U.S.C. § 101(22A) .............................................................4, 8

11 U.S.C. § 101(22A)(A)..............................................................9

11 U.S.C. § 546(e) ...........................................................*passim*

11 U.S.C. § 546(g)...................................................14, 21, 23

11 U.S.C. § 561(a)(1)-(6)............................................................9

11 U.S.C. § 741(8)......................................................................24

**Other Authorities**

Companies Act 2014 of Ireland ............................................15, 16

Fed. R. Civ. P. 8(a) ......................................................................6

Fed. R. Civ. P. 12(b)(6)...................................................6, 7, 12, 13

Fed. R. Civ. P. 44.1 ..............................................................28, 29

Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) ..................15

Plaintiff, the Opioid Master Disbursement Trust II ("**Trust**"),[2] by and through its undersigned counsel, hereby submits its opposition to the motion [Adv. D.I. 242] ("**Motion**" or "**Mot.**") to dismiss the Amended Complaint [Adv. D.I. 205] ("**Amended Complaint**" or "**Am. Compl.**") as to defendants Rock Creek MB, LLC ("**Rock Creek**"), RIEF Trading LLC ("**RIEF Trading**"), GF Trading LLC ("**GF Trading**"), and RIEF RMP LLC ("**RIEF RMP**" and, together with Rock Creek, RIEF Trading, and GF Trading, "**Renaissance Defendants**" or "**Movants**"). For the reasons that follow, the Court should deny the Motion.

## PRELIMINARY STATEMENT

On the heels of defendants Citadel, Susquehanna, and T. Rowe Price come the Renaissance Defendants moving to dismiss the Trust's Amended Complaint as to them. Like Citadel and Susquehanna, the Renaissance Defendants seek dismissal based solely on the securities safe harbor of 11 U.S.C. § 546(e). And, like Citadel and Susquehanna, the Renaissance Defendants demand the benefit of the 546(e) defense without having to carry their burden of proving their entitlement to it. For, in their alternative universe, the Protocol[3] requires the Trust to accept at face value, at the pleading stage and without the benefit of normal discovery, whatever information Movants supply to it and nothing more. And because the Trust has declined to voluntarily dismiss Movants under the Protocol, Movants have filed their Motion, which they describe as a freestanding "motion pursuant to the Protocol Order" that, in their distorted view, exists outside the Federal

---

[2]    The Trust is a statutory trust established under the *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt PLC and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* ("**Plan**") [D.I. 7670]. As used herein, citations to "**D.I. __.**" refer to documents filed in *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del.). Citations to "**Adv. D.I. __.**" refer to documents filed in the above-captioned adversary proceeding ("**Proceeding**"). The Plan, *inter alia*, vested the Trust with authority to investigate and prosecute claims arising out of Mallinckrodt's repurchase of its shares between 2015 and 2018 ("**Share Repurchase Claims**") for the benefit of the Debtors' unsecured creditors. The claims asserted in this Proceeding are Share Repurchase Claims.

[3]    As used herein, "**Protocol**" means the *Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities* that this Court approved by order dated May 15, 2023 [Adv. D.I. 185-1].

Rules of Bankruptcy Procedure, is not subject to any recognized legal standard, shifts the burden of proof and persuasion to the Trust, and mandates no outcome other than that Movants win.

Movants' skewed interpretation of the Protocol is not only unfounded but specious because the Protocol's express terms refute it. Under the Protocol, the Trust may, in good faith, request additional information from a defendant; it is not required to accept at face value whatever defendants decide to show it. Protocol ¶ 9. In addition, the Protocol does not alter the legal standards applicable to any motion filed in this Proceeding. *Id.* ¶ 15. Nor does the Protocol alter or shift the burden of proof and persuasion applicable to any claim or defense in this Proceeding. *Id.* The securities safe harbor of § 546(e) is *Movants*' affirmative defense, and Movants therefore carry the burden of proof and persuasion on it. The Court should hold them to their burden.

After receiving their dismissal demand under the Protocol, the Trust reviewed Movants' asserted § 546(e) defense in good faith, even as Movants refused to provide the most basic information that the Trust requested as part of its due diligence. In the end, the Trust exercised its fiduciary care and determined that Movants' dismissal demand failed on both factual and legal grounds.

Movants Rock Creek, RIEF Trading, and GF Trading have failed to meet their burden to prove they are "financial participants" under § 546(e). They provided summary financial statements and declarations and demanded that the Trust take their word that the documents support the conclusion that they are financial participants. They then refused to provide the documents that the Trust requested to test those statements.[4] Rock Creek, RIEF Trading, and GF Trading cannot use the Protocol to deprive the Trust of its right and fiduciary commitment to thoroughly investigate defenses on which they carry the burden of proof and persuasion.

---

[4]   Unlike the other three Movants, RIEF RMP did provide information relevant to its status as a qualifying participant.

Moreover, Movants' § 546(e) defense requires proof of a "qualifying transaction." Mallinckrodt is an Irish company. Under the internal affairs doctrine, Irish law applies to Mallinckrodt's share repurchases, the same repurchases that the Trust seeks to avoid and recover in this Proceeding. Irish law provides that share repurchases are void when a company does not have profits available for distribution. Under applicable law, if a share repurchase was void, there is no qualifying transaction, and § 546(e) does not provide an affirmative defense. Movants' attempts to avoid the impact of Irish law through waiver arguments strain credulity. For all the reasons stated herein, the Motion should be denied.

## FACTUAL BACKGROUND

### I. MALLINCKRODT'S OPIOID-RELATED MISCONDUCT AND SHARE REPURCHASE PROGRAM

1. For the material facts describing Mallinckrodt's opioid-related misconduct and the program Mallinckrodt implemented to transfer nearly $1.6 billion to shareholders to repurchase its ordinary shares ("**Share Repurchase Program**"), the Trust incorporates by reference paragraphs 1-14 of *Plaintiff's Opposition to Motion to Dismiss T. Rowe Price Associates, Inc. and Related Funds from Amended Complaint* [Adv. D.I. 264], as if they were fully set forth herein.

2. Together, Movants received almost ▮▮▮▮▮ from Mallinckrodt as a result of the Share Repurchase Program: Rock Creek received at least ▮▮▮▮▮ (Am. Compl. ¶ 79); RIEF Trading received at least ▮▮▮▮; (*id.* ¶ 78); GF Trading received at least ▮▮▮▮▮ (*id.* ¶ 44); and RIEF RMP received at least ▮▮▮▮ (*id.* ¶ 77).

### II. MOVANTS' DISMISSAL DEMANDS UNDER THE PROTOCOL

3. On July 31, 2023, the Renaissance Defendants submitted their Protocol-based dismissal demand to the Trust, which relied solely on the affirmative defense under 11 U.S.C. § 546(e) as the basis for dismissal. Adv. D.I. 243, Ex. 1. In their submission, Movants admitted

that § 546(e) "has two requirements," a qualifying transaction and a qualifying participant, and argued that they met both prongs. *Id.* at 1-2. Specifically, Movants stated that the share repurchases at issue—which involved the payment of cash for Mallinckrodt stock—"are qualifying transactions," citing case law that merely defines a "settlement payment" as a "transfer of cash or securities made to complete a securities transaction." *Id.* at 2 (quotation omitted).

