## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
|  | : |  |
| Reorganized Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | Adversary Proceeding |
|  | : |  |
| Plaintiff, | : | No. 22-50435 (JTD) |
|  | : |  |
| v. | : |  |
|  | : |  |
| ARGOS CAPITAL APPRECIATION MASTER | : |  |
| FUND LP, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT AS TO
## DEFENDANTS CITADEL SECURITIES LLC AND
## SUSQUEHANNA SECURITIES, LLC
## PURSUANT TO THE PROTOCOL ORDER RELATING TO
## CONDUITS, NON-TRANSFEREES, "STOCKBROKERS,"
## "FINANCIAL INSTITUTIONS," "FINANCIAL PARTICIPANTS,"
## AND DISSOLVED ENTITIES

# TABLE OF CONTENTS

I.      The Share Repurchases Are Qualifying Transactions ........................................................ 2

    A.      The Share Repurchases Were "Settlement Payments" .......................................... 2

    B.      The Share Repurchases Were Transfers In Connection With A Securities Contract ................................................................................................................................ 6

    C.      The Trust Waived Its Eleventh-Hour Argument .................................................... 7

II.     Each Of The Moving Defendants Is A Qualifying Participant ........................................ 8

    A.      Citadel Securities Is A Financial Participant ......................................................... 8

    B.      Susquehanna Securities Is A Financial Participant .............................................. 15

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*Burton v. Bickell*,
    2014 WL 10713160 (E.D. Pa. Nov. 10, 2014) ....................................................9

*Contemporary Indus. Corp. v. Frost*,
    564 F.3d 981 (8th Cir. 2009) ..............................................................6

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
    643 F. Supp. 3d 421 (S.D.N.Y. 2022)..........................................................7

*Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.) ("Enron I")*,
    323 B.R. 857 (Bankr. S.D.N.Y. 2005).....................................................2, 4, 5

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V. ("Enron II")*,
    651 F.3d 329 (2d Cir. 2011) ...............................................................4, 5

*FTC v. Shire ViroPharma, Inc.*,
    917 F.3d 147 (3d Cir. 2019)................................................................14

*Gen. Elec. Corp. v. Lease Resol. Corp.*,
    128 F.3d 1074 (7th Cir 1997) ..............................................................13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
    530 U.S. 1 (2000)...........................................................................7

*In re Bayou Steel BD Holdings, L.L.C.*,
    642 B.R. 371 (Bankr. D. Del. 2022) .........................................................7

*In re Bernard L. Madoff Inv. Sec. LLC*,
    773 F.3d 411 (2d Cir. 2014)...........................................................5, 6, 7

*In re Columbia Gas Sys., Inc.*,
    997 F.2d 1039 (3d Cir. 1993)...............................................................4

*In re DSI Renal Holdings, Inc.*,
    617 B.R. 496 (Bankr. D. Del. 2020) ........................................................15

*In re Extended Stay, Inc.*,
    2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) ...........................................3

*In re Lyondell Chem. Co.*, No. 10-04609 (Bankr. S.D.N.Y.) ......................................11

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..............................................................14

*In re Nine West LBO Sec. Litig.*,
    482 F. Supp. 3d 187 (S.D.N.Y. 2020), *aff'd in rel. part by* 87 F.4th 130
    (2d Cir. 2023) ........................................................................................................7

*In re Orion HealthCorp, Inc.*,
    No. 18-08048 (Bankr. E.D.N.Y.) ........................................................................11

*In re Pitt Penn Holding Co.*,
    2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) ............................................7

*In re Quorum Health*,
    2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023).....................................12, 14

*In re Resorts Int'l Inc.*,
    181 F.3d 505 (3d Cir. 1999)......................................................................2, 3, 4, 6

*In re Trib. Co. Fraudulent Conv. Litig.*,
    946 F.3d 66 (2d Cir. 2019)...............................................................................3, 4, 7

*In re Trib. Co. Fraudulent Conv. Litig.*,
    No. 12-CV2652 (S.D.N.Y.) ..................................................................................11

*In re TriGem Am. Corp.*,
    431 B.R. 855 (Bankr. C.D. Cal. 2010)..................................................................5

*In re Westinghouse Securities Litigation*,
    90 F.3d 696 (3d Cir. 1996)...................................................................................13

*Kravitz v. Samson Energy Co.*,
    625 B.R. 291 (Bankr. D. Del. 2020) ...................................................................13

*Lockhart v. Hoenstine*,
    411 F.2d 455 (3d Cir. 1969)................................................................................11

*Luria v. Hicks*,
    2017 WL 4736682 (Bankr. M.D. Fla. Mar. 14, 2017).......................................12

