**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | Adversary Proceeding |
| | : | |
| Plaintiff, | : | No. 22-50435 (JTD) |
| | : | |
| v. | : | |
| | : | |
| ARGOS CAPITAL APPRECIATION MASTER | : | |
| FUND LP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT AS TO
DEFENDANTS T. ROWE PRICE ASSOCIATES, INC. AND
THE VARIOUS T. ROWE PRICE FUNDS PURSUANT TO
THE PROTOCOL ORDER RELATING TO
CONDUITS, NON-TRANSFEREES, "STOCKBROKERS,"
"FINANCIAL INSTITUTIONS," "FINANCIAL PARTICIPANTS,"
AND DISSOLVED ENTITIES**

# TABLE OF CONTENTS

I.     TRP Is A Non-Transferee ................................................................................ 1

II.    The TRP Funds Are Protected By The Section 546(e) Safe Harbor ................................. 9

      A.     The Share Repurchases Are "Qualifying Transactions" ........................................ 9

      B.     The TRP Funds Are Qualifying Participants ....................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Bailey v. Big Sky Motors, Ltd. (In re Ogden)*,
    314 F.3d 1190 (10th Cir. 2002) ......................................................................7

*Bear, Stearns Sec. Corp. v. Gredd*,
    275 B.R. 190 (Bankr. S.D.N.Y. 2002)............................................................8-9

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*,
    397 B.R. 1 (S.D.N.Y. 2007) ...........................................................................8

*Belmont v. MB Inv. Partners, Inc.*,
    708 F.3d 470 (3d Cir. 2013)...........................................................................5

*BMO Harris Bank, N.A. v. Petr*,
    2023 WL 3203113 (S.D. Ind. May 2, 2023) ..................................................11

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
    838 F.2d 890 (7th Cir. 1988) ......................................................................1, 7

*Bowers v. Atlanta Motor Speedway, Inc. (In re Se. Hotel Props. Ltd. P'ship)*,
    99 F.3d 151 (4th Cir. 1996) ...........................................................................7

*Carson Optical, Inc. v. eBay, Inc.*,
    202 F. Supp. 3d 247 (E.D.N.Y. 2016) ............................................................3

*Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner,*
    *Heine, Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir. 1997)......................................................................6, 7, 8

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
    643 F. Supp. 3d 421 (S.D.N.Y. 2022)..................................................4, 10, 12

*Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*,
    458 B.R. 155 (Bankr. D. Del. 2011) ...............................................................3

*Durkin v. Piper Tr. Co. (In re Denman & Co.)*,
    186 B.R. 707 (Bankr. C.D. Cal. 1995).............................................................6

*Ellen S. v. Fla. Bd. of Bar Examiners*,
    859 F. Supp. 1489 (S.D. Fla. 1994) ................................................................2

*Geltzer v. D'Antona (In re Cassandra Grp.)*,
    312 B.R. 491 (Bankr. S.D.N.Y. 2004) .............................................................6

*Gustafson v. Alloyd Co.*,
　　513 U.S. 561 (1995)..................................................................................14

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
　　530 U.S. 1 (2000).....................................................................................11

*Hooker Atlanta (7) Corp. v. Hocker (In re Hooker Invs., Inc.)*,
　　155 B.R. 332 (Bankr. S.D.N.Y. 1993) ......................................................8

*Iannacone v. IRS (In re Bauer)*,
　　318 B.R. 697 (Bankr. D. Minn. 2005) .......................................................6

*In re Brown Publ'g Co.*,
　　492 B.R. 610 (E.D.N.Y. 2013), *aff'd in relevant part by* 519 B.R. 13
　　(E.D.N.Y. 2014)........................................................................................8

*In re Nine West LBO Sec. Litig.*,
　　482 F. Supp. 3d 187 (S.D.N.Y. 2020), *aff'd in rel. part by* 87 F.4th 130
　　(2d Cir. 2023).................................................................................11, 12, 13

*Indus. Enters. of Am., Inc. v. Tabor Acad. (In re Pitt Penn Holding Co.)*,
　　2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011) ................................12

*Janvey v. Barr*,
　　2015 WL 12681608 (N.D. Tex. Aug. 5, 2015)...........................................6

*Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*,
　　892 F.2d 26 (4th Cir. 1989) .......................................................................9

*Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*,
　　426 B.R. 96 (Bankr. D. Del. 2010) ........................................................2, 3

*Miller v. Black Diamond Cap. Mgmt., L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*,
　　642 B.R. 371 (Bankr. D. Del. 2022) ........................................................12

*Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*,
　　321 B.R. 388 (Bankr. D. Del. 2005) ..........................................................9

*N. Cap., Inc. v. Stockton Nat'l Bank (In re Brooke Corp.)*,
　　458 B.R. 579 (Bankr. D. Kan. 2011) .........................................................6

*Noramco LLC v. Dishman USA, Inc.*,
　　2022 WL 2817876 (D. Del. July 19, 2022) .....................................4, 10, 12

*Paloian v. Lasalle Bank, N.A.*,
　　619 F.3d 688 (7th Cir. 2010) .....................................................................6

