# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, *et al.*, | : | Case No. 20-12522 (JTD) |
| | : | |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | Adversary Proceeding |
| | : | |
| Plaintiff, | : | No. 22-50435 (JTD) |
| | : | |
| v. | : | |
| | : | |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT AS TO
DEFENDANTS ROCK CREEK MB, LLC, RIEF TRADING LLC, GF TRADING LLC,
AND RIEF RMP LLC PURSUANT TO THE PROTOCOL ORDER RELATING TO
CONDUITS, NON-TRANSFEREES, "STOCKBROKERS," "FINANCIAL
INSTITUTIONS," "FINANCIAL PARTICIPANTS,"
AND DISSOLVED ENTITIES**

# TABLE OF CONTENTS

I. The Share Repurchases Are Qualifying Transactions ............................................................ 1

II. The Renaissance Defendants Are Qualifying Participants .................................................... 2

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*,
    599 B.R. 730 (Bankr. S.D.N.Y. 2019)...................................................................3

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) .................................................................................4

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000)...................................................................................4

*Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*,
    617 B.R. 496 (Bankr. D. Del. 2020) ...................................................................4, 5

*Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*,
    No. 14-50356 (Bankr. D. Del. Apr. 30, 2019), ECF Nos. 175 & 176 ................5

*Golden v. Cmty. Health Sys., Inc. (In re Quorum Health Corp.)*,
    2023 WL 2552399 (Bankr. D. Del. Mar. 16, 2023)...............................................4

*Hubay v. Mendez*,
    500 F. Supp. 3d 438 (W.D. Pa. 2020)................................................................2, 3

*Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*,
    560 F.3d 935 (9th Cir. 2009) .............................................................................2, 3

*Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*,
    625 B.R. 291 (Bankr. D. Del. 2020) ......................................................................3

*Lindsay v. Pa. State Univ.*,
    2008 WL 1376273 (M.D. Pa. Apr. 9, 2008) ......................................................2, 3

*Luria v. Hicks (In re Taylor, Bean & Whitaker Mortg. Corp.)*,
    2017 WL 4736682 (Bankr. M.D. Fla. Mar. 14, 2017)...........................................4

*New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
    80 F.4th 158 (2d Cir. 2023) ...................................................................................4

**STATUTES**

11 U.S.C. § 546.............................................................................................................1, 3, 5

28 U.S.C. § 2201....................................................................................................................3

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................2, 3

**REGULATIONS**

17 C.F.R. § 20.1 ...................................................................................................................5

*Further Definition of "Swap," "Security-Based Swap," and "Security-Based Swap Agreement"; Mixed Swaps' Security-Based Swap Agreement Recordkeeping*, 77 Fed. Reg. 48208 (Aug. 13, 2012) (to be codified at 17 C.F.R. pts. 1, 230, 240, 241) ........................................................................................5

**OTHER AUTHORITIES**

CFTC, *Dodd-Frank Act: Provisionally Registered Swap Dealers* (Jan. 30, 2023), https://www.cftc.gov/LawRegulation/DoddFrankAct/registerswapdealer.html .................6

FASB, Accounting Standards Codification: *Overview and Background*, 105-10-05-1 (2020) ............................................................................................................4

ISDA, *2002 Master Agreement*, https://www.gbm.hsbc.com/-/media/media/gbm-global/gbm-refresh/financial-regulations/attachments/2002-isda-ma.pdf?view=1(last visited Feb. 20, 2024)...........................................................6

The Renaissance Defendants[1] submit this reply in support of their Protocol Motion and in response to the Trust's Opposition [D.I. 314, 327] ("Opposition" or "Opp.").

This Protocol Motion, like the other Pending Protocol Motions, presents a straightforward application of the Section 546(e) safe harbor. As explained in the CS/SSLLC Motion and the CS/SSLLC Reply Brief[2], the Share Repurchases are quintessential "settlement payments," as well as transfers made "in connection with a securities contract," and thus are "qualifying transactions." Each of the Renaissance Defendants is a fund that had billions of dollars in outstanding securities contracts or swap agreements on a statutorily relevant date and thus easily qualifies as a "financial participant." The Opposition offers no basis to conclude otherwise. This Court should grant the Protocol Motion.

