## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MALLINCKRODT PLC, | : | Case No. 20-12522 (JTD) |
| Reorganized Debtor.[1] | : | |
| OPIOID MASTER DISBURSEMENT TRUST II, | : | |
| Plaintiff, | : | |
| vs. | : | Adversary Proceeding No. 22-50435 (JTD) |
| ARGOS CAPITAL APPRECIATION MASTER FUND LP, et al., | : | |
| Defendants. | : | |

### REPLY IN SUPPORT OF SIXTH MOTION OF THE OPIOID MASTER DISBURSEMENT TRUST II FOR ENTRY OF AN ORDER FURTHER ENLARGING THE TIME TO EFFECTUATE SERVICE OF PROCESS

Plaintiff, the Opioid Master Disbursement Trust II ("**Trust**"),[2] by and through its undersigned counsel, hereby submits this reply brief in further support of its sixth motion to extend the time to effectuate service of process[3] and in response to certain Defendants' objections to that

---

[1] The Reorganized Debtor in this chapter 11 case is Mallinckrodt plc ("**Mallinckrodt**"). On May 3, 2023, the Court entered an order closing the chapter 11 cases of the Reorganized Debtor's debtor-affiliates (together with Mallinckrodt, "**Debtors**"). A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Reorganized Debtor's claims and noticing agent at http://restructuring.ra.kroll.com/Mallinckrodt. The Reorganized Debtor's mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

[2] The Trust is a statutory trust established under the *Modified Fourth Amended Joint Plan of Reorganization (With Technical Modifications) of Mallinckrodt plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* ("**Plan**") [D.I. 7670]. As used herein, citations to "**D.I. __.**" refer to documents filed in *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del.). Citations to "**Adv. D.I. __.**" refer to documents filed in the above-captioned adversary proceeding ("**Proceeding**"). The Plan, *inter alia*, vested the Trust with authority to investigate and prosecute claims arising out of Mallinckrodt's repurchase of its shares between 2015 and 2018 ("**Share Repurchase Claims**") for the benefit of the Debtors' unsecured creditors. The claims that the Trust asserted in this Proceeding against defendants ("**Defendants**") are Share Repurchase Claims.

[3] *Sixth Mot. of the Opioid Master Disbursement Tr. II for Entry of an Order Further Enlarging the Time to*

motion.[4]

**REPLY ARGUMENT**

1. Contrary to the Objecting Defendants' suggestions, the Trust does not intend to seek extensions of the Service Deadline in perpetuity.[5] The purpose of the extensions sought in the Fifth Extension Motion and the latest Extension Motion is to obtain needed time to identify those Defendants that may be harboring, but have not yet raised, Conduit Defenses. These are the defenses in which a Defendant claims that it did not receive, or have dominion or control over, the share repurchase proceeds; instead, some other entities—such as customers or affiliates—received or had dominion and control over the proceeds (or so a Defendant would claim).

2. If Defendants are going to assert Conduit Defenses, they need to do so now so that the Trust can (a) identify the other entities that allegedly received or had dominion and control over the proceeds, (b) name those entities as defendants in a newly amended complaint, (c) serve those new defendants, and (d) obtain relation back as to those new defendants under Civil Rule 15(c). To that end, in conjunction with the Fifth Extension Motion, the Trust filed the currently pending Discovery Motion[6] to establish an orderly and limited process for identifying Defendants with Conduit Defenses and other entities that allegedly received or had dominion or control over the funds. It seems logical that Defendants would not want to be put in a position where they

---

*Effectuate Service of Process* [Adv. D.I. 400] ("**Extension Motion**").

[4] *See Various Defts.' Resp. to the Sixth Mot. of the Opioid Master Disbursement Tr. II for Entry of an Order Further Enlarging the Time to Effectuate Service of Process* [Adv. D.I. 405]; *Obj. of Goldman Sachs & Co. LLC to the Sixth Mot. of the Opioid Master Disbursement Tr. II for Entry of an Order Further Enlarging the Time to Effectuate Service of Process* [Adv. D.I. 406] ("**Goldman Obj.**"); *Obj. of Paulson & Co., Inc. and Joinder in Obj. of Various Defts.' to Opioid Master Disbursement Tr. II's Sixth Mot. to Further Enlarge Time to Effectuate Service of Process* [Adv. D.I. 407]; and *Obj. to the Sixth Mot. of the Opioid Master Disbursement Tr. II for Entry of an Order Further Enlarging the Time to Effectuate Service of Process* [Adv. D.I. 408] (collectively, "**Objecting Defendants**"). Most of the Objecting Defendants do not raise any new arguments.

[5] Capitalized terms not otherwise defined shall have the same meaning as in the Extension Motion.