4. Movants also alleged that they satisfied the "qualifying participant" prong by asserting that they are "financial participants," as defined in § 101(22A) of the Bankruptcy Code. In support of their alleged "financial participant" status, Movants submitted a declaration ("**Felczak Declaration**") from an officer of Renaissance Technologies LLC ("**Renaissance Technologies**"), the latter being the investment manager for the Renaissance Defendants (and not a defendant in this Proceeding). *See* Adv. D.I. 243, Ex. 2. The Felczak Declaration attached four exhibits, which consisted of—for Rock Creek, RIEF Trading, and GF Trading—their nonpublic financial statements as of December 31, 2019 ("**Financial Statements**"), and for RIEF RMP, an institutional account agreement with a nonaffiliate, and a position and accrual report showing that, on December 31, 2019, the nonaffiliate had loaned RIEF RMP securities with "an aggregate market value" of over $1 billion, to support RIEF RMP's trading activities. *See id.*

5. On September 14, 2023, in response to their dismissal demand, the Trust sent Movants requests for additional information, aimed at obtaining documentation supporting the assertions in the Felczak Declaration and the summary information contained in the nonpublic Financial Statements, and clarification of certain information in the documentation that RIEF RMP provided, so that the Trust could verify Movants' arguments and calculations. *See* Adv. D.I. 243, Ex. 3.

6. On October 31, 2023—47 days later—Movants responded to the Trust's

information requests but refused to provide any additional documentation in support of their § 546(e) defense.  (They just provided another declaration.)[5]  *See* Adv. D.I. 243, Ex. 4.

7.     On December 15, 2023, in accordance with the Protocol, the Trust responded to Movants in writing, declining to dismiss them on the grounds that (a) Movants have not met the qualifying transaction prong of § 546(e) because Mallinckrodt's share repurchases were not settlement payments since they were void *ab initio* under Irish law, and (b) Rock Creek, RIEF Trading, and GF Trading did not provide sufficient information to allow the Trust to determine that they qualify as financial participants.  *See* Adv. D.I. 243, Ex. 6.

## STANDARD OF REVIEW

8.     The Protocol provides that a "Defendant may file a single motion under this Protocol *to dismiss or for judgment* based on the asserted Defense(s)[.]"[6]  Protocol ¶ 11(b) (emphasis added).  Movants elected to file a motion to dismiss.  *See* Mot. at title and ¶ 1 ("Motion to Dismiss" and "[t]his is another straightforward motion for dismissal").  The Protocol expressly provides that it does not alter the burden of proof or persuasion, or the legal standard for deciding any motion.  Protocol ¶ 15 ("Nothing in this Protocol is intended, or shall be deemed or construed, to alter any Party's burden of proof or persuasion with respect to any claim or defense (including, without limitation, the Defenses) or to alter the legal standard for adjudicating any motion filed in the Adversary Proceeding.").  Accordingly, the traditional legal standard for a motion to dismiss applies to the present Motion.

---

[5]    The Renaissance Defendants provided a third declaration on December 27, 2023, but that declaration merely named the alleged counterparties to Rock Creek, RIEF Trading, and GF Trading's swap agreements.  *See* Adv. D.I. 243, Ex. 8.  Movants never provided documentation supporting their bare assertions.

[6]    The use of the disjunctive "or" means that defendants have the option under the Protocol of filing either a motion to dismiss or a motion for judgment.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not.").

9.      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

10.     The plausibility standard under Fed. R. Civ. P. 8(a) requires only a "showing" that the pleader is entitled to relief. *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). If an explanation is plausible, the complaint survives a motion to dismiss under Civil Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. *Doe v. Princeton Univ.*, 30 F.4th 335, 344 (3d Cir. 2022). For pleading purposes, a defendant's rebuttal of a plaintiff's contentions with its own does not entitle the defendant to dismissal of the action. *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 WL 668492, at *5-6 (D. Del. Feb. 19, 2019); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.42 (3d Cir. 2010).

11.     When evaluating a motion to dismiss, the reviewing court must assume all "factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly*, 809 F.3d at 790 (citations omitted). The Court "must . . . refrain from engaging in any credibility determinations." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 256 (3d Cir. 2016) (footnote omitted).

12.     Generally, in deciding a Rule 12(b)(6) motion, a court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents[.]" *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018) (citations omitted). Under the Protocol the Motion "may include for consideration by the Court" (i) the declaration, (ii) documents sufficient to establish the factual basis for the claimed defense(s), and (iii) any other evidence that the Trust

and defendants exchanged during the Protocol process. Protocol ¶¶ 6, 11(b).

13.    Movants' assertion that "this is not a Rule 12(b)(6) motion—it is a motion *pursuant to the Protocol Order*" (Mot. ¶ 25) is contradicted by the Protocol's express terms. *See* Protocol ¶ 15; Mot. ¶ 1. While labeling their Motion a motion "to dismiss" (and not a "motion for judgment"), Movants ask this Court to recognize a new form of motion—a motion pursuant to the Protocol—when the Protocol itself states that it does not "alter the legal standard for adjudicating any motion." Protocol ¶ 15. Additionally, Movants fail to offer a judicially recognized standard of review for the "motion pursuant to the Protocol" they have invented.

14.    The Renaissance Defendants state that "[u]nder the express terms of the Protocol Order," only audited financial statements and sworn declarations are "required to show that Rock Creek, RIEF Trading, and GF Trading are financial participants[.]" Mot. ¶ 24. This assertion is wrong. Nowhere does the Protocol state that sworn declarations and documents containing summary information such as financial statements (both of which can be generated by a defendant) are *sufficient* for dismissal. Such a position would allow any defendant to decide for itself whether it should be dismissed. To the contrary, by expressly stating that the legal standard for a motion to dismiss is not altered, the Protocol ensures that the fox is not allowed to guard the henhouse. *See* Protocol ¶ 15. The Court should reject Movants' argument that they somehow carry a lesser burden. They do not.

15.    The Renaissance Defendants next argue that the Protocol would be meaningless if the Trust were able to refuse dismissal of a claim when a defendant generates a financial statement coupled with a declaration. Mot. ¶ 24. Using Movants' own logic, the Trust's right under paragraph 9 of the Protocol to request additional information would be meaningless if it were required to accept a defendant's financial statement and declaration at face value. Defendants

cannot have it both ways. The Protocol is not rendered meaningless if the Trust refuses to accept a defendant's word that it is a financial participant. The Trust has dismissed defendants when they have provided sufficient information to justify dismissal. Movants may not hide behind the Protocol to avoid long-established legal standards and their own burden of proof and persuasion.

## ARGUMENT

16. Movants assert they are entitled to dismissal solely on the basis of the affirmative defense set forth in 11 U.S.C. § 546(e). The § 546(e) defense requires proof of both (a) a qualifying transaction (*e.g.*, a "settlement payment") and (b) a qualifying participant (*e.g.*, a "financial participant," as defined in § 101(22A) of the Bankruptcy Code). *See Bankr. Est. of Norske Skogindustrier ASA v. Cyrus Cap. Partners, L.P.* (*In re Bankr. Est. of Norske Skogindustrier ASA*), 629 B.R. 717, 757 (Bankr. S.D.N.Y. 2021). For the reasons that follow, Movants have failed to meet their burden to establish a qualifying transaction; and Rock Creek, RIEF Trading, and GF Trading have failed to meet their burden to demonstrate that they are qualifying participants. Accordingly, this Court should deny the Motion. The Trust will address the "qualifying participant" prong first.