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    583 U.S. 366 (2018).............................................................................................2, 3

*Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc)*,
    2024 WL 206682 (Bankr. D. Del. Jan. 18, 2024) ..............................................2, 3

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000)................................................................................14

*Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund, L.P.)*,
    467 B.R. 643 (Bankr. N.D. Ill. 2012) ..................................................................5

*Tracinda Corp. v. DaimlerChrysler AG.,*
 197 F. Supp. 2d 42 (D. Del. 2002)................................................................14

*United States v. Stein,*
 881 F.3d 853 (11th Cir. 2018) ...............................................................11

## STATUTES

11 U.S.C. § 101................................................................................................12

11 U.S.C. § 544..................................................................................................3

11 U.S.C. § 546..........................................................................................*passim*

11 U.S.C. § 548..................................................................................................3

28 U.S.C. § 1746...............................................................................................9

## RULES

Fed. R. Bankr. P. 1001 .....................................................................................11

Fed. R. Civ. P. 1 ...............................................................................................11

Fed. R. Civ. P. 12 .........................................................................................9, 13

Moving Defendants[1] respectfully submit this reply in support of their Protocol Motion and in response to the Trust's Opposition [D.I. 263] ("Opposition" or "Opp.").

The Protocol Motion presents a straightforward application of Section 546(e). The Share Repurchases—payments of cash for stock—are quintessential "settlement payments," as well as transfers "in connection with a securities contract." And Moving Defendants are among the largest securities market makers in the country, with billions of dollars in outstanding securities contracts, and thus qualify as "financial participants" many times over.

Having refused over a period of 11 months to dismiss Moving Defendants without meaningful explanation, the Trust now makes the radical argument that the law of Mallinckrodt's place of incorporation, Ireland, and not the U.S. Bankruptcy Code, determines whether the Share Repurchases are qualifying transactions—a position that, if adopted, would vitiate Section 546(e)'s goal of ensuring certainty, speed, finality, and stability in the securities markets. Worse still, in its effort to justify that extraordinary position, the Trust relies on a series of plainly wrong arguments: that the Third Circuit's broad construction of the statutory term "settlement payment" has somehow been overruled by a Supreme Court decision that explicitly said it was *not* addressing the meaning of that term; that this Court should instead rely on a two-decades old decision from the Southern District of New York that is not good law in the Second Circuit, let alone in the Third; and that Moving Defendants are not entitled to the evidentiary protocols guaranteed by the Protocol Order. These arguments should be rejected, and this Court should grant the Protocol Motion, dismissing the claims against the Moving Defendants.

---

[1] Unless otherwise defined, capitalized terms have the same meanings as in the *Motion to Dismiss the Amended Complaint as to Defendants Citadel Securities LLC and Susquehanna Securities, LLC Pursuant to the Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities* [D.I. 215] (the "Protocol Motion" or "Mot.").

I.      **The Share Repurchases Are Qualifying Transactions**

A.      The Share Repurchases Were "Settlement Payments"

1.      As this Court recently noted, controlling Third Circuit law holds that the Bankruptcy Code's definition of "settlement payment" is "extremely broad" and includes any "transfer of cash or securities made to complete a securities transaction." *Opioid Master Disbursement Tr. II v. Covidien Unlimited Co. (In re Mallinckrodt plc)*, 2024 WL 206682, at *15 (Bankr. D. Del. Jan. 18, 2024) (quoting *In re Resorts Int'l Inc.*, 181 F.3d 505, 515 (3d Cir. 1999)).  That is precisely what happened here—Mallinckrodt transferred cash to repurchase its own stock on the open market.  Am. Compl. ¶ 7.  The Trust does not dispute that the Share Repurchases satisfy this Court's and the Third Circuit's construction of the term "settlement payment."

2.      Instead, unsatisfied with the law of this Circuit and this Court, the Trust argues that the Court should rely on the 2005 out-of-Circuit bankruptcy court decision, *Enron Corp. v. Bear, Stearns Int'l Ltd. (In re Enron Corp.)*, 323 B.R. 857, 877 (Bankr. S.D.N.Y. 2005) ("*Enron I*"), and on that basis, apply the law of *Ireland* to determine whether the transfers it seeks to avoid were "settlement payments" under the *United States* Bankruptcy Code.  The Trust seeks to avoid binding Circuit precedent with a badly misleading assertion (Opp. ¶ 42)—namely, that the Supreme Court "explicitly overruled" *Resorts*' interpretation of the term "settlement payment" in *Merit Management Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366 (2018).  That assertion is plainly wrong.  *Merit* held only that the relevant conveyance under Section 546(e) is the overarching transfer sought to be avoided, not each part of a multi-step transaction.  The Court was explicit that it was *not* determining "whether the transaction at issue . . . qualifie[d] as a transfer that is a 'settlement payment' or made in connection with a 'securities contract,' as those

terms are used in § 546(e)." *Id.* at 377 n.5.[2] *Resorts* remains good law regarding the meaning of the term "settlement payment," as this Court recognized a few weeks ago when it relied on *Resorts* for this very proposition. *See Covidien*, 2024 WL 206682 at *15.