*Picard v. Ida Fishman Revocable Tr. (In re Bernard L. Madoff Inv. Sec. LLC)*,
    773 F.3d 411 (2d Cir. 2014)......................................................................... 10-11

*Ratzlaf v. United States*,
    510 U.S. 135 (1994)..................................................................................... 13-14

*Salomon v. Nedlloyd, Inc. (In re Black & Geddes, Inc.)*,
    59 B.R. 873 (Bankr. S.D.N.Y. 1986)................................................................8

*Schafer v. Las Vegas Hilton Corp. (In re Video Depot. Ltd.)*,
    127 F.3d 1195 (9th Cir. 1997) .........................................................................7

*SEC v. JNT Invs., Inc.*,
    1978 WL 1137 (S.D.N.Y. Feb. 9, 1978).........................................................12

*SEC v. M.S. Wien & Co. (In re M.S. Wien & Co.)*,
    54 B.R. 18 (Bankr. D.N.J. 1985) ...................................................................12

*Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*
    *Madoff)*,
    2023 WL 3964150 (Bankr. S.D.N.Y. June 12, 2023).....................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L.*
    *Madoff)*,
    2023 WL 8010194 (Bankr. S.D.N.Y. Nov. 17, 2023) .....................................3

*Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ........................................................2, 3

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)..........................................................................................15

*Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of*
    *Incomnet Commc'ns Corp. (In re Incomnet, Inc.)*,
    463 F.3d 1064 (9th Cir. 2006) .........................................................................9

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014)............................................................3

## STATUTES

11 U.S.C. § 101............................................................................10, 12, 13, 15

11 U.S.C. § 546.....................................................................1, 9, 11, 12, 13

11 U.S.C. § 550..............................................................................................1

11 U.S.C. § 741............................................................................................15

15 U.S.C. § 80a-2 .................................................................................................14

15 U.S.C. § 80a-3 .................................................................................................14

15 U.S.C. § 80a-15 ...............................................................................................14

15 U.S.C. § 80a-17 .................................................................................................5

15 U.S.C. § 80b-6 ...................................................................................................5

Investment Company Act of 1940 (the "40 Act") ............................1, 10, 11, 13, 14, 15

## RULES

Fed. R. Civ. P. 12 ...................................................................................................3

## OTHER AUTHORITIES

17 C.F.R. § 275.206 ................................................................................................5

5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §
    1357 (2d ed. 1990) ...................................................................................... 2-3

*Bruderman Asset Mgmt., LLC*, Investment Advisers Act Release No. 6435, 2023
    WL 6290824 (Sept. 26, 2023)........................................................................5

*Commission Interpretation Regarding Standard of Conduct for Investment
    Advisers*, Investment Advisers Act Release No. 5248, 84 Fed. Reg. 33,669
    (July 12, 2019) ...............................................................................................5

H.R. REP. NO. 109-31 (2005) ................................................................................13

SEC, *Fact Answers: Investment Company Registration and Regulation Package*
    (Feb. 19, 2023), https://www.sec.gov/investment/fast-
    answers/divisionsinvestmentinvcoreg121504....................................................5

The TRP Defendants[1] submit this reply in support of their Protocol Motion and in response to the Opposition, filed by the Trust [D.I. 271] (the "Opposition" or "Opp.").

The Protocol Motion presents a straightforward application of Sections 550 and 546(e) of the Bankruptcy Code. TRP should be dismissed pursuant to Section 550 because it is a "Non-Transferee"; it is an investment adviser that never received proceeds of the Share Repurchases and did not have the right to use any such proceeds for its own benefit.

The TRP Funds should be dismissed pursuant to Section 546(e). As explained in the CS/SSLLC Motion and CS/SSLLC Reply Brief[2], the Share Repurchases are quintessential "settlement payments" as well as transfers made "in connection with a securities contract," and thus are "qualifying transactions." And each of the TRP Funds is a registered investment company under the '40 Act, and thus qualifies as a "financial institution."

## I.      TRP Is A Non-Transferee

1.      The Trust's Opposition does not (and cannot) dispute the dispositive law and facts requiring the dismissal of TRP. It does not dispute that Section 550 of the Bankruptcy Code allows it to recover an avoided transfer only from a "transferee." Opp. ¶ 17. It does not dispute that an entity is a "transferee" only where it is the "*recipient* of the property" to be avoided and has the "right to put the money *to one's own purposes*." *Id.* ¶¶ 17-18 (quoting *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)) (emphasis added). And it points to nothing to dispute the uncontroverted evidence that TRP did not receive the proceeds of the Share Repurchases. *See* Firsenbaum Decl., Ex. 2 at Ex. C.

2.      Instead, the Trust makes multiple flawed arguments, which rest on the incredible

---

[1]  Unless otherwise defined, terms have the meanings provided in the TRP Defendants' motion [D.I. 217] (the "Protocol Motion" or "Mot.").

[2]  [D.I. 346] (the "CS/SSLLC Reply Brief").

proposition that investment advisers and other agents and fiduciaries, when acting in their *representative capacity*, can be *personally liable* in clawback actions for transfers their clients received. That most certainly is not the law.