## I. The Share Repurchases Are Qualifying Transactions

1. The Renaissance Defendants incorporate by reference paragraphs 31-52 of the CS/SSLLC Motion and paragraphs 1-13 of the CS/SSLLC Reply Brief, which demonstrate that the Share Repurchases—payments of cash for stock—are "settlement payments," as well as transfers made "in connection with a securities contract," and thus are "qualifying transactions" (and why the Trust waived any argument to the contrary).[3] *See* CS/SSLLC Motion ¶¶ 31-52; *see*

---

[1] Unless otherwise defined, capitalized terms have the same meanings as in the *Motion to Dismiss the Amended Complaint as to Defendants Rock Creek MB, LLC, RIEF Trading LLC, GF Trading LLC, and RIEF RMP LLC Pursuant to the Protocol Order Relating to Conduits, Non-Transferees, "Stockbrokers," "Financial Institutions," "Financial Participants," and Dissolved Entities* [D.I. 242] (the "Protocol Motion" or "Mot.").

[2] *See* D.I. 346 (the "CS/SSLLC Reply Brief").

[3] The Opposition makes a request (¶ 30) not found in the Trust's opposition to the CS/SSLLC Motion—that the Court deny the Protocol Motion and defer any purported "choice-of-law" analysis until the Court "has had the benefit of a full record." No choice-of-law analysis is required since federal law plainly governs whether the Share Repurchases were "settlement payments" or transfers made "in connection with a securities contract" under the *United States* Bankruptcy Code. *See* CS/SSLLC Mot. ¶ 46; *see also* CS/SSLLC Reply Br. ¶¶ 5, 11.

*also* CS/SSLLC Reply Br. ¶¶ 1-13.

## II. The Renaissance Defendants Are Qualifying Participants

2. The Opposition concedes (Opp. at 2 n.4) that RIEF RMP (one of the four Renaissance Defendants) is a financial participant. RIEF RMP, therefore, should be dismissed.

3. Rock Creek, RIEF Trading, and GF Trading have demonstrated that they are financial participants as well. Each has provided a financial statement *audited by a Big-Four accounting firm* as well as *three sworn declarations* from the CFO of its manager, Renaissance Technologies, confirming that on a statutorily relevant date, it had outstanding swap agreements with notional amounts of, in one case, over $1.2 *billion*; in another, more than $2.54 *billion*; and in the third, some $26 *billion*. *See* Mot. ¶ 21.

4. The Opposition offers no basis to question the accuracy of the evidence provided by Rock Creek, RIEF Trading, and GF Trading. Instead, it makes the same flawed arguments that it made in opposition to the CS/SSLLC Motion, all of which lack merit for the same reasons, and that rest on the incredible premise that Rock Creek, RIEF Trading, and GF Trading and their auditors inaccurately calculated the notional amounts of their swap agreements by *over* $200 *million*, $1.54 *billion*, and $25 *billion*, respectively.

5. *First*, the Opposition asserts (Opp. ¶¶ 8-15, 22-25) that the Protocol Motion should be adjudicated under Rule 12(b)(6) without consideration of the evidence Rock Creek, RIEF Trading, and GF Trading have provided. The Trust's assertion is wrong for the reasons explained in the CS/SSLLC Reply (¶ 15), which the Renaissance Defendants incorporate herein.[4]

---

[4] The Trust cites several cases in the Opposition not found in its opposition to the Citadel/SSLLC Motion for the proposition that the Renaissance Defendants' view of the Protocol Order is somehow inconsistent with the Federal Rules. *See* Opp. ¶ 22 (citing *Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009); *Hubay v. Mendez*, 500 F. Supp. 3d 438, 443 n.2 (W.D. Pa. 2020); *Lindsay v. Pa. State Univ.*, 2008 WL