[6] Adv. D.I. 237.

would have to point the finger at their customers and affiliates and thereby bring them into this Proceeding as new defendants. That may be what animates their strident rhetoric against the pending motions and their unfounded accusations of delay and failure to "prosecute" that they heap on the Trust. *See, e.g.*, Goldman Obj. ¶ 10. But these Defendants capitalized and funded the "kingpin within the drug cartel,"[7] and were able to recoup their investment in Mallinckrodt before Mallinckrodt's opioid house of cards came crashing down, leaving States, counties, other municipalities, and opioid victims with inadequate recourse to satisfy claims. Defendants' apparent preferred path of extracting themselves from this Proceeding, without subjecting their customers and affiliates to the Trust's avoidance claims, should be given no weight.

3. Goldman's latest arguments do nothing to alter the Trust's entitlement to the relief it seeks. Indeed, Goldman is hardly the paragon of virtue when it comes to moving the Proceeding forward without delay. Goldman appears to forget that part of the "months-long extensions"[8] it complains about was necessitated by its *own* foot-dragging and stonewalling in responding to the Trust's subpoena seeking shareholder matching data.[9] Goldman is undeserving of the merit badge for "secur[ing] the just, speedy, and inexpensive determination" of this Proceeding (Fed. R. Bankr. P. 1001), and its hypocritical complaints about delay and extensions should be rejected.

4. Similarly, Goldman argues that the Trust "has done little if anything to prosecute its case." Goldman Obj. ¶ 10. But this ignores the tremendous amount of work and expense that the Trust has put in thus far, including the myriad dismissal demands that the Trust has contended

---

[7] Am. Compl. ¶ 2 [Adv. D.I. 209].

[8] Goldman Obj. ¶ 10.

[9] When the Trust served its ultimate subpoena on Goldman on December 20, 2022, Goldman took until June 28, 2023, to complete its production of data. *See Omnibus Reply in Supp. of Pl.'s (I) Fifth Mot. for Entry of an Order Further Enlarging the Time to Effectuate Service of Process and (II) Mot. for Leave to Serve Limited Interrogs. on Defs.* at 7-8 [Adv. D.I. 329] ("**Omnibus Reply**").

with under the Protocol[10] that many of the Objecting Defendants urged upon this Court.[11]  Indeed, the Trust continues to receive dismissal demands under the Protocol, the most recent of which was tendered on April 23, 2024.  Since filing the Fifth Extension Motion, the Trust has received five Protocol submissions involving 11 entities, four of which raise Conduit Defenses.  The Trust has also received and evaluated supplemental evidence provided by seven additional Defendants and has engaged in numerous meet-and-confers and settlement discussions.  The Trust is still responding to these dismissal demands and, in appropriate cases, has granted voluntary dismissals, as shown by the 28 defendants dismissed to date.  In addition, the Trust is currently facing six motions to dismiss, four of which are set for hearing and argument on May 14, 2024.  To date, these motions have required the Trust to generate a total of 119 pages in opposition briefing and to engage at least three experts, who have tendered declarations in support of the Trust's objections to the motions.  In short, Goldman's suggestion that the Trust has not been diligently litigating this case could not be further from the truth.

5. To be sure, this Proceeding has not moved forward in the traditional manner under the Federal Rules, but that is because of the Case Management Order [Adv. D.I. 93] and the Protocol that many of the Objecting Defendants urged upon this Court.[12]  The Case Management Order, entered on December 28, 2022, stays all deadlines to file answers or respond to the Amended Complaint.  *See id.* ¶¶ 3, 5.  And the Trust is not authorized to conduct discovery outside the Protocol's strict parameters.  *See* Adv. D.I. 185-1, ¶ 12.  As noted above, the Protocol process remains very active.  If Goldman wants this Proceeding to move forward in the traditional manner, then it should be arguing for a new case management order and vacatur of the Protocol.  The

---

[10] Adv. D.I. 185-1.

[11] Adv. D.I. 132 at 22 (certain Defendants moving for entry of the Protocol).

[12] *See supra* note 11.

Trust's compliance with the Case Management Order and the Protocol does not support denial of the Extension Motion.

6. Goldman's complaint about the Trust's cancellation of the pretrial conference is without merit. The Trust cancelled the pretrial conference at the behest of various Defendants represented by Wilmer Cutler Pickering Hale and Dorr LLP ("**Wilmer**"),[13] who also requested assurances that the Case Management Order remain in effect and that Defendants not be required to respond to the Amended Complaint at this time.[14] The Trust obtained the pretrial conference date for purposes of issuing the summons and serving the Amended Complaint, but the Court agreed that it was not necessary to go forward with a pretrial conference at the current stage of the Proceeding.