## I. ROCK CREEK, RIEF TRADING, AND GF TRADING HAVE FAILED TO MEET THEIR BURDEN OF SHOWING THEY ARE FINANCIAL PARTICIPANTS

### A. Rock Creek, RIEF Trading, and GF Trading Have Failed to Meet Their Burden Because Their Documentation Is Insufficient

17. Rock Creek, RIEF Trading, and GF Trading did not provide documentation sufficient to prove that they are financial participants under 11 U.S.C. § 546(e).[7] To qualify as a "financial participant," a defendant bears the burden of establishing either "at the time it enters

---

[7] Movants note that RIEF RMP provided financial records showing that it "had an outstanding loan of securities from J.P. Morgan with a mark-to-market value of approximately $2 billion," which they emphasize exceeds "by *nearly twenty times*" the statutory threshold. Mot. ¶ 21. But the Trust is not challenging RIEF RMP's status as a qualifying participant, which renders this information superfluous.

into a securities contract . . . at the time of the date of the filing of the petition," or "on any day during the 15-month period preceding the date of the filing of the petition" that the defendant "has one or more [qualifying] agreements or transactions[8] . . . of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding . . . or has gross mark-to-market positions of not less than $100,000,000[,]" excluding any agreements with affiliates.  11 U.S.C. § 101(22A)(A).

18.     Here, the sole documents that Rock Creek, RIEF Trading, and GF Trading provided to support their alleged status as financial participants are the nonpublic Financial Statements and a conclusory declaration from their investment manager that merely summarized the information in the Financial Statements.  *See* Adv. D.I. 243, Ex. 1.  Because of the highly factual nature of the § 546(e) defense, which often requires expert testimony and survives summary judgment, much less motions to dismiss,[9] the Trust in good faith asked for additional information from Movants that was relevant to their defenses, such as copies of the underlying equity swap contracts on which Rock Creek, RIEF Trading, and GF Trading rely in support of their alleged statuses as "financial participants," a summary schedule listing each of these contracts and the notional principal amounts that sum to the total amounts on which Rock Creek, RIEF Trading, and GF Trading rely in support of their alleged defense, and an organizational chart of the Renaissance Defendants and their affiliates that could show whether Movants entered into any swap contracts with affiliates—

---

[8]     Those agreements are "securities contracts, as defined in section 741(7)," "commodity contracts, as defined in section 761(4)," "forward contracts," "repurchase agreements," "swap agreements," or "master netting agreements[.]"  11 U.S.C. § 561(a)(1)-(6).

[9]     *See, e.g., Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*, 625 B.R. 291, 303 (Bankr. D. Del. 2020) (denying motion for summary judgment with respect to whether debtor was a financial participant); *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 748 (Bankr. S.D.N.Y. 2019) ("any dismissal of this case based on the safe harbor is premature. . . . [because] [s]ection 546(e) provides defendants with an affirmative defense, and unless this affirmative defense is clearly established on the face of the complaint, invocation of the safe harbor does not defeat a plaintiff's otherwise valid complaint.") (citation and quotation omitted) (denying motion to dismiss on the basis of, among other things, defendant's argument that one of the transferees was a financial institution).

*i.e.*, the types of contracts that cannot be used towards establishing the "financial participant" dollar-amount thresholds. *See* Adv D.I. 243, Ex. 3. Such information would allow the Trust to verify the summary information in the Financial Statements—which were not even publicly filed. But, in response to these information requests, the Renaissance Defendants provided no additional documentation. *See* Adv D.I. 243, Ex. 4. Movants are providing only what they want the Trust to see.

19. Movants are incorrect that "[t]here is no need, for example, for the Trust to demand and review copies of all the contracts underlying Rock Creek's, RIEF Trading's, and GF Trading's swap positions, organizational charts, or schedules providing counterparties to the swaps" (Mot. ¶ 23), and that the Trust must accept their summary documentation at face value—that is, for its truth.[10] On the contrary, the Protocol expressly authorizes the Trust to request "additional information that [the Trust] believes, in good faith, is necessary for it to determine whether the Defendant has established the claimed Defense." Protocol ¶ 9. And, as discussed, the Protocol does not alter the burden of proof or persuasion on any issue. *Id.* ¶ 15. Indeed, Citadel Securities, another defendant in this Proceeding—and one whose motion to dismiss the Renaissance Defendants rely on —was fined $7 million by the SEC on September 23, 2023 for "incorrectly mark[ing] millions of orders[.]"[11] The Renaissance Defendants too have a history of engaging in controversial practices, as evidenced by Renaissance Technologies' payment of a staggering $7 billion to the Internal Revenue Service to settle a dispute over how Renaissance Technologies

---

[10] The Trust's dismissal of seven defendants under the Protocol refutes the Movants' argument that the Trust's failure to dismiss them based on their supporting documentation renders the Protocol a nullity. Moreover, the Protocol was designed to allow Defendants to move forward with certain affirmative defenses that were otherwise stayed by the case management order. Adv. D.I. 93 at 3.

[11] *See* Press Release, SEC, *SEC Charges Citadel Securities for Violating Order Marking Requirements of Short Sale Regulations* (Sept. 22, 2023), https://www.sec.gov/news/press-release/2023-192.

(Movants' investment manager) taxed its options trades.[12]  Defendants' troubling practices further demonstrate why the Trust cannot take them at their word but needs to exercise fiduciary care and ask for substantiation of the statements presented to it.

20.     Throughout this process, Movants have ignored the fact that the Trust is a fiduciary seeking to avoid and recover fraudulently transferred funds for the benefit of opioid victims and other creditors, and that its commitments include verifying the accuracy of the information Movants provided under the Protocol.  But Movants' desire for summary dismissal cannot relieve them of their burden of proof and persuasion.  Protocol ¶ 15.  And Movants are not entitled to dismissal simply because they *say* they meet the requirements of § 546(e).  The Trust is entitled to test those representations.

### B.     This Court Cannot Take "Judicial Notice" of Movants' Documents for the Truth of the Matters Asserted

21.     Movants are incorrect as a matter of law that the Court can take judicial notice of their Financial Statements for the truth of the matters asserted therein.  *See* Mot. ¶ 25.  The cases on which Movants rely (*see* Citadel/Susquehanna MTD ¶¶ 58-61)[13] are distinguishable from this Proceeding.  *See* Citadel/Susquehanna Opp. ¶¶ 60-62.[14]  Moreover, those cases are inapposite because they discuss judicial notice of statements that were filed with the SEC.  Here, Rock Creek, RIEF Trading, and GF Trading's Financial Statements *were not filed with the SEC* or with any other regulatory agency.  As such, judicial notice of them is inappropriate.  *See Carnegie Inst. of*

---

[12]     Matthew Goldstein & Kate Kelly, *Hedge Fund's Insiders Agree to Pay as Much as $7 Billion to I.R.S.*, N.Y. Times (Sept. 5, 2021), https://www.nytimes.com/2021/09/02/business/renaissance-irs-robert-mercer-james-simons.html.

[13]     Citations to "**Citadel/Susquehanna MTD**" refer to the *Motion to Dismiss the Amended Complaint as to Defendants Citadel Securities LLC and Susquehanna Securities, LLC Pursuant to the Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities*, portions of which the Renaissance Defendants have incorporated by reference into their own Motion.

[14]     Citations to "**Citadel/Susquehanna Opp.**" refer to the *Plaintiff's Opposition to Motion to Dismiss Citadel Securities and Susquehanna Securities from Amended Complaint* [Adv. D.I. 263].

*Wash. v. Pure Grown Diamonds, Inc.*, No. 20-CV-189 (JSR), 2020 WL 5209822, at *4 (S.D.N.Y. Aug. 31, 2020) (explaining that nonpublic documents cannot be the subject of judicial notice).