3.      The Trust's entire argument—that Mallinckrodt was insolvent when it repurchased its stock, that the Share Repurchases were therefore illegal and "void" under Irish law, and that, as a result, they were not "settlement payments" (Opp. ¶ 42)—thus fails at the starting gate. As *Resorts* makes clear, the only question necessary to determine whether the Share Repurchases were "settlement payments" is whether they were made "to complete a securities transaction." 181 F.3d at 515. They obviously were, and the Trust points to nothing recognizing an "illegality" exception to the Third Circuit's broad reading of the statutory language. Just the opposite, the Third Circuit held in *Resorts* that a payment for securities is a settlement payment even if it arose out of an "arguably illegal contract." *Id.*[3] And this makes sense. The Code provides for the safe harbor even if the debtor was insolvent when it made the transfer. *See* 11 U.S.C. § 546(e) ("Notwithstanding sections 544 . . . [and] 548(a)(1)(B*) . . .*").

4.      Indeed, the Trust's argument is at war with Section 546(e)'s very purpose: "to protect from avoidance proceedings payments by and to commodities and securities firms . . . [because] such. . . [p]ayments provide . . . stability to financial markets." *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 90 (2d Cir. 2019). Market makers like Moving Defendants

---

[2] *See also In re Extended Stay, Inc.*, 2020 WL 10762310, at *83 (Bankr. S.D.N.Y. Aug. 8, 2020) (relying on *Resorts*' construction of "settlement payment" because *Merit* "abrogated" *Resorts* only "on other grounds").

[3] The Trust asserts (Opp. ¶ 42) that *Resorts* analyzed the illegality of the transactions only "in the context of an alternative state-law remedy, not in relation to the fraudulent transfer claim." But that is the point—the Third Circuit did not analyze the illegality of the contract when determining if the transfers were "settlement payments" because that analysis is irrelevant to the application of the 546(e) safe harbor. *See Resorts*, 181 F.3d at 514-516.

provide that stability by participating as buyers and sellers at all times, pricing securities almost instantaneously, and executing trades at significant scale. None of this could occur under the Trust's reading of the safe harbor. Before selling stock, a market maker would need to determine who the prospective buyer is (something that is impossible in faceless transactions on securities exchanges); review that buyer's financial statements; assess whether the buyer faced undisclosed contingent liabilities that rendered those statements inaccurate and the buyer insolvent; determine which jurisdiction's law governs the buyer; and, finally, conclude under that law whether the insolvency would render the stock purchases "void." Rather than facilitating "certainty, speed, finality, and stability" in the settlement of securities transactions, *id.* at 90, the Trust's construction of Section 546(e) "would result in commercial uncertainty and unpredictability at odds with the safe harbor's purpose and in an area of law where certainty and predictability are at a premium," *Enron II*, 651 F.3d 329, 336 (2d Cir. 2011).[4]

5.      In any event, Section 546(e) is part of the *United States* Bankruptcy Code, not the statutory regime of Ireland. "[F]ederal law governs questions involving the interpretation of a federal statute." *In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1055 (3d Cir. 1993). The safe harbor, enacted to govern this country's securities markets, requires a uniform federal definition of the term "settlement payment." *See Resorts*, 181 F.3d at 515; *see also Enron II*, 651 F.3d at 335-36.

6.      In light of all of this, the Trust's reliance on *Enron I* is unavailing. Not only is *Enron I* contrary to this Circuit's controlling decision in *Resorts*, but it is also contrary to the

---

[4]  The Trust asserts (Opp. ¶ 45) that, since *Enron I*, "the death knell of § 546(e) has not sounded, markets have not collapsed, and the parade of horribles envisioned by [Moving Defendants] has not materialized." But that is because *Enron I* is not good law—in this Circuit or anywhere else. *See* Mot. ¶ 42.