3. *First*, the Trust (Opp. ¶¶ 19-21) misstates and misapplies the applicable burden. The Trust has the burden of pleading that TRP was a transferee; TRP does not have the burden to plead it was not a transferee. To satisfy its burden, the Trust must plead that TRP both received and had dominion and control over the proceeds of the alleged Share Repurchases. *See Mervyn's LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 96, 103 (Bankr. D. Del. 2010) (granting motion to dismiss because the "Committee does not plead . . . how Bank of America, acting as trustee[,] had 'dominion and control' over the funds"); *see also Sec. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 314 (Bankr. S.D.N.Y. 1999) (same, where trustee failed to allege that the defendant received the funds or "benefitted from [the transfers]" to satisfy dominion and control test).[3]

4. The Trust's conclusory allegation that Mallinckrodt "transferred" the proceeds to both TRP and the TRP Funds, Am. Compl. ¶¶ 17, 85, does not satisfy the Trust's burden for two reasons. First, there is no allegation that TRP had the right to use (or in fact used) the proceeds for its own purposes. *See id.* Second, the allegation is internally inconsistent since the manager (TRP) and the funds (the TRP Funds) cannot both be the initial transferee of the *same* transfers. *See id.* & Ex. B; *see also Ellen S. v. Fla. Bd. of Bar Examiners*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (courts need not construe facts in light most favorable to plaintiff where "the facts alleged are internally inconsistent" (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL

---

[3] Contrary to the Trust's assertion (Opp. ¶ 21 n.8) the courts in *Mervyn's Holdings* and *Stratton Oakmont* expressly found that the plaintiff-trust had *failed to adequately plead* that the defendant was a "transferee." *See, e.g.*, 426 B.R. at 102; 234 B.R. at 314.

PRACTICE AND PROCEDURE § 1357 (2d ed. 1990))); *see also Carson Optical, Inc. v. eBay, Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (internal citations omitted)).[4]

5.      In any event, while courts routinely grant motions to dismiss pursuant to Rule 12 on the ground that defendants are not transferees, *see, e.g.*, *Mervyn's Holdings*, 426 B.R. at 102; *Stratton Oakmont*, 234 B.R. at 314; *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 382-83 (Bankr. S.D.N.Y. 2014), this is a Protocol-Based Motion that allows the Court to consider the evidence exchanged between the parties pursuant to the Protocol Order, D.I. 185-1 ¶¶ 11(b), (c). Here, that evidence is overwhelming. It includes the investment management agreements between TRP and the TRP Funds, the TRP Funds' prospectuses, trading data, and two sworn declarations, all of which show that it was the TRP Funds that received the alleged proceeds and that, in contrast, TRP, as investment adviser to the TRP Funds, never received those proceeds (and had no right to use them for its own benefit). *See* Mot. ¶¶ 24, 34.[5]

6.      *Second*, the Trust incorrectly argues (Opp. ¶¶ 22-45) that TRP is a transferee. The Trust misconstrues both the law and the facts.

7.      As noted, the entire Opposition skips over a threshold, critical fact: ***TRP did not***

---

[4] By arguing that TRP has the burden, the Trust (Opp. ¶ 21) conflates a non-transferee with a conduit. The Trust cites no case holding that a defendant has the burden of proving that it did not receive a transfer in the first place. It relies only on cases involving conduits that, unlike TRP, actually received the funds at issue. *See Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*, 458 B.R. 155, 159-60 (Bankr. D. Del. 2011); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 2023 WL 8010194, at *5-6 (Bankr. S.D.N.Y. Nov. 17, 2023).

[5] The Opposition makes vague references to the Protocol Motion as "not appropriate for resolution on a motion to dismiss" (Opp. ¶¶ 31, 45), but does not identify what additional discovery would be necessary to resolve the issue; the Trust's omission speaks volumes.

*receive the Share Repurchase proceeds*.  The TRP Defendants' trading records conclusively show that the TRP Funds—not TRP—received the proceeds of the sales of shares of Mallinckrodt stock that the Trust alleges to be Share Repurchases.  Firsenbaum Decl., Ex. 2 at Ex. C.  The sworn declaration of a TRP senior analyst and vice president attests to that fact.  *Id.*, Ex. 2 ¶¶ 1, 7.  The Trust offers absolutely no response in its Opposition, and thus concedes the point.  *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief."); *see also Noramco LLC v. Dishman USA, Inc.*, 2022 WL 2817876, at *5 (D. Del. July 19, 2022) ("[F]ailure to respond to [] arguments in [an] [opposition] brief" is "a concession that there is no [genuine] dispute of material fact[.]").  That is dispositive.

8.      While the Court need not go any further, there is also no serious dispute that TRP lacked dominion and control over the proceeds at issue.  The Trust has no response to the plain language of the investment management agreements between TRP and the TRP Funds, which show that TRP could not (and did not) have dominion and control over any Share Repurchase Proceeds.  Those contracts establish the legal relationship between TRP and the TRP Funds as one in which TRP acts "*as agent*" of "*the Fund*."  Mot. ¶ 39 (emphasis added).  And they refer to the TRP Funds' securities as the "investments *of the Fund*," not as the investments of TRP (or as collateral of TRP*)*.  *Id.* (quoting Firsenbaum Decl., Ex. 5 at Ex. B § 1.A) (emphasis added).  The Trust's characterization of these key contract terms as mere "descriptive wording or labels" (Opp. ¶ 36) is telling, akin to a party to a breach of contract action referring to the contract's actual terms as a mere "label" that should be disregarded in favor of different terms to which the parties to the contract never agreed.