6. *Second*, in a subordinate clause of a sentence making a different point and accompanying footnote, the Trust incorrectly suggests (Opp. ¶ 18 & n.9) that expert testimony is necessary to resolve the Protocol Motion. Neither of the Trust's two cases help it. The first decision, *Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*, 625 B.R. 291, 303 (Bankr. D. Del. 2020), does not apply here for all the same reasons explained in the CS/SSLLC Reply Brief. *See* D.I. 346 ¶ 22 & n.12. The second decision, *45 John Lofts, LLC v. Meridian Cap. Grp. LLC (In re 45 John Lofts, LLC)*, 599 B.R. 730, 747-48 (Bankr. S.D.N.Y. 2019), addressed the Section 546(e) defense on a Rule 12 motion to dismiss, where the parties had yet to exchange any evidence. Here, the Protocol Motion provides for the exchange of evidence (*see* Protocol Order ¶ 11(b)), and Defendants rely on that sworn, uncontroverted evidence here.

7. Through that evidence, Rock Creek, RIEF Trading, and GF Trading have shown that they had outstanding securities contracts with *notional* values exceeding the $1 billion statutory threshold by *hundreds of millions* and *billions* of dollars. Such notional amounts were calculated in accordance with Generally Accepted Accounting Principles ("GAAP"), *see* Firsenbaum Decl., Ex. 5 ¶ 4 [D.I. 248-5]; *see also id.*, Ex. 2 at Ex. A at RTS-MNK-00000024 [D.I. 248-2, p. 20 of 188]; *id.* at Ex. 2 at Ex. B at RTS-MNK-00000043 [D.I. 248-2, p. 40 of 188]; *id.* Ex. 2 at Ex. C at RTS-MNK-00000068 [D.I. 248-2, p. 66 of 188], issued by the

---

1376273 (M.D. Pa. Apr. 9, 2008)). Those cases are inapposite; each addressed motions for declaratory judgment and held that a declaratory judgment must be sought pursuant to 28 U.S.C. § 2201 in a separate action. *See Kam-Ko*, 560 F.3d at 943 (holding that district court properly construed "motion for declaratory judgment" as one for summary judgment because 28 U.S.C. § 2201 requires party to bring separate action seeking such relief); *see also Hubay*, 500 F. Supp. 3d at 443 n.2 (same); *Lindsay*, 2008 WL 1376273, at *3 (same). Here, the Renaissance Defendants are proceeding pursuant to the Protocol Order—agreed to by the Trust and entered by the Court—and have provided sworn evidence and supporting documentation showing that they are financial participants.

Financial Accounting Standards Board ("FASB").[5] The Trust does not provide any basis in its Opposition for the Court to question accepted FASB accounting standards applied by a Big Four auditing firm, let alone any basis to conclude that Rock Creek, RIEF Trading, and GF Trading and their auditors were wrong about notional value *by billions of dollars*. *Id.*, Ex. 2 at Ex. A at RTS-MNK-00000014 [D.I. 248-2, p. 10 of 188]; *id.* Ex. 2 at Ex. B at RTS-MNK-00000034 [D.I. 248-2, p. 31 of 188]; *see also id.* Ex. 2 at Ex. C at RTS-MNK-00000057 [D.I. 248-2, p. 55 of 188]. Nor does the Trust attempt to explain what an expert would say to challenge the notional values provided by the Renaissance Defendants. Indeed, in its opposition to the CS/SSLLC Protocol Motion, the Trust conceded that the notional amount (in contrast to mark-to-market positions) of a securities contract is "ascertainable from the face of an instrument" and did not argue that expert testimony would be needed for any calculation. *See* D.I. 263, 269 ¶ 56; *see also* CS/SSLLC Reply Br. ¶ 20. That admission is dispositive here.