7. Finally, Goldman's argument that the Trust has not advanced any new argument for a further extension is unavailing. *See* Goldman Obj. ¶ 10. There is no requirement in Civil Rule 4(m) that new grounds for good cause must exist in order for the Court to grant further extensions of the Service Deadline, and Goldman cites no law for this remarkable but unfounded proposition. *See* Fed. R. Civ. P. 4(m). If the circumstance for finding good cause still exists, then good cause for an extension remains. *Cf. United States v. Johnson,* No. 12-CV-1349, 2014 WL 12787211, at *2 (M.D.N.C. Feb. 10, 2014) (reason for granting protective order "constituted good cause when the Protective Order was granted, and still remains good cause"). Indeed, the Court already granted multiple extensions to allow the Trust's investigation into defendants' identities to continue, even though the grounds for good cause have not fundamentally changed (*i.e.*, the

---

[13] Wilmer currently represents over 20 Defendants in this Proceeding.

[14] Email chain between A. De Leo and M. McGuinness, *et al.* (Jan. 5, 2024, at 8:29 PM) attached hereto as **Exhibit 1**.

Trust is seeking to identify shareholder-defendants).[15]

8.  In sum, the extensions sought in the Fifth Extension Motion and the most recent Extension Motion are part and parcel of the Trust's pending Discovery Motion. The Discovery Motion itself demonstrates that the Trust is taking steps to bring the identification of defendants to a close. The Discovery Motion seeks to end the need for further extensions without prejudicing the Trust's ability to name all potential defendants where that information is solely within the possession of Defendants. *See* Adv. D.I. 237, ¶ 23. "Where unknown defendants exist . . . courts must take into account a plaintiff's good faith investigation to determine if 'good cause' exists[.]" *Cuebas v. Dávila*, 618 F. Supp. 2d 124, 132-33 (D.P.R. 2009) (further noting that plaintiffs "are correct in pointing out that in this case only discovery proceedings will provide them with the means to obtain the names of the remaining unknown defendants").

9.  Without the Discovery Motion, Defendants can delay asserting Conduit Defenses indefinitely because the Protocol remains voluntary and does not require Defendants to participate. *See* Adv. D.I. 185-1, ¶ 16. Indeed, Goldman acknowledges the open-ended nature of the Protocol, noting that "the Protocol does not set a deadline to invoke its procedures." Goldman Obj. ¶ 9. The Trust needs closure on the Conduit Defenses so that it can proceed with litigating the case against all Defendants on the merits. If Defendants do not have any additional Conduit Defenses, then no further extensions will be necessary.

10. In response to other arguments that the Objecting Defendants asserted, most if not all of which are not new and incorporate their previous filings, the Trust incorporates by reference

---

[15] *See Order Enlarging the Time to Effect Service of Process and Approving Prelim. Case Management Procedures* [Adv. D.I. 93]; *Order Further Enlarging the Time for Pl. to Effect Service of Process and Extending Deadline to Produce Trading Information* [Adv. D.I. 159]; *Order Further Enlarging the Time for Pl. to Effect Service of Process and Extending Deadline to Produce Trading Information* [Adv. D.I. 196]; and *Order Further Enlarging the Time for Pl. to Effect Service of Process* [Adv. D.I. 222].

the points and authorities set forth in the Discovery Motion, the Fifth Extension Motion, and the Trust's Omnibus Reply in support of both motions, as if they were fully set forth herein.

## CONCLUSION

For the reasons explained above, and in the Extension Motion, the Court should overrule Objecting Defendants' objections, grant the Extension Motion, and grant such other and further relief as the Court deems just and proper.

Dated: April 29, 2024
Wilmington, Delaware

Respectfully submitted,

| **COLE SCHOTZ P.C.** | **CAPLIN & DRYSDALE, CHARTERED** |
|---|---|
| | Kevin C. Maclay, Esq. (admitted *pro hac vice*) |
| */s/ Justin R. Alberto* | Todd E. Phillips, Esq. (admitted *pro hac vice*) |
| Justin R. Alberto (No. 5126) | Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*) |
| Patrick J. Reilley (No. 4451) | Quincy M. Crawford, III, Esq. |
| 500 Delaware Avenue, Suite 1410 | (admitted *pro hac vice*) |
| Wilmington, Delaware 19801 | Serafina Concannon, Esq. (admitted *pro hac vice*) |
| Telephone: (302) 652-3131 | One Thomas Circle, NW, Suite 1100 |
| Facsimile: (302) 652-3117 | Washington, D.C. 20005 |
| jalberto@coleschotz.com | Tel: (202) 862-5000 |
| preilley@coleschotz.com | Fax: (202) 429-3301 |
| | kmaclay@capdale.com |
| Anthony De Leo, Esq. | tphillips@capdale.com |
| (admitted *pro hac vice*) | jliesemer@capdale.com |
| 1325 Avenue of the Americas | mcrawford@capdale.com |
| 19th Floor | sconcannon@capdale.com |
| New York, NY 10019 | |
| Telephone: (212) 752-8000 | *Co-Counsel to the Opioid* |
| Facsimile: (212) 752-8393 | *Master Disbursement Trust II* |
| adeleo@coleschotz.com | |
| | |
| *Co-Counsel to the Opioid* | |
| *Master Disbursement Trust II* | |