**C.    Movants Improperly Seek to Evade Their Burden and Long-Established Legal Standards by Calling Their Motion to Dismiss a "Motion Pursuant to the Protocol"**

22.    The Renaissance Defendants try to side-step their legal burden, long-established standards, and the limits of judicial notice by asserting, without support, that "this is not a Rule 12(b)(6) motion" but rather a "motion *pursuant to the Protocol Order*," which purportedly "authorizes the Court to consider any evidence exchanged between the parties pursuant to process outlined therein."  Mot. ¶ 25.  Their misbranding effort fails because, by its express terms, the Protocol does not "alter the legal standard for adjudicating *any* motion filed in the Adversary Proceeding."  Protocol ¶ 15 (emphasis added).  *Cf. Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (refusing to recognize a motion for declaratory judgment since such a motion is not provided for under Fed. R. Civ. P. 57 and is inconsistent with the Federal Rules) (citation omitted); *Hubay v. Mendez*, 500 F. Supp. 3d 438, 443 n.2 (W.D. Pa. 2020) ("Strictly speaking, there is no such thing as a 'motion for declaratory judgment' under the Federal Rules.") (citing *Kam-Ko Bio-Pharm*, 560 F.3d at 943); *Lindsay v. Penn. State Univ.*, No. 4:06-CV-01826, 2008 WL 1376273 (M.D. Pa. Apr. 9, 2008) (finding a "motion for declaratory judgment" to be procedurally improper).  There is no provision in the Federal Rules for Movants' "motion to dismiss" apart from the motion and attendant legal standard that exists under Civil Rule 12(b)(6).

23.    In addition, the Protocol does not require the Court to consider any evidence for its truth, particularly on a motion to dismiss.  Where Movants gave the Trust no ability to test the

validity of information in financial statements that were not even subject to scrutiny by regulatory agencies, the Court should be especially hesitant to consider them.

24.     Movants contend that the Trust has provided no "counter-evidence" to their declaration.  Mot. ¶ 28.  But the Trust does not need to provide "counter-evidence" in response to a motion to dismiss since the focus under Rule 12(b)(6) is whether the Amended Complaint pleads sufficient facts to establish plausible claims, which it does.  If Movants now insist that this Court should treat their "motion to dismiss" as a motion for summary judgment, then this Court should not subscribe to their refusal to produce the documents that the Trust requested under the Protocol, while arguing at the same time that the Trust has failed to produce information to the Court showing a genuine factual dispute.

25.     For the reasons explained above, Movants fail to meet their burden of demonstrating that Rock Creek, RIEF Trading, and GF Trading are "financial participants" under the Bankruptcy Code.

## II.     MALLINCKRODT'S SHARE REPURCHASES ARE NOT QUALIFYING TRANSACTIONS[15]

26.     Movants are not entitled to dismissal under § 546(e) because they cannot satisfy their burden to show that the repurchases qualify as "settlement payments" or that they were made "in connection with a securities contract."  11 U.S.C. § 546(e).

### A.     The Share Repurchases Do Not Constitute a "Settlement Payment" Because

---

[15]     In arguing that Mallinckrodt's share repurchases are qualifying transactions, Movants have incorporated by reference into their Motion the arguments that defendants Citadel Securities LLC and Susquehanna Securities, LLC made in part I of their Citadel/Susquehanna MTD.  As such, the Trust responds to the arguments made in the Citadel/Susquehanna MTD and incorporates by reference, as if fully restated and annexed hereto, the exhibits to the Citadel/Susquehanna Opp.

**They Were Void *ab Initio* Under Irish Law**

27.     Transfers to repurchase or redeem a company's shares do not qualify as a "settlement payment" where those transfers are void under applicable law. *Enron Corp. v. Bear, Stearns Int'l Ltd.* (*In re Enron Corp.*), 323 B.R. 857, 877 (Bankr. S.D.N.Y. 2005); *cf. also Cooper v. Centar Invs. (Asia) Ltd* (*In re TriGem Am. Corp.*), 431 B.R. 855, 865 (Bankr. C.D. Cal. 2010) (relying on *Enron* in refusing to apply § 546(g) swap agreement safe harbor where transaction was structured to try to evade Korean law); Barbara Black, *Corporate Dividends & Stock Repurchases* § 6:19 (Feb. 2022 Update) ("An agreement by a corporation to purchase its own shares is void and unenforceable if the statute prohibits the corporation from purchasing its shares."). The relevant question is whether "there is a valid underlying securities transaction from which a settlement payment can flow." *Enron*, 323 B.R. at 877. If not, "there is no settlement payment to which to apply the protection of section 546 of the Bankruptcy Code." *Id.* The *Enron* court found that, when distributions from an insolvent corporation are "prohibited" and considered void under the applicable law, the distributions are "a complete nullity, [and] there would be no resulting settlement payment." *Id.* at 876.

### 1.     Irish Law Governed Mallinckrodt's Share Repurchase Program

28.     Under the internal affairs doctrine, the law of the state of incorporation governs affairs involving a corporation's relationships to its shareholders, including share repurchases or redemptions. *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 843-44 (3d Cir. 2005) (law of state of incorporation governs questions relating to a corporation's share redemptions); *Castel S.A. v. Wilson*, No. CV 19-09336-DFM, 2023 WL 6295774, at *32 (C.D. Cal. Sept. 27, 2023) (holding that the law of the state of incorporation governed a dispute regarding repurchase or redemption of stock); *100079 Canada, Inc. v. Stiefel Laboratories, Inc.*, No. 11-22389-CIV-SCOLA, 2011

WL 13116079, at *9 (S.D. Fla. Nov. 30, 2011) (same); Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) (law of the state of incorporation governs a corporation's purchase or redemption of outstanding shares of its stock).

29.     Mallinckrodt was formed and registered as a public limited company ("**PLC**") under the laws of the Republic of Ireland on January 9, 2013.[16]  Accordingly, under the internal affairs doctrine, Irish law applied to Mallinckrodt's Share Repurchase Program.

30.     Alternatively, to the extent that the Court is being asked to make a determination on choice of law, it should deny the Motion and defer any such decision on applicable law until it has had the benefit of a full record because a choice-of-law analysis at the motion to dismiss stage is inappropriate here.  *See Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d. 404, 411 (D. Del. 2007) ("This litigation is still in its infancy, and the Court concludes that these complex and sometimes dispositive choice of law questions should be made with the benefit of a more complete context for this litigation."); *Arcelik A.S. v. E.I. du Pont De Nemours & Co.*, No. 15-961-LPS, 2018 WL 1401327, at *9 (D. Del. Mar. 20, 2018) ("This case (although pending for some time) remains in its early stages.  Virtually, no discovery has taken place, and the Court would benefit from a more-developed record.  The Court does not find it appropriate at the motion to dismiss stage of this case to undertake a choice of law analysis.").