Second Circuit's later decision in *Enron II*, which held (as the Third Circuit did) that a "settlement payment" is simply a "transfer of cash or securities made to complete [a] securities transaction." 651 F.3d at 334. *Enron II* rejected a construction of Section 546(e) that would, like the Trust's argument here, "make application of the safe harbor in every case depend on a factual determination regarding the commonness of a given transaction" because it would "result in commercial uncertainty and unpredictability at odds with the safe harbor's purpose." *Id.* at 336. As noted in the Protocol Motion (¶ 42), one court has already questioned whether *Enron I* survives *Enron II*; the Trust offers no response. *See Peterson v. Enhanced Investing Corp. (Cayman) Ltd. (In re Lancelot Invs. Fund, L.P.)*, 467 B.R. 643, 653 (Bankr. N.D. Ill. 2012). And critically, since the Second Circuit decided *Enron II*, no reported decision has relied on *Enron I*.[5]

7.      If there were any doubt, the Second Circuit's later decision involving Bernie Madoff's Ponzi scheme ended it. There, the Second Circuit held that cash withdrawals from customer accounts maintained with Madoff were "settlement payments," even though he engaged in no securities transactions and stole later customers' cash to pay earlier investors, because the earlier investors had "every reason to believe that [Madoff's firm] was actually engaged in the business of effecting securities transactions" and had "every right to avail themselves of … the protection offered by § 546(e)." *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 417-22 (2d Cir. 2014); Mot. ¶ 43. The Trust tries to distinguish *Madoff*, claiming that "the trustee never argued that the underlying securities contracts … were void." Opp. ¶ 43. In fact, *Madoff* held that "[t]he statutory definition and [*Enron II*] compel the conclusion that, for

---

[5] *In re TriGem Am. Corp.* (Opp. ¶¶ 21, 40, 44), was decided before *Enron II* and relied on *Enron I*. *See* 431 B.R. 855, 865 (Bankr. C.D. Cal. 2010); Mot. ¶ 44 & n.9 (citing cases). It is also readily distinguishable. *TriGem* addressed Section 546(g), which does not apply to a "settlement payment." 11 U.S.C. § 546(g).

example, if I instruct my broker to sell my shares of ABC Corporation and remit the cash, that payment is a 'settlement' even if the broker may have failed to execute the trade and sent me cash stolen from another client"—a clearly illegal transaction. *Id*. at 422.

8.     The final case cited by the Trust (Opp. ¶ 40), *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 988 (8th Cir. 2009), supports Moving Defendants. There, the Eighth Circuit held that the term "settlement payment" is "extremely broad" and is "the transfer of cash or securities made to complete [a] securities transaction." *Id.* at 985 (quoting *Resorts*, 181 F.3d at 515). Far from applying non-bankruptcy law to construe the safe harbor, the court held that Section 546(e) *preempts* state law and *rejected* the argument that the transfer was "illegal" and therefore "does not qualify as a settlement payment." *Id.* at 988-89.

B.     <u>The Share Repurchases Were Transfers In Connection With A Securities Contract</u>

9.     Because the Share Repurchases were settlement payments, the Court need go no further and can dismiss the claims against the Moving Defendants on that basis alone. But the Share Repurchases were also made "in connection with" two separate sets of securities contracts.

10.     *First*, the Trust's own Amended Complaint alleges the Share Repurchases were "in connection with" the Purchase Agreements. Am. Compl. ¶ 274 (Mallinckrodt "entered into [the Purchase Agreements] . . . *in connection with* the share repurchases" (emphasis added)). That allegation disposes of the Trust's assertion (Opp. ¶ 38) that "those agreements do not reference … any specific repurchase trades that Movants were involved with or received proceeds from," an assertion that is irrelevant in any event. *See Madoff*, 773 F.3d at 420 (rejecting the same argument as it "constructs a requirement that the law does not contain").

11.     The Trust's additional argument (Opp. ¶ 38) that the Moving Defendants were not parties to the Purchase Agreements is equally irrelevant. Section 546(e) requires only that the transfer be "in connection with a securities contract." Nothing in the statute requires that the

transferee be a party to the contract.  Like all federal statutes, the Bankruptcy Code must be construed in accordance with its plain meaning, without adding terms Congress did not include. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).  The courts have held that the "in-connection-with-a-securities-contract" modifier sets a "low bar" that is "interpreted broadly"; the transfer need only be "related to" or "associated with" a securities contract.  *Madoff*, 773 F.3d at 419, 421-22.  And the courts have granted motions to dismiss filed by public shareholders even though, as here, the shareholders were not parties to the contracts.  *See, e.g.*, *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 191, 197-98 (S.D.N.Y. 2020), *aff'd in rel. part by* 87 F.4th 130 (2d Cir. 2023); *Trib.*, 946 F.3d at 80-81.[6]

12.     *Second*, the Share Repurchases were also "in connection with" Moving Defendants' sell orders placed with their brokers that, once accepted, formed binding contracts. Mot. ¶¶ 36-37.  The Opposition does not respond, conceding the point.  *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