9.      The Trust also does not (and cannot) dispute that, as a registered investment

adviser, TRP owed fiduciary duties to the TRP Funds, which duties required TRP to, at all times, "serve the best interest[s] of its client[s]." Mot. ¶ 38 (quoting *Commission Interpretation Regarding Standard of Conduct for Investment Advisers*, Investment Advisers Act Release No. 5248, 84 Fed. Reg. 33,669, 33,671 (July 12, 2019)) (emphasis added); *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 503 (3d Cir. 2013) ("The federal fiduciary standard requires that an investment adviser act in the 'best interest' of its advisory client."). Nor does the Trust dispute that if TRP had used Fund assets for its own purposes, it would have violated federal law. Mot. ¶ 38 (citing *Bruderman Asset Mgmt., LLC*, Investment Advisers Act Release No. 6435, 2023 WL 6290824, at *1 (Sept. 26, 2023) (investment adviser violated the Investment Advisers Act when it used client money for its own purposes)); *see also* 15 U.S.C. § 80b-6(2) (prohibiting investment advisers from "engag[ing] in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client").[6]

10. The Trust attempts (Opp. ¶¶ 29-35) to minimize TRP's role as agent and fiduciary but has no response to the reality that courts routinely hold that fiduciaries, acting as agents, cannot be personally liable in clawback actions seeking to recover transfers received by their

---

[6] TRP did not in its Protocol Motion offer a "selective reading" and "quotation" of federal regulations restricting investment advisers' ability to use client funds for their own purposes. *See* Opp. ¶¶ 32-34. The Trust's assertion (*id.* ¶¶ 32-33) that TRP "omit[s]" sections of the Custody Rule (17 C.F.R. § 275.206(4)-2(b)) misses the forest for the trees because the Custody Rule generally prohibits investment advisers from taking custody of client assets, and there are even *more severe restrictions* on an investment adviser's taking custody of client assets where, as here, the client is an investment company. 15 U.S.C. § 80a-17(f). The Trust's argument (Opp. ¶ 34)—that the TRP Funds are not "registered investment management companies" and thus not subject to Section 17(f)'s implementing regulations—is just wrong. A "registered investment management company" includes an "open-end" investment company— which the TRP Funds are. *See* Firsenbaum Decl., Ex. 5 at Ex. B at 1; Ex. E at 5; Ex. H at 5; Ex. S at 1; Ex. W at 1; Ex. Z at 1; Ex. FF at 5; *see also* SEC, *Fact Answers: Investment Company Registration and Regulation Package* (Feb. 19, 2023), https://www.sec.gov/investment/fast-answers/divisionsinvestmentinvcoreg121504.

clients.  Mot. ¶ 42 (citing *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997); *Geltzer v. D'Antona (In re Cassandra Grp.)*, 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004) (attorney who received funds and had "broad powers to act on [debtor's] behalf" did not have "legal right to put the Payments to his own personal use" and was thus not a transferee); *Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 703-04 (Bankr. D. Minn. 2005) (manager of IRA account was not a transferee even though he was client's "fiduciary" and "directed" the transfer that the plaintiff sought to avoid); *Durkin v. Piper Tr. Co. (In re Denman & Co.)*, 186 B.R. 707, 712 (Bankr. C.D. Cal. 1995) (broker for debtor was not "transferee," despite provision in account agreement that authorized it to act as "absolute owner" of securities positions, because broker was "fiduciary" and trustee provided no evidence broker "misappropriated" the funds)).  The Trust notably fails to address any of this authority in its Opposition.[7]

11.  Rather than engage with the relevant contract language and legal authority, the Trust relies (Opp. ¶¶ 22-24, 36-37) on snippets of contract language and a few irrelevant cases.

---

[7]  The Trust's reliance (Opp. ¶ 35) on *Paloian v. Lasalle Bank, N.A.*, underscores how wrong the Trust is.  619 F.3d 688 (7th Cir. 2010).  There, the court noted that the "trustee is the legal owner of the trust's assets" and held that the trustee could not be personally liable for actions taken in its representative capacity as trustee.  *Id.* at 691-92 ("If Lasalle Bank must hand $10 million over to the bankruptcy estate, it will draw that money from the corpus of the trust, not from the Bank's corporate assets.  This means that the money really comes from the trust's investors—the persons 'for whose benefit [the] transfer was made.'").  Thus, *Paloian* reinforces the well-settled legal principle that agents are not personally liable in clawback actions seeking to recover funds received by the principal.  While the court allowed the plaintiff to name the trustee as a defendant (though it could not be held personally liable), courts have declined to expand this holding and allow plaintiffs to sue agents and other intermediaries outside of the trust context.  *See, e.g.*, *N. Cap., Inc. v. Stockton Nat'l Bank (In re Brooke Corp.)*, 458 B.R. 579, 590-91 (Bankr. D. Kan. 2011) (refusing to apply *Paloian* to financial intermediary that transferred funds from debtor to other defendants because the intermediary "h[eld] no assets for the benefit of" the recipients and was not "owner[] of" the transferred funds); *Janvey v. Barr*, 2015 WL 12681608, at *3 (N.D. Tex. Aug. 5, 2015) (same, where defendant estate had already distributed transfers to third-party beneficiaries that owned those funds).