8.  In any event, courts routinely determine the value of a party's securities contracts without the need for expert discovery (or any discovery at all). *See* CS/SSLLC Reply Br. ¶ 21 (citing *Luria v. Hicks*, 2017 WL 4736682, at *3-5 (Bankr. M.D. Fla. Mar. 14, 2017); *In re Quorum Health Corp.*, 2023 WL 2552399, at *7 (Bankr. D. Del. Mar. 16, 2023)). Judge Owens' decision in *Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, 617 B.R. 496, 506 & n.39

---

[5] Regulators and courts alike accept GAAP as "authoritative." *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 159-60 n.4 (2d Cir. 2000) ("The SEC treats the FASB's standards as authoritative"); *see also New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 172 n.9 (2d Cir. 2023) ("The Accounting Standards Codification ('ASC') is the 'source of authoritative generally accepted accounting principles,' commonly referred to as 'GAAP,' published by the [FASB] 'to be applied by nongovernmental entities.'" (quoting FASB, Accounting Standards Codification: *Overview and Background*, 105-10-05-1 (2020), https://asc.fasb.org/1943274/2147479442); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 677-78 & n.22 (6th Cir. 2005) (relying on FASB GAAP standards and recognizing that such standards are treated as "authoritative" by the SEC).

(Bankr. D. Del. 2020), is particularly relevant. There, Judge Owens granted summary judgment for the defendant pursuant to Section 546(e) based solely on a sworn declaration attaching its financial statements audited by PwC (the same Big Four accounting firm that audited the Renaissance Defendants' financial statements), which showed, that on a statutorily relevant date, the defendant had notional amounts of outstanding swaptions[6] of over $2.1 billion. *See id.*; *see also* Mem. in Supp. of Nw. Mut. Life Ins. Co.'s Mot. for Summ. J. & Decl. of Todd C. Kuzminski, *Giuliano v. Schnabel (In re DSI Renal Holdings, LLC)*, No. 14-50356 (Bankr. D. Del. Apr. 30, 2019), ECF Nos. 175 & 176. Like the Trust here, the plaintiff-trust's only response in *DSI* was to argue that "the application of section 546(e) is a fact-intensive inquiry not appropriate for summary judgment." *DSI Renal Holdings, LLC*, 617 B.R. at 506 n.40. Judge Owens rejected that argument, holding that the "non-moving party cannot rest on mere pleadings or allegations" and must "point to actual evidence in the record on which a jury could decide an issue of [f]act its way." *Id.*

9. Here, as in *DSI*, Rock Creek, RIEF Trading, and GF Trading's audited financial statements, corroborated with sworn declarations from their manager's CFO, show that each had notional amounts of swap agreement positions exceeding the relevant statutory threshold by between $200 million and $25 billion. The Trust offers no contrary evidence and provides no basis to question the audited, sworn evidence Defendants have submitted.

10. *Third*, the Trust's argument (Opp. ¶¶18-20) that additional fact discovery—"copies of the underlying equity swap contracts"—is somehow necessary to "verify" the notional

---

[6] A "swaption" is "an option to enter into a swap [agreement] or a swap [agreement] that is an option [contract]." *See* 17 C.F.R. § 20.1; *see also Further Definition of "Swap," "Security-Based Swap," and "Security-Based Swap Agreement"; Mixed Swaps' Security-Based Swap Agreement Recordkeeping*, 77 Fed. Reg. 48208, 48259 (Aug. 13, 2012) (describing a "swaption" as "an option on a swap or security-based swap").

5

amounts of Rock Creek's, RIEF Trading's, and GF Trading's swap positions, fares no better. As noted in the CS/SSLLC Reply brief (¶ 19 (citing cases)), courts do not require parties to "corroborate" or "verify" sworn declarations, and there is no special rule in cases where the plaintiffs are fiduciaries. And here, of course, Defendants did provide more than just a declaration—actually three declarations; Defendants provided their audited financial statements as well. *See* Firsenbaum Decl., Exs. 2 [D.I. 248-2], 5 [D.I. 248-5], & 8 [D.I. 248-8].

11. Nevertheless, the Trust's argument overlooks the fact that swaps are typically executed pursuant to standardized terms that disclose only the counterparty and interest rates on the swaps. These agreements would not enable the Trust to verify the notional amounts of the outstanding swaps on a given day. *See, e.g.,* International Swaps and Derivatives Association ("ISDA"), *2002 Master Agreement*, https://www.gbm.hsbc.com/-/media/media/gbm-global/gbm-refresh/financial-regulations/attachments/2002-isda-ma.pdf?view=1(last visited Feb. 20, 2024). And while the Trust claims to need "organizational charts" and "[summary] schedules" to determine whether the swap agreements were with affiliates (Opp. ¶ 19), it ignores that the Renaissance Defendants not only provided a sworn declaration stating that none of the swap agreements (each of which exceeded $1 billion in notional amounts) was with an affiliate, *but also identifying the counterparties*.[7] Firsenbaum Decl., Exs. 7-8 [D.I. 248-7 & 248-8].