> **2.      *Under Irish Law, Mallinckrodt Was Required to Fund Its Share Repurchases from Profits Available for Distribution, or Else the Share Repurchases Were Void***

31.     At the time of the share repurchases, the Companies Act 2014 of Ireland ("**Companies Act**") applied to Mallinckrodt.  Harkin Decl. ¶ 8.  Section 105 of the Companies Act provides that an Irish PLC may purchase or redeem its shares only if, *inter alia*, the purchases

---

[16]     Declaration of Anne Harkin ("**Harkin Decl.**") ¶ 4, which is annexed to the Citadel/Susquehanna Opp. as **Exhibit 1**.

or redemptions are funded out of profits available for distribution. Companies Act § 105(2); Harkin Decl. ¶¶ 9-10. "Profits available for distribution" are a company's "accumulated, realised profits, so far as not previously utilised by distribution or capitalisation, less its accumulated, realised losses, so far as not previously written off in a reduction or reorganisation of capital duly made." Companies Act § 117(2); Harkin Decl. ¶ 11. If the share repurchase or redemption does not comply with section 105 of the Companies Act, the share repurchase transaction is "**void**" under Irish law. Companies Act § 102(3) (emphasis added); Harkin Decl. ¶ 13 (emphasis added).

32.     Irish case law clarifies that the profits available for distribution "must mean profits calculated in accordance with the relevant applicable accountancy standards." *In re Irish Life & Permanent Plc* [2009] IEHC 567 [H. Ct.] § 7.10 (Ir.);[17] *see also Wilson (Inspector of Taxes) v Dunnes Stores (Cork) Ltd* [1976] WJSC-HC 1470 [H. Ct.] (Ir.) (concluding the proper interpretation of the term "profits" must be determined by the context in which it is used).[18] For Mallinckrodt, those standards were the United States Generally Accepted Accounting Principles ("**U.S. GAAP**"), because, at the time of the Share Repurchase Program, Mallinckrodt filed consolidated group financial statements that it prepared in accordance with U.S. GAAP. *See* Companies Act § 279 (permitting an Irish company to avail itself of U.S. GAAP where the company's securities are listed on U.S. stock exchanges for a transitional period ending December 31, 2020).[19] The Mallinckrodt entities' individual financial statements were prepared in accordance with the Irish Generally Accepted Accounting Principles ("**Irish GAAP**"), which is the Financial Reporting Standard applicable in the U.K. and Republic of Ireland ("**FRS 102**").[20]

---

[17]     A copy of the *Irish Life* decision is annexed to the Citadel/Susquehanna Opp. as **Exhibit 2**.

[18]     A copy of the *Wilson* decision is annexed to the Citadel/Susquehanna Opp. as **Exhibit 3**.

[19]     *See* Declaration of Israel Shaked ("**Shaked Decl.**") ¶ 33 & n.35, which is annexed to the Citadel/Susquehanna Opp. as **Exhibit 4**.

[20]     *See* Harkin Decl. ¶ 20. The Mallinckrodt entities' individual financial statements were prepared in accordance

### 3. Mallinckrodt's Share Repurchases Were Void Because It Did Not Have Profits Available for Distribution When It Made Those Repurchases

33. Under Irish law, Mallinckrodt's share repurchases were void *ab initio* because, when it engaged in those repurchases, it did not have profits available for distribution. Am. Compl. ¶¶ 327-42; Shaked Decl. ¶¶ 99-103.

34. Under U.S. GAAP, Mallinckrodt's opioid liabilities constituted "probable" and "reasonably estimable" contingent liabilities that it was required to, but did not, account for in its financial statements. Shaked Decl. ¶¶ 4, 41, 47, 104. (FRS 102 has or applies a substantially similar standard looking to whether the liabilities are probable and reasonably estimable.[21]) When the opioid liabilities are correctly accounted for, Mallinckrodt did not have profits available for distribution when it engaged in the share repurchases. *Id.*

35. In his declaration, Professor Israel Shaked explains that "according to U.S. GAAP, a company is required to accrue a loss for a contingent liability if, based on information available at the time, it is probable that a liability will be incurred and the amount of that liability is reasonably estimable." Shaked Decl. ¶ 31. He concludes that Mallinckrodt's liabilities were probable when Mallinckrodt engaged in its share repurchases. *Id.* ¶¶ 36-46.

36. Professor Shaked finds that, based on information available to it at the time, Mallinckrodt's opioid liabilities were reasonably estimable when it engaged in the share repurchases. Shaked Decl. ¶¶ 47-84. He estimates that Mallinckrodt's opioid liabilities as of

---

with an older version of Irish GAAP for the financial years ending September 26, 2014 and September 25, 2015, and in accordance with FRS 102 for the financial years ending September 30, 2016 and December 29, 2017. *Id.* In addition, on June 29, 2017, Mallinckrodt filed interim accounts for the period up to March 31, 2017, which were prepared in accordance with FRS 102. *Id.* The section relating to recognition of liabilities of uncertain timing or amount (section 21 of FRS 102) did not change the existing rules of Irish GAAP. *See* Declaration of Damien Malone ("**Malone Decl.**") ¶ 11, which is annexed to the Citadel/Susquehanna Opp. as **Exhibit 5**.

[21] *See* Malone Decl. ¶ 5; Shaked Decl. ¶¶ 32-33. Indeed, FRS 102 has a lower threshold for determining "probable," because it is defined under those statutes as "more likely than not." Malone Decl. ¶ 7; Shaked Decl. ¶ 32.

December 31, 2015, were between $49.0 billion and $77.1 billion.  *Id.* ¶ 72.  Additionally, he estimates that Mallinckrodt's opioid liabilities as of December 31, 2016 were between $54.7 billion and $84.7 billion.  *Id.* ¶ 76.  Further, he estimates that Mallinckrodt's opioid liabilities as of December 31, 2017, were between $58.6 billion and $89.6 billion.  *Id.* ¶ 81.

37.     Professor Shaked concludes that Mallinckrodt's retained earnings each year is the best measure of its profits available for distribution.  Before accounting for opioid liabilities, Mallinckrodt's retained earnings were –$193 million in 2014, $250 million in 2015, $529 million in 2016, $2.589 billion[22] in 2017, and –$1.018 billion in 2018.  *Id.* ¶ 102.  Each year, Mallinckrodt's profits available for distribution were significantly below its probable and reasonably estimable opioid liabilities, as the following table shows:

| ($ Millions) | As of December, | | | | |
|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 |
| Retained Earnings | $ (193) | $ 250 | $ 529 | $ 2,589 | $ (1,018) |
| - Adjustment for one-time, non-cash Item | - | - | - | (1,055) | (1,055) |
| - Opioid Liability | (44,633) | (48,956) | (54,678) | (58,611) | (58,611) |
| **Profits Available for Distribution** | **(44,827)** | **(48,706)** | **(54,149)** | **(57,077)** | **(60,683)** |

38.     Professor Shaked thus summarizes his conclusions as follows:[23]

(a)     At the time Mallinckrodt repurchased shares, Mallinckrodt's opioid liabilities were probable.

(b)     At the time Mallinckrodt repurchased shares, Mallinckrodt's opioid liabilities were reasonably estimable.

(c)     As Mallinckrodt's opioid liabilities were probable and reasonably estimable, the Company should have accrued a contingent liability.

---

[22]     Moreover, in fiscal year 2017, at least $1.5 billion of the retained earnings were due to a one-time recognized income tax benefit and were not profits available for distribution.  *See* Mallinckrodt plc, Annual Report (Form 10-K), at 49-50, 101 (Dec. 29, 2017).

[23]     Shaked Decl. ¶ 4.

(d)     If Mallinckrodt had correctly accrued a contingent liability at the time of the share repurchases, Mallinckrodt's own financial statements would have shown Mallinckrodt that it did not have sufficient profits available for distribution to conduct the share repurchases.[24]

(e)     Mallinckrodt repurchased over $1.5 billion of its own shares without sufficient profits available for distribution to do so.