C.     The Trust Waived Its Eleventh-Hour Argument

13.     For the reasons discussed, the Trust's argument fails on the merits.  But, in any event, the Trust only conjured up this argument after many months in which Defendants incurred substantial legal fees and expended considerable time and effort negotiating the Protocol Order and making submissions pursuant to it.  The Opposition concedes all the material facts: the Trust

---

[6]  The Trust's reliance (Opp. ¶ 38 & n.21) on *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371 (Bankr. D. Del. 2022), and *In re Pitt Penn Holding Co.*, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011), is misplaced.  Unlike here, the plaintiff in *Bayou* did not allege that the transfers were made pursuant to the contracts on which the defendants relied for their motion; in fact, those contracts did not come into existence until more than three months *after* the transfers. 642 B.R. at 390.  *Penn* addressed whether a transfer was a gift.  *See* 2011 WL 4352373, at *12.

never disputed that the Share Repurchases were qualifying transactions until *after* it consented to the Protocol Order and *after* the parties' exchange of information pursuant to the Protocol Order was complete; and the Trust did not raise Irish law in the original Complaint, the operative pleading when the Protocol Order was negotiated and entered, or when Moving Defendants made their protocol submissions.  Mot. ¶¶ 50-52; Opp. ¶¶ 46-48.  This provides an ample basis to find waiver.[7]  *See* Mot. ¶ 51 & n.11 (collecting cases).  In any event, the fact that the Trust now leads with an argument it never made before and that would render the Protocol Order a nullity speaks volumes about the argument's merits.[8]

## II.  Each Of The Moving Defendants Is A Qualifying Participant

### A.  Citadel Securities Is A Financial Participant

14.  Citadel Securities has amply demonstrated that it is a financial participant.  It has provided audited financial statements filed with the SEC, its 2019 Form 13F also filed with the SEC, voluminous internal records, and two sworn declarations.[9]  These materials show that, as of

---

[7]  Contrary to the Trust's revisionist history, the Trust never argued that the "qualifying transaction" prong of the safe harbor involved "complex legal and factual determinations that required complex discovery and expert testimony," during the months in which the parties painstakingly negotiated the Protocol Order and appeared before this Court; it made that argument only as to the "qualifying participant" prong, *see* D.I. 141 ¶¶ 31-35, an argument this Court rejected, *see* D.I. 158 at 26:16-19.  Nor does paragraph 11(c) of the Protocol Order, which addresses whether the evidence to establish qualifying participant status is sufficient, allow the Trust to reserve arguments not made in its submissions pursuant to the Protocol Order.

[8]  The Trust is precluded from relying on its eleventh-hour declarations submitted with its Opposition, which raise arguments never previously advanced by the Trust.  *See* D.I. 185-1 ¶ 11(b) ("Plaintiff shall not oppose a Defendant's Protocol-Based Motion on any grounds not articulated by the Plaintiff in its written notification pursuant to paragraph[] 9.").

[9]  The Opposition's assertion (¶ 4) that Moving Defendants' declarations were "unsworn" ignores the Protocol Order and federal law.  The Protocol Order requires a "sworn declaration substantially in the form attached hereto as Appendix A . . . signed by an authorized officer, director, or employee of the Defendant with personal knowledge," which requires the declarant to "declare under penalty of perjury that the foregoing is true and correct."  D.I. 185-1, app. A at 3.  Moving Defendants' declarations track that template.  Firsenbaum Decl. Exs. 2, 5, 8; *see also*

a statutory relevant date, Citadel Securities had repurchase and reverse repurchase agreements with notional values of $10.443 *billion* and $4.419 *billion*, respectively, and gross mark-to-market option contracts of $19.286 *billion*, with notional amounts of put and call options alone of $65 *billion*. Firsenbaum Decl., Exs. 2, 4-5. The Opposition offers no basis to question the accuracy of any of this evidence. Instead, the Trust makes four flawed arguments, implicitly asking this Court to credit the incredible premise that Citadel Securities and its auditors inaccurately calculated the notional values of its securities positions by *over* $9.443 *billion*, $3.419 *billion*, and $64 *billion*, respectively, and its gross mark-to-market options positions by *over* $19.186 *billion*.

15.     *First*, the Opposition suggests (Opp. ¶¶ 13-18) that the Court should ignore the evidence Citadel Securities provided, and instead base its decision solely on the Trust's pleadings, as if the Moving Defendants had filed a Rule 12(b)(6) motion not under the Protocol Order. That suggestion is at war with the terms of the Protocol Order, which expressly authorized the Moving Defendants and the Trust to exchange evidence; it also specified that if, following that exchange, the Trust was not willing to dismiss the claims against them, the Moving Defendants could file a "Protocol-Based Motion" and include with it "*for consideration by the Court* (i) the Declaration, (ii) Supporting Documentation, and (iii) any other evidence that the Plaintiff and the Defendant exchanged during the [Protocol] process." D.I. 185-1, ¶11(b) (emphasis added).