The Trust points to contract language providing TRP discretionary authority to manage the TRP

Funds' investments.  TRP's discretionary authority to trade *on behalf of the Funds* does not make

it a transferee because TRP was acting solely in its capacity as agent and fiduciary of the TRP

Funds when doing so.  *See* Mot. ¶ 42.  What is relevant is that TRP was acting as the Funds'

agent to manage assets *owned by the Funds*, not by TRP; that the proceeds of any sales of

Mallinckrodt shares *belonged to the Funds*, not to TRP; and that TRP had no discretion to use

those proceeds for its own benefit.  *See id.* ¶ 39.  Thus, under settled law (which the Trust again

wholly ignores), TRP is not a transferee.  *See id.* ¶ 44 (citing *Bonded Fin.*, 838 F.2d at 893

("When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be

disregarded."); *Schafer v. Las Vegas Hilton Corp. (In re Video Depot. Ltd.)*, 127 F.3d 1195, 1199

(9th Cir. 1997) (rejecting argument that would have "anomalous result that every agent or

principal of a corporation would be deemed the initial transferee when he or she effected a

transfer of property in his or her representative capacity"); *Bailey v. Big Sky Motors, Ltd. (In re

Ogden)*, 314 F.3d 1190, 1204 (10th Cir. 2002) (entity that received the "[the funds] in trust or as

agent for someone else" was not "initial transferee")).[8]

      12.     The Trust's continued reliance on the fact that TRP earned management fees for

---

[8] *See also Finley*, 130 F.3d at 56-57 (collecting cases holding that "agents" acting in their representative capacity are not transferees); *Bowers v. Atlanta Motor Speedway, Inc. (In re Se. Hotel Props. Ltd. P'ship)*, 99 F.3d 151, 155-56 (4th Cir. 1996) ("Most courts . . . have held that an agent or principal does not constitute the initial transferee of a transfer from the debtor where the agent or principal is acting in his or her representative capacity.").  The Trust's reliance (Opp. ¶ 29) on *Sec. Inv. Prot. Corp.  v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, is misplaced.  2023 WL 3964150 (Bankr. S.D.N.Y. June 12, 2023).  There, the court allowed discovery where it was undisputed that the defendant received the proceeds at issue and the plaintiff had not yet obtained discovery showing the relationship between the defendant and its principal.  *Id.* at *11.  Here, by contrast, TRP has shown that did not receive the proceeds at issue by providing trading records showing that it was the TRP Funds that did, and provided the investment management agreements and fund prospectuses, which show, definitively, that TRP was merely the TRP Funds' agent.  *See supra* ¶¶ 5, 7-8.

its management of TRP Fund assets (Opp. ¶¶ 41-42) is equally misplaced. It is the industry

norm that investment advisers charge fees for their services and the Trust's argument, if adopted,

would therefore render every adviser that does so personally liable for the funds that it advises.

Not surprisingly, court after court has rejected the Trust's argument, holding that the mere

receipt of service fees from a source other than the debtor does not render an entity a transferee.

*Finley*, 130 F.3d at 58; *In re Brown Publ'g Co.*, 492 B.R. 610, 618 (E.D.N.Y. 2013), *aff'd in*

*relevant part by* 519 B.R. 13 (E.D.N.Y. 2014); *Hooker Atlanta (7) Corp. v. Hocker (In re Hooker*

*Invs., Inc.)*, 155 B.R. 332, 336, 340 (Bankr. S.D.N.Y. 1993); *Salomon v. Nedlloyd, Inc. (In re*

*Black & Geddes, Inc.)*, 59 B.R. 873, 875 (Bankr. S.D.N.Y. 1986).[9]

       13.     Ignoring all of this clear precedent, the Trust relies (Opp. ¶¶ 25-28) principally on

two cases that present materially different facts than here. As TRP explained in the Protocol

Motion (¶¶ 37-40), in *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, Bear

Stearns both had the contractual right to use the proceeds for its own benefit, and in fact, did so.

397 B.R. 1 (S.D.N.Y. 2007). Bear Stearns was the debtor's secured lender, and had "[p]owerful

discretion" to take the "[debtors'] funds to close out the [debtor's] short positions at any time"

and to satisfy any outstanding credit Bear Stearns extended to the debtor to support its short

selling activities. *Id.* at 5-6, 21. Here, in stark contrast, TRP has no such authority, and indeed

was legally and contractually prohibited from doing so. *See* Mot. ¶¶ 39-40.[10]

---

     [9] The Protocol Motion cited all of these cases, and the Trust's only response (Opp. ¶ 44)
is to claim that TRP misstated the facts of one of those cases, *Hooker Investments*. That
criticism is not only false, but also irrelevant, as the holding in that case was that the deduction of
service fees from an escrow account to pay the defendant did not render the defendant a
transferee. *Hooker Invs.*, 155 B.R. at 340.