12. *Fourth*, grasping at straws, the Trust (Opp. ¶ 19) levies baseless accusations that the Renaissance Defendants "have a history of engaging in controversial practices," which

---

[7] The fact that the Trust somehow thinks that hedge funds like Rock Creek, RIEF Trading, and GF Trading would enter into swap agreements with affiliates shows the Trust's ignorance of how swap agreements work. Swap agreements are typically entered into with registered swap dealers, which include some of the world's largest banks (and would not include other hedge funds like the Renaissance Funds or their manager). *See* CFTC, *Dodd-Frank Act: Provisionally Registered Swap Dealers* (Jan. 30, 2023), https://www.cftc.gov/LawRegulation/DoddFrankAct/registerswapdealer.html.

require the Trust to "exercise fiduciary care and ask for substantiation of the statements presented to it." Again, to start, Defendants did provide substantiation, in multiple declarations. Regardless, all the Trust offers (Opp. ¶ 19 & n.12) for its astonishing assertion is a 2021 *New York Times* article addressing a tax settlement between Renaissance Technologies and the IRS concerning tax treatment of certain option contracts. The Trust does not explain how a settlement concerning *tax treatment* has any relevance to the questions here because it cannot—it is entirely irrelevant.

13. *Finally*, the Trust continues to argue that the Court cannot take judicial notice of Rock Creek, RIEF Trading, and GF Trading's audited financial statements. But, as explained in the Protocol Motion, that argument is a red herring because the Renaissance Defendants' motion never asked the Court to do so (nor did their initial submission pursuant to the Protocol Order). *See* Mot. ¶ 25; *see also* Firsenbaum Decl., Ex. 1; CS/SSLLC Reply Br. ¶ 24. This is a Protocol-Based Motion supported by evidence exchanged pursuant to the Protocol Order, including sworn testimony, so there is no need for the Court to take judicial notice of that evidence. *See id.*[8]

14. For these reasons, and those set forth in the Protocol Motion, the Renaissance Defendants request that the Court enter the proposed order submitted as Exhibit A to the Protocol Motion dismissing them from the Adversary Proceeding.

---

[8] One last note: The Trust's statement (Opp. ¶ 15) that it has dismissed defendants that "provided sufficient information to justify dismissal" is, at best, highly misleading. As explained in the CS/SSLLC Reply Brief (¶ 19 n.11), the Trust has dismissed seven defendants pursuant to the Protocol Order; six of those seven were dissolved funds that could not be sued, and the Trust has continued to seek to recover the same dollars from those funds' manager and other affiliated funds. The other defendant was sued for $█████████, and the Trust dismissed it exactly one month before the parties' most recent appearance before the Court, while it refused to dismiss a related defendant that provided exactly the same evidence but is sued for four times that amount, suggesting that the Trust has made the cynical judgment to trade a relatively small amount of potential money for the false appearance of good faith.

Dated: February 22, 2024
Wilmington, Delaware

 /s/ Jeremy W. Ryan
Jeremy W. Ryan (No. 4057)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email:  jryan@potteranderson.com
abrown@potteranderson.com

-and-

Philip D. Anker *(admitted pro hac vice)*
Noah A. Levine *(admitted pro hac vice)*
Ross E. Firsenbaum *(admitted pro hac vice)*
Michael McGuinness *(admitted pro hac vice)*
Austin M. Chavez (*admitted pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8000
Email: philip.anker@wilmerhale.com
noah.levine@wilmerhale.com
ross.firsenbaum@wilmerhale.com
mike.mcguinness@wilmerhale.com
austin.chavez@wilmerhale.com

*Counsel to Defendants Rock Creek MB, LLC, RIEF Trading LLC, GF Trading LLC, and RIEF RMP LLC*