39.     Because Mallinckrodt did not have profits available for distribution from which to fund its share repurchases, its entire Share Repurchase Program was void *ab initio* under Irish law. Thus, under *Enron*, Mallinckrodt's share repurchases did not constitute a "settlement payment" under § 546(e).  Movants therefore lack a qualifying transaction and do not have the benefit of the § 546(e) safe harbor.

40.     Movants brought a motion to dismiss.  On such a motion, the Court reviews the sufficiency of the pleading and ordinarily does not look beyond the four corners of the pleading. If, however, this Court decides to treat the Motion as a motion for summary judgment, the Court should deny summary judgment because the Trust has identified sufficient evidence to show, at the very least, a genuine dispute of material facts.  *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) ("Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact . . . . [The court] view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor.") (quotation and citations omitted).  Thus, even if treated as a motion for summary judgment, the Court should deny the Motion.

### 4.     The Amended Complaint Alleges Facts Sufficient to Support a Reasonable Inference That the Share Repurchases Were Void Under

---

[24]     In 2014 and 2018, Mallinckrodt did not have profits available for distribution even before accounting for opioid liabilities.

*Irish Law*

41.     The Amended Complaint alleges facts sufficient to support a reasonable inference that Mallinckrodt was deeply insolvent when it engaged in the share repurchases because of opioid liabilities that had already accrued and should have been accounted for under applicable standards. *See Schuchardt*, 839 F.3d at 347 (reversing dismissal where there were sufficient facts to render allegations plausible); *see also* Am. Compl. ¶¶ 231, 241, 251, 257.[25]   Indeed, as the Amended Complaint points out, in October 2020, Mallinckrodt itself estimated that it had opioid-related liabilities "in excess of $30 billion" based on settlements it had entered into before filing chapter 11. *Id.* ¶ 264.[26]

42.     Based on facts alleged in the Amended Complaint, "in relation to Mallinckrodt's reported assets, the Opioid Claims arising against the Debtors, including disputed and contingent claims, rendered the Mallinckrodt enterprise insolvent, on a balance sheet basis, no later than by 2010." *Id.* ¶ 262.   Mallinckrodt's opioid liability at the time of its Share Repurchase Program was between $67 billion and $700 billion.  *Id.* ¶¶ 265-67.   The Amended Complaint alleges that "no matter how one measures Mallinckrodt's opioid liabilities during 2015-2018, the liabilities dwarf any plausible estimation of Mallinckrodt's enterprise value, which irrefutably demonstrates the substantial degree of Mallinckrodt's insolvency." *Id.* ¶ 268.[27]

43.     The Amended Complaint further alleges that the share repurchases were made in violation of Irish law.  *Id.* ¶¶ 317-18.   It alleges that Mallinckrodt's management undertook

---

[25]   *See also* The Associated Press, *Painkiller's Maker Settles Complaint*, N.Y. Times (May 9, 2007), https://www.nytimes.com/2007/05/09/business/09purdue.html.

[26]   *See also In re Mallinckrodt, plc*, No. 20-12522, (Bankr. D. Del. Dec. 6, 2021) Hr'g Tr. 63:3-5.

[27]   *See also Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc)*, No. 22-50433 (JTD), 2024 WL 206682, at *30 (Bankr. D. Del. Jan. 18, 2024) (holding that Mallinckrodt's insolvency was sufficiently pled to withstand motion to dismiss).

extraordinary efforts to find cash from which to fund its share repurchases. *Id.* ¶¶ 327-42. In particular, Mallinckrodt took on intercompany loans and orchestrated complex intercompany transactions to fund its Share Repurchase Program because it did not have sufficient cash on hand to do so. *Id.* ¶ 327. The Amended Complaint alleges that Mallinckrodt was insolvent and that the Mallinckrodt board of directors and its officers knew or should have known it was insolvent when it engaged in the share repurchases. *Id.* ¶ 356. Under the applicable motion to dismiss standard, the Amended Complaint pleads sufficient facts to raise a reasonable inference and plausible case that the share repurchases were void *ab initio* under Irish law.

**B.**     **Mallinckrodt's Share Repurchases Were Not Transfers Made "in Connection with a Securities Contract"**

44. For the same reasons noted above, Movants cannot establish that Mallinckrodt's share repurchases were "transfer[s] made . . . in connection with a securities contract[.]" 11 U.S.C. § 546(e). In *Enron*, the court examined whether the safe harbor in § 546(g) protected a transfer allegedly made "in connection with a swap agreement." 323 B.R. at 878 (quoting 11 U.S.C. § 546(g)). Because the entire transaction was void under applicable law, the "in connection with" language in § 546(g) did not apply. 323 B.R. 878 ("If it is determined that the transaction violated Oregon law, the agreement would be a nullity and have no legal effect. As a consequence, the transfer would not have been made under or in connection with a swap agreement and it would not be protected from avoidance under section 546(g) of the Bankruptcy Code."). This reasoning applies with equal force to the "in connection with" language in § 546(e). *See id.* at 877 ("An agreement that is void under controlling state law has no legal force or effect and carries no enforceable obligations."). Because Mallinckrodt's share repurchases were nullities, there were no transfers made in connection with any valid securities contract.

45.     In addition, Movants cannot point to the purchase agreements that Mallinckrodt entered into with its brokers, Goldman, Sachs & Co. and Morgan Stanley & Co., to implement the Share Repurchase Program, as a qualifying "securities contract." *See* Citadel/Susquehanna MTD ¶ 35.  This is because Movants were not parties to those agreements.  *See* Am. Compl. ¶ 274.  Movants also lack the requisite connection with the purchase agreements because those agreements do not reference any specific share repurchases, including any specific repurchase trades that Movants were involved with or received proceeds from.  *See Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371, 389-90 (Bankr. D. Del. 2022) (Owens, J.) (refusing to dismiss avoidance claims on the basis of an alleged securities agreement under § 546(e) where (1) the transfers were made three months after the agreement, (2) the agreement did "not reference a contemplated distribution," and (3) the trustee did not allege that the distribution was made from the proceeds of sale governed by the agreement).[28]  As such, Movants have not established how the share repurchase proceeds received by them were in connection with the purchase agreements.

46.     For all these reasons, Movants have not established that the repurchase trades from which they received proceeds were a transfer made in connection with a securities contract.  Accordingly, without a qualifying transaction, the § 546(e) safe harbor is unavailable to them, and the Court should deny their Motion.

### C.     Irish Law Applies to the § 546(e) Analysis

47.     Movants rely on argument that the Court may look to only federal law, not Irish law, in determining whether the share repurchases were qualifying transactions

---

[28]     *See also Indus. Enters. of Am., Inc v. Tabor Acad. (In re Pitt Penn Holding Co.)*, No. 09–11475 (BLS), 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) (refusing to dismiss claim where it was unclear whether transfers were made in connection with a securities contract or as a charitable gift).

(Citadel/Susquehanna MTD ¶ 46), but their argument is unavailing. Courts evaluating securities transactions under § 546(e) have consistently looked to applicable nonbankruptcy law. *See Enron*, 323 B.R. at 870; *Contemporary Indus. Corp v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009); *TriGem Am. Corp.*, 431 B.R. at 865 ("Congress . . . had no intent to shield transactions illegal under local law[.]").