16.     That is precisely what Citadel Securities did. In response, the Trust presented no

---

*Burton v. Bickell*, 2014 WL 10713160, at *6 n.9 (E.D. Pa. Nov. 10, 2014) (when the "witnesses each indicate that they are making a statement, true and correct to the best of their knowledge, information and belief, and under the penalties for perjury . . . [w]e accept them as sworn declarations"). The declarations also satisfy 28 U.S.C. § 1746, with the declarants affirming their statements are "true under penalty of perjury."

contrary evidence suggesting that Citadel Securities fails to meet the "financial participant" thresholds, neither as part of the Protocol process nor in its Opposition.

17.     *Second*, the Trust incorrectly suggests (Opp. ¶¶ 57-58) that the mere fact that it requested additional information, and Citadel Securities declined to provide *some* of that information, is sufficient to deny the Protocol Motion.  That argument would also render the Protocol Order a sham, as the Trust could make demands for information that is irrelevant, unreasonable, unduly burdensome, or all of the above (as it did), and then interpose one or more of those unsatisfied requests as sufficient to avoid dismissal (as it is attempting to do).  Contrary to the Trust's argument, the Protocol Order (¶ 9) is clear that a defendant can properly object to improper or unnecessary requests by the Trust for additional information.

18.     In any event, Citadel Securities did not "refuse" (Opp. ¶ 58) to provide the Trust with supporting information.  Rather, it produced ample support for its claim.  Citadel Securities produced Excel spreadsheets containing 685,276 rows and 173 columns of positional data for each repurchase and reverse repurchase agreement and option.  Firsenbaum Decl., Ex. 5 at Exs. A-C; *id.*, Ex. 7.  And it explained how it calculated the notional and mark-to-market values of those securities contracts.  *Id.*, Ex. 5 ¶¶ 10, 15-17.  Significantly, while the Trust complains that it did not receive every single document it requested (some of which are plainly irrelevant or do not exist[10]), it nowhere explains *why* any of that information is necessary to resolve this Motion.

19.     Rather, the Trust's argument boils down to its contention (Opp. ¶ 59) that as a

---

[10] For example, the Trust asserts that it may need to review "trade confirmations" and unspecified "other records" (Opp. ¶ 56) without explaining why such information could be needed to determine whether Citadel Securities is a financial participant.  In any event, as Citadel Securities explained in its declarations, *see* Firsenbaum Decl. Ex. 5 ¶¶ 6-9, trade executions are effectuated electronically and the records of executions are maintained electronically in Citadel Securities' systems.  Those systems are what Citadel Securities used to generate the spreadsheets it provided the Trust.  *See id.* ¶¶ 6-13 & Exs. A-C.

"fiduciary," it must be granted the opportunity to "verify[] the accuracy" of the voluminous evidence that Citadel Securities presented, with the determination of whether that evidence was sufficient to be left to the Trust in its sole and absolute discretion. The Trust is wrong. As an initial matter, the Trust has more than sufficient evidence to satisfy any concerns regarding "accuracy," including sworn declarations. Mot. ¶¶ 55-57, 62, 64-65. And an "unsubstantiated doubt as to the veracity of the opposing [declaration]" does not create a dispute of material fact. *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969). Nor does the law require that a declaration be corroborated by other evidence. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). While they may be fiduciaries, the trustees are bound just like any other litigant by the Federal Rules, including Fed. R. Civ. P. 1's command (repeated in Fed. R. Bankr. P. 1001) that all parties must proceed "to secure the just, speedy, and inexpensive determination of every case." Indeed, while they were also fiduciaries, plaintiffs in other, large fraudulent transfer actions against public shareholders, have voluntarily dismissed dozens of shareholders defendants with clear, threshold defenses (something the Trust has failed to do here).[11]

20. *Third*, the Trust incorrectly argues (Opp. ¶ 56) that expert testimony is required to resolve Citadel Securities' motion because determining mark-to-market positions, in the Trust's view, "may" be difficult. As an initial matter, the definition of "financial participant" requires a showing that the defendant *either* (1) has securities contracts "of a total gross dollar value of not