     [10] Indeed, the court in *Bear Stearns* recognized that under applicable federal regulations,
Bear Stearns could use those funds to satisfy the debtor's outstanding loan obligations to Bear
Stearns. *See* 397 B.R. at 4; *see also Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 197-98

14. Finally, in *Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*, the defendant received the debtor's funds, held the funds in its own bank accounts, had the ability to distribute the funds "as the Defendant saw fit," and "ha[d] the power to decide who to pay with the Funds received from the Debtors, ***including the Defendant's own creditors***." 321 B.R. 388, 396 (Bankr. D. Del. 2005) (emphasis added). Here, again in obvious contrast, TRP never received the proceeds of the alleged Share Repurchases and could not use the proceeds "as it saw fit." Mot. ¶¶ 37-42.[11]

## II. The TRP Funds Are Protected By The Section 546(e) Safe Harbor

### A.    The Share Repurchases Are "Qualifying Transactions"

15. The TRP Defendants incorporate by reference paragraphs 31-52 of the CS/SSLLC Motion and 1-13 of the CS/SSLLC Reply Brief, which demonstrate that the Share Repurchases—payments of cash for stock—are quintessential "settlement payments," as well as transfers "in connection with a securities contract," and thus are "qualifying transactions" (and why the Trust waived any argument to the contrary). *See* CS/SSLLC Motion ¶¶ 31-52; *see also*

_____

(Bankr. S.D.N.Y. 2002) (finding that as required by Regulation T, money in margin account "remain[s] frozen and in the control of Bear, Stearns so that it would be available to repay Bear, Stearns's loan"). Here, by further contrast, TRP was contractually (and otherwise legally) barred from using TRP Fund assets, including any Share Repurchase proceeds, for its own benefit. Mot. ¶¶ 39-40.

[11] The Trust relies (Opp. ¶ 18) on two additional cases that present facts materially different from those here. In *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods., Inc.)*, the defendant, as in *Bear Stearns*, was the secured creditor of the debtor and had the right use the debtor's funds to "reduce its debt to [a third party]." 892 F.2d 26, 29 (4th Cir. 1989). In *Universal Service Administrative Co. v. Post-Confirmation Committee of Unsecured Creditors of Incomnet Communications Corp. (In re Incomnet, Inc.)*, the defendant had "***legal title***" to the proceeds, "ha[d] not established that there [wa]s any binding ***legal relationship*** between it and any of the [fund's] beneficiaries," and therefore was "neither the agent of, nor a trustee for, [the] recipients" of the proceeds. 463 F.3d 1064, 1074-75 (9th Cir. 2006) (emphasis added). Here, by contrast, TRP did not hold legal title to the proceeds and *had* a legal relationship with the TRP Funds—one that required it to act on behalf and in the best interest of such funds and that did not permit it to use TRP Fund assets for its own benefit. *See* Mot. ¶¶ 39-40.

CS/SSLLC Reply Br. ¶¶ 1-15.

        B.      <u>The TRP Funds Are Qualifying Participants</u>

16.      The TRP Funds have demonstrated that they are financial institutions.  Their SEC filings and sworn declarations show that they are registered investment companies under the '40 Act.  *See* 11 U.S.C. § 101(22)(B); *see also* Firsenbaum Decl., Ex. 2 at Exs. D-J.  The Opposition does not dispute, and therefore concedes, the point.  *See* Firsenbaum Decl., Ex. 6; *see also* Opp. ¶¶ 50-56; *Curry Mgmt.*, 643 F. Supp. 3d at 426; *Noramco*, 2022 WL 2817876, at *5.

17.      Instead, the Trust argues (Opp. ¶¶ 50-56) that the TRP Funds have failed to demonstrate that they were investment companies "in connection with a securities contract." The Trust is wrong.  The TRP Funds are qualifying participants in connection with two different sets of securities contracts.

18.      *First*, the Amended Complaint expressly alleges the TRP Funds received Share Repurchase proceeds "in connection with" the Purchase Agreements.  *See* Am. Compl. ¶ 274 (alleging that Mallinckrodt "entered into [the Purchase Agreements] . . . *in connection with* the share repurchases." (emphasis added)); *see also id.* ¶ 85 (alleging that the TRP Funds received proceeds of the Share Repurchases).  And the Opposition (Opp. ¶¶ 7-9) confirms those allegations, asserting that the Share Repurchases were purchases of common stock from Mallinckrodt's shareholders, including the TRP Funds, and that all Defendants, including the TRP Funds, allegedly received the proceeds from the Brokers pursuant to the Purchase Agreements.