48.     In support of this argument, Movants rely on cases in which § 546(e) was not at issue. The question in *In re Columbia Gas Systems Inc.* was whether federal rebates held by the debtor but intended for customers were property of the estate. 997 F.2d 1039, 1055-56 (3d Cir. 1993). There, the Third Circuit ruled that federal common law applied to determine whether the debtor held an interest in those federal rebates. *Id.* at 1055.[29] In *Whyte v. Barclays Bank PLC*, the court held that the § 546(g) safe harbor impliedly preempted the state-law fraudulent transfer claims that had been assigned to a post-confirmation litigation trust. 494 B.R. 196, 201 (S.D.N.Y 2013).[30] None of these cases fit the circumstances here; they are inapposite.

### D.     *Enron* Remains Good Law

49.     Contrary to Movants' protests, Third Circuit jurisprudence does not contradict *Enron*. *See* Citadel/Susquehanna MTD ¶ 39. Movants' reliance on *In re Bevill, Bresler &*

---

[29]    Movants also rely on *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 236 (Bankr. N.D. Tex. 2009), a case resolving an objection to an administrative expense claim, but that case turned on whether similarly situated creditors would be treated the same or differently based on the definition of "goods," a term not defined in the Code, and the court based its decision on "[o]ne of the cardinal rules of bankruptcy law . . . that similarly situated claims should receive the same treatment." At issue in this Proceeding is not whether similarly situated creditors are receiving equal treatment; the Trust is pursuing Movants and other defendants on claims for fraudulent transfer, where the challenged transactions were void *ab initio* under applicable law.

[30]    In addition, Movants rely on two *criminal* cases for the proposition that courts should avoid absurd or self-defeating results. *See United States v. McKie*, 112 F.3d 626, 374 (3d Cir. 1997); *Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019). Movants do not explain how relying on the well-established internal affairs doctrine is absurd or self-defeating. In any event, the cases are not relevant. In *McKie*, the Third Circuit merely held the interpretation of a criminal statute, which would require prosecutors to prove that no affirmative defense applied, resulted in an absurd outcome. 112 F.3d at 629-31. In *Quarles*, the Court found that a criminal defendant's proffered definition of "generic burglary" would have excluded many states' definition of burglary under a federal statute. 139 S. Ct. at 1879.

*Schulman Asset Mgmt. Corp.*, 878 F.2d 742 (3d Cir. 1989) is misplaced. In *Bevill*, the narrow issue before the Third Circuit was whether delivery of securities, in connection with certain repo transactions, qualified as a "settlement payment" under § 741(8) of the Code. *Id.* at 752-53. *Bevill* did not address whether the transactions were void under applicable law or the effect of a transaction that was void under such law. *See id.* at 753. Similarly, *Lowenschuss v. Resorts International, Inc. (In re Resorts International, Inc.)*, 181 F.3d 505 (3d Cir. 1999), a case explicitly overruled by *Merit Management Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018), is of no help to Movants. In that case, the court analyzed whether a contract was illegal in the context of an alternative state-law remedy, not in relation to the fraudulent transfer claim. *Resorts*, 181 F.3d at 512. And the Third Circuit held that under controlling state law, "courts will leave the parties to an executed illegal contract as they are[,]" unless the parties are found not to be *in pari delicto*. *Id.* In other words, under applicable law, the arguably illegal contract at issue was not void.

50. Additionally, Movants are incorrect in relying on arguments that *Enron* is no longer good law in the Second Circuit. None of the Second Circuit cases that Movants rely on criticize, or even mention, *Enron*'s ruling that a transaction void under applicable law is not a settlement payment. *See Kirschner v. Robeco Cap. Growth Funds (In re Nine W. LBO Sec. Litig.)*, 87 F.4th 130 (2d Cir. Nov. 27, 2023); *Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*, 773 F.3d 411 (2d Cir. 2014); *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. (In re Enron Creditors Recovery Corp.)*, 651 F.3d 329 (2d Cir. 2011). Moreover, as the Second Circuit in *Nine West* recognized, one of the "crucial" powers and "core principles" in the Bankruptcy Code relates to the trustee's power "to set aside or avoid certain transfers and recoup their value for the estate." 87 F.4th at 146. Accordingly, the Second Circuit held that accepting the defendants' broad "interpretation [of the definition of 'financial institution' in the Bankruptcy

Code] would be to undermine the avoidance powers that are so crucial to the Bankruptcy Code." *Id.* Finally, in *Madoff*, the trustee never argued that the underlying securities contracts identified by defendants were void. *See* 773 F.3d at 417. The trustee argued that Madoff failed to abide by the terms of the contract when he engaged in a Ponzi scheme instead of trading securities under the terms of the contract. *Id.*

51. Applying *Enron* here—as this Court should—would not be inconsistent with the Bankruptcy Code. Citadel/Susquehanna MTD ¶ 41. Movants rely on the argument that, since § 546(e) is a defense to a fraudulent transfer claim, it cannot follow that § 546(e) can be defeated by an allegation of insolvency. *Id.* This argument misses the mark. Here, there is no qualifying transaction under § 546(e) because the entire share repurchase transaction is void under applicable law. "Congress . . . had no intent to shield transactions illegal under local law[.]" *TriGem Am. Corp.*, 431 B.R. at 865.

52. Movants rely on the argument that depriving them of their § 546(e) defense in the face of repurchase trades voided under Irish law would undermine market stability. Citadel/Susquehanna MTD ¶ 41. That argument lacks merit and is refuted by historical experience. *Enron* was decided in 2005. But the death knell of § 546(e) has not sounded, markets have not collapsed, and the parade of horribles envisioned by Movants has not materialized. Requiring Mallinckrodt to honor the legal requirements of its place of incorporation supports the rule of law rather than undermining it.

### E. The Trust Did Not Waive Any Arguments

53. Movants' reliance on waiver arguments are also without merit. From the start, the Trust objected to including § 546(e) defenses in the Protocol on the ground that they involved complex legal and factual determinations that required complex discovery and expert testimony

and were therefore not appropriate for a protocol.  Adv. D.I. 141, ¶¶ 47, 51.  After the Court directed the parties to negotiate a protocol that included § 546(e) defenses, the Trust insisted on language in the Protocol to ensure that nothing in the Protocol would waive or inhibit any of the Trust's rights and defenses.  *See* Protocol ¶¶ 11(c), 15.  For example, paragraph 11(c) of the Protocol provides in relevant part:  "For the avoidance of doubt, . . . Plaintiff's [*i.e.*, the Trust's] rights to oppose a Protocol-Based Motion *on any grounds* . . . are *hereby preserved.*"  *Id.* ¶ 11(c) (emphasis added).  Accordingly, there can be no implied waiver by the Trust when the Protocol itself specifies that the Trust's rights to oppose Movants' § 546(e) defenses "on any grounds" are "preserved."

54.     Movants rely on the argument that "the Protocol Order nowhere suggests that a Defendant presenting a § 546(e) defense would also need to address whether the Share Repurchases were qualifying transactions."  Citadel/Susquehanna MTD ¶ 16.  Whether or not the Protocol addresses qualifying transactions has no bearing on whether they are required to establish a § 546(e) defense.  Paragraph 15 of the Protocol expressly provides:  "Nothing in this Protocol is intended, or shall be deemed or construed, to alter any party's burden of proof or persuasion with respect to any claim or defense (including without limitation, the Defenses) or to alter the legal standard for any motion filed in the Adversary Proceeding."   Section 546(e) unambiguously requires that transactions be qualifying transactions.  Nothing in the Protocol allows Movants to ignore half of the safe-harbor statute.  To the contrary, paragraph 15 requires the opposite.  In any event, silence cannot equal waiver.  *Off. & Pro. Emps. Int'l Union v. Nat'l Labor Rels. Bd.*, 419 F.2d 314, 321 (D.C. Cir. 1969) (stating that "contract silence without more is not sufficient to establish waiver"); *Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, No. 23-CV-3005 (JSR), 2023 WL 7498071, at *6 (S.D.N.Y. Nov. 14, 2023) ("It is well-established that waiver cannot be

- 26 -

inferred from mere silence[.]") (quotation omitted). In addition, Movants expressly acknowledged their burden to establish qualifying transactions in their Protocol submission. *See supra* ¶ 3.