---

[11] *See, e.g.*, *In re Trib.*, No. 12-CV2652 (S.D.N.Y.) (trust voluntarily dismissed approximately 111 defendants); *In re Lyondell Chem. Co.*, No. 10-04609 (Bankr. S.D.N.Y.) (98 defendants); *In re Orion HealthCorp, Inc.*, No. 18-08048 (Bankr. E.D.N.Y.) (44 defendants). The Opposition states (at 1-2) that, in this case, the Trust has dismissed 28 defendants already. That assertion is misleading at best. Of the 28 defendants dismissed, 21 were dismissed *before* the Court entered the Protocol Order and not, to the knowledge of undersigned counsel, as a result of any claim by those defendants that they were protected by Section 546(e). And of the remaining seven dismissed defendants, six were dissolved funds that could not be sued.

less than $1,000,000,000 in *notional* or actual principal amount outstanding" *or* (2) has "gross *mark-to-market* positions of not less than $100,000,000 . . . in one or more such agreements or transactions[.]"  11 U.S.C. § 101(22A)(A) (emphasis added).  The Trust does not dispute that the notional value of an instrument is readily discernable (Opp. ¶ 54), and Citadel Securities presented evidence of its repurchase and reverse repurchase agreements and options contracts with notional values exceeding $4.4 *billion*, $10.4 *billion*, and $65 *billion*, respectively, exceeding the $1 billion statutory threshold by billions of dollars.  Firsenbaum Decl., Ex. 2 at Ex. A.  The Court thus need not even reach the issue of mark-to-market value.

21.     In any event, the Trust is wrong that expert discovery is necessary to determine whether Citadel Securities' options exceed the mark-to-market threshold.  Courts routinely determine the value of a party's securities contracts, including mark-to-market positions, without expert discovery.  *See, e.g.*, *Luria v. Hicks*, 2017 WL 4736682, at *3-5 (Bankr. M.D. Fla. Mar. 14, 2017) (granting judgment for defendant based on sworn declaration attesting that defendant had over $100 million mark-to-market in outstanding repurchase agreements); *In re Quorum Health*, 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023) (granting motion to dismiss based on "private offering of secured notes in the amount of $1,462 billion").

22.     There is likewise no need for such testimony here.  "Mark-to-market" is synonymous with "fair value," a well-recognized accounting standard of the Financial Account Standards Board ("FASB") on which both the Moving Defendants and their auditors relied when calculating the mark-to-market positions of the Moving Defendants' securities positions.  Firsenbaum Decl., Ex. 2 at Ex. A at 3; *id.*, Ex. 8 ¶ 6 & Ex. A at 6.  The Trust provides no basis for questioning accepted FASB accounting standards applied by major public accounting firms.  And it offers no basis to suggest that Citadel Securities and its public accountants were off by

many *billions of dollars* in audited statements filed with the SEC showing that Citadel Securities had gross mark-to-market options contract positions of $19.286 *billion*, magnitudes in excess of the $100 million threshold under Section 546(e).[12]

23.     The Trust also never explains *why* any further discovery is needed here on the mark-to-market issue (or what it would be).  As noted, Citadel Securities did more than just provide its audited financial statements; it provided declarations attesting to the truth of the figures in those statements, it explained how it calculated the values at issue, and it provided voluminous internal data—the kind relied on by regulators—substantiating its positions.  Merely noting that mark-to-market accounting determinations can be aided by expert discovery is a far cry from showing that any such discovery is "needed" (Protocol Order ¶11(c)(iii)) *in this case* to resolve whether Citadel Securities exceeded the statutory thresholds.

24.     *Finally*, because this is a Protocol Motion, not a Rule 12(b)(6) motion based on the pleadings, the Trust is wrong (Opp. ¶¶ 60-62) to portray the issue here as whether the Court may take "judicial notice" of statements in SEC filings.  "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof."  *Gen. Elec. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir 1997).  The Protocol Order (¶ 11(b)) expressly permits the Court to consider the evidence exchanged by the parties.  And Citadel Securities did more than just provide the Trust with its SEC-filed

---

[12]  Neither of the cases cited in the Opposition (Opp. ¶ 56) helps the Trust.  In *Kravitz v. Samson Energy Co.*, the securities at issue were privately traded and entailed complex swaps and options based on oil and gas futures, which traded in a highly volatile market.  625 B.R. 291, 302-03 (Bankr. D. Del. 2020).  That is quite different from the standardized, exchange-traded options to purchase and sell stock in public companies at issue here, whose market value is readily available.  *See* Firsenbaum Decl., Exs. 2 ¶ 5 & Ex. B; *id.*, Ex. 5.  *In re Westinghouse Securities Litigation*, 90 F.3d 696 (3d Cir. 1996), was an accounting fraud case, involving allegations that the defendant improperly inflated its assets.  *Id.* at 709 n.9.  The Complaint here contains no such allegation concerning Citadel Securities.  *See* Am. Compl. ¶¶ 17, 32.

audited financial statements; it also submitted, among other forms of evidence, two sworn declarations attesting under penalty of perjury that the relevant facts in its SEC filings are true. Firsenbaum Decl., Exs. 2 & 5. Judicial notice is not necessary to decide this Protocol Motion.