19.      The Trust's own allegations and admissions dispose of the Trust's surprising assertion (Opp. ¶ 54) that "those agreements do not reference any specific Share Repurchases, including any specific repurchase trades that the Funds were involved with."  The Trust's assertion is also legally irrelevant.  *See Picard v. Ida Fishman Revocable Tr. (In re Bernard L.*

*Madoff Inv. Sec. LLC)*, 773 F.3d 411, 420 (2d Cir. 2014) (rejecting the argument that the contract must specify "any security, issuer, quantity, price, or other terms necessary to describe [the transaction]" because it "constructs a requirement that the law does not contain"); *see also* Mot. ¶¶ 50-52; CS/SSLLC Motion ¶ 48; CS/SSLLC Reply ¶ 10.  Section 546(e) requires only that the transfer be "in connection with a securities contract."  11 U.S.C. § 546(e).  No statutory text limits the safe harbor to transfers made in connection with a securities contract to which the transferee was a party, or that refer to the specific transfer or transferee.  Like all other federal statutes, the Bankruptcy Code should be construed in accordance with its plain meaning, without the addition of terms Congress did not include.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (construing the Bankruptcy Code and holding "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal citations and quotations omitted)).  Moreover, courts have repeatedly held that the "in-connection-with-a-securities-contract" modifier sets a "low bar" that should be "interpreted broadly"; the transfer need only be "related to" or "associated with" a securities contract.  *Madoff*, 773 F.3d at 419-21; *BMO Harris Bank, N.A. v. Petr*, 2023 WL 3203113, at *6-9 (S.D. Ind. May 2, 2023).  Finally, lest there is any doubt, courts have granted motions to dismiss filed by public shareholders that were investment companies registered under the '40 Act where, as here, the shareholders were not parties to the relevant contracts.  *See, e.g.*, *In re Nine West LBO Sec. Litig.*, 482 F. Supp. 3d 187, 202-03 (S.D.N.Y. 2020) (granting motion to dismiss filed by at least 82 defendant investment companies registered under the '40 Act), *aff'd in rel. part by* 87 F.4th 130 (2d Cir.

2023).[12]

20.     *Second*, the TRP Funds also received Share Repurchase proceeds (if any) "in
connection with" sell orders they placed with their own brokers that, once accepted by
Mallinckrodt, formed binding contracts.  *See SEC v. JNT Invs., Inc.*, 1978 WL 1137, at *1
(S.D.N.Y. Feb. 9, 1978) (customer claims against broker seeking to recover sell orders broker
failed to execute were properly breach of contract claims); *SEC v. M.S. Wien & Co. (In re M.S.
Wien & Co.)*, 54 B.R. 18, 19 (Bankr. D.N.J. 1985) (same).  The Opposition (and the Trust's
opposition to the CS/SSLLC Motion) does not dispute or even respond to this point, and
therefore concedes the issue.  *See Curry*, 643 F. Supp. 3d at 426; *see also Noramco*, 2022 WL
2817876, at *5.

21.     The Trust's argument (Opp. ¶¶ 52-53) that the *Nine West* court addressed the "in
connection with" requirement only in the context of the Section 546(e) safe harbor and not in the
context of the definition of "financial participant" in Section 101(22)(B) is simply wrong.  The
*Nine West* court explicitly referenced the definition in Section 101(22)(B) and held that because
the payments to the '40 act shareholders were part of a qualifying transaction, they satisfied the
"in connection with" requirement of both Section 101(22)(B) and Section 546(e).  *See* 482 F.
Supp. 3d at 202-03.

22.     The *Nine West* court's analysis is also consistent with the plain language of the

---

[12] The Trust's reliance (Opp. ¶ 54 & n.30) on *Miller v. Black Diamond Cap. Mgmt.,
L.L.C. (In re Bayou Steel BD Holdings, L.L.C.)*, 642 B.R. 371 (Bankr. D. Del. 2022), and *Indus.
Enters. of Am., Inc. v. Tabor Acad. (In re Pitt Penn Holding Co.)*, 2011 WL 4352373 (Bankr. D.
Del. Sept. 16, 2011), is misplaced.  Unlike the Trust, the plaintiff in *Bayou* did not allege that
the transfers were made pursuant to the contracts on which the defendants relied for their motion;
indeed, those contracts did not come into existence until more than three months *after* the
relevant transfers.  *See* 642 B.R. at 390.  *Pitt Penn* addressed whether a transfer was a gift.  *See*
2011 WL 4352373, at *12.

Bankruptcy Code. Section 101(22)(A)—a provision of the "Definitions" section of the Bankruptcy Code—defines "financial institution" to include many categories of entities not relevant here. 11 U.S.C. § 101(22)(A). Section 101(22)(B) adds to that definition that an "investment company registered under the ['40 Act]" can be a "financial institution," but only "in connection with a securities contract." *Id.* § 101(22)(B). Thus, when a substantive Bankruptcy Code provision uses the term "financial institution," that term includes all of the other entities covered by Section 101(22)(A) all of the time, and includes a '40 Act fund when the substantive provision is "in connection with a securities contract." Since Section 546(e) applies to a "financial institution," then when there is a transfer "in connection with a securities contract," '40 Act funds are protected by the statute so long as the rest of the statute applies (i.e., there is a qualifying transaction).

23. This plain meaning reading of the Code is not only consistent with *Nine West*, but also with the relevant legislative history. In 2005, when Congress amended the definition of "financial institution" to include Section 101(22)(B), it said:

> The definition for "financial institution" includes Federal Reserve Banks and the receivers or conservators of insolvent depository institutions. **With respect to securities contracts**, the definition of "financial institution" expressly includes investment companies registered under the Investment Company Act of 1940.

H.R. REP. NO. 109-31, at 130 (2005) (emphasis added). Congress thus made clear that it was expanding the scope of a "financial institution" in the context of provisions of the Bankruptcy Code involving securities contracts; Section 546(e) is one such provision. *See* 11 U.S.C. § 546(e).