55. Equally inapposite is Movants' next argument: that waiver occurred because the Trust was required to raise the qualifying transaction argument within 45 days and it instead "demand[ed]" documentation unrelated to the qualifying transaction issue and only informed Movants of its decision not to dismiss them from the Adversary Proceeding on the basis of Irish law later. *See* Citadel/Susquehanna MTD ¶ 51. Movants' argument that the Trust was dragging its feet misstates the facts and the terms of the Protocol. In no instance did the Trust fail to abide by the procedures set forth in the Protocol. The Protocol gives the Trust 45 days to respond to an initial request for dismissal, and it may do so with a request for additional information. Protocol ¶ 9. If the Trust requests additional information, the Protocol does not *at that point* require the Trust to also provide its grounds for declining to dismiss the defendant. Indeed, that would make no sense. It is only after the defendant provides information in response to the requests (or refuses to do so) that the Trust, within 45 days, must decide whether to dismiss the defendant, and if the Trust declines to dismiss, it must provide the grounds based on which it is unwilling to do so. *Id.* Moreover, the Protocol has no time limit on when defendants may provide the Trust with additional information (or state that they are refusing to provide it). *Id.* Here, the Renaissance Defendants waited even longer than the Trust—47 days—to respond to the Trust's information requests. Movants cannot use their *own* delay in responding to the Trust as a basis for arguing waiver.

56. Movants also rely on the argument that the Trust should not have made information requests about Movants' status as financial participants if the Trust did not believe there was a qualifying transaction. Citadel/Susquehanna MTD ¶¶ 19, 25. This argument ignores the fact that the Trust has a right to fully investigate each demand for dismissal. *See supra* part I. The fact that

the Trust has one ground to decline dismissal does not prohibit it from seeking information related to other grounds.

### F. The Trust Satisfied the Notice Requirements of Rule 44.1.

57.     Movants' reliance on the argument that the Trust failed to provide sufficient notice under Civil Rule 44.1 is without merit.  Citadel/Susquehanna MTD ¶ 52.  Rule 44.1 provides, in pertinent part, that a "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."  Fed. R. Civ. P. 44.1.  The notice required by the rule is intended to "avoid unfair surprise" and "is sufficient if it allows the opposing party time to research the foreign rules."  *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venezuela*, 575 F.3d 491, 496-97 (5th Cir. 2009).  Courts impose a low bar to satisfy the notice requirement and routinely hold that providing notice in the later stages of litigation—considerably later in the proceedings than the notice provided here—complies with Rule 44.1.  *See, e.g.*, *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 n.4, 267 (S.D. Tex. 1996) (holding that notice requirement of Rule 44.1 was satisfied where notice was given "a full three years and nine months after the original complaint was filed" and "plaintiffs waited until the eve of trial to give notice"); *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004) (notice provided at pretrial conference satisfied Rule 44.1); *Canadian Imperial Bank of Com. v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995) (holding that raising issue of foreign law in motion for summary judgment constituted reasonable notice under Rule 44.1).

58.     Here, the Trust at least twice provided written notice to Movants that it intended to rely on Irish law:  (a) the Amended Complaint filed on October 24, 2023[31]; and (b) the Trust's

---

[31]   *See* Adv. D.I. 209, ¶ 317 ("Mallinckrodt conducted the Share Repurchase Program in violation of Irish law."). That notice complies with Rule 44.1.  *See In re Griffin Trading Co.*, 683 F.3d 819, 822-23 (7th Cir. 2012) (holding that "trustee's own complaint sufficed to give notice about the applicability of foreign law" when the complaint "explicitly cite[d] Park's trading activity in London as the precipitating event, and point[ed] to the transfer to

letter to the Renaissance Defendants dated December 15, 2023.[32]  As such, the Trust provided notice at least *eleven weeks* before the Motion was filed on January 10, 2024, and at the early stages of this Proceeding (*e.g.*, before any pretrial conference or any dispositive motion practice). In addition, since there was no deadline for Movants to assert a motion to dismiss, they could have taken as much time as they needed to evaluate the Irish law issue before bringing their Motion. Movants do not—because they cannot—allege that they suffered unfair surprise or prejudice as a result of the timing of the Trust's notice.[33]

59.     Under Rule 44.1, the Trust was entitled to conclude its due diligence on complex issues relating to § 546(e), including the potential applicability of Irish law, before providing notice of its intent to rely on Irish law.  *See* Fed. R. Civ. P. 44.1 (advisory committee's notes) ("The new rule does not attempt to set any definite limit on the party's time for giving the notice of an issue of foreign law; in some cases the issue may not become apparent until the trial and notice then given may still be reasonable.").  There is no support whatsoever for Movants' reliance on an unsupported argument that the Trust was somehow required to provide notice "in its Complaint, during the negotiation of the Protocol Order, or at any time prior to Moving Defendants' completion of their submissions under the Protocol Order."  Citadel/Susquehanna MTD ¶ 52.[34]  In sum, the Trust complied with Rule 44.1's notice requirement, and the Court should reject Movants'

---

MeesPierson, a Netherlands entity that used a German bank, as the cause for liability").

[32]    *See* Adv. D.I. 243, Ex. 6 at 2.

[33]    *See Thyssen Steel Co.*, 911 F. Supp. at 267 (holding that sufficient notice was provided under Rule 44.1 where defendant did "not allege unfair surprise" and did "not present evidence that [the] notice in any way hindered its ability to present a defense").

[34]    The sole case Movants rely on to support the notice argument is easily distinguishable.  In *Al Maya Trading Establishment v. Global Export Marketing Co.*, the respondent provided oral notice of intent to rely on foreign law at the pretrial conference, which occurred two months before the trial date, after a motion to dismiss had been litigated, and after the court had approved a case management plan.  No. 14 Civ. 275(PAE), 2014 WL 3507427, at *3-5 (S.D.N.Y. July 15, 2014).  The respondent also failed to provide *written* notice as required by the Rule.  *Id.*  In contrast, the Trust provided written notice before any pretrial conference and any dispositive motion practice.

arguments to the contrary. Movants have not met their burden of establishing a qualifying transaction and thus have no defense under § 546(e).

## <u>CONCLUSION</u>

For all the reasons explained above, the Court should deny the Motion.

*[Signature of counsel appears on next page.]*

Dated: February 5, 2024
Wilmington, Delaware

Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Justin R. Alberto*_____
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
preilley@coleschotz.com

Anthony De Leo, Esq.
(admitted *pro hac vice*)
1325 Avenue of the Americas
19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
adeleo@coleschotz.com

*Co-Counsel to the Opioid*
*Master Disbursement Trust II*

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq. (admitted *pro hac vice*)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
Quincy M. Crawford, III, Esq.
(admitted *pro hac vice*)
Serafina Concannon, Esq. (admitted *pro hac vice*)
One Thomas Circle, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com
mcrawford@capdale.com
sconcannon@capdale.com

*Co-Counsel to the Opioid*
*Master Disbursement Trust II*