25. But even if it were necessary, the Trust's argument would fail. In *Quorum Health*, Judge Shannon took judicial notice of facts in SEC filings for precisely the same purpose here—to establish that the defendant was a "financial participant":

> Because SEC filings are required by law to be filed with the SEC, no serious questions as to their authenticity can exist. Generally, SEC filings are relevant not to prove the truth of their contents, but only to determine what the documents stated. *The Third Circuit, however, has taken judicial notice of facts in an SEC filing (not just the existence of the document) when considering a motion to dismiss. In this case, the Court finds it appropriate to take judicial notice of the information in the [defendant's] SEC filings for purposes of determining whether [the defendant] meets the Code's definition of a "financial participant."*

2023 WL 2552399, at *7 (emphasis added). Judge Shannon noted that the Third Circuit has taken judicial notice, for the truth of the matters asserted, of SEC filings such as those here, whose accuracy cannot reasonably be disputed. *Id.* at *7 & nn. 42, 43 (citing *Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000)); *see also FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 151 n.5 (3d Cir. 2019) (taking judicial notice of a "fact—which is not in the complaint—from Shire's Form 8-K filings"). The cases in which the Third Circuit has declined to take judicial notice of an SEC filing for the statements asserted have, in contrast, involved claims of securities fraud in the very filings at issue. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002); *Oran*, 226 F.3d at 289; *Tracinda Corp. v. DaimlerChrysler AG.*, 197 F. Supp. 2d 42, 53-54 (D. Del. 2002). Here, there is no allegation, or any showing in the Opposition, that Citadel Securities was engaged in any fraud linked to the financial information on which Citadel Securities is relying.[13]

---

[13] The Opposition's reliance (Opp. ¶ 57) on a cease-and-desist order regarding Citadel Securities is doubly misplaced. The SEC's order was not about Citadel Securities' SEC filings

B.      Susquehanna Securities Is A Financial Participant

26.      Susquehanna Securities also has amply demonstrated that it is a financial participant.  Mot. ¶¶ 63-65.  It provided the Trust with *audited* financial statements *filed with the SEC* and a *sworn declaration* from its treasurer attesting to the accuracy of those documents showing that, at a statutorily-relevant time, it had mark-to-market options positions of *over $38.5 billion.*  Firsenbaum Decl., Ex. 8 ¶ 5 & Ex. A.  That alone is sufficient.  *See In re DSI Renal Holdings, Inc.*, 617 B.R. 496, 507 & n.29 (Bankr. D. Del. 2020) (finding that defendant was a financial participant based solely on a declaration attaching audited financial statements).

27.      The same points discussed above as to Citadel Securities apply fully to Susquehanna Securities.  The Trust offers no factual basis to call into question the accuracy of Susquehanna Securities' SEC-filed audited financial statements and sworn statement.  In response to the Trust's information requests, Susquehanna Securities explained how its mark-to-market options positions were calculated and confirmed that its options were exchange-traded (meaning the counterparty was the OCC and that "ISDA Master Agreements" were inapplicable).  Firsenbaum Decl., Ex. 4 at 5, 6-7.  The Trust does not explain how or why any of the limited information not provided could reasonably show that Susquehanna Securities' audited financial statements were wrong to the tune of $38.4 billion.

28.      Moving Defendants respectfully request that the Court enter the proposed order submitted as Exhibit A to the Protocol Motion dismissing them from the Adversary Proceeding.

---

or financial statements, but instead concerned the proper marking of short sales of equity securities pursuant to Regulation SHO.  *See* Second Firsenbaum Decl., dated Feb. 20, 2024, Ex. 1.  Moreover, Citadel Securities has already satisfied the supposed implication of the order—that the Trust may "ask for substantiation of the statements presented to it" (Opp. ¶ 57)—through two sworn declarations attesting to the accuracy of the documents it provided to the Trust.

Dated: February 20, 2024
Wilmington, Delaware

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: jryan@potteranderson.com
      abrown@potteranderson.com

*-and-*

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
Austin M. Chavez (*admitted pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: philip.anker@wilmerhale.com
      noah.levine@wilmerhale.com
      ross.firsenbaum@wilmerhale.com
      mike.mcguinness@wilmerhale.com
      austin.chavez@wilmerhale.com

*Counsel to Defendants Citadel Securities
LLC and Susquehanna Securities, LLC*