24. Finally, the *Nine West* court's analysis follows the cardinal rule of statutory construction that "term[s] appearing in several places in a statutory text [are] generally read the same way each time [they] appear[]." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *see*

*also Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (discussing the "normal rule of statutory construction" whereby "identical words used in different parts of the same act are intended to have the same meaning" (internal citations omitted)).

25.     The Trust's suggestion that "the person, not the transfer, must have the requisite connection with the securities contract" (Opp. ¶ 52) is unsupported by any legal authority and makes little sense. *All* '40 Act investment companies have some "connection with a securities contract." The '40 Act defines an investment company as "any issuer" that: (1) "is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in *securities*"; (2) "is engaged or proposes to engage in the business of issuing face-amount certificates of the installment type" (i.e., *debt securities*), or "has been engaged in such business"; and (3) "is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in *securities*, and owns or proposes to acquire *investment securities* . . . ." 15 U.S.C. §§ 80a-3(a)(1)(A), (B), (C) (emphasis added). Further, virtually every investment company retains a "principal underwriter," which, at least in the case of open-end investment companies like the TRP Funds,[13] must enter into a written contract with that investment company to purchase or sell that company's securities. *See* 15 U.S.C. § 80a-2(a)(29) (defining "principal underwriter" of an open-end investment company as "any underwriter who as principal purchases from such company, or pursuant to contract has the right (whether absolute or conditional) from time to time to purchase from such company, any such security for distribution"); *see also id.* § 80a-15(b) ("It shall be unlawful for any principal underwriter for a registered open-end company to offer for sale, sell, or deliver after sale any

_____

[13]    *See* Firsenbaum Decl., Ex. 5 at Ex. B at 1; Ex. E at 5; Ex. H at 5; Ex. S at 1; Ex. W at 1; Ex. Z at 1; Ex. FF at 5.

security of which such company is the issuer, except pursuant to a written contract with such company . . . .").

26.     Thus, if the Trust's position were correct, a '40 Act investment company would *always* be a "financial institution," and there would have been no reason for Congress to include the "in connection with a securities contract" language in 11 U.S.C. § 101(22)(B).  That construction would violate the cardinal rule of statutory construction to avoid reading language enacted by Congress as superfluous.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal citations and quotations omitted)).  And, in any event, the Trust's construction would be of no help to the Trust because under the Trust's reading of the statute, the TRP Funds would be "financial institutions" because, as noted, their existence as a '40 Act fund was in connection with a securities contract, as memorialized in each of the TRP Funds' registration statements.[14]  *See* Firsenbaum Decl., Ex. 2 at Exs. D-J at Part C, Item 28 (linking to copy of each TRP Funds' underwriting agreement with T. Rowe Price Investment Services, Inc., the principal underwriter to the TRP Funds, for the purpose of purchasing and selling securities); *see also* 11 U.S.C. § 741(7)(A)(i).

27.     For these reasons, and those set forth in the Protocol Motion, the TRP Defendants respectfully request that the Court enter the proposed order submitted as Exhibit A to the Protocol Motion dismissing them from the Adversary Proceeding.

---

[14]  The TRP Funds incorporate paragraphs 31-49 of the CS/SSLC Motion and 1-8 of the CS/SSLC Reply in response to the Trust's makeweight arguments (Opp. ¶ 55) about Irish law, which has no applicability here for the reasons stated in those briefs.

Dated:  February 20, 2024
       Wilmington, Delaware


*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email:  jryan@potteranderson.com
      abrown@potteranderson.com

*-and-*

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
Austin M. Chavez (*admitted pro hac vice*)
**WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: philip.anker@wilmerhale.com
      noah.levine@wilmerhale.com
      ross.firsenbaum@wilmerhale.com
      mike.mcguinness@wilmerhale.com
      austin.chavez@wilmerhale.com

*Counsel to Defendants T. Rowe Price*
*Associates, Inc.; T. Rowe Price All-Cap*
*Opportunities Fund, Inc.; T. Rowe Balanced*
*Fund, Inc.; T. Rowe Price All-Cap*
*Opportunities Portfolio, a Series of T. Rowe*
*Price Equity Series, Inc.; T. Rowe Price*
*Health Sciences Portfolio, a Series of T.*
*Rowe Price Equity Series, Inc.; T. Rowe*
*Price Equity Index 500 Portfolio, a Series of*
*T. Rowe Price Equity Series, Inc.; T. Rowe*
*Price Moderate Allocation Portfolio, a*
*Series of T. Rowe Price Equity Series, Inc.;*
*T. Rowe Price Global Allocation Fund, Inc.;*
*T. Rowe Price Health Sciences Fund, Inc.; T.*

*Rowe Price Spectrum Conservative Allocation Fund, a Series of T. Rowe Price Spectrum Funds II, Inc.; T. Rowe Price Spectrum Moderate Allocation Fund, a Series of T. Rowe Price Spectrum Funds II, Inc.; T. Rowe Price Spectrum Moderate Growth Allocation Fund, a Series of T. Rowe Price Spectrum Funds II, Inc.; and T. Rowe Price Value Fund, Inc.*